## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **NILAB RAHYAR TOLTON** *et al.*, on behalf of themselves and all others similarly situated, | ) ) ) | **No. 1:19-cv-00945-RDM** |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **JURY TRIAL DEMANDED** |
| **JONES DAY, a General Partnership,** | ) ) | |
| **Defendant.** | ) ) | |

## JANE DOE PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DENY USE OF PSEUDONYMS

## TABLE OF CONTENTS

                                                                                                    **Page**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .................................................................................................................1

ARGUMENT .........................................................................................................................1

     I.     DEFENDANT'S FAILURE TO MEET AND CONFER IS FATAL
          TO ITS MOTION ...............................................................................................1

          A.  JONES DAY'S FAILURE TO CONFER ALONE WARRANTS
              DENYING THIS MOTION .......................................................................2

          B.  CONFERENCE COULD ALLEVIATE MANY OF JONE'S
              DAY'S CONCERNS .................................................................................4

     II.    PLAINTIFFS HAVE MET THEIR BURDEN TO SHOW THEIR
          SIGNIFICATN PRIVACY INTERESTS WARRANT
          PSEUDONYMITY AT THIS STAGE .................................................................5

          A.  JONES DAY CONFUSES CONTROLLING LAW .........................................5

          B.  THE JANE DOES HAVE SIGNIFICANT PRIVACY INTERESTS..............7

          C.  THE DOES' PSEUDONYMS PROTECT HIGHLY SENSITIVE AND
              PERSONAL INFORMATION ..........................................................................8

          D.  EXPOSING THE JANE DOES' NAMES RISKS RETALIATION ..............10

     III.   NEITHER PUBLIC INTEREST NOR LEGITIMATE PRIVATE
          INTERESTS WEIGH AGAINST PERMITTING PLAINTIFFS TO
          PROCEED UNDER PSEUDONYMS ...............................................................12

          A.  THE PUBLIC INTERESTS IN VINDICATING VICTIMS' RIGHTS
              OUTWEIGHS THE *DE MINIMIS* BURDEN TO JONES DAY ...................12

          B.  JONES DAY HAS INCURRED NO PREJUDICE.........................................12

          C.  THE PUBLIC HAS INCURRED NO PREJUDICE WHERE
              PSEUDONYMS SERVE PUBLIC INTEREST GOALS AND
              COUNTERVAILING INTERESTS ARE *DE MINIMIS* ...............................17

CONCLUSION....................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                                                Page(s)

*12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*,
    316 F. Supp. 3d 22 (D.D.C. 2018)………………………………………………………3

*Abbott GmbH & Co. KG v. Yeda Research & Dev., Co.*,
    576 F. Supp. 2d 44 (D.D.C. 2008) …………………………………………..…….4

*\*Alberts v. HCA Inc.*, 405 B.R. 498 (D.D.C. 2009)……………………………..………...2, 3

*Andrades v. Holder*, 286 F.R.D. 64 (D.D.C. 2012) …………………..……………………..3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………………..10

*Beckett v. Aetna, Inc.*, No. 2:17-CV-03864-JS (E.D. Pa. Oct. 18, 2016), ECF. No. 72……..…18

*Dep't of Fair Employment & Hous. v. Law Sch. Admission Council, Inc.*,
    No. C-12-1830 EMC, 2012 WL 3583023 (N.D. Cal. Aug. 20, 2012)……………………17

*Doe 1 v. George Washington Univ.*,
    --- F. Supp. 3d ---, 2019 WL 1383650 (D.D.C. 2019)………………………………....16

*Doe No. 2 v. Kolko*, 242 F.R.D. 193 (EDNY 2006)……………………………...……………..15

*Doe v. Bridgeport Police Dep't*, 198 F.R.D. 325 ……………………………………………17

*Doe v. Cabrera*, 307 F.R.D. 1 (D.D.C. 2014)……………………………………………...15, 16

*Doe v. Colgate Univ.*,
    No. 515CV1069LEKDEP, 2016 WL 1448829, at \*3 (N.D.N.Y. Apr. 12, 2016)………....16

*\*Doe v. De Amigos, LLC*,
    No. CV 11-1755 (ABJ), 2012 WL 13047579 (D.D.C. Apr. 30, 2012)………...…12, 15, 19

*Doe v. Evans*, 202 F.R.D. 173 (E.D. Pa. 2001)……………………………………...……12

*Doe v. Hale Hosp.*, 500 F.2d 144 (1st Cir. 1974) …………………………………………17

*\*Doe v. Lynch*, No. CV 16-253 (BAH), 2016 WL 10844617 (D.D.C. Apr. 28, 2016) ………10, 11

*Doe v. Mundy*, 514 F.2d 1179 (7th Cir. 1975)………………………………………………17

*Doe v. Shakur*, 164 F.R.D. 359 (S.D.N.Y. 1996), …………………………………..………18

*Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981) ………………………………………………17

*Doe v. The New Ritz, Inc.*, No. CV RDB-14-2367,
    2016 WL 454940 (D. Md. Feb. 5, 2016) ……………………………...………………17

*Doe v. Trustees of Dartmouth Coll.*,
No. 18-CV-040-LM, 2018 WL 2048385 (D.N.H. May 2, 2018) ………………..……….12

*Doe v. United States*, 44 F. App'x 499 (Fed. Cir. 2002) …………………………………..…18

*Ellipso, Inc. v. Mann*, 460 F. Supp.2d 99 (D.D.C. 2006)……………………………….....……3, 4

*Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 31-32 (D.D.C. 2007) …………………….3

*\*Haynes v. Navy Fed. Credit Union*, 282 F.R.D. 17 (D.D.C. 2012)………………………………..3

*Hajjar-Nejad v. George Washington Univ.*, 802 F. Supp. 2d 166 (D.D.C. 2011)…………………3

*Henderson v. United States*, 517 U.S. 654, 663 (1996)……………………………………..……2

*Horowitz v. Peace Corps,* 428 F.3d 271 (D.C. Cir. 2005) ………………………………..……19

*Jane Doe 1, et al. v. Morrison & Foerster LLP*, No. 3:18-cv-2542 (N.D. Cal.)…………..…13, 17

*Jane Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990 (N.D. Cal. 2015)………………..……10

*\*John Doe Co. No. 1 v. Consumer Fin. Prot. Bureau ("Doe II")*,
195 F. Supp. 3d 9, 21–22 (D.D.C. 2016)……………………………...…..…………6, 8, 10, 19

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)………………………………..……..12

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986)…………………………………………...12

*Nat'l Ass'n of Retired Fed. Emps. v. Horner,* 879 F .2d 873 (D.C. Cir. 1989) …………...……..19

*Nat'l Ass'n of Waterfront Emp'rs v. Chao*, 587 F. Supp. 2d 90 (D.D.C. 2008)………………..…7

*Niedermeier v. Office of Baucus*, 153 F.Supp.2d 23 (D.D.C. 2001)………………………………2

*Plaintiffs # 1-21 v. Cty. of Suffolk*, 138 F. Supp. 3d 264 (E.D.N.Y. 2015)…………………...……17

*PCH Mut. Ins. Co. v. Cas. & Sur., Inc.*, 569 F. Supp. 2d 67 (D.D.C. 2008) …………………..…4

*Qualls v. Rumsfeld*, 228 F.R.D. 8 (D.D.C. 2005)……………………………………………..2, 6

*Roe v. Operation Rescue*, 123 F.R.D. 500 (E.D. Pa. 1988) ……………………………………....18

*Simpson v. D.C. Office of Human Rights*, 597 A.2d 392 (D.C. 1991) ………………………………12

*United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.,*
235 F.R.D. 521 (D.D.C. June 2, 2006)……………………………………………..…..3

*U.S. ex rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*,
456 F. Supp. 2d 46 (D.D.C. 2006)……………………………………………...……3, 5

*United States v. All Assets Held at Bank Julius Baer & Co., Ltd*.,
202 F. Supp. 3d 1, 6-7 (D.D.C. 2016)……………………………………………...…….4

*\*United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) …………………………………….....7

*United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40 (D.D.C. 2008)……………..……4

*Wheeler-Whichard v. Doe*,
      No. 10-CV-0358S, 2010 WL 3395288 (W.D.N.Y. Aug. 25, 2010)………………………9

## RULES

Fed. R. Civ. P. 4.…..………………………………………………………………………….2

Fed. R. Civ. P. 8…………………………………………………………………………10

Fed. R. Civ. P. 10……………………………………………………………………..…6

Fed. R. Civ. P. 12…………………………………………..……………………….…10

Fed. R. Civ. P. 23……………………………...……………………………………18

Local Rule 7.…………………………………………..…………………….…….*passim*

## INTRODUCTION

Defendant Jones Day's Motion asks this Court to unmask Plaintiffs so that they can become a public experiment on whether their fear of retaliation is justified. The law demands no such thing.

The rationale of Chief Judge Howell's earlier opinion is sound:

> The public's interest in the litigants' identity is *de minimis* compared to the significant privacy interests of the plaintiffs, who seek "temporar[y] shielding from public disclosure their names and personally identifying information," Pls.' Mem. at 2, because their complaint "implicates sensitive information, including confidential health information and information pertaining to minor children," *id.,* and because of concerns that "Jones Day [will] publicly impugn their professional reputations to chill this litigation and irreparably harm their future career prospects," *id.*

(Dkt. 2 at 5.) Jones Day's interests are hardly impaired. Jones Day is free to conduct its investigation, contact witnesses, and speak to the public and the press (as it already has).

But consideration of the merits of Jones Day's Motion is, moreover, premature, because Jones Day has failed to confer with Plaintiffs in advance of seeking to shine the spotlight on the Jane Doe Plaintiffs. Jones Day does not represent that it conferred with Plaintiffs about exposing their identities—it did not—nor that it sought to narrow the areas of disagreement—it did not. Accordingly, on procedural grounds and wholly apart from its merits, this Motion fails and must be denied.

## ARGUMENT

### I.  Defendant's Failure to Meet and Confer Is Fatal to Its Motion

Jones Day inexplicably ignores a basic procedural requirement by failing to meet and confer with Plaintiffs' attorneys before filing this non-dispositive Motion. (Dkt. 12, "Def.'s Br.") This failure alone warrants denial of Defendant's Motion. *See* Local Rule 7(m).[1] Had Jones Day

---

[1] Jones Day's failure in this regard is poignant. The Motion stridently accuses Plaintiffs of engaging in a series of entirely legitimate litigation tactics: choosing not to serve their Complaint

not flouted its threshold obligation to meet and confer with Plaintiffs, many if not all of its concerns about Plaintiffs' pseudonymity might have been alleviated. Jones Day's failure to even acknowledge, let alone fulfill this basic requirement is, by itself, sufficient basis to deny its Motion.

### A.       Jones Day's Failure to Confer Alone Warrants Denying this Motion

Jones Day's Motion must be denied, because it has failed to meet and confer regarding its demand that Plaintiffs not proceed under pseudonym. Local Rule 7(m) is unambiguous. It requires that:

> [b]efore filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement. . . . A Party shall include in its motion a statement that the required discussion occurred and a statement as to whether the motion is opposed.

Thus "Local Civil Rule 7(m) 'clearly states that it applies to 'any nondispositive motion,' and provides no exception  . . . .'" *Alberts v. HCA Inc.*, 405 B.R. 498, 502 (D.D.C. 2009) (quoting *Niedermeier v. Office of Baucus*, 153 F.Supp.2d 23, 26 (D.D.C. 2001)). Jones Day makes no claim that it attempted to meet and confer on the relief it seeks here. Nor can it, because Jones Day never attempted to meet and confer with Plaintiffs' counsel. Marcuse Decl. ¶¶ 4-5.[2]

---

until approximately half of their allotted time under Federal Rule of Civil Procedure 4(m) has elapsed (Dkt. 12 at 4) *Cf. Henderson v. United States*, 517 U.S. 654, 663 (1996) (holding that Rule 4 conveys "an irreducible allowance"); following the procedure set out in *Qualls v. Rumsfeld*, 228 F.R.D. 8, 10 (D.D.C. 2005), by filing their Motion to Proceed Under Pseudonym *ex parte* in advance of filing their Complaint (Dkt. 12 at 2); and seeking Defendant's assent to a deadline extension in exchange for providing a copy of an *ex parte*, sealed declaration Defendant had requested (*id.* at 3).

[2] Defendant's counsel Terri Chase instead declares that:

> [a]fter Plaintiffs filed their *ex parte* motion for leave to proceed under pseudonyms, accompanied by an under-seal declaration from one of their attorneys, I asked Plaintiffs' counsel for a copy of that declaration. Plaintiffs' counsel responded that Jones Day could have a copy only if Jones Day agreed to extend Plaintiffs' time to file a class certification motion.

Jones Day's Motion must be denied based on its failure to meet and confer alone: "Where 'a party files a nondispositive motion without certifying its compliance with Rule 7(m), the motion will be denied.'" *Haynes v. Navy Fed. Credit Union*, 282 F.R.D. 17, 19 (D.D.C. 2012) (quoting *Ellipso, Inc. v. Mann*, 460 F. Supp.2d 99, 102 (D.D.C. 2006)); *see also 12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 316 F. Supp. 3d 22, 24–25 (D.D.C. 2018) ("For starters, the court denies Plaintiffs' motion for failure to meet and confer as required by Local Civil Rule 7(m)."); *Walker v. D.C.*, 317 F.R.D. 600, 604 (D.D.C. 2016) ("Failure to comply with [Rule 7(m)'s] requirement is grounds for denial of a motion to compel."); *Andrades v. Holder*, 286 F.R.D. 64, 65 (D.D.C. 2012) (denying motion for leave to file surreply for failure to follow Rule 7(m)); *Hajjar-Nejad v. George Washington Univ.*, 802 F. Supp. 2d 166, 178 (D.D.C. 2011) ("In this case, [defendant] asserts that [plaintiff] failed to discharge his obligations under [Rule 7(m)], and this assertion is left uncontested in [plaintiff's] reply papers. On this basis alone, the Court will deny [plaintiff's] Motion to Amend."); *Alberts*, 405 B.R. at 501 ("Failure to comply with the rule will result in denial of the motion."); *Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 31-32 (D.D.C. 2007) ("Failure to comply with the duty to confer requirement set forth in these rules is grounds for dismissing a motion to compel."); *U.S. ex rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*, 456 F. Supp. 2d 46, 52 (D.D.C. 2006), *aff'd*, 530 F.3d 980 (D.C.

---

(Dkt. 12-1, Chase Decl, ¶ 3.) The omission of any reference to any discussion of Defendant's Motion to publicly expose Plaintiffs' names is conspicuous.

Indeed, Jones Day did not even respond to Plaintiffs' attempts to meet and confer. On April 16, 2019, Plaintiffs' counsel David Sanford wrote to Terri Chase, counsel for Defendant, "First, we will be happy to share the declaration with you so long as you agree to consent to our filing for an extension of time in which to file a class certification motion and so long as you agree that our sharing of the declaration does not constitute service." Ex. A. Jones Day never responded. Good faith compliance with this Court's rules requires more: "The obligation to confer may not be satisfied by perfunctory action, but requires a good faith effort to resolve the nondispositive disputes that occur in the course of litigation." *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.,* 235 F.R.D. 521, 529 (D.D.C. June 2, 2006).

ion

p

Cir. 2008) ("A nondispositive motion that does not comply with the Local Rule will be denied."). Jones Day's motion is no exception.[3]

### B.      Conference Could Alleviate Many of Jones Day's Concerns

There are good reasons for Rule 7(m). "The purpose of the Local Rule is to promote the resolution of as many litigation disputes as possible without court intervention, or at least to force the parties to narrow the issues that must be brought to the court." *Ellipso*, 460 F. Supp. 2d at 102. "This rule serves the crucial function of preventing the unnecessary expenditure of the Court's time and resources on adjudicating a dispute that the parties could have resolved themselves." *United States v. All Assets Held at Bank Julius Baer & Co., Ltd*., 202 F. Supp. 3d 1, 6-7 (D.D.C. 2016).

These reasons apply with full force here. To the extent that Jones Day now claims that pseudonyms are impairing its ability to investigate Plaintiffs' claims, less invasive alternatives than the one sought by this Motion are available. Jones Day is even aware of them: In a January 2019 *amicus curiae* brief to the California Supreme Court, Jones Day argued that a California appellate court erred when it "invalidated [a] confidentiality clause in its entirety because it thought

---

[3] Jones Day cannot dispense with this requirement by merely presuming that Plaintiffs would not consent to the relief requested. *See United States v. All Assets Held at Bank Julius Baer & Co., Ltd*., 202 F. Supp. 3d 1, 6 (D.D.C. 2016) ("[E]ven if the movant is sure that his opponent will not concede one inch of ground, he must still make a good-faith effort to confer."); *Abbott GmbH & Co. KG v. Yeda Research & Dev., Co*., 576 F. Supp. 2d 44, 49 (D.D.C. 2008) ("[T]he court cannot, on the current record, determine the likelihood that an agreement may have been reached. . . . Consequently, the court denies the defendant's motion to exclude evidence."); *PCH Mut. Ins. Co. v. Cas. & Sur., Inc.*, 569 F. Supp. 2d 67, 78 (D.D.C. 2008) (denying motion to stay discovery because "motion failed to include a representation, as required by LCvR 7(m), that [defense] counsel discussed its motion with opposing counsel before filing it"); *United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40, 47 (D.D.C. 2008) (holding that defendant's belief that plaintiff "would not be willing to resolve the problems . . . short of this Court's intervention . . . does not change the fact that it was under an obligation to make a good faith effort . . . to narrow the areas of disagreement" (second alteration in original) (internal quotation marks omitted)).

the clause—by prohibiting the plaintiff from 'informally contact[ing] or interview[ing] any witnesses outside the formal discovery process'—was unreasonably onerous in some applications." (Marcuse Decl., Ex. C at 3.) Jones Day argued that the court should have instead "'limit[ed]' the confidentiality clause to allow a plaintiff to conduct informal discovery." (*Id.*) Just so here: Plaintiffs' counsel remains ready, willing, and able to confer with Jones Day about how Jones Day can conduct an informal investigation while Plaintiffs remain under pseudonym. But denying anonymity entirely based on Jones Day's unsworn assertion that "secrecy is impairing its informal investigation" (Def.'s Br. at 8) "defies precedent and common sense." (Marcuse Decl. Ex. C at 3.)

Likewise, to the extent that Jones Day feigns that "it is hard to understand exactly what the Jane Does are worried about," (Dkt. 12 at 11) a robust conference could elucidate these concerns. Jones Day asserts that Plaintiffs' statements regarding the employment circumstances of Jane Does 3 and 4 are "vague, unsupported, and insufficient." But rather than pick up the phone and ask what those circumstances are, Jones Day has instead opted to burden this Court with a premature motion. *Cf. U.S. ex rel. K & R Ltd. P'ship*, 456 F. Supp. 2d at 52 ("[A] simple phone call, even if made at the last minute, may have revealed what K & R conceded . . . .").

Jones Day cannot ride roughshod over this Court's rules. Its Motion is procedurally deficient. Jones Day's haste makes waste of this Court's time, and its Motion must be denied on this basis alone.

## II.   Plaintiffs Have Met Their Burden to Show Their Significant Privacy Interests Warrant Pseudonymity At This Stage

### A.   Jones Day Confuses the Controlling Law

Jones Day's Motion confuses the controlling law on two fundamental counts: first, it fails to grasp the legal requirements for filing a suit under pseudonym in this District; and, second, its

one-sided, atomized analysis fails to adequately engage with the balancing inquiry through which courts in this district grant pseudonymity. As *Qualls v. Rumsfeld*—which Defendant cites many times—explains:

> [T]his Court has developed an ad-hoc process . . . A litigant seeking to proceed under pseudonym may ask the Chief Judge, ex parte, for leave to file a complaint omitting the litigant's real name and full address. In effect, the litigant is asking the Chief Judge to waive the requirements of Federal Rule 10(a) and Local Civil Rules 5.1(e)(1) and 11.1. **Leave is generally granted if the litigant makes a colorable argument in support of the request** . . . . The Chief Judge's leave to file is only given "at this time," *Qualls v. Rumsfeld,* No. 04–2113 (D.D.C. Dec. 6, 2004), and does not guarantee that a litigant may proceed pseudonymously throughout the case; rather, **the leave is an indication that the litigant's request is not frivolous and gets the case moving quickly** . . . .

228 F.R.D. at 8.[4] Thus, the operative standard of proof requires a "colorable argument," indicating that a "request is not frivolous." *Id.* And the *Qualls* description omits any special evidentiary burden regarding sworn declarations or other items such as media clippings.[5] *Cf. John Doe Co. No. 1 v. Consumer Fin. Prot. Bureau* ("*Doe II*"), 195 F. Supp. 3d 9, 21–22 (D.D.C. 2016) (Moss, J.) (weighing plaintiff declarations concerning privacy interests submitted during post-filing litigation of pseudonymity). This process leaves "the issue [of pseudonym use] open to full, adverse litigation at a later date." *Id.* While Jones Day may litigate this issue as it chooses, it cannot choose its own standard of proof to govern the Jane Does' motion to proceed under pseudonyms; and neither can it personalize the governing legal standard on pseudonym use to best fit its overwrought assertions.

The true question before the Court boils down to "an assessment of whether the non-speculative privacy interests that the movants have identified outweigh the public's substantial

---

[4] Reading the *Qualls* procedure, which requires an *ex parte* motion for leave **before** a pseudonymous complaint may be filed, resolves Defendant's misunderstanding about why service of the complaint could not be effected before the motion to proceed under pseudonyms was filed.

interest in knowing the identities of parties in litigation, along with any legitimate interest that the non-moving parties' interest may have in revealing the identity of the movants." *Id.* at 17. The *Hubbard* and *Chao* multi-factor tests, which "weigh the same two general concerns," frame the analysis. Mem. Order (April 3, 2019) ("Howell Order"), ECF 2 at 3–4 (citing *United States v. Hubbard*, 650 F.2d 293, 317–21 (D.C. Cir. 1980) and *Nat'l Ass'n of Waterfront Emp'rs v. Chao*, 587 F. Supp. 2d 90, 99 (D.D.C. 2008)). Specifically, these concerns are: (1) the strength of the generalized property and privacy interests involved and the possibility of prejudice to those opposing disclosure; and (2) whether the justification for nondisclosure is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature. (*Id.*)

### B.      The Jane Does Have Significant Privacy Interests

Here, Chief Judge Howell and this Court have each weighed the relevant facts and factors to determine the current balance of interests. Chief Judge Howell ruled: "The public's interest in the litigants' identit[ies] is *de minimis* compared to the significant privacy interests of the plaintiffs." (*Id.* at 5.) In reaching this determination, Chief Judge Howell recognized that this case implicates the Jane Does' "highly sensitive and personal information, including information related to medical and psychological symptoms" and Jane Doe 2's "pregnancy and maternity leave"; "disclosure of which would be embarrassing to them and potentially damaging to their reputations and careers as successful attorneys" and reveal information "related to the identities of [Jane Doe 2's] minor children." (*Id.* at 5 (citations and internal quotation marks omitted).) Chief Judge Howell also cited the fact that public identification would expose the Jane Does "to a serious risk of retaliatory physical or mental harm" by "increase[ing] the risk that [Jones Day] or others may retaliate or harass them further." (*Id.* at 5–6 (internal quotation marks omitted) (noting that

the physical harm would consist of "psychological distress and its physical symptoms").) "[S]ince the plaintiffs are still establishing their legal careers, they assert that they are particularly vulnerable to retaliation that may interfere with their client relationships and ruin their ability to progress in their careers, obtain future employment, and provide for their family members." (*Id.* at 6.)

This Court agreed "that Plaintiffs' significant interest in maintaining their anonymity at this stage of the litigation is sufficient to overcome any general presumption in favor of open proceedings." (Minute Order, April 9, 2019). As explained in Section II, *supra*, the public interest has not budged, and Jones Day has little if any legitimate interest in outing the Jane Does' identities to the public now. Defendant's attacks on the Jane Does' significant privacy interests are unavailing. Thus, Jones Day fails to show why the Court should reconsider its balancing of the interests at this early stage of the litigation.

### C.   The Does' Pseudonyms Protect Highly Sensitive and Personal Information

Time and time again, the Janes Doe Plaintiffs have demonstrated their substantial privacy interests and established that they meet the standard to proceed under pseudonym. Indeed, this Court and Chief Judge Howell's orders recognized as much. (*See* Dkt. 2 and Minute Order, April 19, 2019.) While Defendant will have the opportunity to fully contest the Jane Doe Plaintiffs' use of pseudonyms—based on a full evidentiary record—it is premature to do so at this early stage of the litigation. And although the Jane Doe Plaintiffs are willing to provide declarations and other further evidentiary support for their claims, *see Doe II*, 195 F. Supp. at 21–22, they would require more than just four days to adequately prepare such evidence. *See* Marcuse Decl. ¶ 7.

Jones Day belittling aside, each Jane Doe Plaintiffs seeks to protect highly sensitive and personal information. Jones Day contests the existence of the medical and psychological harms

that it caused and cold-bloodedly dismisses Jane Doe 2's miscarriage as "volunteered" and "irrelevant." But these concerns are real, and Jones Day's arguments are premature in the absence of a developed evidentiary record. In addition, there are unique vulnerabilities and risks associated with public disclosure of the identity of the Jane Doe Plaintiffs because each is an attorney in early or pivotal stages of her career.

A protective order is no simple solution: professional stigma, particularly for attorneys, often results from publicizing mental or emotional difficulties and pursuing legal claims against one's former employer. Any protective order would fail to address these fundamental concerns or the fact that confidential information has already been publicly filed. *Wheeler-Whichard v. Doe*, did not involve such stakes. No. 10-CV-0358S, 2010 WL 3395288, at *6 (W.D.N.Y. Aug. 25, 2010) (recognizing that "in certain circumstances the nature of the claims or medical issues may be highly sensitive and personal or may expose a plaintiff to harm or ridicule if disclosed").

Nor could a protective order ensure that relevant but sensitive facts, such as Jane Doe 2's miscarriage, remain private. Jane Doe 2 was a stellar performer because, in part, she made the extraordinary commitment to join one a trial team that involved significant travel within months of giving birth to her first child. Later, after suffering a miscarriage, Jane Doe 2 took no time to recover physically or emotionally; she simply soldiered on with the team, further demonstrating her work ethic and unwavering commitment. And the fact that Defendant instilled her with fear about disclosing her second pregnancy illustrates the hostile work environment to which she was subjected. Jones Day has already suggested the relevance of these facts by avowing that its defense in "will involve rebutting the allegations that the Jane Does were star associates" and disputing their strong performance. (Def.'s Br. at 12.) Jane Doe 2's perseverance in the face of her miscarriage suggests a different story. And other plaintiffs have similar stories to tell.

Jones Day's insistence Jane Doe 2's disclosure of her miscarriage was not required by Federal Rule of Civil Procedure 8 ignores Supreme Court precedent to the contrary and Federal Rule of Civil Procedure 12. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation . . . . a complaint [does not] suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement.") ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (citations omitted).

## D.    Exposing the Jane Does' Names Risks Retaliation

Forcing the Jane Doe Plaintiffs to litigate under their true names runs a very real risk of inflicting grave injury on their livelihoods, financial prospects, career opportunities, and reputation in the industry. (*See, e.g.*, Dkt. 1-1 at 5-6.) Courts in this District have allowed plaintiffs to proceed under pseudonym based solely on the risk of reputational and career damage. *See Doe v. Lynch*, No. CV 16-253 (BAH), 2016 WL 10844617, at *1 (D.D.C. Apr. 28, 2016) (permitting the use of a pseudonym based on argument that public disclosure would result in career and reputational damage); *cf. Doe II*, 195 F. Supp. 3d 9, 16, 23 (D.D.C. 2016) (allowing plaintiff to proceed under pseudonym to "avoid grave reputational and financial injury," even in the absence of any risk of physical or mental harm: "Although reputational and financial losses may not pose threats as grave as the type of threats (such as physical intimidation) that most commonly support pseudonymous treatment, the degree of the threatened harm or loss is best considered on a case-by-case basis in balancing the public interest in disclosure against the harm that might ensue.").[6]

---

[6] The fact that the defendants in *Jane Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990, 995

For example, in *Doe v. Lynch*, the District Court for the District of Columbia permitted a highly-regarded banking figure to proceed pseudonymously because public disclosure of his identity would attach a "scarlet letter" to his name, could "potentially damage his relationships" with entities he worked with, and would "result in the very reputational damage [plaintiff] seek[s] to vindicate." *Lynch*, 2016 WL 10844617, at *1.

**Here, as in *Lynch*, the Jane Doe Plaintiffs will be branded with a "scarlet letter" if they are forced to publicly identify themselves.** Their relationships with their employers and clients will suffer. They may well be "blacklisted" from other firms, diminishing their employment opportunities and financial prospects. These fears are very real. Indeed, during a recent interview with Forbes Magazine, Betiayn Tursi, the Global Chair and Co-Founder of the Women in Law Empowerment Forum, identified such stigma as the reason why few lawsuits are filed against large law firms: "I'm in the legal profession 40 years. I've seen it all . . . with social media today, who would ever want to go public with something like this? **You'll never get another job in a law firm.**" *See* Bonnie Marcus, *Forget the Glass Ceiling. Female Attorneys Now Face a Concrete Wall*, FORBES (June 15, 7:17 AM), https://www.forbes.com/sites/bonniemarcus/2018/06/15/forget-the-glass-ceiling-female-attorneys-now-face-a-concrete-wall/#27925bb738f3. This risk of retaliation is real. And the Jane Does should not be forced to bear it as the price of entry to litigate their claims.

---

(N.D. Cal. 2015) agreed that public disclosure presented a risk of harm was merely one sentence in the court's detailed decision.  There is no reason to believe that this factor was a real influence in the court's decision to allow the plaintiffs to proceed under pseudonym.

III.   **Neither Public Interest Nor Legitimate Private Interests Weigh Against Permitting Plaintiffs to Proceed Under Pseudonyms**

  A.   **The Public Interests in Vindicating Victims' Rights Outweighs the *De Minimis* Burden to Jones Day**

"The language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered . . . stratified job environments to the disadvantage of minority [and female] citizens." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973). Similarly, the District of Columbia Human Rights Act (DCHRA) was passed to ensure "[t]he right to equal opportunity without discrimination based on race or other such invidious ground." *Simpson v. D.C. Office of Human Rights*, 597 A.2d 392, 398 (D.C. 1991) (internal quotation marks omitted). These anti-discrimination statutes must be enforced in a manner "calculated to encourage victims of harassment to come forward." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986).

Revealing the Jane Does' identities will have the opposite effect. It will deter ***other similarly situated litigants*** from litigating their claims. "There is authority for the proposition that precluding pseudonymous litigation . . . may have a chilling effect ***on future plaintiffs*** . . . ." *Doe v. Trustees of Dartmouth Coll.*, No. 18-CV-040-LM, 2018 WL 2048385, at *6 (D.N.H. May 2, 2018) (emphasis added); *Doe v. De Amigos, LLC*, No. CV 11-1755 (ABJ), 2012 WL 13047579, at *2 (D.D.C. Apr. 30, 2012); *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (the public has an interest in protecting the identities of plaintiff-victims so that other victims will feel more comfortable suing to vindicate their rights). Just so here: A victory for Jones Day threatens to chill other survivors from coming forward by suggesting that the accommodation of pseudonymous litigation is unavailable to them.

**B.      Jones Day Has Incurred No Prejudice**

The use of pseudonyms does not prejudice Jones Day. "Jones Day knows the identities of the Jane Does." (Def.'s Br. at 13.) And Jones Day already has shared these identities with at least 100 people within the Firm as part of its investigation of Plaintiffs' claims months before this litigation was filed. (Marcuse Decl. ¶ 3.) Moreover, Jones Day has not been hampered in its desire to publicly comment on the claims: It "posted on its website and social media pages [what it claims is] actual data about the success of women lawyers at Jones Day, and made clear that the Firm will 'litigate this case in court, not in the media.'" (Def.'s Br. at 4.) It is thus unclear what more Jones Day wishes to do or say, nor how plaintiff pseudonymity ties its hands in this regard.

Jones Day similarly leaves it to conjecture what prejudice, exactly, it has incurred to date. Jones Day first suggests that "clients, potential clients, lateral recruits, and law students" should be able to "fully evaluat[e] the Does' allegations and credibility." But Jones Day does not say why this evaluation is important (having already committed to "litigate this case in court, not in the media"), nor why any such evaluation can only take place by attaching the Plaintiffs' names to the pleadings, nor how anyone could possibly "fully evaluat[e] the Does' allegations and credibility" before Jones Day has answered the Complaint or any discovery has occurred. Indeed, juries, who are typically charged with evaluating credibility, are generally forbidden from having any independent knowledge of the witnesses from whom they hear testimony.

No form of self-defense is actually denied to defendant by plaintiff pseudonymity, whether in litigation or in the public square. Pseudonymity does not impede a defendant from mounting a paragraph-by-paragraph attack on plaintiffs' factual allegations, as the vigorous defense in the ongoing case cited by Jones Day makes abundantly clear. *See also Doe v. Morrison & Foerster LLP*, No. 3:18-cv-2542 (N.D. Cal.) (ECF No. 43 (Defendant's Answer); ECF No. 46 (Defendant's

13

Motion for Judgment on the Pleadings); ECF No. 68 (Defendant's Motion for Sanctions)). Indeed, Jones Day admits as much in its motion: "To be sure, Jones Day's defense of this case in court will involve rebutting the allegations that the Jane Does were star associates who failed to advance only due to discrimination." (Dkt. 12 at 12.)

Jones Day's defense also already involves an affirmative press strategy, albeit one centered around the pretense that it has no press strategy at all. Indeed, Jones Day's proclamation that it "issued no press release" and plans to "litigate the case in court, not the media" is disingenuous at best: Just days after Plaintiffs filed suit, Jones Day publicly posted a rebuttal on its website titled "Jones Day Responds to Recently Filed Lawsuit." *See Jones Day Responds to Recently Filed Litigation*, JONES DAY (April 6, 2019), https://www.jonesday.com/jones-day-responds-to-recently-filed-litigation-04-06-2019/. This statement did all the work of a press release under a different name: indeed, numerous media outlets covered and quoted directly from the Firm's statement. *See* Dan Packel, *Jones Day Breaks Silence, Disputes Claims Brought by Working Mothers*, NEW YORK LAW JOURNAL (Apr. 9, 2019, 11:32AM); Debra Cassens Weiss, *Jones Day says gender bias lawsuit painted 'distorted picture,'* ABA JOURNAL (Apr. 10, 2019, 9:01 AM), http://www.abajournal.com/news/article/jones-day-says-gender-bias-lawsuit-painted-distorted-picture; Dan Packel, *Jones Day Speaks Out on Bias Claims, Says Working Mothers Thrive*, THE AMERICAN LAWYER (Apr. 9, 2019, 11:32 AM), https://www.law.com/americanlawyer/2019/04/09/jones-day-speaks-out-on-bias-claims-says-working-mothers-thrive/.

Nor is Jones Day actually prevented from openly disparaging pseudonymous Plaintiffs in the press if it chooses. If Defendant has not done so to date, perhaps animated by valid concerns that it might inflict significant reputational harm on itself by so doing. *See* Kathryn Rubino, *MoFo*

*Files for Sanctions Against Firm, Plaintiff Suing Them For Gender Discrimination*, ABOVE THE LAW (Apr. 10, 2019, 10:42 AM), https://abovethelaw.com/2019/04/mofo-files-for-sanctions-against-firm-plaintiff-suing-them-for-gender-discrimination/; Kathryn Rubino, *MoFo's Attempt To Play Hard Ball With Gender Discrimination Plaintiff Fails*, ABOVE THE LAW (Apr. 19, 2019, 10:42 AM), https://abovethelaw.com/2019/04/mofos-attempt-to-play-hard-ball-with-gender-discrimination-plaintiff-fails/.

Jones Day's argument that it cannot investigate Plaintiffs' claims because of their pseudonymity similarly rings hollow. Defendant argues that it "is hamstrung in pursuing discovery." But how? Formal discovery has not even yet begun; no responsive pleading has been filed; nor will it, at least not in the near-term future, if Defendant chooses to file a motion to dismiss (which cannot look beyond the pleadings) in lieu of an answer. To the extent that Jones Day seeks to pursue legitimate informal discovery, it can obtain such information by merely asking about it.[7] Courts routinely reject such arguments by defendants where, as here, the defendant is aware of the plaintiffs' identities. *See De Amigos*, 2012 WL 13047579, at *3 ("Defendant argues that plaintiff's use of a pseudonym would cause unfairness because defendant would be unable to adequately

---

[7] If Defendant has any real anxiety that its legitimate efforts at informal discovery might run afoul of the Court's Order prohibiting it from "publicly disclosing the plaintiffs' identities or any personal identifying information that could lead to the identification of the plaintiffs by nonparties" (Dkt. 2 at 7), nothing about the current procedural posture inhibits Jones Day from conferring with Plaintiffs in an effort to reach agreement upon an appropriate confidentiality protocol. Parties regularly agree to, and courts regularly endorse, confidentiality orders governing the use of confidential information by all parties in the discovery process. *See Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198-99 (EDNY 2006) (granting motion for a protective order that facilitated the defendant's ability to conduct discovery with a Jane Doe plaintiff); *Doe v. Cabrera*, 307 F.R.D. 1, 8 (D.D.C. 2014) ("Moreover, the plaintiff has not sought to impose any limitation on the defendant's ability to conduct whatever discovery he deems necessary (given the appropriate protective orders governing the use and dissemination of identifying information)—the plaintiff seeks only to protect against public disclosure of her name and address.") (alterations and citation omitted). Stipulated protective orders are routinely fashioned to permit defendants to conduct any necessary discovery or investigation without publicly revealing an anonymous plaintiff's identity.

conduct third party discovery if plaintiff's identity could not be revealed. The Court finds any unfairness to defendant would be minimal. Plaintiff has already disclosed her identity to defendant . . .") (citation omitted); *see also Doe 1 v. George Washington Univ.*, --- F. Supp. 3d ---, 2019 WL 1383650 (D.D.C. 2019) (rejecting defendant's argument that they would be prejudiced because they were "limited in using [the p]laintiffs' actual names in third-party subpoenas, depositions, and interviews" and holding: "[T]his is nothing more than conjecture at best.") (quoting *Doe v. Cabrera*, 307 F.R.D. 1, 8 (D.D.C. 2014); *Doe v. Colgate Univ.*, No. 515CV1069LEKDEP, 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) ("Defendants are aware of Plaintiff's true identity and will have an uninhibited opportunity to litigate this matter regardless of whether Plaintiff's identity is disclosed publicly."). That Jones Day offers no declaration and no specificity regarding this purported impairment—nor, for that matter, any affirmation that it has not, in fact, conducted such outreach to date—further undercuts this argument.

The statement that "Secrecy Is Prejudicial to Jones Day" is astonishing. Jones Day has staked its reputation on a well-publicized commitment to secrecy. Its website tells the world that "[w]hat is sometimes critically referred to by those outside Jones Day as a 'lack of transparency' is almost universally viewed inside Jones Day as one of its great strengths."[8] When a Jones Day partner filed suit against the Firm, Jones Day demanded "that 'the complaint . . . be sealed as soon as possible.'" *See* Vivia Chen, *Jones Day Is Secretive About Why It's So Secretive*, THE CAREERIST, (July 2, 2018), https://thecareerist.typepad.com/thecareerist/2018/07/news.html ("But what seems to set Jones Day apart from most firms in this kind of suit is that it wants all documents in the case to be sealed. Locked forever in a black box."). Its newfound interest in transparency thus smacks of an ulterior motive; how consistently it abides by this battlefield conversion will likely become

---

[8] https://www.jonesday.com/principlesandvalues/compensation/confidentiality/

apparent as this case moves into the discovery phase.

### C.     The Public Has Incurred No Prejudice Where Pseudonyms Serve Public Interest Goals and Countervailing Interests Are *De Minimis*

The public's interest in this litigation is satisfied. Two plaintiffs have sued under their names, and four have used pseudonyms. The public's interest in the identities of the remaining women is thus *de minimis*. *See Dep't of Fair Employment & Hous. v. Law Sch. Admission Council, Inc.*, No. C-12-1830 EMC, 2012 WL 3583023, at *4 (N.D. Cal. Aug. 20, 2012) (determining that when 3 of 17 complainants used pseudonyms, the remaining publicly identified plaintiffs "substantially satisfied the public's interest in open judicial proceedings").

Nor is disclosure of class representative identities the *sine qua non* of a successful motion by Plaintiffs for class certification down the line. Courts have repeatedly allowed class representatives to proceed under pseudonyms in a variety of contexts.[9] *See Doe v. Hale Hosp.*, 500 F.2d 144 (1st Cir. 1974) (affirming a district court decision that granted class action status and permitted all seven class representatives to use pseudonyms); *Doe v. Mundy*, 514 F.2d 1179, 1182 (7th Cir. 1975) (dismissing  as "without merit," Rule 23(a) adequacy and typicality challenges to two class representatives, one of whom used a pseudonym: "[P]laintiff's anonymity does not weaken her ability to represent the class: an anonymous plaintiff, Jane Roe, maintained a class action in *Roe v. Wade* . . . .") (citation omitted).[10]

---

[9] Defendant incorrectly suggests (Def.'s Br. at 14-15) that the plaintiffs in *Jane Doe 1, et al. v. Morrison & Foerster LLP* were denied permission to proceed under pseudonyms; in that case, all seven of the plaintiffs were, in fact, permitted to proceed pseudonymously, without any objection by Defendant, a global law firm. Amended Minute Entry, No. 3:18-cv-02542-JSC, ECF No. 78.

[10] *See also, e.g.*, *Plaintiffs # 1-21 v. Cty. of Suffolk*, 138 F. Supp. 3d 264 (E.D.N.Y. 2015) (granting pseudonymity to plaintiffs in proposed class action); *Law Sch. Admission Council, Inc.*, 2012 WL 3583023 (same); *Doe v. The New Ritz, Inc.*, No. CV RDB-14-2367, 2016 WL 454940 (D. Md. Feb. 5, 2016) (same); *Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981) (same); *Doe v. Bridgeport Police Dep't*, 198 F.R.D. 325, 328 n.1, 332–34 (D. Conn. 2001) (granting class certification with

Jones Day asserts that potential class members require the identities of proposed class representatives to assess their fitness for the role, but that is both counter to the above-cited cases and smacks of the fox's concern for the henhouse. A class certification motion must, by definition, include all facts required to establish class representative adequacy, typicality, etc. under Fed. R. Civ. P. 23(a). What necessary ingredient does a missing name provide? Just as juries are generally forbidden from acquiring independent knowledge of the witnesses from whom they hear testimony, a strong argument can be made that Courts and class members both should draw their conclusions about proposed class representatives solely from the admissible evidence and arguments supporting and opposing certification. Regardless, at this time, arguments about class certification are premature, even under the accelerated schedule imposed by Local Rule 23-1.

Jones Day's generalized appeals to a public right to know warrant even less pause. For starters, Jones Day has repeatedly taken an opposite position. *See, e.g.,* Vivia Chen, *Jones Day Is Secretive About Why It's So Secretive*, THE CAREERIST, (July 2, 2018), https://thecareerist.typepad.com/thecareerist/2018/07/news.html (quoting Jones Day's briefing papers arguing, "It is essential for the complaint [against Jones Day] to be sealed as soon as possible."); Marcuse Decl. Ex. C, (a Jones Day amicus brief arguing that "Confidentiality is especially crucial in the context of law-firm disputes.").

And *Doe v. Shakur*, 164 F.R.D. 359 (S.D.N.Y. 1996), on which Jones Day principally relies in this regard, is neither apposite nor incisive. In *Shakur*, "plaintiff ha[d] conceded that the press

---

anonymous lead plaintiffs); *Roe v. Operation Rescue*, 123 F.R.D. 500, 501 (E.D. Pa. 1988) (same); *Doe v. United States*, 44 F. App'x 499, 500 (Fed. Cir. 2002) (describing overtime class action as including 30 pseudonymous class representatives); Final Approval of Class Action Settlement, *Beckett v. Aetna, Inc.*, No. 2:17-CV-03864-JS (E.D. Pa. Oct. 18, 2016), ECF. No. 72 (granting certification in $17 million settlement class and appointing 37 class representatives using pseudonyms).

had known her name for some time" as well as "her residence." *Id.* at 362. Not so here. Instead, Jones Day seeks to conscript this Court to require disclosure of just such personal information. The weight of authority more than two decades later now counsels solidly against the court-ordered unmasking Defendant demands. *See De Amigos, LLC*, 2012 WL 13047579, at *2 ("Courts have granted anonymity to protect against disclosure of a wide range of issues involving matters of the utmost intimacy, including sexual assault.") (citing cases).

## CONCLUSION

As Chief Judge Howell noted at the outset of this case, "'If there is no public interest in the disclosure of certain information, 'something, even a modest privacy interest, outweighs nothing every time." (Dkt. 2 at 7 (quoting *See Horowitz v. Peace Corps,* 428 F.3d 271, 278 (D.C. Cir. 2005 (citing *Nat'l Ass'n of Retired Fed. Emps. v. Horner,* 879 F .2d 873, 879 (D.C. Cir. 1989)). Here, as Chief Judge Howell also observed in her ruling, the public interests are "*de minimis* compared to the significant privacy interests of the plaintiffs" (Dkt. 2 at 5) whose identities Jones Day seeks prematurely to unveil.

As counterweight against the Jane Doe plaintiffs' interest in avoiding "debilitating reputational and financial hardship," *Doe II*, 195 F. Supp. 3d at 21–22, Defendant—a billion-dollar global litigation behemoth—offers a procedurally defective motion whose rhetorical urgency decorates an insubstantial core. This Court should accordingly deny Jones Day's Motion in its entirety.

Respectfully Submitted,

Date: May 23, 2019

_/s/ Deborah K. Marcuse_____
Deborah K. Marcuse (D.C. Bar No. 995380)
SANFORD HEISLER SHARP, LLP
111 S. Calvert Street, Ste. 1950
Baltimore, MD 21202
Telephone: (410) 834-7415
Facsimile: (410) 834-7425
dmarcuse@sanfordheisler.com

David W. Sanford (DC Bar No. 457933)
Russell L. Kornblith*
SANFORD HEISLER SHARP, LLP
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
rkornblith@sanfordheisler.com

*pro hac vice application forthcoming

*Attorneys for Plaintiffs, the Proposed Classes,
and the Proposed Collective*