**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NILAB RAHYAR TOLTON *et al.*, on behalf of themselves and all others similarly situated, | ) ) ) | No. 1:19-cv-00945-RDM |
| Plaintiffs, | ) ) | |
| v. | ) ) | JURY TRIAL DEMANDED |
| JONES DAY, a General Partnership, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**JANE DOE 4'S RENEWED MOTION TO PROCEED UNDER PSEUDONYM**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND..................................................... 2

LEGAL STANDARD.......................................................................................................... 5

ARGUMENT ......................................................................................................................... 7

    I.    SIGNIFICANT   PRIVACY   INTERESTS   WARRANT   PROCEEDING   UNDER
    PSEUDONYM AT THIS STAGE .......................................................................... 7

        A.    The Risk of Damage to Jane Doe 4's Career Warrants Use of a Pseudonym ............. 7

        B.    ██████████████████████████████████████████████████
            ███████████ ......................................................................................... 11

        C.    These Privacy Interests Cannot Be Protected By Other Means ................................. 13

    II.    NEITHER PUBLIC INTEREST NOR LEGITIMATE PRIVATE INTERESTS WEIGH
    AGAINST PERMITTING JANE DOE 4 TO PROCEED UNDER PSEUDONYM .............. 14

        A.    The Public Interest in Vindicating Victims' Rights Outweighs the Interest in Knowing
        Plaintiff's Name ........................................................................................................ 14

        B.    Jones Day Has Incurred No Prejudice ...................................................................... 15

        C.    The Public Has Incurred No Prejudice ...................................................................... 19

CONCLUSION..................................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Adoptive Couple v. Baby Girl*, 570 U.S. 637 (2013) ...................................................... 5

*Beckett v. Aetna, Inc.*, No. 2:17-cv-03864 (E.D. Pa. Oct. 18, 2016), Dkt. 72 ............................ 20

*Bird v. Barr*, No. 19-cv-1581, Mem. Order, Dkt. 3  (D.D.C. June 6, 2019)................................. 17

*Dep't of Fair Empl. & Hous. v. L. Sch. Admis. Council, Inc.*, No. C-12-1830 EMC, 2012 WL
    3583023 (N.D. Cal. Aug. 20, 2012)........................................................................ 5

*Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49 (D.D.C. 2019)...................................... 17

*Doe No. 2 v. Kolko*, 242 F.R.D. 193 (E.D.N.Y. 2006) ................................................ 15, 19

*Doe v. Aetna Life Ins. Co.*, No. CV 14-14716-PBS, 2016 WL 7799638 (D. Mass. Apr. 20, 2016)
    ............................................................................................. 11, 12

*Doe v. Bridgeport Police Dep't*, 198 F.R.D. 325 (D. Conn. 2001) ........................................ 20

*Doe v. Cabrera*, 307 F.R.D. 1 (D.D.C. 2014)................................................ 11, 13, 17

*Doe v. Colgate Univ.*, No. 5:15-cv-1069, 2016 WL 1448829 (N.D.N.Y. Apr. 12, 2016)...... 14, 17

*Doe v. De Amigos, LLC*, No. 11-cv-1755, 2012 WL 13047579 (D.D.C. Apr. 30, 2012) ...... 14, 16

*Doe v. Evans*, 202 F.R.D. 173 (E.D. Pa. 2001)............................................................ 15

*Doe v. Hale Hosp.*, 500 F.2d 144 (1st Cir. 1974) ........................................................ 20

*Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545 (D.N.J. 2006) ................................. 12

*Doe v. Lynch*, No. CV 16-253 (BAH), 2016 WL 10844617 (D.D.C. Apr. 28, 2016)................... 7

*Doe v. Morrison & Foerster LLP*, No. 3:18-cv-2542 (N.D. Cal.)......................................... 16, 20

*Doe v. Mundy*, 514 F.2d 1179 (7th Cir. 1975)........................................................... 20

*Doe v. Proskauer Rose LLP*, No. 17-cv-00901, Dkt. 4 (D.D.C. May 17, 2017) ........................... 5

*Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464 (E.D. Pa. 1997)............................... 12

*Doe v. Sessions*, No. 18-cv-0004, 2018 WL 4637014 (D.D.C. Sept. 27, 2018)................... 5, 6, 12

*Doe v. Smith*, 105 F. Supp. 2d 40 (E.D.N.Y. 1999) .......................................................... 7, 12, 17

*Doe v. Solera Capital LLC*, No. 18 CIV. 1769 (ER), 2019 WL 1437520 (S.D.N.Y. Mar. 31, 2019) ............................................................................................................................ 11

*Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981) ....................................................................... 20, 21

*Doe v. The New Ritz, Inc.*, No. 14-cv-2367, 2016 WL 454940 (D. Md. Feb. 5, 2016) (same) .... 20

*Doe v. Trustees of Dartmouth Coll.*, No. 18-CV-040-LM, 2018 WL 2048385  (D.N.H. May 2, 2018) ........................................................................................................................ 7, 14

*Doe v. United States*, 44 F. App'x 499 (Fed. Cir. 2002) ............................................................ 20

*Does I–XXIII v. Adv. Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000) ........................................ 5, 10

*Edwards v. Gordon & Co.*, 94 F.R.D. 584 (D.D.C. 1982) ............................................................ 9

*Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303 (5th Cir. 1972) ............. 8

*Horowitz v. Peace Corps,* 428 F.3d 271 (D.C. Cir. 2005) ........................................................... 21

*J.W. v. D.C.*, 318 F.R.D. 196 (D.D.C. 2016) ......................................................................... 5, 11

*John Doe Co. No. 1 v. Consumer Fin. Prot. Bureau* .............................................................. passim

*LSAC*,  2012 WL 3583023 ........................................................................................................ 20

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ......................................................... 14

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986) .............................................................. 14

*Mgmt. Info. Techs., Inc. v. Alyeska Pipeline Serv., Co.*, 151 F.R.D. 478 (D.D.C. 1993) ............. 10

*Nat'l Ass'n of Retired Fed. Emps. v. Horner,* 879 F .2d 873 (D.C. Cir. 1989) ........................... 21

*National Ass'n of Waterfront Employers v. Chao*, 587 F. Supp. 2d 90 (D.D.C. 2008) .............. 5, 6

*Plaintiffs # 1-21 v. Cty. of Suffolk*, 138 F. Supp. 3d 264 (E.D.N.Y. 2015) .................................. 20

*Qualls v. Rumsfeld*, 228 F.R.D. 8, 12 (D.D.C. 2005) ................................................................... 9

*Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678 (11th Cir. 2001) ............................... 16

*Roe v. Operation Rescue*, 123 F.R.D. 500 (E.D. Pa. 1988) .......................................................... 20

*Roe v. Wade*, 410 U.S. 113 (1973) ...................................................................................... 5, 20

*Simpson v. D.C. Office of Human Rights*, 597 A.2d 392 (D.C. 1991) ......................................... 14

*United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) ........................................................ 6

*Wheeler-Whichard v. Doe*, No. 10-CV-0358S, 2010 WL 3395288 (W.D.N.Y. Aug. 25, 2010) . 13

*Whistleblower 14106-10W v. Comm'r*, 137 T.C. 183 (T.C.  2011) .......................................... 7, 15

**Other Authorities**

Vivia Chen, *Jones Day Is Secretive About Why It's Secretive*, THE CAREERIST (July 2, 2018),

    https://thecareerist.typepad.com /thecareerist/2018/07/news.html ........................................... 21

**Rules**

Federal Rule of Civil Procedure 23(a) ............................................................................................ 20

## **INTRODUCTION**

Plaintiff Jane Doe 4 respectfully asks this Court to allow her to proceed under a pseudonym

for an additional three months ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██

█████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████

Moreover, Jones Day will suffer no prejudice if Jane Doe 4 continues to proceed under a pseudonym. Jones Day has known Jane Doe 4's identity and factual allegations (including witness names) since the fall of 2018. Indeed, it has informed more than 100 of its employees of the plaintiffs' identities and initiated an investigation into their claims at that time. (Marcuse Decl. ¶ 3.) Jones Days is also not precluded from contacting witnesses and speaking to them about her. Jones Day suffers no prejudice, whereas Jane Doe 4 faces multiple risks, ███████████████████ ████████████ Jones Day has not set forth what more it hopes to accomplish by outing Jane Doe 4. █████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████ But the law disavows these motives, and this Court should do so here.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this lawsuit on April 3, 2019 to challenge the operation of Jones Day "as a fraternity in a perversely literal sense." (Dkt. 4, Compl. ¶ 1.) Plaintiffs allege, broadly, that Jones Day perpetrates a work environment hostile to women and discriminates against women in pay and promotions. (*Id.* ¶¶ 3–4.)

Jane Doe 4 witnessed this culture firsthand. "During Jane Doe 4's tenure, a summer

associate event held at a partner's house culminated with a female summer associate being pushed into the swimming pool while wearing a white dress. The male summer associate who pushed her was applauded and high-fived by the Firm's summer associate committee and leadership rather than reprimanded." (*Id.* ¶ 17.) And she saw "in-office drinking is followed by alcohol-fueled dancing, with the Firm's male management gawking at dancing female associates for amusement." (*Id.* ¶ 15.)

Jane Doe 4 suffered as a result of this culture. As the Complaint details, "Early in Jane Doe 4's tenure at Jones Day, she was the victim of a graphic hyper-sexualized blog post written about her by a job applicant. When this post was brought to Jones Day's attention, the Firm punished Jane Doe 4, removing her from all recruiting activities even though she told Partner Q, then the Firm's recruiting partner, and Firm Administrator R that she was comfortable continuing those duties." (*Id.* ¶ 203.) Jane Doe 4 was also referred to as "eye candy." (*Id.* ¶ 204.)

Jones Day's discrimination also had consequences for Jane Doe 4's career advancement and compensation. Even though "Jane Doe 4's litigation teams typically won at trial," and even though "[t]he Firm's clients consistently supported Jane Doe 4's partnership, even seeking her out specifically (in lieu of certain partners) to handle new matters," the Firm denied Jane Doe 4 promotion to partnership and paid her "substantially less than her male peers." (*Id.* ¶¶ 193, 195, 197.) She was judged based on whether she was perceived as "fun" and not by her skills as a lawyer. (*Id.* ¶ 204.)

Jane Doe 4 also experienced firsthand that women who speak up against this male-dominated order suffer retaliation. (*Id.* ¶ 41.) "When Jane Doe 4 questioned the baseless criticism in her reviews, upon information and belief, she was subsequently attacked in a memorandum circulated among partners for lacking 'integrity.'" (*Id.* ¶ 43.) She feared and continues to fear that

such retaliation will only be magnified by bringing this case.

Jane Doe 4 thus moved for leave to file this case under pseudonym (Dkt. 1-1, Mem. Points

Authorities Proceed Under Pseudonym) to ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████ Chief Judge Howell provisionally

granted Jane Doe 4 leave to proceed under pseudonym on this basis. (Dkt. 2, Mem. Op. Order.)

She cited "[t]he public's . . . *de minimis*" interest in the litigants' identity "compared to the

significant privacy interests of the plaintiffs." (*Id.* at 5.) And she specifically credited the Plaintiffs'

"concerns that Jones Day [will] publicly impugn their professional reputations to chill this

litigation and irreparably harm their future career prospects." (*Id.* (quotation omitted).) The Court

further observed:

> Indeed, the plaintiffs allege that Jones Day has already penalized them by
> disparaging them . . . and that their decision to file the instant action only increases
> the risk that the Firm or others may retaliate or harass them further. In addition,
> since the plaintiffs are still establishing their legal careers, they assert that they are
> particularly vulnerable to retaliation that may interfere with their client
> relationships and ruin their ability to progress in their careers, obtain future
> employment, and provide for their family members.

(*Id.* at 6 (citations and quotations omitted).) On April 9, 2019, this Court agreed "that Plaintiffs'

significant interest in maintaining their anonymity at this stage of the litigation is sufficient to

overcome any general presumption in favor of open proceedings." (Min. Order, April 9, 2019.) It

accordingly provisionally granted Jane Doe 4 leave to proceed under pseudonym.

Jones Day subsequently moved to reveal the Plaintiffs, and Plaintiffs responded. (Dkts. 12,

14.) This Court held a hearing on the question on May 30, 2019, and the parties subsequently

agreed, and the Court endorsed, that Jane Doe 4 would submit renewed briefing in support of

proceeding under pseudonym. (Dkt. 19-1; Min. Order, June 12, 2019.) This motion follows: Jane

Doe 4 now moves for continuing leave to proceed under pseudonym—for three months— ████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████

## **LEGAL STANDARD**

District Courts both in and outside of this district grant plaintiffs permission to litigate

pseudonymously, including in employment discrimination cases. *See, e.g.*, *Doe v. Proskauer Rose*

*LLP*, No. 17-cv-00901, Dkt. 4 (D.D.C. May 17, 2017) (granting plaintiff-attorney's motion to

proceed under pseudonym in gender discrimination claims against large law firm); *cf. Does I–*

*XXIII v. Adv. Textile Corp.*, 214 F.3d 1058, 1068–73 (9th Cir. 2000); *Dep't of Fair Empl. & Hous.*

*v. L. Sch. Admis. Council, Inc.*, No. C-12-1830 EMC, 2012 WL 3583023, at *1 (N.D. Cal. Aug.

20, 2012) (granting plaintiff's motion to permit LSAT takers to proceed under fictitious names in

class disability discrimination action). The U.S. Supreme Court, too, has heard cases with

pseudonymous plaintiffs without criticism. *See, e.g.*, *Roe v. Wade*, 410 U.S. 113 (1973); *Adoptive*

*Couple v. Baby Girl*, 570 U.S. 637 (2013).

Courts permit parties to proceed under pseudonym when "the impact of the plaintiff's

anonymity outweighs the public interest in open proceedings and on fairness to the defendant."

*Doe v. Sessions*, No. 18-cv-0004, 2018 WL 4637014, at *2 (D.D.C. Sept. 27, 2018) (quotations

omitted) (permitting individual with mental disabilities to proceed under pseudonym to avoid

emotional trauma). "Although the D.C. Circuit has not yet delineated a formal test . . . courts in

this district generally apply the five-factor test set forth in *National Ass'n of Waterfront Employers*

*v. Chao* when weighing the moving party's and the public's competing interests." *J.W. v. D.C.*,

318 F.R.D. 196, 198 (D.D.C. 2016) (citing *Chao*, 587 F. Supp. 2d 90, 99 (D.D.C. 2008)). The

*Chao* factors are:

(1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature;

(2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;

(3) the ages of the persons whose privacy interests are sought to be protected;

(4) whether the action is against a governmental or private party; and

(5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Sessions*, 2018 WL 4637014, at *2. No single factor is dispositive. *Id.*

The question before the Court boils down to "an assessment of whether the non-speculative privacy interests that the movants have identified outweigh the public's substantial interest in knowing the identities of parties in litigation, along with any legitimate interest that the non-moving parties' interest may have in revealing the identity of the movants." *John Doe Co. No. 1 v. Consumer Fin. Prot. Bureau*, 195 F. Supp. 3d 9, 17 (D.D.C. 2016) (Moss, J.). The *Hubbard* and *Chao* multi-factor tests, which "weigh the same two general concerns," frame the analysis. (Dkt. 2 at 3–4, Mem. Op. Order (citing *United States v. Hubbard*, 650 F.2d 293, 317–21 (D.C. Cir. 1980) and *Chao*, 587 F. Supp. 2d at 99).) Specifically, these concerns are: (1) the strength of the generalized property and privacy interests involved and the possibility of prejudice to those opposing disclosure; and (2) whether the justification for nondisclosure is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature. (*Id.*)

## **ARGUMENT**

I.   **SIGNIFICANT PRIVACY INTERESTS WARRANT PROCEEDING UNDER PSEUDONYM AT THIS STAGE**

### A.   **The Risk of Damage to Jane Doe 4's Career Warrants Use of a Pseudonym**

The imminent risk of reputational and career damage supports pseudonymous treatment. *See Doe v. Lynch*, No. CV 16-253 (BAH), 2016 WL 10844617, at *1-2 (D.D.C. Apr. 28, 2016) (permitting the use of a pseudonym based on argument that public disclosure would result in career and reputational damage); *Doe v. Trustees of Dartmouth Coll.*, No. 18-CV-040-LM, 2018 WL 2048385, at *5–6 (D.N.H. May 2, 2018) ("More significant in this case is plaintiff's argument that public disclosure will subject him to reputational damage and will impair his future educational and career prospects, regardless of the actual outcome of this action. . . . Plaintiff has a reasonable fear that, whatever the outcome of the action, public identification will subject him to severe reputational harm and harassment, and will defeat the very purpose of this litigation."); *cf. John Doe Co. No. 1* , 195 F. Supp. 3d at 16, 24 (allowing plaintiff to proceed under pseudonym to "avoid grave reputational and financial injury," even in the absence of any risk of physical or mental harm).

"[T]he fact that [a plaintiff] is no longer employed by X does not immunize [plaintiff] from the possibility of retaliation." *Whistleblower 14106-10W*, 137 T.C. at 204. Courts recognize "harm inflicted upon plaintiffs by third parties" as warranting pseudonymous treatment. *See Doe v. Smith*, 105 F. Supp. 2d 40, 45 (E.D.N.Y. 1999). For example, in *Doe v. Lynch*, the District Court for the District of Columbia permitted a highly-regarded banking figure to proceed pseudonymously because he said that public disclosure of his identity would attach a "scarlet letter" to his name, could "potentially damage [his] relationships" with entities he worked with, and would "result in the very reputational damage [plaintiff] seek[s] to vindicate." *Lynch*, 2016 WL 10844617, at *1

(internal quotation marks omitted). And the Fifth Circuit has similarly observed that those who bring employment claims may suffer retaliation when they seek references, when they are identified as having cooperated in bringing employment claims against a former employer, and should they ever seek reinstatement: "In such a case the former employee would stand the same risk of retaliation as the present employee." *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303, 306 (5th Cir. 1972).



---

1 *See, e.g.,* Michele Gorman, *Jones Day Partner Tapped to Lead Walmart's Litigation Team*, Law360, (Apr. 25, 2019), https://www.law360.com/articles/1153489/jones-day-partner-tapped-to-lead-walmart-s-litigation-team.

These concerns are not "vague, unsubstantiated fears of retaliatory actions by higher-ups." *Qualls v. Rumsfeld*, 228 F.R.D. 8, 12 (D.D.C. 2005). ██████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████

These facts put Jane Doe 4's declaration on par with the one this Court found dispositive in *John Doe Co. No. 1*. There, this Court credited a declarant's' "substantial experience" in the industry combined with his attestation "that it is 'likely' that investors would 'withdraw their capital access'" resulting in the loss of jobs. 195 F. Supp. 3d at 22.[2] The declarant also described several incidents in which adverse actions were taken because of the disclosure of a corporation's identity. Just so here: ██████████████████████████████████

██████████████████████████████████████████████

██████████████████████████

Jane Doe 4's current state—bringing discrimination claims against one of the world's most powerful law firms—is analogous to that of a whistleblower. And courts regularly keep the identities of whistleblowers anonymous to immunize them from the threat of career altering retaliation. *See Mgmt. Info. Techs., Inc. v. Alyeska Pipeline Serv., Co.*, 151 F.R.D. 478, 481

---

[2] Courts often seal sensitive corporate financial documents. *See,e.g., Edwards v. Gordon & Co.*, 94 F.R.D. 584, 587 (D.D.C. 1982). ████████████████████████

████████████████████████████

(D.D.C. 1993) ("The Court is unwilling to subject non-parties who work for Alyeska or its owner companies to the possible retaliation that frequently results when a whistleblower is identified.");

*Whistleblower 14106-10W*, 137 T.C. at 203–04 ("Revealing petitioner's status as a tax whistleblower in these circumstances would likely cause severe damage to petitioner's standing in the professional community that provides petitioner's customary source of livelihood and could well jeopardize petitioner's employment."). The damage caused by outing those who raise their voices against systemic violations of the law is now well known: "[A] six-year study on whistleblowers by Myron Peretz Glazer and Penina Migdal Glazer details the full spectrum of management retaliation against ethical resistors who speak out against company or government policy and the long-term adverse consequences such employees can face." *Mgmt. Info. Techs., Inc.* 151 F.R.D. at 481 (detailing other research on retaliation against whistleblowers).[3]

In sum, this Court's observations in *John Doe Company No. 1* hold true here:

> The possibility of prejudice to Plaintiffs . . . is significant. . . . The precise magnitude of the harm Plaintiffs face is difficult to determine on this record, and it is of course possible that Plaintiffs overstate the severity of the injury that disclosure of their identities would inflict. . . . [But] [t]his unrebutted, commonsense showing favors keeping the case under seal.

---

[3] The Ninth Circuit has similarly characterized the concerns of being a government informant:

> [W]e fail to see, how disguising plaintiffs' identities will obstruct public scrutiny of the important issues in this case. In FLSA actions brought by the Secretary of Labor, the "informant's privilege" may be used to conceal names of employees who precipitated the suit by filing complaints with the Department of Labor. *See Usery v. Ritter,* 547 F.2d 528, 531 (10th Cir. 1977) (holding that "informants privilege" protects names of complaining workers from discovery); *Brennan v. Engineered Products, Inc.,* 506 F.2d 299, 303 (8th Cir. 1974) (same); *United States v. Hemphill,* 369 F.2d 539, 542 (4th Cir. 1966) (same); *Wirtz [v. Cont'l Fin. & Loan Co. of W. End*], 326 F.2d [561,] 564 [(5th Cir. 1964)] (same); *Mitchell [v. Roma*], 265 F.2d [633,] 637 [(3d Cir. 1959)] (same). Plaintiffs simply attempt to accomplish the same result in a suit brought under FLSA's private cause of action.

*Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1072–73 (9th Cir. 2000) (footnotes omitted).

*[Redacted text] v. Consumer Fin. Prot. Bureau*, No. CV 15-1177(RDM), 2015 WL 6317031, at *4 (D.D.C. Oct. 16, 2015). The risks are similar here.



Courts recognize that imminent mental and physical harm also supports pseudonymous treatment. *See Doe v. Cabrera*, 307 F.R.D. 1, 6–7 (D.D.C. 2014) ("Out of grave concern that the Court could exacerbate any psychological issues the plaintiff is currently experiencing, the Court finds that this factor weighs in favor of anonymity."); *J.W. v. District of Columbia*, 318 F.R.D. 196, 200 (D.D.C. 2016) ("Courts generally find a risk of retaliatory harm in cases where the moving party provides evidence that psychological damage . . . [is] anticipated if a party's identity is disclosed."); *Doe v. Solera Capital LLC*, No. 18 CIV. 1769 (ER), 2019 WL 1437520, at *4 (S.D.N.Y. Mar. 31, 2019) ("The risk of psychological injury stemming from identification is a cognizable harm that can serve as a legitimate basis for proceeding anonymously."); *Doe v. Aetna Life Ins. Co.*, No. CV 14-14716-PBS, 2016 WL 7799638, at *4 (D. Mass. Apr. 20, 2016) ("Plaintiff's submissions establish that these are not the only potential harms; she has shown that loss of the pseudonym will severely impact her physical and mental health to the point where her

symptoms will continue to worsen and may become untreatable. This is a special circumstance where Plaintiff's unique vulnerability justifies permitting her to proceed anonymously."); *cf. Doe v. Smith*, 105 F. Supp. 2d at 43–45 (holding that harm plaintiff could inflict on herself by virtue of public unmasking warranted pseudonymous treatment). Indeed, a plaintiff's concern "that public identification here will cause him to 'once again be traumatized by the knowledge that his information will remain forever public'" itself supports use of a pseudonym. *Sessions*, 2018 WL 4637014, at *4.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ "a special circumstance where [Jane Doe 4's] unique vulnerability justifies permitting her to proceed anonymously." *See Aetna Life Ins. Co.*, 2016 WL 7799638, at *4.

Stigmatization of health challenges remains a concern in the legal profession. *See, e.g., Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 550 (D.N.J. 2006) ("There is also a risk of stigmatization in Plaintiff's professional life as a lawyer. Most of Plaintiff's coworkers and customers are attorneys who may arguably follow this case and there is a theoretical possibility that their awareness of his illness will result in damage to his professional reputation."); *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 468 (E.D. Pa. 1997) ("There is a strong possibility that some of these attorneys will follow this case in legal publications with the result being that plaintiff's professional reputation will be permanently damaged."); *Law Sch. Admission Council, Inc.*, 2012 WL 3583023, at *4 (finding anonymous plaintiffs, would-be attorneys, showed need for anonymity where they feared social stigma resulting from public revelation of

disabilities). 

 *See Cabrera*, 307 F.R.D. at 7. This burden is far heavier than an employment discrimination plaintiff should be made to bear as a price of vindicating her legal rights.

### C.     These Privacy Interests Cannot Be Protected By Other Means

A confidentiality order governing discovery is no simple solution: Professional stigma, particularly for attorneys, often results from publicizing physical difficulties and pursuing legal claims against one's former employer. *See Supra Part* I.B. Any protective order would fail to address these fundamental concerns or the fact that confidential information has already been publicly filed. *Wheeler-Whichard v. Doe*, did not involve such stakes. No. 10-CV-0358S, 2010 WL 3395288, at *6 (W.D.N.Y. Aug. 25, 2010) (recognizing that "in certain circumstances the nature of the claims or medical issues may be highly sensitive and personal or may expose a plaintiff to harm or ridicule if disclosed").

Chief Judge Howell recognized that this case implicates the Jane Doe 4's "highly sensitive and personal information, including information related to medical and psychological symptoms . . . disclosure of which would be embarrassing to them and potentially damaging to their reputations and careers as successful attorneys." (Dkt. 2, Mem. Op. Order. at 5 (citations and internal quotation marks omitted).) This Court agreed "that Plaintiffs' significant interest in

maintaining their anonymity at this stage of the litigation is sufficient to overcome any general presumption in favor of open proceedings." (Min. Order, April 9, 2019.) Jones Day has not shown this to be false.

## II.   NEITHER PUBLIC INTEREST NOR LEGITIMATE PRIVATE INTERESTS WEIGH AGAINST PERMITTING JANE DOE 4 TO PROCEED UNDER PSEUDONYM

### A. The Public Interest in Vindicating Victims' Rights Outweighs the Interest in Knowing Plaintiff's Name

"The language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered . . . stratified job environments to the disadvantage of minority [and female] citizens." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973). Similarly, the District of Columbia Human Rights Act was passed to ensure "[t]he right to equal opportunity without discrimination based on race or other such invidious ground." *Simpson v. D.C. Office of Human Rights*, 597 A.2d 392, 398 (D.C. 1991) (quotations omitted). These anti-discrimination statutes must be enforced in a manner "calculated to encourage victims of harassment to come forward." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986).

Revealing the Jane Doe 4's identity will have the opposite effect. It will deter ***other similarly situated litigants*** from litigating their claims. "There is authority for the proposition that precluding pseudonymous litigation . . . may have a chilling effect ***on future plaintiffs*** . . . ." *Trustees of Dartmouth Coll.*, 2018 WL 2048385, at *6 (emphasis added); *Doe v. Colgate Univ.*, No. 5:15-cv-1069, 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) ("The Court is . . . mindful of the potential chilling effect that forcing Plaintiff to reveal his identity would have on future plaintiffs facing similar situations."); *see also Doe v. De Amigos, LLC*, No. 11-cv-1755, 2012 WL 13047579, at *2 (D.D.C. Apr. 30, 2012) (explaining that the public has an interest in protecting

the identities of plaintiff-victims so that other victims will feel more comfortable suing to vindicate their rights); *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195–96 (E.D.N.Y. 2006) (same); *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (same); *c.f. Whistleblower 14106-10W*, 137 T.C. at 206 ("The likely upshot would be a chilling effect on some claimants who have a compelling need to proceed anonymously. This result would be at odds with the ostensible legislative purpose of encouraging tax whistleblower claims and promoting public confidence."). Jones Day offers no reason to believe otherwise.

### B.  Jones Day Has Incurred No Prejudice

The use of a pseudonym does not prejudice Jones Day. "Jones Day knows the identities of the Jane Does." (Dkt. 12, Def.'s Br. 13.) And Jones Day has already shared these identities with at least 100 people within the Firm as part of its investigation of Plaintiffs' claims months before this litigation was filed. (Dkt. 14-1, Marcuse Decl. ¶ 3.) Moreover, Jones Day has not been hampered in its desire to publicly comment on the claims: It "posted on its website and social media pages [what it claims is] actual data about the success of women lawyers at Jones Day, and made clear that the Firm will litigate this case in court, not in the media." (Dkt. 12, Def.'s Br. 4.) It is thus unclear what more Jones Day wishes to do or say, nor how plaintiff pseudonymity ties its hands in this regard.

Jones Day similarly leaves it to conjecture what prejudice, exactly, it has incurred to date. Jones Day suggests that "clients, potential clients, lateral recruits, and law students" should be able to "fully evaluat[e] the Does' allegations and credibility." (*Id.* 13.) But Jones Day does not say why this evaluation is important nor why any such evaluation can only take place by attaching the Jane Doe 4's name to the pleadings.

No form of self-defense is actually denied to defendant by Jane Doe 4's pseudonymity, whether in litigation or in the public square. Pseudonymity does not impede a defendant from

mounting a paragraph-by-paragraph attack on plaintiffs' factual allegations, as the vigorous defense in the ongoing case of *Doe v. Morrison & Foerster LLP*, cited by Jones Day, makes abundantly clear. *See Doe v. Morrison & Foerster LLP*, No. 3:18-cv-2542 (N.D. Cal.) (Dkt. 43 (Defendant's Answer); Dkt. 46 (Defendant's Motion for Judgment on the Pleadings); Dkt. 68 (Defendant's Motion for Sanctions)). Indeed, Jones Day has admitted as much: "To be sure, Jones Day's defense of this case in court will involve rebutting the allegations that the Jane Does were star associates who failed to advance only due to discrimination." (Dkt. 12, Def's Br. 12.)

Jones Day's argument that it cannot investigate Jane Doe 4's claims because of her pseudonymity similarly rings hollow. To the extent that Jones Day seeks to pursue legitimate informal discovery, it can obtain such information by merely asking about it.[4] Courts routinely reject such arguments by defendants where, as here, the defendant is aware of the plaintiffs' identities. *See Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 687 (11th Cir. 2001) ("The only justification the defendants offer for stripping Roe of her privacy is the argument that they will not be able to adequately conduct discovery without knowing her true identity. However, that argument is eviscerated by Roe's offer to disclose her name to the defendants for discovery purposes on condition that they do not disclose it to the general public. That is a reasonable way to reconcile the competing interests."); *De Amigos*, 2012 WL 13047579, at *3 ("Defendant argues that plaintiff's use of a pseudonym would cause unfairness because defendant would be unable to

---

[4] The Court has already made clear that Defendants may pursue informal investigations. (Min. Order, Dkt. 17, May 30, 2019 Tr. 28:18–24.) *Cf. Kolko*, 242 F.R.D. at 198–99 (granting motion for a protective order that facilitated the defendant's ability to conduct discovery with a Jane Doe plaintiff); *Cabrera*, 307 F.R.D. at 8 ("Moreover, the plaintiff has not sought to impose any limitation on the defendant's ability to conduct whatever discovery he deems necessary (given the appropriate protective orders governing the use and dissemination of identifying information)— the plaintiff seeks only to protect against public disclosure of her name and address." (alterations and citation omitted)).

adequately conduct third party discovery if plaintiff's identity could not be revealed. The Court finds any unfairness to defendant would be minimal. Plaintiff has already disclosed her identity to defendant." (citation omitted)); *see also Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49, 67 (D.D.C. 2019) (rejecting defendant's argument that it would be prejudiced because it was "limited in using [the p]laintiffs' actual names in third-party subpoenas, depositions, and interviews" and holding: "[T]his is nothing more than conjecture at best." (quoting *Doe v. Cabrera*, 307 F.R.D. 1, 8 (D.D.C. 2014))); *Colgate Univ.*, 2016 WL 1448829, at *3 ("Defendants are aware of Plaintiff's true identity and will have an uninhibited opportunity to litigate this matter regardless of whether Plaintiff's identity is disclosed publicly."); *Smith*, 105 F. Supp. 2d at 45 ("[A]llowing plaintiff to proceed anonymously . . . will not hinder defendant's ability to pursue his legal defense in any way. In discovery, the defendant retains the right to depose any and all witnesses and to obtain any and all documents available to him under the Federal Rules of Civil Procedure. In conducting such discovery, the defendant may ask any and all questions necessary to his defense. Moreover, at this time, apart from allowing the plaintiff to proceed under a pseudonym, the court has not imposed any limitation on the defendant's rights or the public's access to any trial that might result from this case.").[5]

---

[5] Indeed, a court in this District recently explained that a plaintiff's willingness to disclose his or her identity to the defendant counsels in favor allow the plaintiff to proceed under a pseudonym. *Bird v. Barr*, No. 19-cv-1581, Mem. Order, Dkt. 3 at 9  (D.D.C. June 6, 2019) ("[I]n connection with anti-discrimination complaints, the plaintiffs have already previously disclosed their identities and addresses so the defendant already has full knowledge of these facts. Generally, [this] factor[] would weigh in favor of allowing the plaintiffs to file under pseudonyms, because anonymity would not compromise the defendant's ability to defend the action." (quotation omitted)). Just so here—Jones Day has known Jane Doe 4's identity for months and is in no way limited in its ability to investigate or defend her claims. Althought the *Bird* court denied the plaintiffs pseudonym status, it did so without prejudice and primarily because of "inconsistencies between the two submitted versions of the complaint, which ma[de] it difficult if not impossible to ascertain which plaintiff wants to use which pseudonym and why." *Id.* at 5. The court acknowledged that with a proper factual proffer the plaintiffs may prevail as, "[n]on-speculative

To the extent that Jones Day believes that pseudonyms are impairing its ability to investigate Jane Doe 4's claims, less invasive alternatives than unmasking Jane Doe 4 are available. Jones Day is even aware of them: In a January 2019 *amicus curiae* brief to the California Supreme Court, Jones Day argued that a California appellate court erred when it "invalidated [a] confidentiality clause in its entirety because it thought the clause—by prohibiting the plaintiff from informally contact[ing] or interview[ing] any witnesses outside the formal discovery process— was unreasonably onerous in some applications." (Dkt. 14-4, Marcuse Decl. Ex. C at 3 (quotation omitted).) Jones Day argued that the court should have instead "limit[ed] the confidentiality clause to allow a plaintiff to conduct informal discovery." (*Id.* (quotation omitted).) Just so here: Plaintiffs' counsel remains ready, willing, and able to facilitate Jones Day's informal investigation while Plaintiffs remain under pseudonym. But denying anonymity entirely based on Jones Day's counsel's assertion that it cannot properly investigate Jane Doe 4's allegations (Dkt. 15-1, Chase Decl. ¶ 5) "defies precedent and common sense." (Dkt. 14-4, Marcuse Decl. Ex. C at 3.)[6] Indeed, this suggestion now warrants even less pause, because this Court has ordered that Jones Day may conduct informal investigation of Plaintiffs' claims, including by speaking with witnesses outside the Firm. (Min. Order, May 30, 2019; Dkt. 17, May 30, 2019 Tr. 28:18–24.) And Jones Day has

---

arguments supporting the need for privacy may exist" and, with further elaboration, "plaintiffs' privacy interests in preventing economic or reputational harm" may be "sufficient to outweigh the public's interest in know the identities of the litigants." *Id.* at 8. It thus instructed the plaintiffs to file a renewed, more detailed motion providing "for each plaintiff, (1) her real name, (2) her chosen pseudonym, and (3) and a description of the circumstances *specific to that plaintiff* demonstrating that the use of a pseudonym is warranted a this stage of the litigation." *Id.* at 5. Here, Jane Doe 4 has provided the court precisely that information. Unlike the plaintiffs in *Bird*, there is no ambiguity as to Jane Doe 4's identity, and she has submitted a detailed declaration setting forth the facts, specific to her particular circumstances, that justify the use of a pseudonym.

[6] This was the lone putative harm to its investigation that Jones Day identified when given the chance. (Dkt. 15-1, Chase Decl. ¶ 5.)

represented to Plaintiffs' counsel that it has largely completed drafting an answer to the operative Complaint. (Marcuse Decl. ¶ 6.)

More broadly, any suggestion that "Secrecy Is Prejudicial to Jones Day" is astonishing. (*See* Dkt. 12, Defs' Mot. 13.) Jones Day has staked its reputation on a well-publicized commitment to secrecy. Its website extolls that "[w]hat is sometimes critically referred to by those outside Jones Day as a 'lack of transparency' is almost universally viewed inside Jones Day as one of its great strengths." *Confidentiality*, Jones Day, https://www.jonesday.com/principlesandvalues/ compensation/confidentiality/ (last visited June 17, 2019). When a Jones Day partner filed suit against the Firm, Jones Day demanded "that 'the complaint . . . be sealed as soon as possible.'" Vivia Chen, *Jones Day Is Secretive About Why It's Secretive*, THE CAREERIST (July 2, 2018), https://thecareerist.typepad.com/thecareerist/2018/07/news.html (quotation omitted) ("But what seems to set Jones Day apart from most firms in this kind of suit is that it wants all documents in the case to be sealed. Locked forever in a black box."). Its newfound interest in transparency thus rings hollow.

Unmasking Jane Doe 4 out of solicitude toward speculative future harm to Jones Day— rather than imminent harm to Jane Doe 4—inverts the balance of equities. *See John Doe Co. No. 1*, 195 F. Supp. 3d at 24 (granting pseudonym status "[o]n the present record" to avoid "premature disclosure," but acknowledging that the balance of the equities may "change over time" and that, if circumstances were to change, "the need for confidential treatment would likely recede"); *Kolko*, 242 F.R.D. at 198 (granting pseudonym status but reserving the court's right to reconsider should the case advance to trial).

### C.  The Public Has Incurred No Prejudice

The public's interest in this litigation is satisfied. Five plaintiffs will proceed under their given names. The public's interest in the identity of Jane Doe 4 is thus *de minimis*. *See Law Sch.*

*Admis. Council, Inc.*, 2012 WL 3583023, at *4 (determining that when 3 of 17 complainants used pseudonyms, the remaining publicly identified plaintiffs "substantially satisfied the public's interest in open judicial proceedings").

Nor is immediate disclosure of *each* class representative's identity the *sine qua non* of a successful motion by Plaintiffs for class certification down the line. Courts have repeatedly allowed class representatives to proceed under pseudonyms in a variety of contexts.[7] *See Doe v. Hale Hosp.*, 500 F.2d 144 (1st Cir. 1974) (affirming a district court decision that granted class action status and permitted all seven class representatives to use pseudonyms); *Doe v. Mundy*, 514 F.2d 1179, 1182 (7th Cir. 1975) (dismissing as "without merit," Rule 23(a) adequacy and typicality challenges to two class representatives, one of whom used a pseudonym: "[P]laintiff's anonymity does not weaken her ability to represent the class: an anonymous plaintiff, Jane Roe, maintained a class action in *Roe v. Wade* . . . ." (citation omitted)).[8]

Jones Day asserts that potential class members require the identities of proposed class representatives to assess their fitness for the role, but that is both counter to the above-cited cases and smacks of the fox's concern for the henhouse. A class certification motion must, by definition,

---

[7] In *Jane Doe 1, et al. v. Morrison & Foerster LLP*, all seven of the plaintiffs were, in fact, permitted to proceed pseudonymously, without any objection by Defendant, a global law firm. Am. Min. Entry, No. 3:18-cv-02542, Dkt. 78.

[8] *See also, e.g.*, *Plaintiffs # 1-21 v. Cty. of Suffolk*, 138 F. Supp. 3d 264 (E.D.N.Y. 2015) (granting pseudonymity to plaintiffs in proposed class action); *Law Sch. Admission Council, Inc.*, 2012 WL 3583023 (same); *Doe v. The New Ritz, Inc.*, No. 14-cv-2367, 2016 WL 454940 (D. Md. Feb. 5, 2016) (same); *Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981) (same); *Doe v. Bridgeport Police Dep't*, 198 F.R.D. 325, 328 n.1, 332–34 (D. Conn. 2001) (granting class certification with anonymous lead plaintiffs); *Roe v. Operation Rescue*, 123 F.R.D. 500, 501 (E.D. Pa. 1988) (same); *Doe v. United States*, 44 F. App'x 499, 500 (Fed. Cir. 2002) (describing overtime class action as including 30 pseudonymous class representatives); Final Approval of Class Action Settlement, *Beckett v. Aetna, Inc.*, No. 2:17-cv-03864 (E.D. Pa. Oct. 18, 2016), Dkt. 72 (granting certification in $17 million settlement class and appointing 37 class representatives using pseudonyms).

include all facts required to establish class representative adequacy, typicality, etc. under Federal Rule of Civil Procedure 23(a). What necessary ingredient does a missing name provide? Just as juries are generally forbidden from acquiring independent knowledge of the witnesses from whom they hear testimony, a strong argument can be made that Courts and class members both should draw their conclusions about proposed class representatives solely from the admissible evidence and arguments supporting and opposing certification. Regardless, at this time, arguments about class certification are premature.

Any generalized appeal to a public right to know warrant even less pause. "Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). And Jones Day has repeatedly taken an opposite position. *See, e.g.,* Vivia Chen, *Jones Day Is Secretive About Why It's Secretive*, THE CAREERIST (July 2, 2018), https://thecareerist.typepad.com /thecareerist/2018/07/news.html (quoting Jones Day's briefing papers arguing, "It is essential for the complaint [against Jones Day] to be sealed as soon as possible."); Dkt. 14-1, Marcuse Decl. Ex. C at 3, (a Jones Day amicus brief arguing that "Confidentiality is especially crucial in the context of law-firm disputes").

## **CONCLUSION**

████████████████████████████████████████████████████████

████████████████████████████████████████ As Chief Judge Howell noted at the outset of this case, "'If there is no public interest in the disclosure of certain information, 'something, even a modest privacy interest, outweighs nothing every time." (Dkt. 2, Mem. Op. Order 7 (quoting *Horowitz v. Peace Corps,* 428 F.3d 271, 278 (D.C. Cir. 2005)) (citing *Nat'l Ass'n of Retired Fed. Emps. v. Horner,* 879 F .2d 873, 879 (D.C. Cir. 1989)).) Here, as Chief

Judge Howell also observed in her ruling, the public interests are "*de minimis* compared to the significant privacy interests of the plaintiffs" (*id.* at 5) whose identity Jones Day seeks prematurely to unveil.

Respectfully Submitted,

Date: June 17, 2019

_/s/ Deborah K. Marcuse_

Deborah K. Marcuse (D.C. Bar No. 995380)
SANFORD HEISLER SHARP, LLP
111 S. Calvert Street, Ste. 1950
Baltimore, MD 21202
Telephone: (410) 834-7415
Facsimile: (410) 834-7425
dmarcuse@sanfordheisler.com

David W. Sanford (DC Bar No. 457933)
Russell L. Kornblith*
SANFORD HEISLER SHARP, LLP
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
rkornblith@sanfordheisler.com

*pro hac vice application forthcoming

*Attorneys for Plaintiffs, the Proposed Classes,
and the Proposed Collective*