**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **NILAB RAHYAR TOLTON *et al.*, on behalf of themselves and all others similarly situated,** | ) | **No. 1:19-cv-00945-RDM** |
| **Plaintiffs,** | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| **JONES DAY, a General Partnership,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF JANE DOE 4'S**
**RENEWED MOTION TO PROCEED UNDER PSEUDONYM**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

ARGUMENT ........ 3

I. JANE DOE 4'S PRIVACY CONCERNS WARRANT PSEUDONYMOUS TREATMENT ........ 3

A. Potential Harm to Jane Doe 4's Professional Reputation Warrants Use of a Pseudonym ........ 3

B. [redacted] ........ 5

[redacted] ........ 7

[redacted] ........ 7

[redacted] ........ 9

II. THE PUBLIC INTEREST IN EXPOSING JANE DOE 4'S NAME IS DE MINIMIS ........ 11

A. Jones Day Is Suffering No Ascertainable Prejudice ........ 11

B. The Extension Sought Is Limited and the Public's Interest in Knowing Jane Doe 4's Identity in August and September Is Virtually Nil ........ 12

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Johnson*,
795 F.3d 34 (D.C. Cir. 2015) ........ 6

*Bryant v. District of Columbia*,
102 A.3d 264 (D.C. 2014). ........ 6

*Cobell v. Norton*,
391 F.3d 251 (D.C. Cir. 2004) ........ 7

*Core VCT PLC v. Hensley*,
89 F. Supp. 3d 104 (D.D.C. 2015) ........ 7

*Desert Palace, Inc. v. Costa*,
539 U.S. 90 (2003) ........ 6

*Doe No. 2 v. Kolko*,
242 F.R.D. 193 (E.D.N.Y. 2006) ........ 13

*Doe v. Aetna Life Ins. Co.*,
No. 14-cv-1471, 2016 WL 7799638 (D. Mass. Apr. 20, 2016) ........ 10

*Doe v. Cabrera*,
307 F.R.D. 1 (D.D.C. 2014) ........ 4, 10

*Doe v. Colgate Univ.*,
No. 5:15-cv-1069, 2016 WL 1448829 (N.D.N.Y. Apr. 12, 2016) ........ 13

*Doe v. De Amigos, LLC*,
No. 11-cv-1755, 2012 WL 13047579 (D.D.C. Apr. 30, 2012) ........ 11, 13

*Doe v. Evans*,
202 F.R.D. 173 (E.D. Pa. 2001) ........ 13

*Doe v. Frank*,
951 F.2d 320 (11th Cir. 1992) ........ 4

*Doe v. Hartford Life & Accident Ins. Co.*,
237 F.R.D. 545 (D.N.J. 2006) ........ 4

*Doe v. Lynch*,
No. 16-cv-253, 2016 WL 10844617 (D.D.C. Apr. 28, 2016) ........ 3, 4, 13

*Doe v. Provident Life & Accident Ins. Co.*,
176 F.R.D. 464 (E.D. Pa. 1997) ........ 5

*Doe v. Sessions*,
No. 18-cv-0004, 2018 WL 4637014 (D.D.C. Sept. 27, 2018) ........ 2, 4

*Doe v. Solera Capital LLC*,
No. 18-cv-1769, 2019 WL 1437520 (S.D.N.Y. Mar. 31, 2019) ........ 10

*Doe v. Trustees of Dartmouth Coll.*,

No. 18-cv-040, 2018 WL 2048385 (D.N.H. May 2, 2018) ........................................ 3, 4, 12, 13

*Hoffmann-La Roche Inc. v. Sperling*,
493 U.S. 165 (1989)........................................................................................................ 14

*J.W. v. District of Columbia*,
318 F.R.D. 196 (D.D.C. 2016)......................................................................................... 10

*John Doe Co. No. 1 v. Consumer Fin. Prot. Bureau*,
195 F. Supp. 3d 9 (D.D.C. 2016)........................................................................... 3, 8, 13

*Jones v. Bernanke*,
557 F.3d 670 (D.C. Cir. 2009)........................................................................................... 6

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)........................................................................................................ 14

*Meritor Sav. Bank, FSB v. Vinson*,
477 U.S. 57 (1986).......................................................................................................... 14

*Mgmt. Info. Techs., Inc. v. Alyeska Pipeline Serv., Co.*,
151 F.R.D. 478 (D.D.C. 1993)........................................................................................... 9

*Montes v. Janitorial Partners, Inc.*,
859 F.3d 1079 (D.C. Cir. 2017).......................................................................................... 7

*Nat'l Ass'n of Waterfront Emp'rs v. Chao*,
587 F. Supp. 2d 90 (D.D.C. 2008)...................................................................................... 4

*Roe v. Aware Woman Ctr. for Choice, Inc.*,
253 F.3d 678 (11th Cir. 2001) ......................................................................................... 11

*Rogers v. Mo. Pac. R. Co.*,
352 U.S. 500 (1957)........................................................................................................... 6

*S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*,
599 F.2d 707 (5th Cir. 1979) .............................................................................................. 4

*Simpson v. D.C. Office of Human Rights*,
597 A.2d 392 (D.C. 1991) ............................................................................................... 14

*Tridico v. District of Columbia*,
130 F. Supp. 3d 17 (D.D.C. 2015)...................................................................................... 5

*Whistleblower 14106-10W v. Comm'r*,
137 T.C. 183 (2011).................................................................................................... 9, 13

**Statutes**

29 U.S.C. § 216(b) .......................................................................................................... 14

**Other Authorities**

*Confidentiality*, Jones Day,
https://www.jonesday.com/principlesandvalues/compensation/confidentiality/
(last visited July 2, 2019)................................................................................................ 12

Vivia Chen, *Jones Day Is Secretive About Why It's Secretive*, THE CAREERIST (July 2, 2018),

https://thecareerist.typepad.com/thecareerist/ 2018/07/news.html ........................................... 12

## INTRODUCTION

Jones Day has conceded that Jane Doe 4 should receive one additional month of pseudonymous treatment—[redacted]. (Dkt. 30-1, Br. Op. 14.) Accordingly, this dispute now centers on a simple question: Should Jane Doe 4 be permitted to remain under pseudonym until October 1—instead of August 1, as Jones Day proposes—[redacted]. The prejudice to Jones Day is negligible and the assistance to Jane Doe 4 would be substantial. The answer is yes.

[redacted]

No legitimate interests will be harmed by continuing the pseudonymous treatment of Jane Doe 4 beyond August 1 until October 1. Jones Day offers no tangible way in which its investigation has been impaired; it merely speculates that if Jane Doe 4's identity is revealed, then unknown

witnesses will come forward with information helpful to Jones Day. This speculation presumes the existence of witnesses about whom Jones Day does not know, which is highly unlikely. Jones Day doubtless has meticulous records of everyone with whom Jane Doe 4 worked throughout her decade-plus tenure at the Firm. It does not say that it has not contacted these people nor that it cannot. And both Plaintiff and this Court have already agreed that the Firm may engage in such contact. So it is difficult to see how Jones Day's investigation has actually been impaired or even could be.

Because the remaining dispute is limited—just two months more than what Defendant has already accepted [REDACTED]—Plaintiff sought to split the difference and proposed a two-month extension of the pseudonym, until September 1. Jones Day, however, rejected this compromise. Still, Jones Day offers no explanation as to what incremental prejudice it expects to suffer over the intervening two months—much less the compromise of one proposed by Plaintiff. [REDACTED] The balance of equities tilts in favor of the Motion.[1]

[1] Courts permit parties to proceed under pseudonym when "the impact of the plaintiff's anonymity' outweighs the public interest in open proceedings and on fairness to the defendant." *Doe v. Sessions*, No. 18-cv-0004, 2018 WL 4637014, at *2 (D.D.C. Sept. 27, 2018) (quotations omitted) (permitting individual to proceed under pseudonym to avoid emotional trauma).

## ARGUMENT

### I. JANE DOE 4'S PRIVACY CONCERNS WARRANT PSEUDONYMOUS TREATMENT

#### A. Potential Harm to Jane Doe 4's Professional Reputation Warrants Use of a Pseudonym

Courts permit parties to proceed under pseudonym in order to forestall damage to the party's professional career while the party vindicates a wrongful accusation.[2] [redacted]

[2] *See Doe v. Lynch*, No. 16-cv-253, 2016 WL 10844617, at *1–2 (D.D.C. Apr. 28, 2016) (permitting the use of a pseudonym based on argument that public disclosure would result in career and reputational damage); *Doe v. Trustees of Dartmouth Coll.*, No. 18-cv-040, 2018 WL 2048385, at *5–6 (D.N.H. May 2, 2018) ("More significant in this case is plaintiff's argument that public disclosure will subject him to reputational damage and will impair his future educational and career prospects, regardless of the actual outcome of this action. . . . Plaintiff has a reasonable fear that, whatever the outcome of the action, public identification will subject him to severe reputational harm and harassment, and will defeat the very purpose of this litigation."); *cf. John Doe Co. No. 1 v. Consumer Fin. Prot. Bureau*, 195 F. Supp. 3d 9, 16 (D.D.C. 2016) (Moss, J.) (allowing plaintiff to proceed under pseudonym to "avoid grave reputational and financial injury," even in the absence of any risk of physical or mental harm).

[redacted]

As Jones Day acknowledges, courts are increasingly solicitous of requests for anonymity "where the injury litigated against would be incurred as a result of the disclosure" of the plaintiff's name. *Nat'l Ass'n of Waterfront Emp'rs v. Chao*, 587 F. Supp. 2d 90, 99–100 (D.D.C. 2008) (quoting *Doe v. Frank*, 951 F.2d 320, 322–23 (11th Cir. 1992)).[3] This logic applies with full force to Jane Doe 4: Like the plaintiffs in *Doe v. Lynch*, No. 16-cv-253, 2016 WL 10844617, at *1–2 (D.D.C. Apr. 28, 2016) and *Doe v. Trustees of Dartmouth College*, No. 18-cv-040, 2018 WL 2048385, at *5–6 (D.N.H. May 2, 2018), Jane Doe 4 brought this litigation, in part, to vindicate a reputational injury without being associated with the very injury inflicted. But prematurely unmasking her would do just this.

These risks of professional stigmatization are magnified here, because Plaintiff is an attorney. Courts recognize that attorneys are more likely than the average person to follow cases closely. *See, e.g.*, *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 550 (D.N.J. 2006) ("There is also a risk of stigmatization in Plaintiff's professional life as a lawyer. Most of Plaintiff's coworkers and customers are attorneys who may arguably follow this case and there is a theoretical possibility that their awareness of his illness will result in damage to his professional reputation.");

[3] Jones Day's reliance on *Southern Methodist University Association of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979), to suggest that courts refuse to recognize the predicament of female attorneys who advocate for equal treatment within the legal establishment, is misplaced. This case dates to 1979 and reflects outdated concerns of its time. The *Southern Methodist University* court accorded great weight to stigma associated with using birth control and homosexuality, but disregarded stigma associated with mental illness and sexual assault. *Compare id.* at 712713 (focusing on the stigma that would follow revelations that plaintiffs used birth control or were homosexual and not mentioning the stigma associated with mental illness or the privacy concerns of sexual assault survivors), *with Doe v. Sessions*, 2018 WL 4637014, at *4 (allowing a plaintiff to proceed under a pseudonym to prevent discovery of his mental illness and noting that "[c]ourts in other jurisdictions have found a 'substantial public interest' in 'preventing the stigmatization of litigants with mental illnesses' weighing in favor of pseudonymous filing" (quotations omitted)), *and Doe v. Cabrera*, 307 F.R.D. 1, 5 (D.D.C. 2014) (allowing a plaintiff to proceed under pseudonym when she experienced a sexual assault and noting that "courts generally allow a plaintiff to litigate under a pseudonym in cases containing allegations of sexual assault because they concern highly sensitive and personal subjects"). Society and courts have progressed from the Fifth Circuit's 1979 assumptions. There is no reason to enshrine them in this Court's jurisprudence.

*Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 468 (E.D. Pa. 1997) ("There is a strong possibility that some of these attorneys will follow this case in legal publications with the result being that plaintiff's professional reputation will be permanently damaged."). The attorneys interviewing Jane Doe 4 are almost certain to learn of this lawsuit and Jones Day's pretextual criticism. There is no reason that publicizing pretextual criticism should be the price of entry to disproving it.

This is exactly the kind of circumstantial evidence from which courts are permitted to draw reasonable inferences of retaliation. It is well-established that a prima facie case of retaliation can consist solely of circumstantial evidence. *See Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009) (holding plaintiff "need only offer circumstantial evidence that could reasonably support an inference" of retaliation); *see also Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015) ("Cases asserting unlawful retaliation in violation of Title VII typically depend on circumstantial evidence . . . . Direct evidence of reprisal—such as a statement by a managerial employee that she or he took action because an employee had filed a charge of discrimination—is the exception rather than the rule."). As the Supreme Court has explained: "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting *Rogers v. Mo. Pac. R. Co.*, 352 U.S. 500, 508 n.17 (1957)). Plaintiff does not need to "produce[] a smoking gun." *Bryant v. District of Columbia*, 102 A.3d 264, 269 (D.C. 2014).

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

---

[4] Ultimately, whether Jones Day has retaliated against Jane Doe 4 and whether it will continue to do so is thus a contested factual issue. Should the Court have any question as to whose declaration is to be believed, the appropriate avenue is an evidentiary hearing. *E.g.*, *Montes v. Janitorial Partners, Inc.*, 859 F.3d 1079, 1085 (D.C. Cir. 2017) ("Relying as it did on the declarations only, the district court's opportunity to judge credibility was nonexistent. It therefore lacked a sufficient basis to credit one declaration over another. . . . Under these circumstances, the district court abused its discretion in failing to conduct an evidentiary hearing." (quotations and citations omitted)); *Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004) ("Particularly when a court must make credibility determinations to resolve key factual disputes in favor of the moving party, it is an abuse of discretion for the court to settle the question on the basis of documents alone, without an evidentiary hearing."); *Core VCT PLC v. Hensley*, 89 F. Supp. 3d 104, 106 (D.D.C. 2015) ("In particular, with respect to defendant's sworn declaration . . . the Court could not assess the credibility of defendant's declaration without an evidentiary hearing." (quotations omitted)).

[redacted]

[redacted]

[redacted] And, more importantly, this Court has credited such future economic concerns in the past. *See John Doe Co. No. 1 v. Consumer Fin. Prot. Bureau*, 195 F. Supp. 3d 9, 16 (D.D.C. 2016) (Moss, J.) (allowing plaintiff to proceed under pseudonym to "avoid grave reputational and financial injury," even in the absence of any risk of physical or mental harm).

In this sense, Jane Doe 4 is no different than a whistleblower. And courts regularly grant whistleblowers pseudonymity in light of the real and serous risks of reputational injury and retaliation. Indeed, a court in this District has observed that, in the whistleblower context, "[t]he motive for retaliation by employers is obvious," and "[t]he case law . . . well document[s] the kind of treatment that is usually visited upon public and private employees who speak out as a matter

of conscience on issues of public concern." *Mgmt. Info. Techs., Inc. v. Alyeska Pipeline Serv., Co.*, 151 F.R.D. 478, 481–82 (D.D.C. 1993). Jones Day's only retort is to suggest that Jane Doe 4 is somehow incomparable to a whistleblower, because she is seeking damages as part of private litigation. This suggestion makes little sense. Whistleblowers regularly seek remuneration, which is simply irrelevant to the risks they face and their need for anonymity. *See Whistleblower 14106-10W v. Comm'r*, 137 T.C. 183, 203–04 (2011) (granting a whistleblower seeking a financial award anonymity given that "disclosing the petitioner's identity could adversely affect . . . petitioner's future employability" and "would likely cause severe damage to petitioner's standing in the professional community that provides petitioner's customary source of livelihood"). Jones Day simply has not offered any compelling reason to believe that Jane Doe 4 is any less likely than any other whistleblower to face "the full spectrum of management retaliation." *Mgmt. Info. Techs., Inc.*, 151 F.R.D. at 481.

[redacted]

Jane Doe 4's concerns are serious and constitute "a special circumstance where [her] unique vulnerability justifies permitting her to proceed anonymously." *Doe v. Aetna Life Ins. Co.*, No. 14-cv-14716, 2016 WL 7799638, at *4 (D. Mass. Apr. 20, 2016); *see also Doe v. Cabrera*, 307 F.R.D. 1, 6–7 (D.D.C. 2014) (granting pseudonymity out of concern that revealing plaintiff's identity would exacerbate medical symptoms); *J.W. v. District of Columbia*, 318 F.R.D. 196, 200 (D.D.C. 2016) (same); *Doe v. Solera Capital LLC*, No. 18-cv-1769, 2019 WL 1437520, at *4 (S.D.N.Y. Mar. 31, 2019) (same). [redacted]

## II. THE PUBLIC INTEREST IN EXPOSING JANE DOE 4'S NAME IS DE MINIMIS

### A. Jones Day Is Suffering No Ascertainable Prejudice

Jones Day admits that the Court "mitigated the prejudice [it could have suffered] by allowing the Firm to disclose the Jane Doe Plaintiffs' identities to the extent necessary to investigate their claims." (Dkt. 30-1, Br. Op. 13.) This is unsurprising: Where a defendant knows a plaintiff's true identity, courts find no prejudice, even when the defendants are conducting formal discovery. *See, e.g., Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 687 (11th Cir. 2001) (stating that the defendants' argument that they will not be able to conduct discovery was "eviscerated by [the plaintiff's] offer to disclose her name to the defendants for discovery purposes on condition that they do not disclose it to the general public"); *Doe v. De Amigos, LLC*, No. 11-cv-1755, 2012 WL 13047579, at *2 (D.D.C. Apr. 30, 2012) (finding that "any unfairness to defendant [during discovery] would be minimal [because] [p]laintiff has already disclosed her identity to defendant"). This rationale should apply with even more force to Jones Day's complaint that the protection of Jane Doe 4's identity may potentially impinge on its ability to conduct *informal* discovery.

In light of the foregoing precedent and the Court's actions, Jones Day's assertion that the relief provided by the Court "is not a complete solution," is perplexing. (Dkt. 30-1, Br. Op. 13.) Jones Day's declarations provide no insight into what Jones Day cannot presently do that it desires to do. In fact, Jones Day undoubtedly has a full record of all the attorneys and clients who worked with Jane Doe 4 and is unhindered in its ability to speak with them and discuss the merits of Jane Doe 4's claims. The suggestion that new "material witnesses" would come forward if her identity is revealed is pure speculation. (*Id*.) Jones Day knows Jane Doe 4's identity and can inquire about her with anyone who it believes may have relevant information. Jones Day will suffer no prejudice by proceeding in this manner.

**B. <u>The Extension Sought Is Limited and the Public's Interest in Knowing Jane Doe 4's Identity in August and September Is Virtually Nil</u>**

The additional extension of the pseudonym—just two months more than what Jones Day has already conceded—is exceptionally limited. Jones Day offers no suggestion as to how these two additional months in any way prejudice any tangible public interest. And Jones Day's suggestion that the Motion should be denied because of general interests in "transparency" and "allowing the public to assess the merits of the lawsuit and the quality of the courts" warrants little pause in light of the Firm's repeated contradictory positions. (Dkt. 30-1, Br. Op. 12.) The Firm completely fails to address statements on its own website, which extoll that "[w]hat is sometimes critically referred to by those outside Jones Day as a 'lack of transparency' is almost universally viewed inside Jones Day as one of its great strengths." *Confidentiality*, Jones Day, https://www.jonesday.com/principlesandvalues/compensation/confidentiality/ (last visited July 2, 2019). Indeed, when a Jones Day partner filed suit against the Firm, Jones Day demanded "that 'the complaint . . . be sealed as soon as possible.'" Vivia Chen, *Jones Day Is Secretive About Why It's Secretive*, THE CAREERIST (July 2, 2018), https://thecareerist.typepad.com/thecareerist/2018/07/news.html (quotation omitted) ("But what seems to set Jones Day apart from most firms in this kind of suit is that it wants all documents in the case to be sealed. Locked forever in a black box."). The idea that the Firm has now become a believer in radical transparency and the public's right to know simply is not credible.

Jones Day also fails to address Jane Doe 4's argument that pseudonymous treatment will encourage other similarly situated women to come forward. It simply says that this argument could be made by "*any* plaintiff . . . in *any case*." (Dkt. 30-1, Br. Op. 12.) But the cases that Jones Day then cites—cases Plaintiff herself cited in support of this Motion—are cases where pseudonymous treatment *was granted* in order to encourage plaintiffs to come forward. *Trustees of Dartmouth*

*Coll.*, 2018 WL 2048385, at *6 ("[T]here is authority for the proposition that precluding pseudonymous litigation . . . may have a chilling effect on future plaintiffs."); *Doe v. Colgate Univ.*, No. 5:15-cv-1069, 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) ("The Court is . . . mindful of the potential chilling effect that forcing Plaintiff to reveal his identity would have on future plaintiffs facing similar situations."); *see also De Amigos*, 2012 WL 13047579, at *2 (explaining that the public has an interest in protecting the identities of plaintiff-victims so that other victims will feel more comfortable suing to vindicate their rights); *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195–96 (E.D.N.Y. 2006) (same); *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (same); *c.f. Whistleblower 14106-10W*, 137 T.C. at 206 ("The likely upshot would be a chilling effect on some claimants who have a compelling need to proceed anonymously. This result would be at odds with the ostensible legislative purpose of encouraging tax whistleblower claims and promoting public confidence.").

Indeed, courts have increasingly recognized the important public interest of encouraging plaintiffs to bring lawsuits to protect and defend their reputations. *See, e.g., Lynch*, 2016 WL 10844617, at *1 (granting a pseudonym request in part because not doing so could "have a chilling effect on other victims bringing actions to redress their like grievances because of the compounded humiliation and reputational damage of doing so"); *Trustees of Dartmouth Coll.*, 2018 WL 2048385, at *6 (D.N.H. May 2, 2018) (allowing anonymity because "precluding pseudonymous litigation in college disciplinary cases may have a chilling effect on future plaintiffs who seek to challenge the adequacy of the process"). This is so even if the only interests at stake are economic. *See John Doe Co. No. 1*, 195 F. Supp. 3d at 24 (stating that allowing a plaintiff to use a pseudonym "avoids the risk that the threat of public disclosure . . . will unduly chill the subjects of investigations from seeking relief"). This is exactly what Jane Doe 4 here seeks to do by disproving

the pretextual reasons for her termination.

These concerns resonate even more strongly where the plaintiff sues under anti-discrimination statutes, because such statutes should be enforced in a manner "calculated to encourage victims of harassment to come forward." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986).[5] And these considerations apply with yet greater force here, because Plaintiffs invoke the Equal Pay Act's collective action provisions, 29 U.S.C. § 216(b). That section "expressly authorizes employees to bring collective [anti-]discrimination actions 'in behalf of . . . themselves and other employees similarly situated.'" *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (quoting 29 U.S.C. § 216(b)). That is, there is an expressed congressional policy that "plaintiffs *should* have the opportunity to proceed collectively." *Id.* (emphasis added). Jane Doe 4's Motion must be considered in light of these policy aims.

**CONCLUSION**

Jones Day largely ignores Plaintiff's central arguments in favor of proceeding under pseudonym: that [redacted] that the public's interest in knowing Jane Doe 4's identity in August instead of October is de minimis; and that Jones Day's investigation is not impaired. The balance tips in Jane Doe 4's favor. The Motion should be granted.

[5] *Cf. McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973) ("The language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered . . . stratified job environments to the disadvantage of minority [and female] citizens."); *Simpson v. D.C. Office of Human Rights*, 597 A.2d 392, 398 (D.C. 1991) (explaining that the District of Columbia Human Rights Act was passed to ensure "[t]he right to equal opportunity without discrimination based on race or other such invidious ground" (quotations omitted)).

Respectfully Submitted,

Date: July 3, 2019

*/s/ Russell L. Kornblith*

David W. Sanford (DC Bar No. 457933)
Russell L. Kornblith*
SANFORD HEISLER SHARP, LLP
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
rkornblith@sanfordheisler.com

Deborah K. Marcuse (D.C. Bar No. 995380)
SANFORD HEISLER SHARP, LLP
111 S. Calvert Street, Ste. 1950
Baltimore, MD 21202
Telephone: (410) 834-7415
Facsimile: (410) 834-7425
dmarcuse@sanfordheisler.com

*admitted *pro hac vice*

*Attorneys for Plaintiffs, the Proposed Classes, and the Proposed Collective*