# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NILAB RAHYAR TOLTON, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Civ. No. 1:19-00945 (RDM) |
| | ) | |
| *v.* | ) | |
| | ) | **DEFENDANT'S MOTION** |
| JONES DAY, | ) | **FOR PARTIAL JUDGMENT** |
| | ) | **ON THE PLEADINGS** |
| *Defendant.* | ) | |
| | ) | |

## DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Jones Day respectfully moves for an order granting it judgment on the pleadings, under Federal Rule of Civil Procedure 12(c), on the following: (1) all claims asserted by Plaintiff Williams; (2) all claims asserted by Plaintiff Henderson; (3) all disparate-impact claims under federal and state law; (4) all claims under the Equal Pay Act and its state analogues; (5) all of the retaliation claims asserted under federal and state law; (6) all claims asserted under the D.C. Human Rights Act by the publicly identified Plaintiffs; and (7) all claims for injunctive relief. The grounds for this motion are set forth in the attached memorandum of law.

For the convenience of the Court, appended to the memorandum of points and authorities is a chart listing the claims asserted in the Amended Complaint by each of the individual Plaintiffs, and indicating those claims as to which Jones Day seeks judgment through this motion.

/s/ Mary Ellen Powers
Mary Ellen Powers (Bar No. 334045)
Beth Heifetz (Bar No. 417199)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Phone: (202) 879-3939

Terri L. Chase (*pro hac vice* granted)
JONES DAY
250 Vesey Street
New York, NY 10281
Phone: (212) 326-3939

*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| NILAB RAHYAR TOLTON, *et al.*, | ) | Civ. No. 1:19-00945 (RDM) |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | **MEMORANDUM OF POINTS AND** |
| *v.* | ) | **AUTHORITIES IN SUPPORT OF** |
| | ) | **DEFENDANT'S MOTION FOR** |
| JONES DAY, | ) | **PARTIAL JUDGMENT ON THE** |
| | ) | **PLEADINGS** |
| *Defendant.* | ) | |

Mary Ellen Powers
Beth Heifetz
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Phone: (202) 879-3939

Terri L. Chase (*pro hac vice* granted)
JONES DAY
250 Vesey Street
New York, NY 10281
Phone: (212) 326-3939

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION .................................................................................................................. 1

LEGAL STANDARD............................................................................................................. 3

ARGUMENT ........................................................................................................................ 4

I.      WILLIAMS HAS NOT STATED ANY VIABLE CLAIMS (COUNTS 5, 9, 11, AND 20-21) ........... 4

II.     HENDERSON'S CLAIMS UNDER THE NEW YORK CITY HUMAN RIGHTS LAW
        ARE TIME-BARRED (COUNTS 12 AND 22).......................................................................... 7

III.    PLAINTIFFS HAVE NOT STATED A VIABLE DISPARATE-IMPACT CLAIM
        (COUNTS 1-2, 5-6, AND 11-12)........................................................................................ 11

IV.     PLAINTIFFS HAVE NOT STATED VIABLE EQUAL PAY ACT CLAIMS
        (COUNTS 4, 8, AND 13).................................................................................................... 21

V.      PLAINTIFFS HAVE NOT STATED ANY VIABLE RETALIATION CLAIMS
        (COUNTS 14-16)............................................................................................................... 28

VI.     THIS COURT LACKS JURISDICTION OVER THE D.C. HUMAN RIGHTS ACT
        CLAIMS (COUNTS 11, 16, 19, AND 21) ............................................................................ 33

VII.    AS FORMER EMPLOYEES, PLAINTIFFS HAVE NO STANDING TO SEEK
        INJUNCTIVE RELIEF AGAINST JONES DAY (ALL COUNTS) ............................................... 35

CONCLUSION..................................................................................................................... 36

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. City of Indianapolis*,
    742 F.3d 720 (7th Cir. 2014) .......................................................................17, 21

*Alexander v. Marriott Int'l, Inc.*,
    No. 09-cv-2402, 2011 WL 1231029 (D. Md. Mar. 29, 2011) ...............................23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................. *passim*

*Banawis-Olila v. World Courier Ground, Inc.*,
    No. 16-cv-982, 2016 WL 4070133 (N.D. Cal. July 29, 2016) .............................22

*Barrett v. Forest Labs., Inc.*,
    39 F. Supp. 3d 407 (S.D.N.Y. 2014) ................................................................23, 25

*Bass v. World Wrestling Fed. Ent't, Inc.*,
    129 F. Supp. 2d 491 (E.D.N.Y. 2001) ..............................................23, 25, 26, 27

*Baye v. Diocese of Rapid City*,
    630 F.3d 757 (8th Cir. 2011) ...............................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................3

*Bennett v. Nucor Corp.*,
    656 F.3d 802 (8th Cir. 2011) ...............................................................................14

*Bilow v. Much Shelist Freed Denenberg Ament & Eiger, P.C.*,
    67 F. Supp. 2d 955 (N.D. Ill. 1999) .....................................................................29

*Brewer v. Lynch*,
    Civ. No. 08-1747, 2015 WL 13604257 (D.D.C. Sept. 30, 2015) .........................36

*Broderick v. Donaldson*,
    437 F.3d 1226 (D.C. Cir. 2006) ...............................................................28, 30, 32

*Brown v. District of Columbia*,
    919 F. Supp. 2d 105 (D.D.C. 2013) .......................................................................4

*Brown v. Wyndham Hotel Mgmt. Inc.*,
    No. 16-cv-00015, 2016 WL 2595073 (S.D. Tex. May 5, 2016).....................13, 15

*Burell v. Shepard*,
    321 F. Supp. 3d 1 (D.D.C. 2018) ...........................................................................6

*Byrnie v. Town of Cromwell, Bd. of Educ.*,
    243 F.3d 93 (2d Cir. 2001)...................................................................................14

*Campbell v. Nat'l R.R. Passenger Corp.*,
    311 F. Supp. 3d 281 (D.D.C. 2018) .....................................................................14

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Carter v. CB Richard Ellis, Inc.*,
    122 Cal. App. 4th 1313 (2004) ............................................................................................11

*Chen-Oster v. Goldman, Sachs & Co.*,
    877 F. Supp. 2d 113 (S.D.N.Y. 2012)..................................................................................36

*Clark Cty. Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001)......................................................................................................29, 31

*Clemmons v. Acad. For Educ. Dev.*,
    107 F. Supp. 3d 100 (D.D.C. 2015) ....................................................................................29

*Cole v. Boeing Co.*,
    845 F. Supp. 2d 277 (D.D.C. 2012) ....................................................................................33

*Collette v. St. Luke's Roosevelt Hosp.*,
    132 F. Supp. 2d 256 (S.D.N.Y. 2001)..................................................................................11

*Combs v. Grand Victoria Casino & Resort*,
    No. 08-cv-414, 2008 WL 4452460 (S.D. Ind. Sept. 30, 2008)......................................13, 15

*Connell v. Bank of Boston*,
    924 F.2d 1169 (1st Cir. 1991)..............................................................................................31

*Cordone v. Wilens & Baker*,
    730 N.Y.S.2d 89 (N.Y. App. Div. 2001) ...............................................................................7

*Davis v. Cintas Corp.*,
    717 F.3d 476 (6th Cir. 2013) ...............................................................................................15

*Davis v. District of Columbia*,
    246 F. Supp. 3d 367 (D.D.C. 2017) ....................................................................................11

*Dearth v. Holder*,
    641 F.3d 499 (D.C. Cir. 2011) .............................................................................................35

*Douglas v. Donovan*,
    559 F.3d 549 (D.C. Cir. 2009) ................................................................................29, 31, 32

*Easaw v. Newport*,
    253 F. Supp. 3d 22 (D.D.C. 2017) ........................................................................................4

*EEOC v. Port Auth. of N.Y. & N.J.*,
    768 F.3d 247 (2d Cir. 2014)....................................................................................22, 23, 26, 27

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ...............................................................................................36

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998)................................................................................................................6

*Fields v. Vilsack*,
    207 F. Supp. 3d 80 (D.D.C. 2016) ........................................................................................5

**TABLE OF AUTHORITIES**

(continued)

<strong>Page(s)</strong>

*Forkkio v. Powell*,
306 F.3d 1127 (D.C. Cir. 2002)......................................................29

*Frasier v. Gen. Elec. Co.*,
930 F.2d 1004 (2d Cir. 1991)........................................................22

*Gaujacq v. Electricite de France Int'l N. Am., Inc.*,
572 F. Supp. 2d 79 (D.D.C. 2008)................................................22

*Geiss v. Weinstein Co. Holdings LLC*,
No. 17-cv-9954, 2019 WL 1746009 (S.D.N.Y. Apr. 18, 2019) .........9, 10

*Hall v. Cty. of Los Angeles*,
148 Cal. App. 4th 318 (Cal. Ct. App. 2007) ................................22

*Hamilton v. Geithner*,
666 F.3d 1344 (D.C. Cir. 2012)......................................29, 30, 31

*Hedgeye Risk Mgmt., LLC v. Heldman*,
271 F. Supp. 3d 181 (D.D.C. 2017)..............................................25

*Hettinga v. United States*,
677 F.3d 471 (D.C. Cir. 2012)........................................................3

*Hughes v. Xerox Corp.*,
37 F. Supp. 3d 629 (W.D.N.Y. 2014)....................................24, 25, 26

*In re Navy Chaplaincy*,
697 F.3d 1171 (D.C. Cir. 2012)....................................................35

*Jackson v. Motel 6 Multipurpose, Inc.*,
130 F.3d 999 (11th Cir. 1997) ....................................................36

*Jaso v. The Coca Cola Company*,
435 F. App'x 346 (5th Cir. 2011) ................................................10

*Jones v. District of Columbia*,
314 F. Supp. 3d 36 (D.D.C. 2018) ..................................................6

*Kassman v. KPMG LLP*,
925 F. Supp. 2d 453 (S.D.N.Y. 2013)..........................................36

*Kastroll v. Wynn Resorts, Ltd.*,
No. 2:09-cv-2034, 2013 WL 496409 (D. Nev. 2013).....................36

*Knox v. PPG Indus., Inc.*,
No. 2:15-cv-1434, 2016 WL 279004 (W.D. Pa. Jan. 22, 2016) .......17, 18

*Kulkarni v. City Univ. of N.Y.*,
No. 1-cv-10628, 2002 WL 1969676 (S.D.N.Y. Aug. 23, 2002)..........16

*Leachman v. Beech Aircraft Corp.*,
694 F.2d 1301 (D.C. Cir. 1982)......................................................8

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Lehman v. Bergmann Assocs., Inc.*,
   11 F. Supp. 3d 408 (W.D.N.Y. 2014) .........................................................................22, 24, 27

*Lyle v. Warner Bros. Television Prods.*,
   132 P.3d 211 (Cal. 2006) ............................................................................................................5

*Massarsky v. Gen. Motors Corp.*,
   706 F.2d 111 (3d Cir. 1983)......................................................................................................18

*McCaskill v. Gallaudet Univ.*,
   36 F. Supp. 3d 145 (D.D.C. 2014) ..............................................................................................6

*McFarland v. George Washington Univ.*,
   935 A.2d 337 (D.C. 2007) ............................................................................................28, 29, 31

*Middlebrooks v. Godwin Corp.*,
   722 F. Supp. 2d 82 (D.D.C. 2010) ..............................................................................................6

*Miller v. United States*,
   803 F. Supp. 1120 (E.D. Va. 1992) .......................................................................................9, 10

*Muldrew v. Joseph McCormick Constr. Co.*,
   Civ. No. 14-27, 2014 WL 3890336 (W.D. Pa. Aug. 8, 2014) ................................................22

*Ndondji v. InterPark Inc.*,
   768 F. Supp. 2d 263 (D.D.C. 2011) ..........................................................................................32

*Neuren v. Adduci, Mastriani, Meeks & Schill*,
   43 F.3d 1507 (D.C. Cir. 1995)..................................................................................................23

*Nielson v. Trofholz Techs., Inc.*,
   750 F. Supp. 2d 1157 (E.D. Cal. 2010)......................................................................................4

*Pa. State Police v. Suders*,
   542 U.S. 129 (2004)....................................................................................................................6

*Pell v. Trs. of Columbia Univ. in City of N.Y.*,
   No. 97-cv-0193, 1998 WL 19989 (S.D.N.Y. Jan. 21, 1998) .....................................................9

*Pope v. ESA Servs., Inc.*,
   406 F.3d 1001 (8th Cir. 2005) ............................................................................................29, 31

*Rabara v. Heartland Emp't Servs., LLC*,
   No. 17-cv-3770, 2019 WL 1877351 (N.D. Cal. 2019)......................................................28, 30

*Rattigan v. Gonzales*,
   503 F. Supp. 2d 56 (D.D.C. 2007) ..............................................................................................6

*Rollins v. Wackenhut Servs., Inc.*,
   703 F.3d 122 (D.C. Cir. 2012)....................................................................................................3

*Rose v. Goldman, Sachs & Co., Inc.*,
   163 F. Supp. 2d 238 (S.D.N.Y. 2001).......................................................................................26

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Ross v. Lockheed Martin Corp.*,
   267 F. Supp. 3d 174 (D.D.C. 2017) ..........................................................................21

*Sarfati v. Antigua & Barbuda*,
   923 F. Supp. 2d 72 (D.D.C. 2013) ........................................................................9, 10

*Shaffer v. Fayette Cty.*,
   163 F. Supp. 3d 280 (W.D. Pa. 2016) ....................................................................23

*Sherrod v. Prairie View A & M Univ.*,
   Civ. No. H-10-1858, 2011 WL 843936 (S.D. Tex. Mar. 8, 2011) ..........................22

*Sitar v. Ind. Dep't of Transp.*,
   344 F.3d 720 (7th Cir. 2003) ............................................................................29, 32

*Smith v. City of Jackson*,
   544 U.S. 228 (2005) ..........................................................................................12, 14

*Smith v. D.C. Office of Human Rights*,
   77 A.3d 980 (D.C. 2013) ..........................................................................................5

*Sparrow v. United Air Lines, Inc.*,
   216 F.3d 1111 (D.C. Cir. 2000) ..............................................................................28

*Spencer v. Va. State Univ.*,
   224 F. Supp. 3d 449 (E.D. Va. 2016) ....................................................................23

*Spencer v. Va. State Univ.*,
   919 F.3d 199 (4th Cir. 2019) ....................................................................22, 23, 27

*Suzuki v. State Univ. of N.Y. Coll.*,
   No. 08-cv-4569, 2013 WL 2898135 (E.D.N.Y. June 13, 2013) ..............................22

*Taylor v. Fed. Deposit Ins. Corp.*,
   132 F.3d 753 (D.C. Cir. 1997) ................................................................................29

*Townsend v. United States*,
   236 F. Supp. 3d 280 (D.D.C. 2017) ..................................................................17, 20

*Twersky v. Yeshiva Univ.*,
   993 F. Supp. 2d 429 (S.D.N.Y. 2014) ......................................................................9

*Vig v. N.Y. Hairspray Co., L.P.*,
   940 N.Y.S.2d 615 (N.Y. App. Div. 2012) ................................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..........................................................................................15, 36

*Walden v. Patient-Centered Outcomes Res. Inst.*,
   177 F. Supp. 3d 336 (D.D.C. 2016) ..........................................................................6

*Wards Cove Packing Co. v. Atonio*,
   490 U.S. 642 (1989) ..........................................................................................11, 12

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Watson v. Fort Worth Bank & Tr.*,
   487 U.S. 977 (1988)...........................................................................................................12, 15

*Welch v. Eli Lilly & Co.*,
   No. 06-cv-0641, 2009 WL 734711 (S.D. Ind. Mar. 18, 2009) .............................13, 14, 15, 16

*White v. Am. Axle & Mfg., Inc.*,
   No. 5-cv-72741, 2006 WL 335710 (E.D. Mich. Feb. 14, 2006)......................................13, 16

*Williams v. N.Y.C. Hous. Auth.*,
   872 N.Y.S.2d 27 (N.Y. App. Div. 2009) ...................................................................................8

*Woodruff v. Peters*,
   482 F.3d 521 (D.C. Cir. 2007).........................................................................................28, 29

*Zaidan v. Trump*,
   317 F. Supp. 3d 8 (D.D.C. 2018) ............................................................................................32

**STATUTES**

29 U.S.C. § 206................................................................................................................................21

42 U.S.C. § 2000e-2............................................................................................................12, 16, 30

Cal. Lab. Code § 1197.5 .................................................................................................................21

D.C. Code § 2-1401.01 ...................................................................................................................33

D.C. Code § 2-1403.04 ...................................................................................................................30

N.Y. Labor Law § 194 ....................................................................................................................21

N.Y.C. Admin. Code § 8-502 ...........................................................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12 ..............................................................................................................................3

## **INTRODUCTION**

As Jones Day has set forth in its Answer (Dkt. 36), there is no merit to any of Plaintiffs' claims.  The Firm is proud to function as a meritocracy, where each lawyer is evaluated, paid, and promoted based on his or her talents and contributions to the Firm.  Women and mothers succeed at Jones Day—at all levels, from the associate ranks to senior leadership roles including practice leadership, regional and office leadership, and membership on the Firm's Partnership Committee and Advisory Committee.  In recognition of these achievements, the Firm was recently ranked by an independent report as one of the top ten large law firms in the country for female attorneys. While Plaintiffs allege that discrimination held them back, the truth is that those Plaintiffs who did not succeed at Jones Day simply failed to meet the Firm's high standards.

Having said that, Jones Day recognizes that discovery and fact development are needed to refute Plaintiffs' principal claims of intentional discrimination; those claims therefore cannot be dismissed just yet.  Nonetheless, the Complaint markedly overreaches, asserting a number of other claims that are not plausibly supported by Plaintiffs' factual allegations.  As to those latter claims, the Court should grant judgment on the pleadings to Jones Day, thereby trimming the Complaint to its core theory: that Jones Day intentionally treated Plaintiffs worse, with respect to their terms and conditions of employment, based on their gender, pregnancy, or family leave.

*First*, one of the Plaintiffs does not adequately allege even that much.  Meredith Williams claims that she received a negative performance review when a partner unfairly blamed her for another associate's mistake, and that she chose to leave the Firm as a result.  But she does not allege that this bad review was a result of her gender, or point to any facts that would make such a claim plausible.  Nor does Williams allege facts that constitute a hostile work environment; she alleges only a single incident, in 2014, in which Williams and a few employees played an offensive game denigrating their male colleagues—an incident that was never reported to the Firm.

1

*Second*, the claims asserted by newly added Plaintiff Katrina Henderson under the New York City Human Rights Law are time-barred even under that statute's relatively generous three-year limitations period. She complains about allegedly discriminatory treatment in 2013-2014, and says she was informed in December 2015 that she was being terminated—but she did not sue until June 2019. In a bid to evade the statute of limitations, Henderson alleges that a then-partner warned her that the Firm would "destroy her career" if she sued. As a matter of law, that sort of single, vague "threat" does not operate to indefinitely suspend a statute of limitations.

*Third*, while the remaining five Plaintiffs can pursue *intentional* discrimination claims, they have not stated any legally viable *disparate-impact* claim. A disparate-impact claim requires identifying a specific, facially neutral employment practice that harms women disproportionately to men. Yet Plaintiffs do not point to any particular "employment practice" that has hurt them; instead, each offers her own unique account of how she was affected by alleged discriminatory actions of different partners in different offices. Nor do Plaintiffs allege any facts or data that would make plausible a claim of an adverse impact on women or mothers as a group.

*Fourth*, Plaintiffs have offered no factual basis for their vague and conclusory claims under the Equal Pay Act. To plead such a claim, a plaintiff must identify a comparator male employee who performed virtually identical work yet was paid more. It is not enough, as courts routinely hold, for an employee to simply declare that she believes she was paid less than men. That is all the Complaint here does. It fails to identify any viable comparators and alleges no facts that allow for a reasonable inference that any Plaintiff suffered a sex-based pay differential.

*Fifth*, the three Plaintiffs who pursue retaliation claims do not adequately allege the elements of retaliation. Specifically, none alleges any "protected activity" that is causally linked to any adverse employment action by Jones Day.

*Sixth*, this Court lacks jurisdiction over the publicly identified Plaintiffs' claims under the D.C. Human Rights Act.  None of those Plaintiffs were employed in the District of Columbia.

*Finally*, as a remedial matter, Plaintiffs do not have standing to seek any injunctive relief. Plaintiffs are *former* employees of Jones Day; none still works at the Firm.  Accordingly, as the Supreme Court has explained, they have no interest in the Firm's prospective conduct, and no legal basis to ask this Court to order any changes to that conduct.

## **LEGAL STANDARD**

A party may "move for judgment on the pleadings" after "the pleadings are closed."  Fed. R. Civ. P. 12(c).  This type of motion is "functionally equivalent" to a Rule 12(b)(6) motion for failure to state a claim, and is governed by the same standard.  *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 129 (D.C. Cir. 2012).  Thus, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In evaluating the legal sufficiency of a complaint, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Also insufficient are "legal conclusions cast as factual allegations."  *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012).  Instead, the complaint must allege sufficient *facts* to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  And those factual allegations, assumed to be true, must "raise a right to relief above the speculative level," meaning that they must render the claim not merely "conceivable," but "plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557, 570 (2007). Thus, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the court should grant judgment on the pleadings to the defendant, and dismiss the claims.  *Iqbal*, 556 U.S. at 679; *Rollins*, 703 F.3d at 130-31.

## **ARGUMENT**

I.  **WILLIAMS HAS NOT STATED ANY VIABLE CLAIMS (COUNTS 5, 9, 11, AND 20-21).**

Williams asserts claims for gender discrimination and wrongful constructive discharge under California law (Counts 5 & 20) and D.C. law (Count 11 & 21). Those claims fail, because Williams has not alleged any facts that give rise to a plausible inference of discrimination.[1]

A.  To state a claim for disparate treatment, a plaintiff must show "that (1) she is a member of a protected class, (2) she suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination, that is, an inference that her employer took the action because of her membership in the protected class." *Brown v. District of Columbia*, 919 F. Supp. 2d 105, 115 (D.D.C. 2013) (D.C. law and Title VII); *see also Nielson v. Trofholz Techs., Inc.*, 750 F. Supp. 2d 1157, 1165 (E.D. Cal. 2010) (California law). If a plaintiff does not point to "sufficient facts giving rise to an inference of discrimination," then her claim must be dismissed on the papers. *Easaw v. Newport*, 253 F. Supp. 3d 22, 29-31 (D.D.C. 2017).

Williams alleges only one "adverse employment action"—a "negative annual review in 2017," which allegedly caused her to earn "a raise of just $10,000." FAC ¶¶ 139, 145. But she does not allege any facts that create a plausible inference that this bad review was the result of discrimination. According to Williams, the review was "unfairly negative," as the Firm "fixated on an incident in which another associate had dropped the ball on a motion that Ms. Williams had turned over to that associate for completion." FAC ¶¶ 145-146, 150. But unfairness is not discrimination. And Williams offers no factual basis for an inference that this "unfair" review was attributable to gender discrimination. She does not allege that the partner who evaluated her was

---

[1] Williams also asserts claims under the Equal Pay Act (Count 4) and its California analogue (Count 8), which fail for the reasons discussed in Part IV, *infra*. And her claim under California's Unfair Competition Law (Count 9) is purely derivative of her discrimination claims (FAC ¶ 445) and therefore fails for the same reasons.

male (she was not) or made any sexist remarks (she did not).  She does not allege that the associate who "dropped the ball" yet allegedly escaped blame was a male (she was not).  Nor does Williams allege that male associates were reviewed more favorably in similar circumstances.  In short, Williams has alleged nothing more than a negative review that, in her mind, was unjustified.  That is just not enough to allow the court to infer that Jones Day engaged in gender discrimination.

**B.**      Some language in the Complaint evokes the "hostile work environment" theory of disparate treatment, which presents a slightly different legal framework.  FAC ¶¶ 403, 471.   To state such a claim, a plaintiff must "show she was subjected to sexual advances, conduct, or comments that were (1) unwelcome; (2) because of sex; and (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment."  *Lyle v. Warner Bros. Television Prods.*, 132 P.3d 211, 220 (Cal. 2006) (federal and California law); *see also Smith v. D.C. Office of Human Rights*, 77 A.3d 980, 996-97 (D.C. 2013) (D.C. law).

Williams alleges only one specific example of supposedly unwelcome conduct (the timing of which she omits because it occurred nearly five years before the Complaint was filed, well outside the statute of limitations).  Answer ¶ 141.  She claims that lawyers traveling to a summer associate event in Irvine played an offensive game in which female attorneys were invited to select "the male attorneys at Jones Day whom they would wish to 'kill,' 'marry,' or 'fuck.'"  FAC ¶ 141. Even if it were not time-barred, that single incident (mischaracterized by Plaintiffs as evidence of "misogyny") is not nearly enough, standing alone, to give rise to a viable claim.  It is "rare" for a "single, isolated incident" to create a hostile work environment, and courts have limited such cases to incidents that involve "serious, physical violence or sexual assault."  *Fields v. Vilsack*, 207 F. Supp. 3d 80, 94 (D.D.C. 2016).   Moreover, Williams does not allege that she (or anyone else) complained about this conduct or reported it to the Firm contemporaneously.  Jones Day cannot

be liable for the actions of "non-supervisory" employees if those actions were "not reported" to the Firm. *Jones v. District of Columbia*, 314 F. Supp. 3d 36, 64 (D.D.C. 2018).

Williams also makes the vague allegation that she was "subjected to sexist comments" while at the Firm. FAC ¶ 141. But her only examples—that one client allegedly commented that women should not have children if they wanted to succeed, and one partner allegedly blamed a purported lack of "internally-promoted female partners" on female attorneys' family choices (FAC ¶¶ 143-144)—are nowhere close to the "severe or pervasive" harassment necessary to state a viable claim. *See McCaskill v. Gallaudet Univ.*, 36 F. Supp. 3d 145, 155-56 (D.D.C. 2014) (dismissing hostile work-environment claim for "confrontation with a coworker, unspecified 'abuse' at meetings, and one threatening letter"); *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 90-91 (D.D.C. 2010) (dismissing claim for "offensive or rude" comments); *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 78-82 (D.D.C. 2007) (dismissing claim for "occasional off-color remarks"). After all, the discrimination laws are not meant to impose "a general civility code"; they protect only against truly "extreme" conduct. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

**C.**     Williams' constructive discharge claim also fails. Constructive discharge requires "something more" than a hostile work environment—"working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004); *see, e.g.*, *Burell v. Shepard*, 321 F. Supp. 3d 1, 14 n.3 (D.D.C. 2018). "Given that the court has found that she has failed to plead sufficient facts to make out a hostile work environment claim, logic compels the finding that she has not sufficiently pleaded a constructive discharge claim." *Walden v. Patient-Centered Outcomes Res. Inst.*, 177 F. Supp. 3d 336, 346-47 (D.D.C. 2016). Indeed, Williams' allegation—that she left Jones Day due to "[c]oncern[]" about what her negative review "portended for her future" (FAC ¶¶ 150-152)—is facially insufficient.

## II.   HENDERSON'S CLAIMS UNDER THE NEW YORK CITY HUMAN RIGHTS LAW ARE TIME-BARRED (COUNTS 12 AND 22).

Like Williams, Plaintiff Henderson has not stated any viable claims.  Her claims for wrongful termination and gender discrimination under the New York City Human Rights Act are time-barred.  Those claims are governed by a three-year statute of limitations.  N.Y.C. Admin. Code § 8-502(d).  Henderson alleges discrimination from 2013 to early 2015 and claims she was told in December 2015 that she was being terminated.  Nonetheless, she waited to file suit until June 2019, beyond the limitations period.  She recognizes as much and asks this Court to forgive her tardiness because a Jones Day partner supposedly told Henderson before she left the Firm that, if Henderson sued, Jones Day would "destroy her career."  FAC ¶ 291.  That single "warning" from three years ago (FAC ¶ 292), even if made, does not save Henderson's untimely claims.[2]

**A.**   To start, Henderson's wrongful termination claim is presumptively time-barred. The Firm informed Henderson that it was "terminating her employment" in December 2015.  FAC ¶ 287.  The statute of limitations thus expired in December 2018.  *See*  N.Y.C. Admin. Code § 8-502(d).  That was six months *before* Henderson joined this suit.  It is true that Henderson alleges that she "remained on the Firm's payroll through the end of June [2016]" and formally affiliated with the Firm until July 2016 (FAC ¶ 290), but "[i]t is settled that an employment discrimination claim accrues on the date that an adverse employment determination is made and communicated to the plaintiff."  *Cordone v. Wilens & Baker*, 730 N.Y.S.2d 89, 90 (N.Y. App. Div. 2001); *Vig v. N.Y. Hairspray Co., L.P.*, 940 N.Y.S.2d 615, 615 (N.Y. App. Div. 2012).  The clock therefore started ticking in December 2015—and expired before Henderson joined this action.

---

[2] Henderson also asserts equal pay claims under federal and New York state law, which fail for the reasons discussed in Part IV.  Although the Amended Complaint is inconsistent as to whether Henderson is asserting a wrongful constructive discharge claim under the DCHRA, that claim (if asserted) is not only time-barred for the reasons discussed here, but also would fail for the reasons discussed in Part VI.

**B.**        Henderson's gender discrimination claim suffers the same fate.  All of the alleged discriminatory conduct occurred more than three years before she filed suit—and most occurred five and six years before she filed.  The bulk of Henderson's complaints stem from 2013 and 2014. Henderson alleges that, during those years, a female partner unfairly "berated" and "chastised" her.  FAC ¶¶ 268-70.  She also claims that, after the partner "reprimand[ed]" her in December 2013, "Henderson's assignments began to diminish" and she soon found herself "frozen" out of work.  FAC ¶¶ 274-75.  And Henderson alleges that another partner "persistently excluded Ms. Henderson" from meetings about a deal in early 2015.  FAC ¶ 276.  Finally, Henderson objects that she did not receive a pay raise in 2014.  FAC ¶ 279.

All of that conduct, even if it amounted to gender discrimination, occurred more than three years before Henderson filed suit and is therefore time-barred.  Indeed, as discussed above, the latest-in-time "discriminatory" act came in December 2015, when the Firm notified Henderson that it was "terminating her employment."  FAC ¶ 287.  And even that was more than three years before Henderson filed suit.  Her gender discrimination claim must be dismissed.[3]

**C.**        Recognizing that her claims are time-barred, Henderson asks the Court to suspend the limitations period because, "[a]round the time Ms. Henderson was preparing to depart Jones Day," "then-Partner Charmaine Slack … informed Ms. Henderson that if Ms. Henderson wanted to sue Jones Day for discrimination, she would be within her legal rights, but that she should not,

---

[3] Henderson cannot evade the statute of limitations by invoking the continuing-violation or relation-back doctrines.  The continuing-violation doctrine, which can make actionable some conduct outside the limitations period, does not apply because Henderson has not alleged any discrimination *within* the limitations period.  *See Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 41-42 (N.Y. App. Div. 2009). Likewise, the relation-back doctrine does not save Henderson's claims, because she was not a plaintiff to the original complaint (which, in any event, was still filed after Henderson's statute of limitations had expired).  *Leachman v. Beech Aircraft Corp.*, 694 F.2d 1301, 1308 (D.C. Cir. 1982).

because Jones Day would destroy her career." FAC ¶ 291.  Due to Slack's "warning," Henderson asserts that "Jones Day should … be estopped from raising any statute of limitations defense," or that the Court alternatively should "grant equitable tolling." FAC ¶ 293.  Neither doctrine applies.

Equitable tolling does not apply "because that doctrine only 'prevents the running of a statute of limitations against the plaintiff who is unaware that he or she has a cause of action because of the defendant's fraudulent acts of concealment.'" *Pell v. Trs. of Columbia Univ. in City of N.Y.*, No. 97-cv-0193, 1998 WL 19989, at *8 (S.D.N.Y. Jan. 21, 1998) (Sotomayor, J.) (quoting *Bennett v. United States Lines*, 64 F.3d 62, 66 (2d Cir. 1995)).  Henderson does not allege that she was unaware of her cause of action—much less that Jones Day concealed anything.

Equally inapplicable is the "extraordinary remedy" of equitable estoppel. *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014).  That "narrow" doctrine applies only where "specific actions by defendants somehow kept [the plaintiff] from timely bringing suit." *Geiss v. Weinstein Co. Holdings LLC*, No. 17-cv-9954, 2019 WL 1746009, at *10 (S.D.N.Y. Apr. 18, 2019).  But, notably, "[f]ear of harm to a plaintiff's career cannot justify equitably estopping a defendant from asserting a time limitation period." *Miller v. United States*, 803 F. Supp. 1120, 1128 (E.D. Va. 1992).  Instead, only "a pattern of continual and egregious acts of intimidation" by the defendant can justify estoppel. *Geiss*, 2019 WL 1746009, at *12; *see also Sarfati v. Antigua & Barbuda*, 923 F. Supp. 2d 72, 81 (D.D.C. 2013) (applying New York law).

In *Geiss*, for example, the defendant physically intimidated the plaintiff the day after he tried to assault her.  The court rejected the estoppel claim since there was no *pattern* of threats: "In the absence of such a pattern, fear of retaliation does not toll the statutes of limitations for the duration of a famous defendant's power and influence, even for the most despicable wrongs." 2019 WL 1746009, at *12.

In addition, the threats must "continue up to the point that the plaintiff brings her action." *Baye v. Diocese of Rapid City*, 630 F.3d 757, 762 (8th Cir. 2011). That is because "[d]ue diligence on the part of the plaintiff in bringing his action is an essential element for the applicability of the doctrine of equitable estoppel." *Sarfati*, 923 F. Supp. 2d at 82. Indeed, in *Jaso v. The Coca Cola Company*, the Fifth Circuit rejected equitable estoppel even though the defendants threatened the plaintiff at gunpoint and attempted to kidnap the plaintiff's son. 435 F. App'x 346, 358 (5th Cir. 2011). Despite the extreme threats, estoppel was unavailable, because the threats did not "continue up to the point" when the plaintiff sued. *Id.* Without that limit, estoppel would have the effect of suspending the limitations period indefinitely, leaving courts to resolve stale claims.

Here, the single alleged "warning" in early 2016 cannot justify the extraordinary remedy of equitable estoppel.[4] *First*, Henderson's fear that the Firm would "destroy her career" is simply not the type of fear that can estop a defendant from raising a limitations defense. *Miller*, 803 F. Supp. at 1128. *Second*, the single statement she alleges falls well short of "a *pattern* of continual and egregious acts of intimidation." *Geiss*, 2019 WL 1746009, at *12 (emphasis added). Even in *Geiss*, where the assaulter had "power and influence" and physically intimidated the plaintiff, the lack of a pattern precluded estoppel. *Id.* *Third*, Henderson does not allege that anything happened between the "warning" and her filing suit, much less that threats continued throughout that period. The long gap between the "threat" and the suit further defeats estoppel, as allowing an indefinite suspension would "eviscerate any reasonable understanding of statutes of limitations"; indeed, on Henderson's theory, she could have waited another three, five, or even ten years before filing suit. *Sarfati*, 923 F. Supp. 2d at 81. The Court should reject that extreme position.

---

[4] Henderson does not allege that the now-former partner purported to be speaking on behalf of the Firm or was expressing anything other than a personal opinion.

### III.   PLAINTIFFS HAVE NOT STATED A VIABLE DISPARATE-IMPACT CLAIM (COUNTS 1-2, 5-6, AND 11-12).

Much of Plaintiffs' Complaint focuses on intentional discrimination—*i.e.*, allegations that certain Jones Day partners intentionally treated women (or pregnant women or mothers) worse than similarly situated men.  Six counts, however, also invoke "disparate impact," which refers to facially neutral employment practices that, despite the absence of discriminatory intent, impose disproportionate, unjustified harms on a protected group.[5]  Plaintiffs make virtually no factual allegations to support a claim under this latter theory, and what little they do allege is insufficient.

A plaintiff asserting a disparate-impact claim under Title VII must (1) identify "a specific employment practice" (2) that causes (3) a disparate impact on a protected group.  *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656-67 (1989).  The law is the same in California, New York, and the District of Columbia.  *See Davis v. District of Columbia*, 246 F. Supp. 3d 367, 393 (D.D.C. 2017); *Carter v. CB Richard Ellis, Inc.*, 122 Cal. App. 4th 1313, 1321 (2004); *Collette v. St. Luke's Roosevelt Hosp.*, 132 F. Supp. 2d 256, 275-76 (S.D.N.Y. 2001).

Plaintiffs fail at elements one and three (and thus two as well).  *First*, they do not identify a "specific employment practice" that harms women or mothers, instead referring vaguely to Firm "policies, practices, and procedures."  FAC ¶ 296.  Citing a "system of 'black box' compensation" (FAC ¶ 32) does not do the trick, as that is merely a label for the entire, overarching compensation system.  *Second*, Plaintiffs fail to plausibly allege that women or mothers as a group are disparately harmed.  Each claims she was harmed by acts of intentional discrimination (different for each Plaintiff); they do not blame a neutral practice that hurts women as a group.  And the Complaint includes no facts or data suggesting any meaningful sex disparities in pay or promotions.

---

[5] Counts 1, 5, 11 and 12 allege sex discrimination under federal and state law.  Counts 2 and 6 allege pregnancy discrimination under federal and California law.

**A.**      A plaintiff asserting a disparate-impact claim must identify a "specific," "facially neutral employment practice" that allegedly causes a disparate impact.  *Wards Cove*, 490 U.S. at 645-46, 656.  It is "not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact."  *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005).  Rather, the plaintiff must identify the "specific test, requirement, or practice within" the overall employment system that causes the discriminatory effect.  *Id.*

The specificity requirement originated as a "safeguard[]" to prevent disparate-impact law from effectively compelling the adoption of quotas.  *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 991 (1988) (plurality op.).  The *Watson* plurality explained that the plaintiff is "responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities," *id.* at 993-94, and therefore cannot impose liability simply by showing a bottom-line discrepancy.  The full Court then adopted that standard in *Wards Cove*: The "plaintiff must demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack."  490 U.S. at 657.

Two years after *Wards Cove*, Congress codified this rule.  A disparate-impact plaintiff must "demonstrate that a respondent uses a *particular employment practice* that causes a disparate impact on the basis of" a protected trait.  42 U.S.C. § 2000e-2(k)(1)(A) (emphasis added).  When an employer's decisionmaking process involves multiple components, the plaintiff must show "that *each* particular challenged employment practice causes a disparate impact," unless the parts "are not capable of separation for analysis," in which case "the decisionmaking process may be analyzed as one employment practice."  *Id.* § 2000e-2(k)(1)(B) (emphasis added).  In either case, the plaintiff bears the burden of identifying at the threshold the challenged practice (individually or, where the requisite showing has been made, collectively).

The specificity requirement applies with full force at the pleading stage.  A plaintiff has an "obligation to identify in [her] pleadings a specific employment practice that is the cause of the disparate impact." *White v. Am. Axle & Mfg., Inc.*, No. 5-cv-72741, 2006 WL 335710, at *3 (E.D. Mich. Feb. 14, 2006).  District courts therefore routinely dismiss complaints that fail to identify a particular employment practice. *See, e.g.*, *Brown v. Wyndham Hotel Mgmt. Inc.*, No. 16-cv-00015, 2016 WL 2595073, at *5 (S.D. Tex. May 5, 2016); *Welch v. Eli Lilly & Co.*, No. 06-cv-0641, 2009 WL 734711, at *6 (S.D. Ind. Mar. 18, 2009); *Combs v. Grand Victoria Casino & Resort*, No. 08-cv-414, 2008 WL 4452460, at *3 (S.D. Ind. Sept. 30, 2008).

The Complaint here fails to challenge a specific employment practice.  Its discrimination counts mouth the language of disparate impact, through conclusory allegations that Plaintiffs were "disparately impacted … as a result of Jones Day's ... policies, practices, and procedures."  FAC ¶ 374; *see also* FAC ¶ 295 (alleging that "Firm's policies and procedures have an ongoing disparate impact on female attorneys"); FAC ¶ 301 (alleging that "Firm's policies, practices, and procedures are not valid, job-related, or justified by business necessity"); FAC ¶ 296 (alleging that "Firm maintains policies and methods ... that promote gender-based inequities" in compensation and promotion).  But Plaintiffs' factual allegations fail to give meaningful content to these generic and conclusory assertions.

Each Plaintiff alleges that certain partners engaged in intentional discrimination against her, but no Plaintiff identifies a specific, facially neutral employment practice that impeded her career at Jones Day.  Mazingo claims one partner worked her "to exhaustion" while giving male associates more leeway (FAC ¶ 123); Stahl says one partner gave her "gendered criticism" and that a female partner only berated female associates (FAC ¶¶ 206, 211); Henderson complains that her female partner mentor verbally "attacked" her but not men (FAC ¶¶ 271-72); Jane Doe 4 claims

13

she was not recommended for partnership because, *inter alia*, she was not "flirtatious" enough with a particular partner (FAC ¶ 249); and Tolton and Draper allege that, despite being treated well at first, they were given unfavorable assignments and penalized after becoming pregnant and taking leave (FAC ¶¶ 70, 86, 102, 156, 164, 174).  Those allegations may state disparate-*treatment* claims that survive a motion to dismiss, but have nothing to do with disparate *impact*.

The Complaint's *introduction* hints at a disparate-impact theory.  There, Plaintiffs assert that "Jones Day's system of 'black box' compensation results in the systematic underpayment of women."  FAC ¶ 32; *see also* FAC ¶ 296 (identifying "black-box pay system" as allegedly discriminatory practice).  But a "black box" is not an identification of a specific employment practice; it is a derogatory label for Jones Day's *overall* evaluation and compensation system.  That does not legally suffice.  "Simply gesturing towards the ... process as a whole will not satisfy the requirement that the plaintiff identify a 'specific employment practice.'"  *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 111 (2d Cir. 2001); *see also Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 325-26 (D.D.C. 2018) ("amorphous decision-making" in "overall selection process" was insufficient to identify specific employment practice); *Bennett v. Nucor Corp.*, 656 F.3d 802, 817-18 (8th Cir. 2011) (rejecting challenge to overall promotions process that involved "variety of measures").  Lumping together every aspect of Jones Day's evaluation, compensation, and promotion regimes, under the inherently non-descript "black box" label, "does not isolate the specific employment practice that is allegedly responsible for the adverse impacts."  *Welch*, 2009 WL 734711, at *8.  Rather, this is just another way of alleging a bottom-line disparity or pointing to a "generalized policy that leads to such an impact," which the Supreme Court has held is legally insufficient, *Smith*, 544 U.S. at 241, and which Plaintiffs also fail to adequately allege in any event, *see infra* Part III.B.

The Complaint's introduction also alleges that Jones Day makes compensation and other decisions based on "subjective" criteria. FAC ¶¶ 33-34. That allegation appears to form part of Plaintiffs' *intentional* discrimination claim, as they call these subjective factors "mere pretext" to underpay women. FAC ¶ 34; *see also* FAC ¶ 11 (alleging that the subjective review process is "manipulated [] to justify pushing women out"); FAC ¶ 296 (alleging that decisions based on "subjective" criteria "are almost invariably infected with gender bias"). Insofar as Plaintiffs are seeking to characterize subjectivity as a "specific employment practice" for disparate-impact purposes, however, that is insufficient to state a claim. A plaintiff does "not identify a 'particular employment practice' within the meaning of Title VII by pointing to all of the subjective elements" in a process. *Davis v. Cintas Corp.*, 717 F.3d 476, 497-98 (6th Cir. 2013). The Supreme Court underscored this point in *Wal-Mart Stores, Inc. v. Dukes*, rejecting as insufficient under *Watson* the claim that a policy of "discretionary decisionmaking" by store managers had caused a disparate impact. 564 U.S. 338, 344-45 (2011). "Merely showing that Wal-Mart's policy of discretion has produced an overall sex-based disparity does not suffice." *Id.* at 357. Lower courts thus dismiss disparate-impact claims that treat "subjectivity" or "discretion" as the practice at issue. *E.g.*, *Brown*, 2016 WL 2595073, at *5 (allegation that evaluation system was "undisciplined, and subjective" insufficient to state a claim); *Welch*, 2009 WL 734711, at *6 (characterizing overall system as "group of subjective practices" insufficient to identify employment practice); *Combs*, 2008 WL 4452460, at *3 (holding that "subjective decision-making cannot be considered a 'specific test, requirement, or practice'" (quoting *Smith*, 544 U.S. at 241)).[6]

---

[6] The pleading deficiency is even more obvious for the pregnancy discrimination counts. Those counts refer, without any detail, to Jones Day's "policies, practices, [and/or] procedures." FAC ¶¶ 374, 416. Plaintiffs otherwise merely recount allegations of intentional discrimination against particular pregnant women or mothers, which cannot support a disparate-impact claim. *E.g.*, FAC ¶¶ 37-40, 86-89, 164.

The other practice that the Complaint's introduction attacks is "keeping compensation confidential." FAC ¶ 36. But confidentiality cannot logically be (and is not alleged to be) the *cause* of sex-based pay disparities. At most, confidentiality may allow disparities to escape notice. *But see* FAC ¶ 280 (Henderson learned of alleged pay disparity in 2015 from another associate). But those disparities, if they exist, must be attributable to some other aspect of Jones Day's compensation system. That is what Plaintiffs must identify to state a claim, and they fail to do so.

Finally, Plaintiffs are not aided by the statutory exception to the specificity requirement, which applies if a plaintiff "demonstrate[s] ... that the elements of a respondent's decisionmaking process are not capable of separation for analysis." 42 U.S.C. § 2000e-2(k)(1)(B). Plaintiffs do not allege that this exception applies, or allege facts that justify an inference to that effect. A plaintiff "cannot circumvent the requirement that [she] identify a specific employment practice by making a conclusory assertion that the hiring process as a whole is incapable of separation for analysis." *Kulkarni v. City Univ. of N.Y.*, No. 1-cv-10628, 2002 WL 1969676, at *1 (S.D.N.Y. Aug. 23, 2002); *see also White*, 2006 WL 335710, at *3; *Welch*, 2009 WL 734711, at *8. And, if anything, Plaintiffs' particular allegations imply that the steps of the review process *are* "capable of separation." 42 U.S.C. § 2000e-2(k)(1)(B). They admit that the Firm conducts "a very thorough annual evaluation process," producing "a substantial amount" of data, including evaluations by supervisors, billable-hours reports, and a "consensus statement" meant to "capture[] the associate's overall performance." FAC ¶¶ 8, 10. If one of these steps had an adverse impact on women or mothers, Plaintiffs could have identified it. Instead, they allege they were harmed at *different* steps of this process, implying that the steps *can be* separated. *E.g.*, FAC ¶¶ 110, 113 (Mazingo alleges she was paid less than men despite "no negative reviews"); FAC ¶¶ 213-216 (Stahl alleges "discriminatory" negative reviews).

16

**B.**     A disparate-impact plaintiff must also link the challenged employment practice to an adverse effect on the protected group.  There must be "some factual content in the complaint tending to show that the [employment practice] caused a relevant and statistically significant disparity."  *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014); *see, e.g.*, *Townsend v. United States*, 236 F. Supp. 3d 280, 309 (D.D.C. 2017) (dismissing disparate-impact claim for this reason).  It is not enough to use "some disparate-impact buzzwords"; rather, there must be plausible allegations tying "the challenged employment practices" to disparate results.  *Knox v. PPG Indus., Inc.*, No. 2:15-cv-1434, 2016 WL 279004, at *7 (W.D. Pa. Jan. 22, 2016).

Here, the Complaint is heavy on buzzwords and light on well-pleaded factual allegations.  "Upon information and belief," Plaintiffs allege that "Jones Day facilitates [a] discriminatory pay system," and that partnership decisions form "part of the Firm's standard operating procedure of gender discrimination."  FAC ¶¶ 30, 36.  But the Complaint fails to plausibly allege an adverse effect on women (or pregnant women) as to either pay or promotions, and certainly fails to tether any disparity to a specific employment practice as the law requires.

Starting with promotions to the partnership, the Complaint includes no allegations about the number of male associates who were promoted during the relevant time period relative to the number of female associates—even though this data is publicly available.  This is the fundamental substance of a disparate-impact claim: the disparate impact itself.  To be sure, Plaintiffs may not need detailed statistical analysis at this stage of the litigation, but they do need enough factual material to make the claim of disparate-impact plausible.  *See Adams*, 742 F.3d at 733 (affirming dismissal of disparate-impact claim because plaintiffs made no allegations "about the number of applicants" or the demographic "makeup of the applicant pool as compared to [those] promoted"); *Knox*, 2016 WL 279004, at *7.  This Complaint does not provide that factual material.

The Complaint does offer one anecdote: Doe 4 says a "male counterpart" was proposed for partnership consideration two years in a row (once unsuccessfully) instead of her.  FAC ¶¶ 256-257.  She does not allege any facts from which one could plausibly infer that the male lawyer was less qualified.  Certainly, the allegation that Doe 4 attended "more prestigious undergraduate institutions" and had "clerked for a judge" (*id.*) do not plausibly show that she was more qualified, many years later, to assume the responsibilities of partnership.  Anyway, "[a]n adverse effect on a single employee, or even a few employees, is not sufficient to establish disparate impact." *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 121 (3d Cir. 1983).

The Complaint also alleges that "male partners outnumber female partners three to one." FAC ¶ 31.  That too is obviously insufficient, as it does not isolate the effect of internal promotion decisions over the time period relevant to this suit.[7]  The current composition of the partnership is a function of law school admissions, hiring, and partnership decisions spanning more than 40 years.  There is a reason why Plaintiffs make no specific allegations about the impact of Jones Day's policies in the relevant period: Over the last two years, 48% of the U.S. associates promoted to partner were women, and over 70% of them had taken family leave.  Answer at 1-3.

The allegation that the Firm's Managing Partner has final decision-making authority over partnership decisions does not plausibly identify a common practice that caused a disparate impact on Plaintiffs.  None of the Plaintiffs claim that they were ever recommended for partnership by their practice or office or that the Managing Partner actually was called upon to make any decision regarding their advancement.  Jane Doe 4 complains that unidentified "Firm management" told

---

[7] The same is true of the allegation that Jones Day's Irvine office "lacked any internally-promoted female partners."  FAC ¶ 144.  The Complaint is silent as to the number of male partners promoted over the relevant time, as well as the number of male and female associates who were eligible for partnership.  And, of course, Plaintiffs' claim is not limited to Irvine.

her she was *not* being recommended for partnership consideration (FAC ¶¶ 256-257); the other Plaintiffs all left the Firm years before they would have been eligible for partnership consideration. Indeed, no Plaintiff alleges any facts from which one could plausibly infer that the Managing Partner had any role in their evaluation, work opportunities, advancement, or promotion.

Turning to compensation, the Complaint likewise fails to allege sufficient facts to justify a plausible inference that women are, on the whole, paid less than men for equivalent work.  The "considerations" that control associate compensation decisions, according to the Complaint, are represented by each associate's annual performance review.  FAC ¶ 10.  But Plaintiffs do not allege facts showing that women fare worse on these reviews than men.  Actually, their allegations are to the contrary: Mazingo alleges that "[e]very attorney with whom [she] worked gave her excellent reviews" and that "she had no negative reviews."  FAC ¶ 110.  Tolton too says her reviews were "overwhelmingly positive."  FAC ¶ 91.  Williams and Draper each alleges that she received her "first negative annual review" after multiple years at the Firm.  FAC ¶¶ 145, 189.  Henderson implies that she received negative reviews her first year, but a "positive review" the next one.  FAC ¶¶ 279, 283-284.  Stahl says that her reviews "reflected the Firm's discriminatory view" in that she was allegedly "criticized ... for looking insufficiently enthusiastic," but admits that "feedback on [her] work was positive."  FAC ¶¶ 213-215.  And Doe 4 alleges that she "only received high praise from those for whom she worked," but she also mentions "baseless criticism in her reviews." FAC ¶¶ 241-242.  Thus, of the seven Plaintiffs, two say their reviews were uniformly positive; two say their reviews began positive and became negative later, while another alleges the reverse; one claims the reviews of her work were "positive" but criticisms of her attitude were "discriminatory"; and the last contradicts herself about the content of her reviews.  As a whole, this cannot support an inference that Jones Day's associate review system has a sex-based disparate impact.

Nor do Plaintiffs plead sufficient facts to justify an inference that the Managing Partner's role in compensation decisions creates an adverse impact—*i.e.*, that he gives women lower pay raises, even if they do equally well on their reviews. The Complaint alleges that the Managing Partner is the "final decision-maker" on pay (FAC ¶ 6), but it includes no factual allegations to suggest that his decisionmaking causes a disparate impact. The Complaint does not allege, for example, that the Managing Partner—who has promoted hundreds of women partners during his tenure—has sexist views, prefers male associates, or thinks mothers cannot succeed as lawyers. Indeed, beyond describing his "power" (FAC ¶ 5), the Complaint includes zero allegations about the Managing Partner—not even a single anecdote. And Plaintiffs' individual allegations, again, are so disuniform that they cannot support a reasonable inference that the Managing Partner's decisionmaking role creates a systemic adverse impact on pay.

Even if one improperly conflates all of the steps in Jones Day's compensation system, the Complaint still does not plausibly allege a sex-based pay disparity. Its first paragraph claims that female associates "earn less for equal work" (FAC ¶ 1), but that "bare assertion[]," untethered to any supporting facts, is "not entitled to be assumed true." *Iqbal*, 556 U.S. at 680-81. The rest of the Complaint reiterates generalized complaints, on "information and belief," about sex-based pay disparities, but provides no well-pleaded factual allegations to ground those conclusory statements. Plaintiffs make conclusory allegations that they, individually, were paid less than comparable male associates. For reasons explained below, *infra* Part IV, those allegations fail on their own terms. Regardless, a handful of anecdotes does not state a plausible disparate-impact claim.[8] *Townsend*,

---

[8] The seven Plaintiffs are 1% of the female lawyers who have worked in the Firm's 14 offices in the United States over the past three years. Five of the seven (in four different offices) were performing below expectations or at a level that did not make them eligible for partnership consideration. It is not surprising that lawyers who fail—perhaps for the first time in their lives— seek to blame anyone other than themselves. But their personal experience is not sufficient to show that they were the victims of disparate-impact discrimination.

236 F. Supp. 3d at 309 ("mere anecdotal evidence" does not "permit a reasonable inference of disparate impact"); *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 199 (D.D.C. 2017) (rejecting class settlement because, *inter alia*, "anecdotal allegations of the two named plaintiffs fall short of giving rise" to plausible inference of "discrimination against the entire class").[9]

At bottom, certain Plaintiffs adequately allege, for purposes of a motion to dismiss, that they were subjected to intentional discrimination based on gender or pregnancy. That suffices to let their disparate-treatment claims proceed to discovery (which will refute them). But the Complaint does not trace Plaintiffs' alleged injuries to any specific employment practice, let alone a practice that imposes a systematic disadvantage on women or pregnant women as a group.

## IV.   PLAINTIFFS HAVE NOT STATED VIABLE EQUAL PAY ACT CLAIMS (COUNTS 4, 8, AND 13).

Plaintiffs press pay-equity claims under the federal Equal Pay Act, 29 U.S.C. § 206(d)(1) ("EPA"), and its California and New York counterparts, Cal. Lab. Code § 1197.5; N.Y. Labor Law § 194. But while most of the Plaintiffs make bare, conclusory assertions of sex-based disparate pay, none of them fleshes out those assertions with the type of factual allegations that courts demand to proceed past the pleadings—namely, descriptive identification of male comparators who earned higher pay for equal work. Instead, the Complaint does little more than repeat the elements of the cause of action. That does not suffice. *See Iqbal*, 556 U.S. at 678.

To establish a *prima facie* case under the EPA, a plaintiff must show that "her employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar

---

[9] Again, the pregnancy claims fare even worse. The Complaint includes only boilerplate assertions that pregnant women and those who take family leave are paid and promoted less than others. FAC ¶¶ 375, 415. Tolton and Draper may state claims for disparate treatment based on pregnancy or family leave, but the Complaint reflects a "complete lack of factual content directed at disparate-impact liability." *Adams*, 742 F.3d at 733.

working conditions.'" *Gaujacq v. Electricite de France Int'l N. Am., Inc.*, 572 F. Supp. 2d 79, 91 (D.D.C. 2008) ((quoting 29 U.S.C. § 206(d)(1)). "Although the plaintiff need not establish a *prima facie* case at [the pleading] stage, these elements provide an outline of what is necessary to render a plaintiff's … claims for relief plausible." *Lehman v. Bergmann Assocs., Inc.*, 11 F. Supp. 3d 408, 420 (W.D.N.Y. 2014). California and New York law follow suit. *See id.* at 420 n.6; *Hall v. Cty. of Los Angeles*, 148 Cal. App. 4th 318, 324 n.4 (Cal. Ct. App. 2007).

To state a plausible EPA claim, it is not enough to allege simply that men were paid more than women. *Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1007-08 (2d Cir. 1991) (affirming with "no difficulty" dismissal of an equal-pay claim whose sole allegation was that the plaintiff "was not receiving equal pay for equal work"). As many courts explain, "[b]ald allegations that male employees were paid more than female employees … will not survive a motion to dismiss." *Suzuki v. State Univ. of N.Y. Coll.*, No. 08-cv-4569, 2013 WL 2898135, at *4 (E.D.N.Y. June 13, 2013); *see also Banawis-Olila v. World Courier Ground, Inc.*, No. 16-cv-982, 2016 WL 4070133, at *3 (N.D. Cal. July 29, 2016); *Muldrew v. Joseph McCormick Constr. Co.*, Civ. No. 14-27, 2014 WL 3890336, at *7 (W.D. Pa. Aug. 8, 2014); *Sherrod v. Prairie View A & M Univ.*, Civ. No. H-10-1858, 2011 WL 843936, at *9 (S.D. Tex. Mar. 8, 2011).

Instead, a plaintiff must allege facts making it plausible that the employer paid men more for "work 'virtually identical' (or the apparent synonym, 'substantially equal') to the plaintiff's in skill, effort, and responsibility." *Spencer v. Va. State Univ.*, 919 F.3d 199, 203-04 (4th Cir. 2019). Indeed, the Act requires a showing of "*equal* work." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014). In assessing equality of work, "job content and not job title or description is the central concern," and so "a plausible EPA claim must … permit the reasonable inference that the relevant employees' job *content* was substantially equal." *Id.* at 255.

For attorney employees, in particular, a plaintiff cannot assume that "all lawyers perform the same or similar functions." *Id.* at 257. The varied tasks lawyers perform require different skills and command different wages in different geographic markets; individual attorneys also have varying experience and productivity and perform at different levels of skill and quality. *See id.* An EPA plaintiff must pay heed to these distinctions when "compar[ing] claimants and comparators." *Id.* at 256-57 (affirming dismissal of claim that treated "all Port Authority nonsupervisory attorneys" as having "the same job"). Allowing a claim on the "sweeping generalization" that all legal jobs are substantially the same "might permit lawsuits against any law firm ... that does not employ a lockstep pay model." *Id.* at 257; *see also Shaffer v. Fayette Cty.*, 163 F. Supp. 3d 280, 294-96 (W.D. Pa. 2016) (male assistant public defender failed to show that female prosecutor performed equal work); *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (law firm associates not similarly situated unless "nearly identical" in "all of the relevant aspects").

Alleging substantially equal work "is a demanding threshold requirement," *Spencer*, 919 F.3d at 203, "typically shown by comparison to a specific male comparator, which must be pled with specificity," *Spencer v. Va. State Univ.*, 224 F. Supp. 3d 449, 456 (E.D. Va. 2016). When a plaintiff does not "offer a male counterpart with a higher salary," courts routinely dismiss. *Bass v. World Wrestling Fed. Ent't, Inc.*, 129 F. Supp. 2d 491, 503 (E.D.N.Y. 2001); *see also, e.g., Alexander v. Marriott Int'l, Inc.*, No. 09-cv-2402, 2011 WL 1231029, at *5 (D. Md. Mar. 29, 2011) (dismissing due to "improper comparator"); *Port Auth.*, 768 F.3d at 256-59 (dismissing where comparators appeared "random"); *cf. Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 439, 452 (S.D.N.Y. 2014) (denying motion to dismiss as to ten plaintiffs who alleged "that an identified male comparator received a higher base salary for performing the same work").

Under these standards, Plaintiffs have not alleged viable EPA claims.  The only factual allegation relevant to all of the Plaintiffs' claims is the assertion that "Plaintiffs know [women are underpaid] because they did not make so-called Cravath market pay," despite Jones Day's stated "inten[t]" to pay consistently high-performing associates "at or above the upper level of the markets in which we operate."  FAC ¶¶ 34-35.  Even putting aside that only one of the seven Plaintiffs alleges that she worked in New York (the only U.S. market in which Cravath operates), that amounts to an allegation that the Firm underpays relative to "market," not that it underpays *women* relative to *men*—and the EPA only forbids the latter.  Indeed, only two Plaintiffs identify male associates in their geographic markets who received higher pay, and those Plaintiffs fail to allege that they performed substantially equal work as those men.  Another four Plaintiffs advance naked allegations of unequal pay, on information and belief, without identifying any comparators at all.  And the last Plaintiff does not make even a bare allegation of unequal pay.

**A.**     The portion of the Complaint setting forth the allegations relating to Tolton does not include even a generic allegation that she earned less than other male associates in her office or elsewhere at the Firm.  She certainly does not identify any male comparators who earned more than she did despite performing substantially equal work.  Indeed, as to Tolton, the only relevant paragraphs of the Complaint are the "Cravath" allegations and the boilerplate in Counts 4 and 8, which—tracking the statute—allege that Jones Day paid Plaintiffs less "than similarly situated male colleagues ... , even though Plaintiffs … performed ... similar duties requiring the same skill, effort, and responsibility."  FAC ¶ 391; *see also* FAC ¶ 435 (California variant).  This is nothing more than a "formulaic recitation of the elements of an unequal pay claim."  *Hughes v. Xerox Corp.*, 37 F. Supp. 3d 629, 645 (W.D.N.Y. 2014).  As explained, "courts routinely dismiss EPA claims pled in this formulaic fashion."  *Lehman*, 11 F. Supp. 3d at 420.

The fact that Tolton may have adequately pleaded other discrimination claims does not alter the analysis.  *See Hughes*, 37 F. Supp. 3d at 649 (dismissing equal-pay claim while allowing discrimination claim to proceed).  Even if a female employee faced disparate treatment, that does not support a reasonable inference that she was paid less than a man for equal work.  *See Barrett*, 39 F. Supp. 3d at 452.  Likewise, even a well-pleaded hostile work environment claim does not supply the factual basis necessary to state an equal-pay claim.  *See Bass*, 129 F. Supp. 2d at 500-03 (dismissing EPA claim but allowing hostile work environment claim to proceed).  A claim of unequal pay for equal work must, in the end, be judged on its own.  Tolton's plainly fails.

**B.**     Mazingo, Williams, Draper, and Stahl each alleges "upon information and belief" that she never earned as much as "comparable" male associates.  FAC ¶¶ 113, 139, 156; *see also* FAC ¶ 205 (Stahl alleges that the Firm "never paid her the so-called market scale that, upon information and belief, it paid to male associates").

To start, the "information and belief" qualifier limits the value of even these conclusory allegations.  After *Iqbal*, a plaintiff may plead on information and belief only "where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible."  *Hedgeye Risk Mgmt., LLC v. Heldman*, 271 F. Supp. 3d 181, 189 (D.D.C. 2017).  As Plaintiffs recognize, employees are free to share their compensation under D.C., New York, and California law.  FAC ¶ 36.  There is thus no reason why Plaintiffs could not have sought facts to ground their allegations by asking former co-workers in those jurisdictions about their salaries.  *E.g.*, FAC ¶ 280 (Henderson alleges that a former male associate in her office told her he received a higher raise).  As to whether the belief "is based on factual information that makes the inference of culpability plausible," that returns the Court to the *Iqbal* inquiry: Have Plaintiffs alleged sufficient facts to render their claim plausible?

Even giving the "information and belief" allegations full weight, their more fundamental defect is that they are "nothing more than bald assertions that [Plaintiffs] and male employees ... received disparate wages for substantially equal jobs." *Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp. 2d 238, 244 (S.D.N.Y. 2001). Plaintiffs supply no factual content for those assertions. They do not allege any information about their male counterparts (*e.g.*, their practice groups, the nature of their work, the quality of their work, their seniority level, or their office location). Plaintiffs certainly do not identify specific male comparators or salaries. These missing pieces render their claims implausible. "[C]ourts have not hesitated to dismiss equal pay discrimination claims where the plaintiff simply alleges, in a conclusory manner with no supporting factual basis, that she was paid less than her male co-workers for the same or similar work." *Hughes*, 37 F. Supp. 3d at 645 (citing cases). If the rule were otherwise, "any law firm ... that does not employ a lockstep pay model" would be subject to suit and full discovery. *Port Auth.*, 768 F.3d at 257.

Again, the fact that some of these Plaintiffs may have well-pleaded discrimination claims of other sorts does not save their equal-pay claims. As explained, neither a disparate-treatment claim nor a hostile work environment claim supplies the facts necessary to state a legally viable equal-pay claim. *See Hughes*, 37 F. Supp. 3d at 649; *Bass*, 129 F. Supp. 2d at 503.[10]

**C.**     The last two Plaintiffs do identify particular male comparators. Their claims nonetheless fail: Doe 4 because she does not allege enough facts about her comparator or his work to push her EPA claim past the plausibility threshold; Henderson because she pleads facts showing that she and her comparator did *not* perform virtually identical work.

---

[10] Williams has a deeper problem. She does not allege viable discrimination at all. *Supra*, Part I. Thus, even if a plaintiff could bootstrap a pay claim to another discrimination claim, her pay claim has nothing to cling to and must certainly be dismissed.

Doe 4 alleges that she earned "about $400,000 per year [less] when compared to at least one junior associate at Jones Day who took a government position and whose compensation was therefore made public." FAC ¶ 237. The problem is that Doe 4 does not allege that this associate performed "virtually identical" work to hers. *Spencer*, 919 F.3d at 203. She is thus implicitly relying on the faulty assumption that "all lawyers perform the same or similar functions." *Port Auth.*, 768 F.3d at 256-57. That is unjustified; as the Second Circuit has explained, a plaintiff cannot rely on "broad generalizations drawn from job titles"; she must detail the work performed and the skill level involved. *Id.* Doe 4 has not alleged any relevant facts about the male comparator: What practice group was he in? What sort of work did he perform? What experience did he have? How did his reviews and productivity compare? Doe 4's failure to supply any facts about this male associate means she has not adequately alleged that he is an appropriate comparator. *Id.*; *Lehman*, 11 F. Supp. 3d at 420; *Bass*, 129 F. Supp. 2d at 503. And, without this male comparator, Doe 4's allegations are just as conclusory as the other Plaintiffs'—and equally subject to dismissal.

Henderson also identifies a comparator—Bret Stancil—who allegedly received a raise of $15,000 to $20,000 when Henderson did not. FAC ¶ 280. And unlike Doe 4, Henderson at least alleges that Stancil was in her class year and office, and alleges facts suggesting that they were in the same practice group. *See* FAC ¶¶ 276-277.[11] But Henderson alleges further facts that *eliminate* any inference that Henderson and Stancil performed "equal work." Specifically, she alleges that Stancil was given "so much work" that he tried to delegate it to others. FAC ¶ 277. By contrast, Henderson alleges that her assignments "began to diminish" after December 2013, just two months

---

[11] Henderson does not provide even that level of detail for the other "male associate, Harrison Golden," who "also received a raise." FAC ¶ 280. Thus, Henderson has not adequately alleged that Golden is an appropriate comparator.

27

after she started at the Firm, and complains she was "denied assignments" and "frozen ... out of work."  FAC ¶¶ 265, 274-275.  To be sure, if not for the statute of limitations, *see supra* Part II, Henderson could perhaps have stated plausible claims for sex discrimination based on this alleged denial of work opportunities.  But, having alleged that she was given no work while Stancil was assigned "so much," Henderson has pleaded herself out of an EPA claim premised on the notion that the two performed "equal work."  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000) ("In some cases, it is possible for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render success on the merits impossible.").

Ultimately, Plaintiffs do little more than articulate a groundless suspicion that they were paid less than men for equal work.  But aside from (flawed) allegations of below-market pay and (inapt) comparisons to associates who were not similarly situated, Plaintiffs offer no plausible factual basis for their claims.  As currently pleaded, the EPA claims should be dismissed.

## V.  PLAINTIFFS HAVE NOT STATED ANY VIABLE RETALIATION CLAIMS (COUNTS 14-16).

Three Plaintiffs (Tolton, Draper, and Doe 4) assert retaliation claims under Title VII and state law.  FAC ¶¶ 502-528.  But their allegations, even accepted as true, do not state viable claims.

Under Title VII as well as California and D.C. law, a retaliation plaintiff must allege that (1) she "engaged in protected activity;" (2) she "was subjected to an adverse employment action;" and (3) "there was a causal link between the protected activity and the adverse action." *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007); *see also Rabara v. Heartland Emp't Servs., LLC*, No. 17-cv-3770, 2019 WL 1877351, at *21 (N.D. Cal. 2019) (California law); *McFarland v. George Washington Univ.*, 935 A.2d 337, 356 (D.C. 2007) (D.C. law).

*First*, "protected activity" means to "oppos[e]" an illegal practice. *Broderick v. Donaldson*, 437 F.3d 1226, 1231-32 (D.C. Cir. 2006).  Not every statement or complaint "garners its author protection." *Id.*  The plaintiff must "clearly complain about unlawful discrimination." *McFarland*,

28

935 A.2d at 360.  A question or statement about a practice, without alleging unlawful action, is not enough.  *See id.*; *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1010 (8th Cir. 2005).  Nor does it suffice to complain about unfair treatment without asserting that the mistreatment is based on a protected trait.  *See Clemmons v. Acad. For Educ. Dev.*, 107 F. Supp. 3d 100, 131 (D.D.C. 2015); *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727-28 (7th Cir. 2003) (complaining about being "picked on," without mentioning discrimination or gender, does not constitute protected activity); *Bilow v. Much Shelist Freed Denenberg Ament & Eiger, P.C.*, 67 F. Supp. 2d 955, 965 (N.D. Ill. 1999) (no protected activity when lawyer did "not allege that she ever complained to the Firm that it was administering [program] in a sexually discriminatory manner").

*Second*, an "adverse employment action" is "a significant change in employment status," such as "firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."  *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009).  After all, "courts cannot be wheeled into action for every workplace slight, even one that was possibly based on protected conduct."  *Taylor v. Fed. Deposit Ins. Corp.*, 132 F.3d 753, 765 (D.C. Cir. 1997).  To state a claim, a plaintiff must allege "materially adverse consequences affecting the terms, conditions, or privileges of employment," resulting in "objectively tangible harm."  *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002).

*Finally*, there must be a causal connection between the protected conduct and the adverse action.  "Temporal proximity" can "support an inference of causation, but only where the two events are very close in time."  *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007).  "Very close" means no more than three or four months' separation.  *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *see also Hamilton v. Geithner*, 666 F.3d 1344, 1358-59 (D.C. Cir. 2012) (suggesting that three months is the upper limit).

Here, each Plaintiff's retaliation claim fails as a matter of law at the pleading stage on at least two of these elements.  None of the three Plaintiffs claiming retaliation has alleged that she engaged in protected activity within the statutory definition.  And even if their conduct qualified as protected, neither Tolton nor Doe 4 alleges an adverse employment action, while Draper has not alleged a plausible causal link to the only adverse action she identifies.  All of the retaliation claims must therefore be dismissed.

    **A.**    Tolton's retaliation claim is based on her allegation that, after she "gave notice that she was leaving the Firm, a number" of associates "approached her with questions about her departure."  FAC ¶ 106.  Tolton allegedly told them that "Jones Day had made it clear to her through its compensation decisions and performance evaluations that she no longer had a future at the Firm."  *Id.*  She claims the Firm "swiftly retaliated."  FAC ¶ 107.  "A few days before her scheduled last day," Tolton, who admits she had done no actual work for six months and was not even in the office, "found herself locked out of her Jones Day email."  *Id.*; *see also* FAC ¶ 104. She was then told that she was "barred … from  returning to the office."  FAC ¶ 107.

    Tolton has failed to plead that she engaged in protected activity or suffered an adverse employment action.  To start, Tolton does not allege that she said anything to her co-workers about unlawful discrimination.  She merely says she told the associates that the Firm had made it clear to her that "she no longer had a future at the Firm."  FAC ¶ 106.  Without more, that statement is not protected activity.  *See Broderick*, 437 F.3d at 1232.[12]

---

[12] The same is true of the allegation that Tolton was penalized for "ask[ing] about the Firm protocols for requesting a reduced-time schedule and notifying the Firm about one's pregnancy." FAC ¶ 84.  That is not tantamount to a complaint of unlawful discrimination.  Regardless, Tolton claims this question caused her raise to be "reduced to $10,000 for that [2014] review period." FAC ¶ 41; *see also* FAC ¶ 85.  Any claim based on that discrete five-year old event is plainly time-barred.  *See* 42 U.S.C. § 2000e-5(e) (300-day limitations period); *Rabara*, 2019 WL 1877351, at *8 (one year under California law); D.C. Code § 2-1403.04(a) (one year under D.C. law).

In any event, Tolton has not alleged an adverse employment action. Being locked out of work email and the office are not adverse actions where one's termination date has already been "irrevocably decided" and the employee is still paid in full. *Connell v. Bank of Boston*, 924 F.2d 1169, 1179 (1st Cir. 1991). By the time Tolton was barred from using Firm email or coming into the office—a "few days before her scheduled last day" (FAC ¶ 107)—Tolton's termination date had already been set, and she does not allege that her salary or benefits were affected. Tolton thus did not suffer any "materially adverse consequences." *Douglas*, 559 F.3d at 552.

**B.**     Draper alleges that she pressed a senior partner, Stephanie Parker, on why Draper was being dismissed from a client litigation team. FAC ¶ 187. When she was told that her billing rate was too high in light of her lack of client-specific trial experience, Draper says she told Parker "this problem was obviously foreseeable" and hence she had been "set up to fail." *Id.* On "information and belief," Draper alleges that her questions "provoked the Firm to retaliate against her going forward," ultimately leading to her termination. FAC ¶ 188.

Like Tolton, Draper has not alleged protected activity. Complaining about being set up to fail is not a complaint about unlawful discrimination. *Pope*, 406 F.3d at 1010. And Draper does not allege that she accused Parker of sex discrimination. Because Draper did not "clearly complain about unlawful discrimination," *McFarland*, 935 A.2d at 360, she has no retaliation claim.

Draper's claim also fails on the causation element. She says that her questions to Parker occurred "a few months" before "the spring of 2017." FAC ¶¶ 186-189. The adverse action that she alleges—being told to find another job—allegedly occurred in May 2018, more than one year later. FAC ¶¶ 191-192. This is too long a gap for temporal proximity to support a "reasonable inference" of retaliation. *See, e.g.*, *Clark Cty.*, 532 U.S. at 273; *Hamilton*, 666 F.3d at 1358-59. Moreover, Draper specifically blames the termination decision not on her complaints to Parker but

rather on her acknowledged lack of trial and deposition experience and an allegedly "false" review provided by a different female partner, Jamila Hall.  FAC ¶¶ 192, 194.  At bottom, there is no plausible link alleged between the actions.  Draper's contrary conclusion "is mere speculation presented as a fact." *Zaidan v. Trump*, 317 F. Supp. 3d 8, 19 (D.D.C. 2018).

    **C.**    Doe 4 claims, "upon information and belief," that when she "questioned the baseless criticism in her reviews," certain Firm partners supposedly "circulated" a "memorandum" within the Firm that "attacked" her "integrity."  FAC ¶ 242.

    There is not protected activity here either.  Doe 4 may have "questioned" a review that she felt was "baseless," but that is not a complaint about unlawful discrimination.  *See Broderick*, 437 F.3d at 1232.  Even if her questioning implies she felt she was treated unfairly, Doe 4 does not allege that she told the Firm that this unfair treatment was *because she was a woman*.  The questioning therefore does not qualify as protected activity.  *Sitar*, 344 F.3d at 727-28 (rejecting claim that objecting to being "picked on" constitutes protected activity).

    Nor has Doe 4 identified any adverse employment action causally tied to her questioning of the review as opposed to performance failures reflected in the review.  She does not claim that the internal memorandum—circulated among unnamed partners, allegedly challenging her integrity—had any impact on her compensation, promotion, termination, or any other condition of employment.  Even "[f]ormal criticisms or poor performance evaluations" are not adverse employment actions "if they did not affect the employee's grade or salary." *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 283 (D.D.C. 2011); *see also Douglas*, 559 F.3d at 552 ("[P]erformance evaluations ordinarily are not actionable under Title VII."); *Broderick*, 437 F.3d at 1234 n.2 (same).  Accordingly, Doe 4 has not stated a legally viable retaliation claim either.

## VI.   THIS COURT LACKS JURISDICTION OVER THE D.C. HUMAN RIGHTS ACT CLAIMS (COUNTS 11, 16, 19, AND 21)

Six Plaintiffs assert four counts under the D.C. Human Rights Act (DCHRA), asserting discrimination, retaliation, wrongful termination, and constructive discharge.[13]   While some of those counts should be dismissed for reasons discussed above, all of the DCHRA claims brought by the publicly named Plaintiffs should also be dismissed because they never worked in the District and they do not plausibly allege that the alleged unlawful acts occurred in the District.   Under D.C. law, this Court therefore lacks subject matter jurisdiction over those claims.

The DCHRA was enacted "to secure an end in the *District of Columbia* to discrimination for any reason other than that of individual merit."   D.C. Code § 2-1401.01 (emphasis added). "The DCHRA is not extraterritorial; it does not and cannot secure an end to discrimination in jurisdictions outside of the District of Columbia."   *Cole v. Boeing Co.*, 845 F. Supp. 2d 277, 284 (D.D.C. 2012).   Thus, "'[e]ither the [adverse employment] decision must be made, or its effects must be felt, or both must have occurred, in the District of Columbia' for there to be jurisdiction under the DCHRA."   *Id.* (quoting *Monteilh v. AFSCME, AFL-CIO*, 982 A.2d 301 (D.C. 2009)).

Plaintiffs have not pleaded facts showing a jurisdictional basis for invoking the DCHRA. To start, the publicly identified Plaintiffs allege that they worked in California, Georgia, and New York—not the District.   *See* FAC ¶¶ 49-53, 55.   Thus, the "effects" of the employment decisions that they challenge were necessarily not "felt" in the District.   *Cole*, 845 F. Supp. 2d at 284.

Nor do Plaintiffs allege facts plausibly showing that the challenged employment decisions were "made" in the District.   *Id.*   This is most obvious for Counts 16, 19, and 21.   The retaliation claims assert that two partners in Irvine barred Tolton from the office (FAC ¶ 107), and that Draper

---

[13] Jane Doe 4's identity and office have not been publicly revealed.  Jones Day thus reserves the right to move dismiss her DCHRA claims once her identity and office are made public.

was punished for questioning a partner in Atlanta (FAC ¶ 188); neither alleges any facts tying these claims to the District. Similarly, on wrongful termination, Tolton and Draper do not allege facts showing that the terminations were ordered from within the District. And, for purposes of constructive discharge, Mazingo, Stahl, and Williams have not alleged that anything happened in D.C. that caused them to quit the Firm. The discrimination claims in Count 11 are more amorphous in nature, but there too, Plaintiffs do not allege any disparate treatment in the District. And while Plaintiffs allege that unspecified "policies and practices" that had a disparate impact were adopted in the District (FAC ¶ 470), that fails for the same reason all of the disparate impact claims fail: Plaintiffs have failed to identify a specific employment practice, much less one "established or ratified" in the District, that had a disparate impact. *See supra* Part III.

The sole alleged connection to D.C. is that "Managing Partner Brogan … work[s] out of the Firm's District of Columbia office." FAC ¶ 555. But that is irrelevant for jurisdiction, unless Brogan is plausibly alleged to have been the decisionmaker for the allegedly discriminatory acts. And while the Complaint includes conclusory, boilerplate assertions that all of the actions were taken "through decision-maker Managing Partner Stephen J. Brogan" (FAC ¶ 470; *see also* FAC ¶¶ 522, 543, 555), Plaintiffs have not alleged any facts plausibly showing as much. Rather, their sole *factual* allegations regarding the Managing Partner are that he has "considerable management authority" and is the "final decision maker on virtually every matter of significance for the Firm," including compensation and admissions to the partnership. FAC ¶¶ 6–8. In the 564-paragraph Complaint, however, there is not a single factual allegation that the Managing Partner had any role in any of the Plaintiffs' assignments, reviews, advancement, promotion, or termination. Moreover, Plaintiffs admit that none of them was ever recommended for partnership. There is thus no basis to infer that the Managing Partner made any decision on any Plaintiff's partnership candidacy.

It is also implausible that the Managing Partner would have had any involvement in the day-to-day decisions regarding these Plaintiffs.  Jones Day has 2,500 lawyers on five continents.  It is inconceivable that the Managing Partner, regardless of the scope of his authority, is personally involved in day-to-day decisions regarding every associate.  Indeed, Plaintiffs' own accounts of their experiences at the Firm do not include a single mention of the Managing Partner.

In short, because the publicly identified Plaintiffs have not alleged the necessary connection to the District, the Court should dismiss their claims under the DCHRA.

## VII.   AS FORMER EMPLOYEES, PLAINTIFFS HAVE NO STANDING TO SEEK INJUNCTIVE RELIEF AGAINST JONES DAY (ALL COUNTS).

Because Plaintiffs no longer work at Jones Day, they lack standing to seek injunctive relief against the Firm.  This Court should dismiss those portions of Plaintiffs' prayer for relief that seek injunctive remedies, and make clear that their claims may proceed only for monetary relief.

All seven Plaintiffs are former employees of Jones Day.  *See* FAC ¶¶ 49-55.  Yet they ask this Court not only to award them monetary relief, but also to enjoin Jones Day "from engaging in any further unlawful practices, policies, customs, and usages."  FAC at 126.  They want the Court to order the Firm to "remedy the hostile work environment," "ensure prompt, remedial action," and "eliminate the continuing effects of the discrimination and retaliatory practices."  *Id.*  They ask for an order "requiring Jones Day to initiate and implement systems for promoting and compensating female attorneys in a non-discriminatory manner."  *Id.*

Plaintiffs lack standing to seek injunctive relief.  Past injuries do not confer standing for prospective relief.  *See In re Navy Chaplaincy*, 697 F.3d 1171, 1175 (D.C. Cir. 2012).  Instead, plaintiffs must show that they are "suffering an ongoing injury or fac[e] an immediate threat of injury." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011).  The Supreme Court has thus held that plaintiffs who are "no longer employed by [a company] lack standing to seek injunctive or

declaratory relief against its employment practices." *Dukes*, 564 U.S. at 364.  When a plaintiff is no longer employed by a defendant, the court "no longer has the ability to give [the employee] injunctive relief," because that relief would not benefit her.  *Brewer v. Lynch*, Civ. No. 08-1747, 2015 WL 13604257, at *9 (D.D.C. Sept. 30, 2015); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 988 (9th Cir. 2011) ("[O]nly current employees have standing to seek injunctive relief."); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 (11th Cir. 1997) (holding that "*former* employees ... do not have standing" to seek "injunctive relief").

Some courts have created an exception to this rule when a former employee seeks to be reinstated to his job at the defendant employer.  *E.g.*, *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 467-68 (S.D.N.Y. 2013).  That exception is misguided.  From a standing perspective, a former employee's "interest in possible reinstatement … is insufficient to establish that [she] ha[s] shown a very significant possibility of future harm."  *Kastroll v. Wynn Resorts, Ltd.*, No. 2:09-cv-2034, 2013 WL 496409, at *3 (D. Nev. 2013).  And the Supreme Court unanimously held in *Dukes* that "all former employees" had to be "eliminate[d]" from the class, as they lacked standing to seek injunctive relief—with no exception for those who demanded reinstatement.  564 U.S. at 364; *see also Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 121-22 (S.D.N.Y. 2012) (holding that *Dukes* precludes former employees from establishing standing for injunctive relief).  In all events, while Plaintiffs list reinstatement as a *potential* remedy for certain counts, they do not actually *request* reinstatement in their (otherwise-comprehensive) prayer for relief.  *See* FAC at 125-27.  Plaintiffs therefore cannot invoke any "reinstatement" exception, even if one exists, and their claims for injunctive relief must accordingly be dismissed.

## **CONCLUSION**

For these reasons, the Court should grant partial judgment on the pleadings to Jones Day as to the claims discussed above.

36

July 29, 2019                              Respectfully submitted,


                                          /s/ Mary Ellen Powers
                                          Mary Ellen Powers (Bar No. 334045)
                                          Beth Heifetz (Bar No. 417199)
                                          JONES DAY
                                          51 Louisiana Avenue NW
                                          Washington, DC 20001
                                          Phone: (202) 879-3939


                                          Terri L. Chase (*pro hac vice* granted)
                                          JONES DAY
                                          250 Vesey Street
                                          New York, NY 10281
                                          Phone: (212) 326-3939

                                          *Attorneys for Defendant*

**APPENDIX**

| Count | Description | Tolton | Mazingo | Williams | Draper | Stahl | Jane Doe 4 | Henderson |
|-------|-------------|--------|---------|----------|--------|-------|------------|-----------|
| 1 | Title VII - Discrimination | x | x | | x | | x | |
| 2 | Title VII - Pregnancy | x | | | x | | | |
| 3 | Family Medical Leave Act | x | x | | x | | | |
| 4 | FLSA Equal Pay Act | x | x | x | x | x | x | x |
| 5 | California - Discrimination | x | x | x | | x | | |
| 6 | California - Pregnancy and Maternity Discrimin | x | | | | | | |
| 7 | California - Family Rights Act | x | x | | | | | |
| 8 | California Equal Pay Act | x | x | x | | x | | |
| 9 | California Unfair Competition | x | x | x | | x | | |
| 10 | California PAGA | x | x | | | | | |
| 11 | DCHRA - Discrimination | x | x | x | x | x | x | |
| 12 | NYC Human Rights Law - Discrimination | | | | | | | x |
| 13 | NY Equal Pay Law | | | | | | | x |
| 14 | Title VII - Retaliation | x | | | x | | x | |
| 15 | California - Retaliation | x | | | | | | |
| 16 | DCHRA - Retaliation | x | | | x | | x | |
| 17 | Title VII - Wrongful Termination | x | | | x | | x | |
| 18 | California - Wrongful Termination | x | | | | | | |
| 19 | DCHRA - Wrongful Termination | x | | | x | | x | |
| 20 | California - Wrongful Constructive Termination | | x | x | | x | | |
| 21 | DCHRA - Wrongful Constructive Termination* | x (?) | x | x | x | x | x | x (?) |
| 22 | NYC - Wrongful Constructive Termination | | | | | | | x |
| | | | | | | | | |

Red:  Judgment on the pleadings is sought as to the entire count with respect to the designated plaintiff

Blue:  Counts as to which partial judgment is sought on disparate impact claims

* The Amended Complaint is inconsistent in alleging that Count 21 is brought on behalf of "All Plaintiffs" and that it is brought on behalf of "Mazingo and Jane Does 1-4," which would exclude Tolton and Henderson.