**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

NILAB RAHYAR TOLTON *et al.*, *on behalf of themselves and all others similarly situated*,

      *Plaintiffs*,

      v.

JONES DAY, a General Partnership,

      *Defendant*.

Civil Action No. 19-945 (RDM)

---

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

# **TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

ARGUMENT ...................................................................................................................3

   I.   Plaintiffs Have Alleged Viable Disparate Impact Claims. ................................... 3

      A.   Plaintiffs Challenge Numerous Identified Employment Practices.................................... 4

         1.   The subjectivity-driven evaluation system is a cognizable employment practice. ............................................................................. 6

         2.   Enforced pay secrecy and de facto policy of suppressing internal grievances are cognizable employment practices. ........................... 8

         3.   Hyper-centralization of subjective decision-making in a single actor is a cognizable employment practice.................................. 9

      B.   Plaintiffs' Detailed Allegations Support an Inference That Jones Day's "Black Box" Practices Have a Disparate Impact on Women. ................. 10

      C.   Jones Day's Counter Arguments are Premature at This Stage........................ 14

   II.   Plaintiffs Have Alleged Viable Equal Pay Act Claims.................................... 16

      A.   Plaintiffs' Detailed Allegations Support an Inference That They Were Paid Less than Male Associates Who Performed Substantially Equal Work. .............. 16

      B.   At the Pleading Stage, Plaintiffs Are Not Required to Identify Specific Comparators by Name; Regardless, Plaintiffs Have Identified Valid Comparators. ....................................................................................... 19

      C.   At the Pleading Stage, Plaintiffs Do Not Have the Burden to Prove They Performed Identical Work to Male Associates. ............................. 21

      D.   Jones Day Should Not Be Allowed to Use Its Black Box Compensation System as a Shield from Judicial Scrutiny. ............................................. 24

   III.   Discriminatory Decisions Made in D.C. Are Barred by the DCHRA .......................... 26

   IV.   Plaintiffs Tolton and Draper Have Viable Claims for Retaliation. .............................. 28

      A.   Plaintiff Tolton Has Stated a Viable Retaliation Claim. ................................ 29

      B.   Plaintiff Draper Has Stated a Viable Retaliation Claim.................................. 32

   V.   Meredith Williams States Plausible Claims....................................................... 33

   VI.   Jones Day Fails to Establish Its Statute of Limitations Defense on the Pleadings. ....... 37

      A.   Henderson's NYCHRL Claims Are Timely. ................................................ 37

      B.   The Court Should Equitably Estop Jones Day from Invoking Any Statute of Limitations Defense as to Henderson's Claims. .......................... 39

   VII.   Plaintiffs Have Standing to Seek Injunctive Relief.................................... 41

CONCLUSION...................................................................................................................43

# TABLE OF AUTHORITIES

**Cases**

*Abdul-Baaqiy v. Fed. Nat'l Mortg. Ass'n*, 149 F. Supp. 3d 1 (D.D.C. 2015) ............................... 28

*Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243 (S.D.N.Y. 2006) ........................................ 40

*Adams v. City of Indianapolis*, 742 F.3d 720 (7th Cir. 2014) ................................................. 10

*Albunio v. City of New York*, 16 N.Y.3d 472 (2011) ............................................................ 38

*Ames v. Johnson*, 121 F. Supp. 3d 126 (D.D.C. 2015) ....................................................... 34

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ................................................ 24

*Arthur Young & Co. v. Sutherland*, 631 A.2d 354 (D.C. 1993) ......................................... 36, 37

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 26

*Banawis-Olila v. World Courier Ground, Inc.*, No. 16-cv-982, 2016 WL 4070133 (N.D. Cal. July 29, 2016) ................................................................................................ 19

*Banner Health Sys. v. Nat'l Labor Relations Bd.*, 851 F.3d 35 (D.C. Cir. 2017) ...................... 9

*Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407 (S.D.N.Y. 2014) ..................................... 25

*Barrett v. Pepco Holdings*, 275 F. Supp. 3d 115 (D.D.C. 2017) ........................................ 34

*Bartlette v. Hyatt Regency,* 208 F. Supp. 3d 311 (D.D.C. 2016) ...................................... 33

*Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853 (9th Cir. 2017) ................................... 42

*Bazemore v. Friday*, 478 U.S. 385 (1986) ..................................................................... 15

*Beck-Wilson v. Principi*, 441 F.3d 353 (6th Cir. 2006) .................................................... 20

*Bell v. Lockheed Martin Corp.*, No. CIV. 08-6292, 2010 WL 3724271 (D.N.J. Sept. 15, 2010) ................................................................................................................. 14

*Bennett v. Health Mgmt. Sys., Inc.*, 92 A.D.3d 29 (N.Y. App. Div. 2011) .......................... 38

*Bennett v. Nucor Corp.*, 656 F.3d 802 (8th Cir. 2011) ..................................................... 5

*Boykin v. Fenty*, 650 F. App'x 42 (D.C. Cir. 2016) ......................................................... 4

*Brewer v. Lynch,* No. 08-1747, 2015 WL 13604257 (D.D.C. Sept. 30, 2015) ....................... 43

*Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015) ...................................................... 9

*Brown v. Wyndham Hotel Mgmt. Inc.*, No. CV H-16-00015, 2016 WL 2595073 (S.D. Tex. May 5, 2016) .................................................................................................. 8

*Bryant v. Pepco,* 730 F. Supp. 2d 25 (D.D.C. 2010) ....................................................... 33

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ...................................... 30

*Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93 (2d Cir. 2001) ............................... 5

*Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281 (D.D.C. 2018) ........................ 5

*Carlson v. CSX Transp., Inc.*, 758 F.3d 819 (7th Cir. 2014) ........................................................ 23

*Carter-Obayuwana v. Howard Univ.*, 764 A.2d 779 (D.C. 2001) ........................................ 30, 32

*Cavalier v. Catholic Univ. of Am.*, 306 F. Supp. 3d 9 (D.D.C. 2018) ........................................ 36

*Chapa v. El Paso Indep. Sch. Dist.*, No. 09-cv-230, 2009 WL 10698730 (W.D. Tex. Sept. 22, 2009) ........................................................................................................................ 40

*Chen-Oster v. Goldman, Sachs & Co. (Chen-Oster I)*, 877 F. Supp. 2d 113 (S.D.N.Y. 2012) ................................................................................................................................ 42

*Chen-Oster v. Goldman, Sachs & Co.* (*Chen-Oster II*), 251 F. Supp. 3d 579 (S.D.N.Y. 2017) ................................................................................................................................ 42

*Chiaramonte v. Animal Med. Ctr.*, No. 13 CIV 5117 KPF, 2014 WL 3611098 (S.D.N.Y. July 22, 2014) ............................................................................................................. 19, 24, 26

*Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426 (7th Cir. 2015) .............................................................................................................................. 8

*Clark v. Marsh,* 665 F.2d 1168 (D.C. Cir. 1981) ........................................................................ 36

*Clay v. Howard Univ.*, 128 F. Supp. 3d 22 (D.D.C. 2015) ................................................... 18, 21

*Clinton v. Perry*, No. 18-cv-991, 2019 WL 652344 (D.D.C. Feb. 15, 2019) ........................ 28, 33

*Combs v. Grand Victoria Casino & Resort*, No. 1:08CV00414RLYJMS, 2008 WL 4452460 (S.D. Ind. Sept. 30, 2008) ............................................................................................ 8

*Connecticut v. Teal,* 457 U.S. 440 (1982) ................................................................................... 14

*Connor v. Office of Atty. Gen. of Texas*, No. 14-cv-961, 2015 WL 1004304 (W.D. Tex. Mar. 5, 2015) ....................................................................................................................... 24

*Cornish v. D.C.*, 67 F. Supp. 3d 345 (D.D.C. 2014) ................................................................... 18

*Davis v. Cintas Corp.*, 717 F.3d 476 (6th Cir. 2013) .................................................................... 8

*Davis v. D.C.*, 925 F.3d 1240 (D.C. Cir. 2019) ................................................................. passim

*Doe 1 v. George Washington Univ*, 369 F. Supp. 3d 49 (D.D.C. 2019) .......................... 28, 31, 36

*E.E.O.C. v. George Washington Univ.*, No. 17-cv-1978, 2019 WL 2028398 (D.D.C. May 8, 2019) ......................................................................................................................... passim

*E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247 (2d Cir. 2014) .......... 23, 25, 26

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ................................................. 42

*English v. Pabst Brewing Co.*, 828 F.2d 1047 (4th Cir. 1987) .................................................... 40

*Ferraro v. N.Y.C. Dep't of Educ.*, 115 A.D.3d 497 (N.Y. App. Div. 2014) ............................... 39

*Finefrock v. Five Guys Ops., LLC*, No. 1:16-cv-1221, 2017 WL 1196509 (M.D. Pa. Mar. 31, 2017) ........................................................................................................................ 19

*Galligan v. Detroit Free Press*, 293 F. Supp. 3d 707 (E.D. Mich. 2018) ................................... 23

*Geiss v. Weinstein Co. Holdings LLC*, No. 17-cv-9954, 2019 WL 1746009 (S.D.N.Y. Apr. 18, 2019) ...................................................................................................................... 41

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ..................................................... 7

*George v. Leavitt*, 407 F.3d 405 (D.C. Cir. 2005) ......................................................... 35

*Ghawanmeh v. Islamic Saudi Acad.,* 672 F. Supp. 2d 3 (D.D.C. 2009) ........................................ 34

*Goodrich v. Int'l Bhd. of Elec. Workers, AFL-CIO*, 712 F.2d 1488 (D.C. Cir. 1983) ................ 16

*Goodrich v. Int'l Bhd. of Elec. Workers, AFL-CIO*, 815 F.2d 1519 (D.C. Cir. 1987) ................ 23

*Gordon v. City of New York*, No. 14CIV6115JPOJCF, 2016 WL 4618969 (S.D.N.Y. Sept. 2, 2016) ................................................................................................ 12

*Gordon v. U.S. Capitol Police*, 778 F.3d 158 (D.C. Cir. 2015) .................................................... 20

*Hedgeye Risk Mgmt., LLC v. Heldman*, 271 F. Supp. 3d 181 (D.D.C. 2017) ........................ 24, 25

*Higgs v. Cava Grp., Inc.*, 239 F. Supp. 3d 257 (D.D.C. 2017) ................................................. 26

*Hoffman v. Hoffman,* 556 N.Y.S.2d 608 (N.Y. App. Div.1990) ........................................... 39, 40

*Holmes v. Univ. of D.C.*, 244 F. Supp. 3d 52 (D.D.C. 2017) .............................................. 35, 37

*Howard v. Gutierrez*, 571 F. Supp. 2d 145 (D.D.C. 2008) ......................................................... 11

*Hunt v. Cont'l Cas. Co.*, No. 13-cv-05966, 2015 WL 5461573 (N.D. Cal. Sept. 16, 2015) ........ 36

*Hylton v. Watt*, No. 17-2023, 2018 WL 4374923 (D.D.C. Sept. 13, 2018)................... 1, 4, 20, 33

*In re Johnson*, 760 F.3d 66 (D.C. Cir. 2014) .......................................................... 8, 13

*In re Navy Chaplaincy*, 697 F.3d 1171 (D.C. Cir. 2012) ............................................... 9

*Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir. 1997) ....................................... 43

*Jbari v. District of Columbia*, 304 F. Supp. 3d 201 (D.D.C. 2018) ........................................... 25

*Jenkins v. New York City Transit Auth.*, 646 F. Supp. 2d 464 (S.D.N.Y. 2009) ........................ 15

*Johnson v. City of Shelby*, 574 U.S. 10 (2014) .................................................................. 5

*Johnson v. District of Columbia*, No. 13-cv-1445, 2015 WL 4396698 (D.D.C. July 17, 2015) ................................................................................................ 34

*Jones v. Amerihealth Caritas*, 95 F. Supp. 3d 807 (E.D. Pa. 2015) ............................................. 22

*Jones v. Bernanke,* 685 F. Supp. 2d 31 (D.D.C. 2010) ........................................................... 33

*Kambala v. Checchi & Co. Consulting, Inc.*, 280 F. Supp. 3d 131 (D.D.C. 2017) ..................... 27

*Kangethe v. District of Columbia*, 953 F. Supp. 2d 194 (D.D.C. 2013)..................... 29, 30, 32, 34

*Kassman v. KPMG LLP*, 925 F. Supp. 2d 453 (S.D.N.Y. 2013) ............................................... 42

*Kastroll v. Wynn Resorts, Ltd.*, No. 09-2034, 2013 WL 496409 (D. Nev. Feb. 6, 2013)............. 43

*Kimmel v. Gallaudet Univ.*, 639 F. Supp. 2d 34 (D.D.C. 2009) ................................................ 29

*Knox v. PPG Indus., Inc.*, No. 2:15-CV-1434, 2016 WL 279004 (W.D. Pa. Jan. 22, 2016) ....... 10

*Koppman v. S. Cent. Bell Tel. Co.*, No. 90-cv-4503, 1992 WL 142390 (E.D. La. June 17, 1992) ................................................................................................ 40

*Kulkarni v. City Univ. of N.Y.*, No. 01 CIV. 10628 (DLC), 2002 WL 1315596 (S.D.N.Y. June 14, 2002) ...................................................................................................... 5

*Landig v. CooperSurgical, Inc.*, No. 216CV07144CASKSX, 2017 WL 5633036 (C.D. Cal. Nov. 20, 2017) ................................................................................................ 36

*Lavin-McEleney v. Marist Coll.*, 239 F.3d 476 (2d Cir. 2001) ................................ 19, 20

*Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76 (D.D.C. 2006). ................... 30

*Levin v. Madigan,* 697 F. Supp. 2d 958 (N.D. Ill. 2010) .......................................... 42

*Lozada v. Hook*, 151 A.D.3d 860 (N.Y. App. Div. 2017) ........................................ 39

*Massarsky v. Gen. Motors Corp.*, 706 F.2d 111 (3d Cir. 1983) ................................. 11

*McManus v. Kelly*, 246 F. Supp. 3d 103 (D.D.C. 2017) .......................................... 34

*McQueen v. City of Chicago*, 803 F. Supp. 2d 892 (N.D. Ill. 2011) .......................... 14

*Menoken v. McGettigan*, 273 F. Supp. 3d 188 (D.D.C. 2017) .............................. 28, 33

*Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82 (D.D.C. 2010) ........................... 30

*Miller v. United States*, 803 F. Supp. 1120 (E.D. Va. 1992) .................................... 41

*Mitchell v. District of Columbia.*, 304 F. Supp. 3d 110 (D.D.C. 2018) ...................... 31

*Monteilh v. AFSCME, ALF-CIO*, 982 A.2d 301 (D.C. 2009) .................................. 26

*Moore v. Napolitano*, 926 F. Supp. 2d (D.D.C. 2013) ............................................. 7

*Motley-Ivey v. District of Columbia*, 923 F. Supp. 2d 222 (D.D.C. 2013) .................. 36

*Muldrew v. Joseph McCormick Constr. Co.*, Civ. No. 14-27, 2014 WL 3890336 (W.D. Pa. Aug. 8, 2014) ................................................................................................. 19

*Munro v. LaHood*, 839 F. Supp. 2d 354 (D.D.C. 2012) .......................................... 28

*Ndzerre v. Wash. Metro. Area Transit Auth.,* 174 F. Supp. 3d 58 (D.D.C. 2016) ........ 32

*Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507 (D.C. Cir. 1995) ............ 22

*Norris v. Wash. Metro. Area Transit Auth.*, 342 F. Supp. 3d 97 (D.D.C. 2018) ........... 29

*Nurriddin v. Bolden*, 40 F. Supp. 3d 104 (D.D.C. 2014) ........................................ 31

*Nurriddin v. Bolden*, 674 F. Supp. 2d 64 (D.D.C. 2009) ........................................ 35

*Nyman v. F.D.I.C.*, 967 F. Supp. 1562 (D.D.C. 1997) ........................................... 23

*Overall v. Estate of Klotz*, 52 F.3d 398 (2d Cir. 1995) ....................................... 39, 40

*Passer v. Am. Chem. Soc'y*, 935 F.2d 322 (D.C. Cir. 1991) ................................... 31

*Phillips v. Cohen*, 400 F.3d 388 (6th Cir. 2005) ................................................... 14

*Potts v. Howard Univ. Hosp.*, 258 F. App'x 346 (D.C. Cir. 2007) ............................ 37

*Powell v. Ridge*, 189 F.3d 387 (3d Cir. 1999), *overruled on other grounds*, 578 F.3d 203, 213 (3d Cir. 2009) ................................................................................................ 4, 5

*Propp v. Counterpart Int'l*, 39 A.3d 856 (D.C. 2012) ............................................. 31

*Pruitt v. Pers. Staffing Grp., LLC*, No. 16 C 5079, 2016 WL 6995566 (N.D. Ill. Nov. 30, 2016) ............................................................................................................................ 12

*Quarles v. Gen. Inv. & Dev. Co.*, 260 F. Supp. 2d 1 (D.D.C. 2003) ........................................... 28

*Raines v. Seattle Sch. Dist. No. 1*, No. C09-203Z, 2012 WL 527065 (W.D. Wash. Feb. 16, 2012) ....................................................................................................................... 19

*Ramirez v. City. of San Bernardino*, 806 F.3d 1002 (9th Cir. 2015) ....................................... 3, 30

*Ramseur v. Perez*, 962 F. Supp. 2d 21 (D.D.C. 2013) .................................................................. 11

*Rattigan v. Gonzales*, 503 F. Supp. 2d 56 (D.D.C. 2007) ............................................................ 32

*Reardon v. Herring*, 191 F. Supp. 3d 529 (E.D. Va. 2016) ......................................................... 22

*Rochon v. Gonzales*, 438 F.3d 1211 (D.C. Cir. 2006) .................................................................. 28

*Romano v. Rockwell Internat., Inc.*, 14 Cal. 4th 479 (1996) ........................................................ 38

*Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174 (D.D.C. 2017) ........................................... 11

*Saltz v. Lehman,* 672 F.2d 207 (D.C. Cir .1982) ........................................................................... 40

*Scott v. Family Dollar Stores, Inc.*, 3:08-cv-540-MOC-DSC, 2016 WL 9665158  (W.D.N.C. June 24, 2016) ........................................................................................................................ 9

*Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105 (4th Cir. 2013).............................................. 8, 9

*Sherrod v. Prairie View A & M Univ.*, Civ. No. H-10-1858, 2011 WL 843936 (S.D. Tex. Mar. 8, 2011) ..................................................................................................................... 19

*Simpri v. New York City Agency for Children's Servs.*, No. 00-cv-6712, 2003 WL 169803 (S.D.N.Y. Jan. 23, 2003).................................................................................................... 22

*Simpson v. N.Y.C. Transit Auth.*, 188 A.D.2d 522 (N.Y. App. Div. 1992) ................................... 40

*Sims v. Sunovion Pharm., Inc.*, No. 17-cv-2519, 2019 WL 690343 (D.D.C. Feb. 19, 2019)....... 37

*Sobel v. Yeshiva Univ.*, 839 F.2d 18 (2d Cir. 1988) ...................................................................... 9

*Spencer v. Va. State Univ.*, 224 F. Supp. 3d 449 (E.D. Va. 2016).............................................. 19

*Spencer v. Va. State Univ.*, 919 F.3d 199 (4th Cir. 2019)....................................................... 19, 22

*St. Jean Jeudy v. City of New York*, 142 A.D.3d 821 (N.Y. App. Div. 2016) ............................. 39

*Stagi v. Nat'l R.R. Passenger Corp.*, 391 F. App'x 133 (3d Cir. 2010) ......................................... 5

*Suzuki v. State Univ. of N.Y. Coll.*, No. 08-cv-4569, 2013 WL 2898135 (E.D.N.Y. June 13, 2013) ................................................................................................................................ 18

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002)............................................................... 20, 21

*Touvian v. District of Columbia*, 330 F. Supp. 3d 246 (D.D.C. 2018) ....................................... 30

*Townsend v. United States*, 236 F. Supp. 3d 280 (D.D.C. 2017)................................................. 10

*United States v. Ironworkers Local 86*, 443 F.2d 544 (9th Cir. 1971) ......................................... 13

*United States v. Maricopa Cty., Ariz.*, 915 F. Supp. 2d 1073 (D. Ariz. 2012) ............................ 14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................. 7

*Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977 (1988).................................... 7, 12, 14

*Welch v. Eli Lilly & Co.*, No. 1:06-CV-0641-RLY-JMS, 2009 WL 734711 (S.D. Ind. Mar. 18, 2009) ............................................................................................................ 8

*Williams v. New York City Hous. Auth.*, 61 A.D.3d 65 (N.Y. App. Div. 2009) .......................... 38

*Winston v. Clough*, 712 F. Supp. 2d 1 (D.D.C. 2010) ................................. 33

*Wise v. Ferriero*, 842 F. Supp. 2d 120 (D.D.C. 2012)................................. 36

*Wu v. Special Counsel*, No. 14-7159, 2015 WL 10761295 (D.C. Cir. Dec. 22, 2015) ........ 1, 4, 15

*Young v. Covington & Burling LLP*, 736 F. Supp. 2d 151 (D.D.C. 2010) .............................. 4, 13

*Zoe G. v. Frederick F.G.*, 617 N.Y.S.2d 370 (N.Y. App. Div.1994) ........................................ 40

## Statutes

29 C.F.R. § 1620.13 .......................................................................................................... 23

42 U.S.C. § 2000e-2.......................................................................................................... 5

N.Y. P'ship Law § 20(1)................................................................................................... 39

N.Y.C. Admin. Code § 8-130 .......................................................................................... 38

**INTRODUCTION**

Plaintiffs Nilab Rahyar Tolton, Andrea Mazingo, Meredith Williams, Saira Draper, Jaclyn Stahl, and Katrina Henderson bring this suit, on behalf of themselves and the classes they represent, against their former employer, Defendant Jones Day ("the Firm"). Plaintiffs allege that the Firm engages in systemic discrimination based on gender, pregnancy, and maternity by means of a "Black Box system" consisting of four primary components: (1) strict pay secrecy, (2) an all-but-formal policy of antipathy toward internal grievances that makes no exception for protected activity (aka "No Whining"), (3) a subjective evaluation system whose design facilitates manipulation by an ultimate decision-maker, and (4) hyper-centralization of key decisions in its Managing Partner. Plaintiffs plead detailed factual allegations about both Jones Day's systemic practices and their own experiences of discrimination and retaliation.

To support Plaintiffs' claims at the pleading stage, "neither prima facie proof nor detailed factual allegations are necessary." *Hylton v. Watt*, No. 17-2023, 2018 WL 4374923, at *4 (D.D.C. Sept. 13, 2018) (Moss, J.) (quoting *Wu v. Special Counsel*, No. 14-7159, 2015 WL 10761295, at *1 (D.C. Cir. Dec. 22, 2015) (citation omitted). "[A] complaint must . . . contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,'" and nothing more. *Id.* Jones Day strives to obscure this standard in its Motion by repeatedly invoking standards applicable at summary judgment and/or class certification. Defendant's Motion for Partial Judgment on the Pleadings (Dkt. 37) (hereinafter "Dft.'s Mot.") This Court should not be fooled. Assessed under the proper pleading standards, Plaintiffs' claims are more than adequate.

*First*, Plaintiffs have stated viable claims for disparate impact discrimination. Plaintiffs allege that Jones Day's facially neutral "Black Box" compensation policy has a discriminatory disparate impact on women. Plaintiffs allege that the system's four constituent parts, operating

individually and in concert, harm female associates, including mothers and pregnant women. *See infra* Section I.

*Second*, Plaintiffs state claims for pay discrimination under the Equal Pay Act (EPA), namely, that male associates who performed substantially equal work were paid more by the Firm. Though Plaintiffs are not required to plead a *prima facie* case of pay discrimination or to point to specific comparators, they have in fact done both. *See infra* Section II.

*Third*, this Court has jurisdiction over Plaintiffs' District of Columbia Human Rights Act (DCHRA) claims because Plaintiffs' allege the Firm centralizes all managerial decision-making power in the hands of its Managing Partner, who governs the Firm from its headquarters in D.C. The D.C. Court of Appeals has held that the DCRHA plainly prohibits discriminatory decisions made in the District. *See infra* Section III.

*Fourth*, Plaintiffs Tolton and Draper have stated viable retaliation claims. Each alleges that the Firm knew she was complaining of discriminatory conduct and punished her for those complaints. This is more than enough to sustain a retaliation claim; no magic words are required. *See infra* Section IV.

*Fifth*, Plaintiff Williams has stated viable discrimination claims. She alleges that she was denied advancement opportunities, was underpaid, and received an unwarranted performance review as a result of the Firm's fraternity culture, its endorsement of gendered stereotypes, and its discriminatory policies. Jones Day has fair notice of her claims. *See infra* Section V.

*Sixth*, Plaintiff Henderson's claims are not time-barred, because they were brought within three years and/or tolling applies. *See infra* Section VI.

*Finally*, Plaintiffs have standing to seek injunctive relief because they seek reinstatement into the positions they would continue to hold today but for the Firm's discriminatory practices. If

successful, they would benefit from injunctive relief against discrimination. *See infra* Section VII.

Jones Day's motion should be denied—regardless of which Complaint the Court deems operative.[1] It is time for discovery to move forward toward an adjudication of the merits.

## ARGUMENT

## I.    Plaintiffs Have Alleged Viable Disparate Impact Claims.

All six Named Plaintiffs have adequately stated disparate impact claims.[2] ***First,*** Plaintiffs identify Jones Day's "Black Box" pay system as an employment practice that imposes disproportionate harms on Jones Day's female associates. It does so through at least four constitutive elements (which discovery may reveal as separable practices): (1) a subjective evaluation system whose design facilitates manipulation by an ultimate decision-maker; (2) enforced pay secrecy; (3) an all-but-formal policy of antipathy toward internal grievances ("No Whining") that chills internal grievances and protected activity; and (4) hyper-centralization of final pay, promotion, and related policy decision-making in the hands of Firm Managing Partner Stephen J. Brogan.[3] ***Second,*** Plaintiffs set forth extensive factual allegations specifying how these

---

[1] Plaintiffs primarily cite the First Amended Complaint (Dkt. 27, hereinafter "FAC"), because this was the operative complaint when Jones Day filed its motion. Nonetheless, this Motion is moot, because the Third Amended Complaint (Dkt. 41, hereinafter "TAC") was properly filed (or, at least, they should be granted leave to amend). *See, e.g.*, *Ramirez v. City of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (holding that "an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent'" and thus a pending motion to dismiss a prior complaint must be "deemed moot" by the district court). Plaintiffs will respond to the Motion to Strike in due course.

[2] For purposes of this motion, besides NYCHRL claims, Plaintiffs do not contend that any relevant differences exist for the disparate-impact claims under federal or state laws. And for simplicity, Plaintiffs will refer to women as encompassing mothers and those who are pregnant.

[3] FAC ¶¶ 3-5; 6-8; 10-11; 32; 32-34; 36; 46; 139; 294-303; 333; 342-4; 352-5; 356; 360-361; 374-375; 393-395; 403-404; 415-416; 436-437; 461; 471-472; 484-485; 497-498; TAC ¶¶ 5; 7-9; 11-12; 14-16; 19; 41-43; 47-48; 54; 57; 60; 136; 239-240; 308-317; 347-348; 356-358; 366; 374-375; 388-389; 417; 429; 450; 475; 485; 498; 511.

Firm practices harm women: suppressing pay and promotional opportunities through a subjective evaluation system that facilitates manipulation toward desired decision-maker outcomes; facilitating gender-based pay disparities through enforced pay secrecy; suppressing any redress of such disparate impacts through a Firmwide de facto policy of discouraging, disparaging and punishing dissent; and concentrating final pay, promotion, and other decision-making powers into the hands of a single individual whose desired outcomes are unimpeded by any meaningful structure of accountability.

These allegations well surpass the pleading threshold under Federal Rule 8. *See Boykin v. Fenty*, 650 F. App'x 42, 44 (D.C. Cir. 2016) ("To survive a motion to dismiss a claim of disparate impact . . . a plaintiff must allege that a facially neutral practice or policy has a disproportionate impact on persons [in the protected class]."); *see also Powell v. Ridge*, 189 F.3d 387, 394 (3d Cir. 1999) ("To survive a motion to dismiss, all that the plaintiff must do is plead that a facially neutral practice's adverse effects fall disproportionately on a [protected] group . . . ."), *overruled on other grounds*, 578 F.3d 203, 213 (3d Cir. 2009). At the pleadings stage, "neither prima facie proof nor detailed factual allegations are necessary." *Hylton*, 2018 WL 4374923, at *4 (quoting *Wu*, 2015 WL 10761295, at *1) (internal citation omitted). "[A] complaint must . . . contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,'" and nothing more. *Id.* Here, Plaintiffs' factual allegations allow the Court to draw the reasonable inference that the identified Firm practices inflict disparate harm on female associates.

**A. Plaintiffs Challenge Numerous Identified Employment Practices.**

Plaintiffs challenge Jones Day's "Black Box" decision-making process and its impact on women in pay and promotions. Identification of this policy gives Jones Day "fair notice" of the nature of Plaintiffs' claims and "the grounds upon which [they] rest." *See id.* at *2 (Moss, J.); *Young v. Covington & Burling LLP*, 736 F. Supp. 2d 151, 163 (D.D.C. 2010) (denying motion to

dismiss disparate impact claim even though the "exact nature" of the challenged employment practices were "unclear": "However, again, at this stage in the case, the benefit of all reasonable inferences must be construed in favor of the plaintiff and because it is at least plausible, even if only minimally, that there was a disparate impact . . . resulting from the [challenged] policy . . . the plaintiff is entitled to the benefit of that doubt.").

"There is no legal requirement to use the smallest possible unit of analysis." *Stagi v. Nat'l R.R. Passenger Corp.*, 391 F. App'x 133, 147 (3d Cir. 2010). This is especially so at the pleading stage: Although discovery may show that Defendant's processes for associate compensation and promotions are "not capable of separation for analysis," *see* 42 U.S.C. § 2000e-2(k)(B)(i), Plaintiffs need not so prove before discovery. *See Powell*, 189 F.3d at 396–97 (concluding it would be a too "daunting hurdle were plaintiffs required at the pleading stage, before answers have been filed and before discovery, to identify what specific portion or portions [of the overall challenged practice] is responsible for the alleged inequality").[4] It is enough for present purposes that Plaintiffs' allegations render such a conclusion plausible, and that Jones Day has been given fair notice. *See Johnson v. City of Shelby*, 574 U.S. 10 (2014) (per curiam) ("[Plaintiffs] stated simply, concisely, and directly events that, they alleged, entitled them to damages from the [defendant].

---

[4] Proof would be particularly inappropriate at the pleading stage because such an analysis depends on a granular level of detail typically only available through discovery. Indeed, the authorities on which Jones Day relies are almost uniformly decided at the summary judgment stage with the benefit of full discovery. *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93 (2d Cir. 2001) (affirming dismissal of disparate impact claim after plaintiff failed to show prima face case *at summary judgment*); *Bennett v. Nucor Corp.*, 656 F.3d 802 (8th Cir. 2011) (same); *Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 324-25 (D.D.C. 2018) (dismissing disparate impact claims at *summary judgment* for failing to meet burden that the incapable-of-separation exception should apply); *cf. Kulkarni v. City Univ. of N.Y.*, No. 01 CIV. 10628 (DLC), 2002 WL 1315596, at *1 (S.D.N.Y. June 14, 2002) (summarily concluding that a university's internal division of its faculty together with a related financing system was not an employment practice, but an organizational structure).

Having informed the [defendant] of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim."). Nevertheless, Plaintiffs do separately identify at least four of the "Black Box" system's constituent elements, which discovery may show to be capable of separate analysis and sources of disparate adverse impacts on female associates. Plaintiffs address each in turn.

### 1. The subjectivity-driven evaluation system is a cognizable employment practice.

Plaintiffs allege that Jones Day's associate evaluation system is defined by reviewer subjectivity and an easily manipulable "consensus statement," ultimately leading to less favorable outcomes for women associates.[5] Although Jones Day characterizes the consensus statement as an anodyne paragraph summarizing associate evaluations, hours, and engagements, Plaintiffs allege that the statement "often cherry picks language from individual evaluations without context, emphasizing some aspects of performance while completely overlooking other aspects, and attributing the opinion of one evaluator to that of multiple reviewers." FAC ¶ 11; TAC ¶¶ 15. To the extent the Firm frames its subjective decision-making in terms of alleged criteria or combines it with certain objective markers, this is no defense; rather, it, too, is a specific employment practice amenable to disparate impact analysis. *See Davis v. District of Columbia*, 925 F.3d 1240, 1249 (D.C. Cir. 2019) ("A combination of subjective and objective determinants, too, can count as a sufficiently specific employment practice.")[6]

Under controlling law, Plaintiffs can challenge this practice based on the disparate harms that its inordinate subjectivity inflicts upon female associates: "An actionable 'specific

---

[5] FAC ¶¶ 10-12, 32-34, 147, 198; TAC ¶¶ 12, 14-17, 19, 31, 41, 43-44, 177, 232, 311.

[6] With the Firm on notice from their pleadings, Plaintiffs reserve the right to identify more specific aspects of the employment practices discussed in this memorandum or the operative complaint. *See, e.g.,* FAC ¶¶ 1; 27-29; 80; 150; 161-62; 166; 170; 195-97; 217; 222; 275; 284-85; TAC ¶¶ 36-37; 93; 197; 209; 260; 280; 283; 297-99; 309.

employment practice' might be a set of 'subjective criteria' such as hiring based on personal networks or firing based on a manager's subjective sense of who is best to retain . . . . Disparate impact analysis is 'no less applicable to subjective employment criteria than to objective or standardized tests.'" *Id.* (quoting *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 990 (1988)); *see also id.* at 1250 (describing defendant as having "urg[ed the] district court—**erroneously**—to reject impact claims because 'subjective decisions' are not practices subject to challenge for disparate impact": "A combination of subjective and objective determinants, too, can count as a sufficiently specific employment practice.") (emphasis added).[7]

*Wal-Mart Stores, Inc. v. Dukes* approves of disparate impact analysis under these circumstances. Specifically, *Dukes* explained that plaintiffs may challenge a "companywide evaluation method that can be charged with bias," where "discrimination manifest[s] itself in [pay] and promotion practices in the same general fashion," including through "subjective decisionmaking processes." 564 U.S. 338, 353 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 n.15 (1982)) (internal quotation marks omitted). In contrast to Jones Day's centralized, structured evaluation system, the only "policy" at issue in *Dukes* was the "bare existence of delegated discretion" to local store supervisors to institute certain pay and promotion decision-making processes, i.e. "a policy *against having* uniform employment practices." *Id.* at 355–57 (further noting "[plaintiffs] have not identified a common mode of exercising discretion that pervades the entire company . . . ."). Since *Dukes*, the D.C. Circuit and many others have

_____

[7] Jones Day correctly surmises that Plaintiffs challenge its evaluations system as both intentional and disparate-impact discrimination. *See, e.g.*, Dft.'s Mot. at 11, 13, 15. "Indeed, nothing prevents a plaintiff from challenging a practice as a Title VII violation because it is facially discriminatory and, alternatively, has a disparate impact." *Davis*, 925 F.3d at 1247; *see also e.g. Moore v. Napolitano*, 926 F. Supp. 2d 8 (D.D.C. 2013) (certifying pattern and practice and disparate impact challenges to promotions process).

routinely recognized that subjective or discretion-driven employment practices are amenable to disparate impact analysis.[8] Plaintiffs' allegations fall well within this weight of authority.[9]

### 2. Enforced pay secrecy and de facto policy of suppressing internal grievances are cognizable employment practices.

Plaintiffs also allege that the Firm institutes a "code of silence" about associate pay and a culture of discouraging complaints and retaliating against complainers that together permit gender-based disparities in pay and conditions of employment to continue undetected. *See* FAC ¶ 36; *see also* TAC ¶¶ 47-48. Policies like these that have the effect of locking in discriminatory practices are actionable under a disparate impact theory.[10]

---

[8] *See e.g.*, *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 436 (7th Cir. 2015) ("The [*Dukes*] decision simply does not preclude class certification where subjective decision-making and discretion is alleged."); *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 117 (4th Cir. 2013) (same); *accord Davis v. Cintas Corp.*, 717 F.3d 476, 497 (6th Cir. 2013) (reversing *summary judgment* in defendant's favor; "[E]ven if an employment practice involves subjectivity, it may nonetheless constitute an employment practice for purposes of the disparate impact analysis." (alteration and quotation marks omitted)); *see also Gordon v. City of New York*, 2016 WL 4618969, at *5 (citing *Dukes* for the proposition that "even an employment practice that includes the opportunity for a manager to subjectively evaluate an individual can serve as the basis for a disparate impact claim"). *Cf. In re Johnson*, 760 F.3d 66, 73 (D.C. Cir. 2014) (upholding certification of class post-*Dukes* where, *inter alia*, that the defendant's promotions process had a disparate impact even though "different decision makers no doubt injected some subjectivity into the evaluations of different class members").

[9] Defendants rely on a handful of inapposite out-of-circuit district court cases largely decided on the differential ADEA standard. Dft.'s Mot. at 13. *See Combs v. Grand Victoria Casino & Resort*, No. 1:08CV00414RLYJMS, 2008 WL 4452460, at *3 (S.D. Ind. Sept. 30, 2008) (ADEA case in which plaintiffs did nothing but vaguely reference defendant's "unreasonable and arbitrary methods" and "subjective practices of investigation and decision-making"); *Welch v. Eli Lilly & Co.*, No. 1:06-CV-0641-RLY-JMS, 2009 WL 734711 (S.D. Ind. Mar. 18, 2009) (finding insufficient, in dicta, plaintiffs' total challenge to **all personnel decisions** at the defendant employer **for virtually all employees** based on a performance management process); *Brown v. Wyndham Hotel Mgmt. Inc.*, No. CV H-16-00015, 2016 WL 2595073, at *6 (S.D. Tex. May 5, 2016) (ADEA action in which plaintiff merely alleged that the evaluations process was "subjective" and failed to provide any information as to how it had a discriminatory impact). Here, Plaintiffs' allegations set forth with specificity the four components of Jones Day's overall Black Box system that they challenge.

[10] *See Sobel v. Yeshiva Univ.*, 839 F.2d 18, 23-24 (2d Cir. 1988) (holding that under Supreme Court precedent, liability attaches for "continuing effects" of pre-existing class-wide discrimination; there,

Plaintiffs' allegations that pay secrecy and a de facto policy of grievance suppression by Defendant foster gender discrimination against female associates suffice at the pleadings stage. *See infra* Section I(B). These allegations raise the plausible inference that Jones Day ratifies and facilitates persistent discriminatory inequities for its female associates. Nothing more is required to entitle Plaintiffs to move forward through discovery toward class certification and trial.

### 3. *Hyper-centralization of subjective decision-making in a single actor is a cognizable employment practice.*

Plaintiffs' factual allegations also identify Jones Day's hyper-centralization of power, wherein a single Managing Partner acts as sole ultimate decision maker for associate pay, promotions, and related policies, as an employment practice that causes female associates to be underpaid and promoted less in comparison to their male counterparts.[11] *See infra* Section I(B). That Managing Partner Brogan exercises complete and final decision-making power over associate

---

a system of "guideline" raises prevented adjustments necessary to redress longstanding disparities); *Brown v. Nucor Corp.*, 785 F.3d 895, 916-17 (4th Cir. 2015) (granting certification in employment case based on evidence of "policy of managerial inaction" that allegedly contributed to disparities); *Scott*, 733 F.3d at 110, 116-17 (endorsing claims that employer locked in disparities through, e.g., fixed salary ranges and percentage raises set by performance ratings); *Scott v. Family Dollar Stores, Inc.*, No. 3:08-CV-00540, 2016 WL 9665158, at *3-4, 6 (W.D.N.C. June 24, 2016) (certifying class on remand based on evidence that "built-in headwinds" policy, linking salary to prior experience and pay and locking in resulting disparities through percentage raises, had disparate effect on women); *cf. e.g. Banner Health Sys. v. Nat'l Labor Relations Bd.*, 851 F.3d 35, 38 (D.C. Cir. 2017) (affirming that an enforced secrecy policy concerning pay and employee discipline interfered with "the heart of labor law's concern"); *In re Navy Chaplaincy*, 697 F.3d 1171, 1177 (D.C. Cir. 2012) (acknowledging that a policy of ballot secrecy may have a disparate impact). But, as the foregoing cases (which arose during the class certification context) demonstrate, whether Jones Day's pay secrecy policy actually has a disparate impact is a factual question to be evaluated based on the factual record developed in discovery.

[11] FAC ¶¶ 5-11; *see also* TAC ¶¶ 6-15. Specifically, Plaintiffs allege that because "decisions are made by a single Managing Partner, these evaluations are easily marshaled to justify any given course of action." FAC ¶ 11; *see also id.* ¶ 12 ("Partnership decisions, also made by Managing Partner Brogan, often turn on these consensus statements, which make up in gender stereotypes what they lack in objective justifications[.]").

compensation—and that Plaintiffs were subject to such discriminatory decision-making with respect to their compensation—provides a plausible disparate impact allegation. *See* FAC ¶¶ 8, 12.

### B. Plaintiffs' Detailed Allegations Support an Inference That Jones Day's "Black Box" Practices Have a Disparate Impact on Women.

Collectively, Plaintiffs have alleged an interlocking mosaic of individual experiences, which together render plausible their claims of disparate harm from the identified employment practices. Plaintiffs recount how Jones Day's "Black Box" system operates to disadvantage women, including them: They were underpaid based on their gender.[12] Pay secrecy prevented them from discovering and redressing this pay inequity.[13] The Firm's hostility to dissent chilled gender-based concerns about their employment conditions.[14] Ultimately, their careers at Jones Day ended based on their gender.[15] Mothers and pregnant women experienced this career end particularly hastily and abruptly.[16] The extensive factual content pleaded, taken as true and with all reasonable inferences drawn in Plaintiffs' favor, plausibly shows gender-based disparities tied to the very employment practices that Plaintiffs have identified.[17]

---

[12] FAC ¶¶ 1; 13; 32; 34; 113; 156; 205; 237; 264; 279-80; 296; 329; 337; 343; 352-53; 363; 375; 385; 405; 417; 435; 461(a); 469; 473; 487; 499; TAC ¶¶ 43; 89; 136; 165; 187; 239; 270; 287; 289.

[13] FAC ¶¶ 32; 36; 280; 461(k)-(m); TAC ¶¶ 48; 136; 239-40; 289.

[14] FAC ¶ 139, TAC ¶¶ 4; 54; 57; 314.

[15] FAC ¶¶ 3; 30; 38, 46; 67; 102; 113;  131-33; 136; 140; 150-52; 154-55; 191; 200; 202; 231; 286–88.

[16] FAC ¶¶ 13; 37–38; 46; 67; 102; 155; 171; 189–91; 200;  294–95; 298.

[17] The cases on which Jones Day relies highlight the chasm between this case and those which some courts have frowned upon. *See Townsend v. United States*, 236 F. Supp. 3d 280, 309 (D.D.C. 2017) ("The plaintiff identifies *no other person affected* by reason of age by the reorganization.") (emphasis added); *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014) ("At the pleading stage, some basic allegations of [statistics or comparisons] will suffice. But the amended complaint contains **no allegations of the kind**, **nor any other factual material** to move the disparate-impact claims over the plausibility threshold."); *Knox v. PPG Indus., Inc.*, No. 2:15-CV-1434, 2016 WL 279004, at *7 (W.D. Pa. Jan. 22, 2016) (Plaintiff failed to allege "any facts tending

***First,*** the Amended Complaint's factual allegations plausibly identify gender-based pay inequities. *See infra* Section II. Plaintiffs allege that they were underpaid based on their gender.[18] This is the core of what courts consider sufficient at the pleadings stage. *See Ramseur v. Perez*, 962 F. Supp. 2d 21, 26 (D.D.C. 2013) (holding that because the "gist" of plaintiff's allegations was a practice's disparate racial and gender-based harm, "she has alleged at least an 'elementary' statistical disparity that is sufficient to allow the claim to proceed").[19]

***Second***, Plaintiffs explicitly allege that Jones Day's subjectivity-driven evaluation process penalized them based on their gender.[20] It is plausible that the evaluations process tends to restrict women's opportunities to advance to partnership, including those of the Plaintiffs.[21] These pleadings are enough for plausibility. *See Howard v. Gutierrez*, 571 F. Supp. 2d 145, 160 (D.D.C. 2008) (plaintiffs identified a specific employment practice by "challeng[ing] the performance evaluation process alleged to be excessively subjective, which causes a disparate impact" on a protected group); *see also Gordon v. City of New York*, No. 14CIV6115JPOJCF, 2016 WL

---

to show" disparate impact or to support a conclusion that the challenged employment practices fell more harshly on a protected group.); *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 121 (3d Cir. 1983) (Plaintiff "offered **no evidence** to show that other similarly situated employees were likewise affected . . . .") (emphasis added); *cf. Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 199 (D.D.C. 2017) (finding *only two anecdotes* insufficient for commonality *to certify a class of over 5,500 individuals*).

[18] FAC ¶¶ 1; 13; 32; 34-5; 113; 156; 205; 264; 279-80; 296; TAC ¶¶ 42; 89; 136; 165; 187; 239; 270; 287; 289.

[19] *See also Gordon*, 2016 WL 4618969, at *7 ("[S]tatistical support for such a [disparate impact] claim is unnecessary. Indeed, an allegation on information and belief that a neutral employment practice denied equal employment opportunities to a small number of members of a protected class compared to similarly-situated colleagues suffices." (citations omitted)). The availability of Jones Day's pay data to prove these inequities, only heightens their plausibility.

[20] FAC ¶¶ 3; 8; 10-12; 33-34; 88-91; 102-104; 106; 140; 145-50; 154-55; 189; 191-94; 197-98; 213-16; 297; TAC ¶¶ 14-20; 110; 127; 174-75; 177; 181; 222; 232; 251-52; 311.

[21] FAC ¶¶ 2–4; 12; 22; 30; 31-34; 42; 296-98.

4618969, at *6 (S.D.N.Y. Sept. 2, 2016) (recognizing that disparate effects in "employment procedures could easily be caused by, for example, subconscious stereotypes and prejudices, and, fairly read, the Proposed Complaint allows that interpretation." (citation omitted)); *Pruitt v. Pers. Staffing Grp., LLC*, No. 16 C 5079, 2016 WL 6995566, at *5 (N.D. Ill. Nov. 30, 2016) (allegations that Hispanic workers were routinely favored for certain jobs and African-American laborers were not "plausibly suggests that there is a relevant and statistically significant disparity" sufficient to state a claim). Even the fact that Mazingo alleges she had "no negative reviews" does not foreclose the inference that she would have received better reviews or consensus statements absent gender bias. Moreover, disparate impact refers to *overall* differences *among groups*. The fact that one group member may have escaped one degree of harm fails to render a disparity implausible.

*__Third__*, Managing Partner Brogan's exercise of complete and final decision-making power over associate compensation and promotions allows an inference that implicit, gender-based biases infect his decision-making (even absent allegations of misogynist attitudes), causing inequities in pay and promotions to partnership. Plaintiffs plead that each was locked out of advancement to partnership, and that all partnership decisions are made by Managing Partner Brogan through a system he controls.[22] These allegations raise an inference of a gender-based disparate impact in the partnership promotions process.[23]

The Supreme Court has held that such "discriminatory bias on the part of the same supervisor" gives "cause to believe that . . . claims can productively be litigated at once." *Dukes*, 564 U.S. at 350; *see also Watson*, 487 U.S. at 990-91 (holding that subjective decisionmaking

---

[22] FAC ¶¶ 5-12, 29; 46; 67; 80-81; 113; 119; 121; 132; 136; 140; 150; 154; 183-84; 192; 197; 220; 275-79; 285; 297-98; TAC ¶ 209.

[23] FAC ¶¶ 5-12, 29; 46; 67; 80-81; 113; 119; 121; 132; 136; 140; 150; 154; 183-84; 192; 197; 220; 275-79; 285; 297-98; TAC ¶ 209.

process is amenable to disparate impact analysis, especially when considering decisions of a single decisionmaker); *In re Johnson*, 760 F.3d 66, 73 (D.C. Cir. 2014) (affirming class certification where "every promotion decision was ultimately made by the [same decision maker]"); *see also Young*, 736 F. Supp. 2d at 163 (denying motion to dismiss disparate-impact claim for job assignments "because it is based on a theory that [the defendant's] initial job-assignment had a disparate impact on African–Americans and that she was subjected to that policy each time her job performance was evaluated").

**_Fourth,_** Plaintiffs were held back from discovering and remediating their unequal pay and unduly negative evaluations by the Firm's enforced pay secrecy and its "No Whining" policy. Because women are paid less and receive less favorable reviews, the denial of avenues for redress perpetrates a further negative impact on women by ensuring that these disparities remain entrenched if not exacerbated.[24] The pleadings detail a Firm culture openly hostile to internal grievances or even run-of-the-mill human-resources concerns involving pay or other gender-based discrimination. FAC ¶¶ 42-44; TAC ¶¶ 54-57. Most significantly, Plaintiffs Tolton and Draper were driven out of the Firm, in significant part, by the latter.[25] Both policies are thus plausible sources of pay and promotion disparities at Jones Day.

**_Finally_**, whether Plaintiffs' experiences were in fact typical of the class will be the subject of discovery and statistical analysis. *See United States v. Ironworkers Local 86*, 443 F.2d 544, 551 (9th Cir. 1971) ("In many cases the only available avenue of proof is the use of racial [or gender] statistics to uncover clandestine and covert discrimination by the employer or union involved.");

---

[24] Here, as in *Davis*, Plaintiffs allege that this practice is "facially discriminatory and, alternatively, has a disparate impact." *Davis*, 925 F.3d at 1247.

[25] FAC ¶¶ 41; 67; 83-85; 89-90; 95-96; 100; 103; 106-08; 164-65; 175-77, 184-88; 198; TAC ¶¶ 220-21

*see Bell v. Lockheed Martin Corp.*, No. CIV. 08-6292, 2010 WL 3724271, at *7 (D.N.J. Sept. 15, 2010) ("A common and judicially accepted method for demonstrating [the impact of challenged policies on a protected class] is the use of multivariant regression models." (citation omitted)); *see also Watson*, 487 U.S. at 987 ("The evidence in these 'disparate impact' cases usually focuses on statistical disparities, rather than specific incidents, and on competing explanations for those disparities."). Taking these allegations as true prevents dismissal of these claims at this stage.

### C.   Jones Day's Counter Arguments are Premature at This Stage

Jones Day's counter arguments are premature at this stage. *First*, the Firm objects that Plaintiffs did not include certain data about the gender ratio among its associates recently promoted to partner. Dft.'s Mot. at 18. But this argument mistakes the relevant inquiry and its proper timing: At *summary judgment or class certification*, it may be appropriate to compare the number of female associates promoted with the number seeking promotion, contrasted with the corresponding ratio for male associates, and controlling for appropriate variables. *Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005) (explaining, *at the summary judgment stage*, "In cases involving promotion policies, the relevant inquiry is comparing the number of protected group members benefitting from promotions with the number seeking them; this figure is then contrasted with the corresponding ratio for the non-protected group"); *see also Davis*, 925 F.3d at 1254 (explaining how the Supreme Court rejected a "bottom line" defense long ago) (citing *Connecticut v. Teal,* 457 U.S. 440, 442, 451 (1982)). Plaintiffs do not have access to this data yet, but its availability supports both the plausibility of class claims and the necessity for its prompt production in discovery.  *See United States v. Maricopa Cty., Ariz.*, 915 F. Supp. 2d 1073, 1078 (D. Ariz. 2012) ("It would be inappropriate to require a plaintiff to produce statistics to support her disparate impact claim before the plaintiff has had the benefit of discovery."); *McQueen v. City of Chicago*, 803 F. Supp. 2d 892, 906–07 (N.D. Ill. 2011) (same); *Jenkins v. New York City Transit Auth.*, 646

F. Supp. 2d 464, 469 (S.D.N.Y. 2009) (same); *cf. Wu*, 2015 WL 10761295, at *2 (dismissing disparate impact claims where *the plaintiff conceded* that statistical data was "*unavailable*" and obtaining statistical proof "*is impossible*").

*Second*, Jones Day points out that male partners outnumbering its female partners three to one does not, alone, prove an actionable disparity in recent promotions. Dft.'s Mot. at 18. This fact does, however, increase the plausibility that the male-dominated partnership's decision-making is affected by gender-based biases within, *inter alia*, the evaluations system and the promotions process.[26] And it does raise a plausible inference of discrimination in promotions. To be sure, the Firm may have other explanations for existing disparities, or other statistics it would prefer to highlight—but these attempts to explain away the allegations in Plaintiffs' pleadings are premature.[27] The same is true for Jones Day's assertion that none of the Plaintiffs were eligible for partnership consideration. Dft.'s Mot. at 18. These issues are more appropriately addressed after discovery, including on the relevant variables for statistical analysis. *See Bazemore v. Friday*, 478 U.S. 385, 400 (1986) ("Normally, failure to include variables will affect the analysis' probativeness, not its admissibility" and even "a regression analysis that includes less than 'all measurable variables' may serve to prove a plaintiff's case . . . .") (Brennan, J., joined by all other Members of the Court, concurring in part).

*Finally*, as for Managing Partner Brogan's involvement, despite Jones Day's denials, the Amended Complaint does in fact lay out many allegations that allow for a plausible inference that Brogan controls the evaluations and promotions processes, as well as policies related to work

---

[26] The same is true for the allegation that the Firm's Irvine office completely lacked any internally-promoted female partners. Dft.'s Mot. at 18 n.7.

[27] If Jones Day were to move for summary judgment in the future, this would still be an invalid bottom-line defense. *See Davis*, 925 F.3d at 1254.

opportunities and advancement for female associates. FAC ¶¶ 4; 6-12; 32; 56; 296; TAC ¶¶ 7; 19; 44; 136. Plaintiffs are entitled to the inference—drawn from Jones Day's own longstanding public statements, only partially walked back by Defendant in the few months since the filing of this litigation, TAC ¶¶ 8-10; 12; 42; 44; 69—that he does.

## II.       Plaintiffs Have Alleged Viable Equal Pay Act Claims.

Plaintiffs have stated a claim for relief under the Equal Pay Act (EPA). Each alleges that she worked as hard, billed as many hours, and performed as well as Jones Day's male associates, yet Jones Day paid her male counterparts more. Plaintiffs compare their pay to male associates of the same class year and allege these men were paid on a scale widely used in the industry, whereas Plaintiffs were paid less. These allegations support an inference of pay discrimination, which is all that is required at the pleading stage.

Jones Day's Motion misstates the applicable law. By relying primarily on *summary judgment* cases, the Firm suggests that Plaintiffs must meet an inapplicable evidentiary standard. Yet, at this early stage, Plaintiffs are not required to prove pay discrimination or even to plead a *prima facie* case of pay discrimination. Moreover, dismissal now, before discovery, would permit Jones Day's pay practices to evade judicial scrutiny as a result of its unlawful pay secrecy policy. FAC ¶¶ 32; 36; 461; TAC ¶¶ 42; 47; 136; 239-40. Such an outcome would defy both controlling law and common sense.

### A.  Plaintiffs' Detailed Allegations Support an Inference That They Were Paid Less than Male Associates Who Performed Substantially Equal Work.

The EPA "firmly establishes as federal law the principle of equal pay for equal work regardless of sex." *Goodrich v. Int'l Bhd. of Elec. Workers, AFL-CIO*, 712 F.2d 1488, 1490 (D.C. Cir. 1983) (quotations omitted). At the pleading stage, as Defendant concedes a plaintiff need not establish a *prima fa*cie case of pay discrimination to state a claim. Dft.'s Mot. at 22. Rather, "[i]t

is sufficient . . . to plead that [employees of the opposite sex] performed substantially equal work—and yet were paid differently[.]" *E.E.O.C. v. George Washington Univ.*, No. 17-cv-1978, 2019 WL 2028398, at *5 (D.D.C. May 8, 2019).

Plaintiffs' allegations meet this burden. They allege that they "were denied compensation equal to similarly situated male attorneys by being held back to lesser pay levels than male attorneys who performed substantially similar work" and that they "were not compensated equally to male attorneys who had substantially similar job classifications, functions, titles, and/or duties." FAC ¶ 352. Consequently, they received "lower pay for substantially equal work." *Id.* ¶ 46; *see also* TAC at ¶ 46 ("Jones Day pays female associates less than male associates, even though associates all perform substantially similar work.").

Plaintiffs' allegations are plausible. Plaintiffs allege facts indicating that they were highly qualified for their positions and aggressively recruited by the Firm. *E.g.*, FAC ¶¶ 68–70, 114, 136–138, 156–158, 202–203, 265. They allege facts indicating that they worked tirelessly, billed substantial hours, and affirmatively sought out work. *E.g.*, *id.* ¶¶ 94–98, 101, 112, 129, 145, 164, 172, 207, 268, 270, 275. And, they allege facts indicating that they excelled, achieved strong results for clients, and largely received positive performance reviews. *E.g., id.* ¶¶ 70–76, 87, 91, 101, 110–111, 115–116, 121, 145, 146, 154, 156–160, 162, 182, 190, 195–196, 213, 220, 283. Assumed true, these allegations support an inference that Plaintiffs performed work that was substantially equal in skill, effort, and responsibility to the work performed by top male associates at the Firm. Plaintiffs thus allege they "performed substantially equal work." *George Washington Univ.*, 2019 WL 2028398, at *5.

Next, the Amended Complaint contains specific facts in support of the allegation that Plaintiffs were paid less than male associates. First, Plaintiffs allege that the Firm represents that

associates are paid at market rates, understood to mean that associates are compensated consistent with the industry-standard Cravath pay scale. FAC ¶¶ 34–35, 69, 113. Second, Plaintiffs allege that male associates are *in fact* paid at or above Cravath rates. *Id.* ¶¶ 69, 113, 139, 205. Third, Plaintiffs show the Cravath pay scale. *Id.* ¶¶ 34–36. Finally, Plaintiffs show they were paid less than the Cravath rates. *Id.* ¶ 35. Taken as true, these allegations imply that each Plaintiff was paid less than specific male associates of the same class year, thus satisfying Plaintiff's burden to allege that they "were paid differently" than men.[28] *George Washington Univ.*, 2019 WL 2028398, at *5.

Jones Day's suggestion that the EPA requires greater specificity is baseless. Dft.'s Mot. at 23-24. Courts in this District have allowed EPA claims to proceed with much less. *E.g.*, *Clay v. Howard Univ.*, 128 F. Supp. 3d 22, 31 (D.D.C. 2015) (holding plaintiff stated a claim with the statement that successor "was hired to do the same work as [plaintiff] in the position of Senior Benefits Analyst, and was paid significantly more"); *Cornish v. D.C.*, 67 F. Supp. 3d 345, 361 (D.D.C. 2014) (holding plaintiff stated claim with allegation male comparators "performed job functions that require or entail substantially the same skill, effort, and responsibility" but were paid more) (quotations omitted). In the cases Jones Day cites where EPA claims were dismissed as conclusory—all of which are from other jurisdictions—the plaintiff alleged little more than a cursory suggestion that she was paid less than men, far short of the robust factual matter and detailed context that Plaintiffs offer here.[29]

---

[28] Jones Day's assertion that Cravath operates only in New York is irrelevant. "Cravath pay" and "market pay" are terms used colloquially in the industry to refer to a known pay scale used by some large law firms. *E.g.*, FAC ¶ 34 (referencing "so-called market Cravath market pay"); ¶ 35 & n.12 (referencing "the 'Cravath' market scale" and citing to industry publications); ¶ 205 ("referencing the "so-called market scale"). Whether or not the Cravath pay scale reflects the market has no bearing on Plaintiffs' allegation, which is that male associates were paid at or above these rates while women associates who performed substantially equal work were not.

[29] *See Suzuki v. State Univ. of N.Y. Coll.*, No. 08-cv-4569, 2013 WL 2898135, at *4 (E.D.N.Y. June 13, 2013) (dismissing claim consisting of a single conclusory sentence); *Banawis-Olila v.*

**B. At the Pleading Stage, Plaintiffs Are Not Required to Identify Specific Comparators by Name; Regardless, Plaintiffs Have Identified Valid Comparators.**

Jones Day's insistence that each Plaintiff identify a specific comparator *by name* in the pleadings is not the law. To the contrary, the weight of authority holds that *no comparator is necessary at the pleading stage*. *E.g.*, *Finefrock v. Five Guys Ops., LLC*, No. 1:16-cv-1221, 2017 WL 1196509, at *3 (M.D. Pa. Mar. 31, 2017) ("[C]ases requiring plaintiffs to identify a particular male comparator have done so either at summary judgment or an even later stage of the litigation. . . . [T]he court finds that the motion to dismiss stage is a premature point at which to scrutinize Plaintiffs' allegations regarding male comparators."); *Chiaramonte v. Animal Med. Ctr.*, No. 13 CIV. 5117 KPF, 2014 WL 3611098, at *5 (S.D.N.Y. July 22, 2014) (noting there is no rule that comparator must be named to avoid dismissal). Many federal courts do not even require a specific comparator *after* the development of a factual record. *See Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001) (declining to adopt a rule that a plaintiff must name a comparator *at trial*); *Raines v. Seattle Sch. Dist. No. 1*, No. C09-203Z, 2012 WL 527065, at *5 n.4 (W.D. Wash. Feb. 16, 2012) (noting the Ninth Circuit does not require a comparator *at summary judgment*).[30]

---

*World Courier Ground, Inc.*, No. 16-cv-982, 2016 WL 4070133, at *2-3 (N.D. Cal. July 29, 2016) (dismissing claim based on a single conclusory paragraph); *Muldrew v. Joseph McCormick Constr. Co.*, Civ. No. 14-27, 2014 WL 3890336, at *7 (W.D. Pa. Aug. 8, 2014) (dismissing claim where plaintiff only alleged a recitation of the EPA standard; other allegations concerned race discrimination, which are not actionable under the EPA); *Sherrod v. Prairie View A & M Univ.*, Civ. No. H-10-1858, 2011 WL 843936, at *9 (S.D. Tex. Mar. 8, 2011) (dismissing "compensation claims [that] are no more than a formulaic recitation of the elements of an equal pay cause of action").

[30] The primary authority Jones Day cites in support of its contention that Plaintiffs must each name a male salary comparator—a district court case from another circuit—offers little support. Dft.'s Mot. at 23, 27. *Spencer v. Virginia State University*, 224 F. Supp. 3d 449, 456 (E.D. Va. 2016) stated that pay disparities *may* be shown by comparison to a specific comparator—not that a comparator was necessary. Moreover, *Spencer* primarily relied upon a body of case law surrounding faculty members in highly specialized academic fields. *Id.* Finally, the *Spencer* court dismissed plaintiff's claims *without prejudice*—which Jones Day does not seek here. *Id.* Jones Day also cites *Spencer v. Virginia State University*, 919 F.3d 199, 203 (4th Cir. 2019), the summary

To demand that every EPA plaintiff name a comparator in her complaint would improperly impose a "'heightened pleading' requirement for discrimination cases" even beyond a prima facie case. *See George Washington Univ.*, 2019 WL 2028398, at *6. "At the motion to dismiss stage, the district court cannot throw out a complaint even if the plaintiff did not plead the elements of a prima facie case [of pay discrimination under the EPA]." *Id*. at *5 (quotation omitted)).  Indeed, the Supreme Court, the D.C. Circuit, and this Court have all held that a plaintiff is not required to plead the *prima facie* elements of a discrimination claim. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002) ("The prima facie case is . . . an evidentiary standard, not a pleading requirement."); *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161 (D.C. Cir. 2015) ("As [plaintiff] rightly argues, she need not plead facts showing each of these elements in order to defeat a motion under Rule 12(b)(6).");  *Hylton*, 2018 WL 4374923, at *4 ("[N]either prima facie proof nor detailed factual allegations are necessary.") (Moss, J.) As the Supreme Court has explained, "Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case. Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases." *Swierkiewicz*, 534 U.S. at 512 (2002).

Even looking beyond the pleadings, many Courts have also cast doubt on the usefulness of comparator analysis in proving pay discrimination, suggesting that statistical evidence may be more probative of pay disparities. *E.g., Beck-Wilson v. Principi*, 441 F.3d 353, 363-64 (6th Cir. 2006) (allowing use of statistical evidence to prove pay discrimination); *Lavin-McEleney*, 239 F.3d at 481–82 (same). If a plaintiff can use statistical evidence to *prove* an EPA claim, it would be nonsensical to require a plaintiff to identify a named comparator to *plead* an EPA claim. *See*

---

judgment appeal of the same case, which has no bearing on the pleading requirements.

*Swierkiewicz*, 534 U.S. at 511–12 ("It thus seems incongruous to require a plaintiff . . . to plead more facts than he may ultimately need to prove.").

Moreover, to the extent comparators are necessary, Plaintiffs do in fact provide them. They allege that they were not paid Cravath rates, whereas male associates were. *Id.* ¶¶ 34–36, 69, 113, 139, 205. Plaintiffs' comparators are therefore identifiable by inference: They are the male associates of the same class year who were paid at Cravath rates—information in Defendant's possession, by Defendant's design. Moreover, in response to Jones Day's feigned ignorance, in the operative TAC, Plaintiffs name certain male associates of the same class year, at their offices and in their practice groups, who they allege were paid more. *See* TAC ¶¶ 90, 165, 187, 287. In total, Plaintiffs identify fifteen male associate comparators, more than curing any claimed deficiency.[31]

### C. At the Pleading Stage, Plaintiffs Do Not Have the Burden to Prove They Performed Identical Work to Male Associates.

Jones Day's argument that Plaintiffs "must allege facts" showing they performed work "virtually identical" to male associates—which is "a demanding threshold requirement"— similarly misstates the law. *See* Dft.'s Mot at 22–23. To the contrary, "plausibility standard" that governs the pleading of EPA claims does not require Plaintiffs to plead the laundry list of facts

---

[31]The fifteen comparators identified by Plaintiffs collectively are more than adequate to sustain Plaintiffs Mazingo, Stahl, and Draper's EPA claims. *See* TAC ¶¶ 90, 165, 187, 287. Jones Day promotes a "One Firm Worldwide Culture" where there are "no artificial boundaries" and associates are staffed to matters without regard to geographical office or practice group. *Id.* ¶¶ 46, 54. Likewise, although, Plaintiffs all worked at the Firm for overlapping time periods, even that is not necessary. Plaintiffs may plead comparators whose work preceded or followed their own. *See Clay*, 128 F. Supp. 3d at 31 (holding that plaintiff could—and properly did—plead the existence of "non-immediate" comparators; even boilerplate allegations based upon information and belief were sufficient to withstand a motion to dismiss). Thus, the comparators offered by Plaintiffs Tolton, Williams, and Henderson may substantiate the EPA claims of the other Plaintiffs.

that Jones Day insists is necessary to show substantially equal jobs: **"An EPA plaintiff is not required to "get[] into the equal skill, effort, and responsibility . . . aspects of [the EPA]" to state a claim."** *George Washington Univ.*, 2019 WL 2028398, at *5; *see also Simpri v. New York City Agency for Children's Servs.*, No. 00-cv-6712, 2003 WL 169803, at *3 (S.D.N.Y. Jan. 23, 2003) (denying motion to dismiss even though "[t]he allegations . . . do not establish that [plaintiff and comparator] performed equal jobs requiring equal skill, effort and responsibility" and "would tend to refute any similarity": "plaintiff has put defendant on fair notice of his unequal pay claims. Because no more is required under *Swierkiewicz,* plaintiff's allegations are sufficient."). [32]

The appropriate time to compare the content of a Plaintiff's job duties to the duties of her comparators is *after discovery*, with the benefit of a full evidentiary record. *See George Washington Univ.*, 2019 WL 2028398, at *5 (declining to resolve a factual dispute over the similarities of job duties at the motion to dismiss stage); *Reardon v. Herring*, 191 F. Supp. 3d 529, 549 (E.D. Va. 2016) ("[Defendant] argues that plaintiffs must provide detailed facts concerning comparators' tasks and responsibilities . . . The higher level of factual specificity demanded of the plaintiffs . . . is the sort of detail most appropriately developed through discovery. Requiring such comprehensive factual detail at this stage would be contrary to Fed. R. Civ. P. 8 . . . ."); *Jones v. Amerihealth Caritas*, 95 F. Supp. 3d 807, 813-14 (E.D. Pa. 2015) (refusing to engage in detailed comparison of job duties at pleading stage); *cf. Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827

---

[32] Jones Day's reliance on *Virginia State University*, 919 F.3d at 203–205 is misplaced: this case is neither controlling in the D.C. Circuit nor applicable here because it articulates an evidentiary standard only applicable at summary judgment. *See id.* (dismissing EPA claim at summary judgment for lack of *evidence* "showing the jobs were equal"). The only case from this Circuit cited by Jones Day on this issue, *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995), concerned the evidence set forth by an EPA plaintiff *at trial*—not the pleading stage. Plaintiffs' burden at trial has no bearing on whether they have adequately pleaded an EPA claim.

(7th Cir. 2014) (reversing trial court's dismissal because the lower court improperly relied on summary judgment decisions and applied the wrong standard by faulting plaintiff for not providing "evidence" to support her claims: "of course evidence is not required at the pleading stage").[33]

Attempting to evade these authorities, Jones Day relies heavily on *E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247 (2d Cir. 2014). Dft.'s Mot. at 22-23. This reliance is misplaced. First, *Port Authority* is not binding on this Court, and Jones Day cites no case in this Circuit even relying on or adopting *Port Authority*. Second, *Port Authority*, while nominally decided on the pleadings, was in fact decided after robust factual development. The E.E.O.C. conducted a three-year investigation into pay practices at the Port Authority. *Id*. at 248. The court was openly incredulous that the E.E.O.C. could fail to state a claim when it "had ready access to Port Authority documents and employees." *Id.* at 258. The court accordingly applied a modified standard, but cautioned that pleading requirements are "context-specific" and that "imprecise pleading is particularly inappropriate where the plaintiffs necessarily had access, without discovery to specific information from which to fashion a suitable complaint." *Id.* (quotations and alterations omitted).

That is not the case here. Plaintiffs have had no discovery. Courts routinely disregard *Port Authority* for this reason. *See Galligan v. Detroit Free Press*, 293 F. Supp. 3d 707, 714 n.4 (E.D. Mich. 2018) ("Plaintiffs here have not had an opportunity to conduct their own detailed investigation into Defendants' pay practices. This difference . . . undermines Defendants' reliance

---

[33] Even after discovery, Plaintiffs *still* will not be required to prove that they performed work "virtually identical" to male associates. It is well settled that the work "need not be 'identical.'" *George Washington Univ.*, 2019 WL 2028398, at *4 (quoting 29 C.F.R. § 1620.13(a)); *see also Nyman v. F.D.I.C.*, 967 F. Supp. 1562, 1577 (D.D.C. 1997) ("Equal does not mean identical, but substantially equal."). The dispositive question, to be resolved after factual development, is whether the employees' "primary duties" are "substantially similar." *Goodrich v. Int'l Bhd. of Elec. Workers, AFL-CIO*, 815 F.2d 1519, 1524 (D.C. Cir. 1987).

upon *Port Auth[ority]*."); *Connor v. Office of Atty. Gen. of Texas*, No. 14-cv-961, 2015 WL 1004304, at \*3 (W.D. Tex. Mar. 5, 2015) ("[Plaintiff] has not had three years in which to investigate her claim but rather is in the initial discovery phase of the case. Thus, the [defendant's] reliance on *Port Authority* for its precedential value in this case is misplaced."); *Chiaramonte*, 2014 WL 3611098, at \*6 (distinguishing Port Authority as an "unusual case"). This Court should do so here.

**D. Jones Day Should Not Be Allowed to Use Its Black Box Compensation System as a Shield from Judicial Scrutiny.**

Finally, Plaintiffs may allege pay disparities upon information and belief. "Even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff may still plead facts upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Hedgeye Risk Mgmt., LLC v. Heldman*, 271 F. Supp. 3d 181, 189 (D.D.C. 2017) (Moss, J.) (quotation omitted); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

Here, Plaintiffs submit over 100 pages of specific factual allegations detailing how compensation decisions are made and by whom and setting forth the bases for their inference that they were paid less than male associates. This expansive factual information "make[s] the inference of culpability plausible" even if Plaintiffs do not have firsthand knowledge of the exact compensation paid to male associates. *Hedgeye Risk Mgmt.,* 271 F. Supp. 3d at 189.

More to the point, Plaintiffs allege that they do not have access to compensation data that would allow them to allege disparities on firsthand knowledge, because, as Jones Day publicly states, it requires that "[t]he financial relationship of a lawyer to Jones Day [be] confidential." FAC ¶ 32. Notwithstanding this pronouncement, Jones Day now asserts that "Plaintiffs . . . are free . . . to share their compensation under D.C., New York, and California law" and "[t]here is thus no

reason why Plaintiffs could not have sought facts to ground their allegations by asking former co-workers in those jurisdictions about their salaries." Dft.'s Mot. at 35. That is, Jones Day acknowledges its pay secrecy policy, but asserts that Plaintiffs were free to violate the policy, because it is unlawful. But the question is not whether the policy is lawful (it is not), but whether it operated to deny Plaintiffs access to the compensation data of their peers. It did: "At every possible opportunity, associates are instructed not to discuss their compensation with their colleagues. Jones Day maintains this policy and continues to so instruct associates, even though this policy is facially unlawful." FAC ¶ 36; *see also id.* ¶ 32; TAC ¶¶ 136, 206, 239–40.

In light of this policy, the compensation of other associates remains "peculiarly within the possession and control of the defendant." *Hedgeye Risk Mgmt.*, 271 F. Supp. 3d at 189. Even in the absence of such an expressly unlawful policy, courts recognize that "[i]nformation about how much a coworker is paid would seem to be precisely the type of information Plaintiffs would not have access to until discovery." *Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 432 (S.D.N.Y. 2014). For that reason, Plaintiffs may allege disparities based on information and belief. *See id.* at 452 (finding "Plaintiffs have plausibly stated equal pay act claims" even though "they merely plead 'upon information and belief' that they received lower salaries"); *see also Jbari v. District of Columbia*, 304 F. Supp. 3d 201, 209 (D.D.C. 2018) (allowing discrimination allegations on information and belief); *cf. Port Auth.*, 768 F.3d at 258 (reasoning that the level of rigor and specificity with which a plaintiff should be required to plead an EPA claim turns on whether the plaintiff "had ready access to [the defendant's] documents and employees").

A plaintiff without access to information in the control of a defendant should not be held to an overly exacting standard. Jones Day should not be allowed to insulate its discriminatory pay practices from judicial scrutiny by maintaining an unlawful confidentiality policy. *See*

*Chiaramonte*, 2014 WL 3611098, at *6 ("Defendants have not provided any satisfactory argument as to why Plaintiff should not be able to seek evidence of illegal pay discrimination that might have been unknown to her during her employment. If Defendants have indeed violated the EPA . . . in their salary practices, they should not evade liability simply because they successfully concealed that fact from Plaintiff."). That is "common sense." *Port Auth.*, 768 F.3d at 258 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## III.   Discriminatory Decisions Made in D.C. Are Barred by the DCHRA

Plaintiffs' DCHRA claims challenge discriminatory decisions made in D.C. by Managing Partner Brogan, who maintains his office in this jurisdiction. FAC ¶¶ 4–12; 32; 36; 59; 294–305. The DCHRA reaches all discriminatory decisions made in D.C. *See Monteilh v. AFSCME, ALF-CIO*, 982 A.2d 301, 305 (D.C. 2009) ("Either the decision must be made, or its effects must be felt, or both must have occurred, in the District of Columbia."). Managing Partner Brogan is no exception.

Plaintiffs specifically allege that from his D.C. Office, Managing Partner Brogan:

- "has authority to make all management decisions," FAC ¶ 6, and "is the final decision-maker on virtually every matter of significance for the Firm," *id.*;

- "makes all of the partnership and compensation decisions for the entire firm" and is the final decisionmaker on associate compensation, FAC ¶¶ 7–8; TAC ¶ 41; and

- enforces a "No Whining" culture of hostility towards any dissent, without exception for activities protected by antidiscrimination law, TAC ¶¶ 4, 21, 22, 31, 41, 44, 49, 54, 57, 314.

The fact that key decisions were made in D.C. brings the challenged conduct within the DCHRA's ambit. *See Higgs v. Cava Grp., Inc.*, 239 F. Supp. 3d 257, 260–61 (D.D.C. 2017) ("Plaintiff has

sufficiently alleged that certain decisions underlying her hostile work environment claim were allegedly made in the District of Columbia . . . the DCHRA accordingly applies."); *Kambala v. Checchi & Co. Consulting, Inc.*, 280 F. Supp. 3d 131, 138–39 (D.D.C. 2017) (finding viable DCHRA claim where decision to terminate foreign employee was made in D.C.).

Jones Day's attempts to cast Plaintiffs' allegations as implausible warrant little pause. Plaintiffs' allegations derive largely from Jones Day's own public statements, extant as of the filing of the original Complaint in this case in April 3, 2019. *E.g.* FAC ¶ 6 (quoting Jones Day's website as saying "the Managing Partner has authority to make all management decisions" and "is the final decision-maker on virtually every matter of significance"); *id.* ¶ 7 (quoting a senior partner saying "the managing partner . . . makes all of the partnership and compensation decisions for the entire firm"). Surely Plaintiffs are entitled to take these statements as true at the pleadings stage. *See Kambala*, 280 F. Supp. 3d at 139 ("[A]llegations are sufficient, at this early stage of the litigation, to situate the alleged discriminatory act in the District of Columbia.").

Defendant's argument that Plaintiffs must plead the Managing Partner's involvement in their adverse actions with greater specificity similarly misses the mark. First, Plaintiffs plead that the Managing Partner, who controls all decisions regarding pay, promotions, and terminations, engaged in intentional discrimination. FAC ¶ 470 ("Defendant Jones Day, acting through decision-maker Managing Partner Stephen J. Brogan working out of Jones Day's District of Columbia office, discriminated against [Plaintiffs] . . . by engaging in intentional disparate treatment . . . ."); FAC ¶ 471 ("Jones Day, through decision-maker Managing Partner Brogan, has engaged in an intentional, firm-wide and systemic policy, pattern, and/or practice of discrimination.")

Second, Plaintiffs plead that the Managing Partner controls the policies governing advancement, evaluations, pay, promotions, terminations, and retaliatory punishment. FAC ¶¶ 6,

7-8; TAC ¶¶ 4, 21, 22, 31, 34, 44, 49, 54, 57, 314. These matters within Brogan's control include the policies challenged by Plaintiffs' disparate impact claims. *See supra*, Section I. These allegations that Brogan controls firmwide policies brings Plaintiffs' claims within the DCHRA's ambit. *See Abdul-Baaqiy v. Fed. Nat'l Mortg. Ass'n*, 149 F. Supp. 3d 1, 7 (D.D.C. 2015) (finding DCHRA claim where plaintiff alleged he was fired pursuant to a "policy instituted and enforced [at] headquarters[] located in the District of Columbia").[34] Plaintiffs are entitled to the inference that Managing Partner Brogan made the decisions they here challenge.

## IV.   Plaintiffs Tolton and Draper Have Viable Claims for Retaliation.

"[A] plaintiff alleging a retaliation claim faces a low hurdle at the motion to dismiss stage, and does not need to plead each element of her prima facie case."[35] *Menoken v. McGettigan*, 273 F. Supp. 3d 188, 200 (D.D.C. 2017) (quotation omitted); *see also Munro v. LaHood*, 839 F. Supp. 2d 354, 364 (D.D.C. 2012) (noting the "low burden" to plead retaliation); *Clinton v. Perry*, No. 18-cv-991, 2019 WL 652344, at *5 (D.D.C. Feb. 15, 2019) (noting the "minimal burden" to plead retaliation). "[T]o survive a motion to dismiss all the complaint has to say is the [defendant] retaliated against me because I engaged in protected activity." *Munro,* 839 F. Supp. 2d at 364 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006)). Both Tolton and Draper easily overcome this low hurdle.

---

[34] To the extent Plaintiffs' allegations come up short, any adverse ruling should be deferred so that the parties may conduct limited discovery concerning the true scope of Defendant's discriminatory decision-making in the District. *See Quarles v. Gen. Inv. & Dev. Co.*, 260 F. Supp. 2d 1, 22 (D.D.C. 2003) (deferring ruling on motion to dismiss DCHRA claim to afford plaintiff "an ample opportunity to secure and present evidence relevant to the existence of jurisdiction").

[35] To establish a *prima facie* case of retaliation, plaintiff must show she engaged in protected activity, she suffered an adverse action, and a causal link. *Doe 1 v. George Washington Univ*, 369 F. Supp. 3d 49, 73 (D.D.C. 2019).

## A. Plaintiff Tolton Has Stated a Viable Retaliation Claim.

Tolton alleges she engaged in protected activity and suffered adverse action. She thereby states a case.[36] Tolton alleges she complained that she had no future at the Firm as a result of its discriminatory practices. She pleads that she was "punished for honestly sharing her experience at Jones Day with her coworkers." FAC ¶ 108. She alleges that after colleagues asked about her departure, she told "the truth"—that "Jones Day had made it clear to her through its compensation decisions and performance evaluations that she no longer had a future at the Firm." FAC ¶ 106. Tolton describes these compensation decisions and performance evaluations and why they were discriminatory and unlawful. She pleads that despite her exemplary performance, the Firm froze her salary and told her to seek new employment because she is a woman with children who took pregnancy leave. FAC ¶¶ 67, 70-76, 86–92, 101–04. These allegations support an inference that Tolton complained that the Firm unlawfully discriminated. *See Kimmel v. Gallaudet Univ.*, 639 F. Supp. 2d 34, 44 (D.D.C. 2009) ("With reasonable inferences drawn in [the plaintiff's] favor regarding . . . her attempt to challenge her own discriminatory treatment, the complaint states a claim for retaliation.").

Informal complaints are protected activity. *See Norris v. Wash. Metro. Area Transit Auth.*, 342 F. Supp. 3d 97, 115 (D.D.C. 2018) ("Informally complaining to an employer about discrimination is . . . protected activity."); *Kangethe v. District of Columbia*, 953 F. Supp. 2d 194, 201 (D.D.C. 2013) (holding that opposing unlawful practices is protected "even when the opposition is informal"). And Tolton's complaints unquestionably "involve[d] opposing alleged

---

[36] Jones Day does not contest that Tolton pleads a causal relationship between the protected activity and the adverse action. Nor could it, as Tolton has alleged the Firm retaliated promptly, and temporal proximity supports an inference of causation. *See* Dft.'s Mot. at 29.

discriminatory treatment." *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 91 (D.D.C. 2006).

"[N]o 'magic words' are required." *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 89 (D.D.C. 2010). A complaint must be considered in context and may prove, after factual development, to be protected, even if it does not reference discrimination. *See Kangethe*, 953 F. Supp. 2d at 202 (finding plaintiff was entitled to discovery to show the full context of his alleged protected activity); *Carter-Obayuwana v. Howard Univ.*, 764 A.2d 779, 791 (D.C. 2001) (finding protected activity even where complaint did not mention "discrimination" because its meaning could "reasonably be inferred" from context); *see also Castro-Ramirez v. Dependable Highway Express, Inc.*, 2 Cal. App. 5th 1028, 1046 (Ct. App. 2016) (holding protected activity "can take many forms" and "need not explicitly and directly" allege discrimination). Here, Tolton plausibly alleges her complaints were understood in context to oppose discrimination, which is enough.

Second, Tolton has alleged an adverse employment action. She alleges that after she complained of discrimination, she was locked out of her email, was called by two partners (during her son's birthday party) and barred from returning to the office. FAC ¶ 107. The abrupt shutout, the Court can infer, injured Ms. Tolton as it cut her off from her colleagues, clients, and prospective employers, denied her a dignified transition, and humiliated her among her peers. These indignities, plainly, would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); *see also Touvian v. District of Columbia*, 330 F. Supp. 3d 246, 252 (D.D.C. 2018). Indeed, that was the point—to stop Tolton's complaints.

That Tolton already had a last day and her salary was not altered is no saving grace for Jones Day. "Unlike discriminatory actions, retaliatory actions need not be employment-related or

even occur in the workplace, nor must they result in a materially adverse change in the terms or conditions of one's employment." *Nurriddin v. Bolden*, 40 F. Supp. 3d 104, 116 (D.D.C. 2014) (quotation omitted). Rather, "the significan[ce] of any given act of retaliation . . . will often depend upon the particular circumstances," and therefore, "an action may be materially adverse even if no tangible harm results." *Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49, 73 (D.D.C. 2019) (quotation omitted).

Embarrassing an employee is an adverse action in the retaliation context. *See Passer v. Am. Chem. Soc'y*, 935 F.2d 322, 331 (D.C. Cir. 1991) (finding embarrassment of former employee in front of colleagues was adverse action); *Propp v. Counterpart Int'l*, 39 A.3d 856, 867 (D.C. 2012) (finding adverse action where employer damaged plaintiff's "professional reputation"). Abruptly barring an employee's access does exactly that. *See Mitchell v. District of Columbia.*, 304 F. Supp. 3d 110, 118 (D.D.C. 2018) (finding fact issue as to whether "barring notice . . . would be sufficiently humiliating to dissuade an employee from complaining about discrimination"). Plaintiffs have sufficiently alleged that what Tolton experienced in response to her complaints would have deterred a typical Jones Day associate from making such complaints.[37] And indeed, Plaintiffs allege that was the goal.

---

[37] To the extent more is required, any deficiencies have been cured in the Third Amended Complaint. There, Tolton clarifies that she complained "she was experiencing discrimination on the basis of her pregnancy." TAC ¶ 126. She alleges that she complained to three partners "that she believed Jones Day gave her negative reviews and froze her salary during both maternity leaves because of her pregnancy and maternity leave," telling one partner that the office was "led by a critical mass of insecure bullies." *Id.* ¶ 127. She alleges she was told she was barred from the office because she "badmouthed" the Firm, and that her abrupt expulsion contrasts the dignified transitions given to other departing associates who did not complain about discrimination. *Id.* ¶¶ 128–30. These facts show that Tolton was punished for complaining of unlawful discrimination.

**B. Plaintiff Draper Has Stated a Viable Retaliation Claim.**

Plaintiff Draper also states a claim for retaliation. First, Draper engaged in protected activity, *because the Firm understood her complaints to be about her treatment after her maternity leave*. She alleges that after seeking opportunities for professional growth, she was dismissed from the Tobacco Litigation Group. FAC ¶ 187. She then questioned the partner who dismissed her "in an effort to understand the basis for her dismissal," and, after being told her billing rate was too high for the group, she stated that the Firm "had set her up to fail." *Id.* In its full context, this complaint could be understood to mean that she was set up for failure because she was a woman who took maternity leave. *See Kangethe*, 953 F. Supp. 2d at 201–02 (finding protected activity where employee sent an "email to Human Resources asking for an 'update' on compensation" as context could prove he was opposing unlawful activity); *Carter-Obayuwana.*, 764 A.2d at 791 (finding protected activity where meaning could "reasonably be inferred" from context).

Draper is not required to invoke "magic words." *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 77 (D.D.C. 2007). Draper had been asked to join the Tobacco group immediately upon her return from protected maternity leave. FAC ¶¶ 171–76. But, upon joining the group, she found that the Firm placed her there to forestall her successful return from leave. FAC ¶¶ 180–87. Under these circumstances, the Court can infer that the Firm would have understood her complaints about her treatment upon joining the Tobacco group to refer to her treatment upon return from leave.

Second, Draper has alleged a causal relationship between her protected activity and her termination. She alleges that the partner who asked her to join the Tobacco group and was present when she complained about discriminatory treatment after joining the group was also responsible for issuing a pretextual and false performance review that precipitated her eventual termination. FAC ¶ 189. This is enough. *See Ndzerre v. Wash. Metro. Area Transit Auth.,* 174 F. Supp. 3d 58, 66 (D.D.C. 2016) (finding bare assertion of causality sufficient to survive dismissal); *Bartlette v.*

*Hyatt Regency,* 208 F. Supp. 3d 311, 323 (D.D.C. 2016) (finding causality even where supervisors engaged in protected activity were not involved with adverse action); *Jones v. Bernanke,* 685 F. Supp. 2d 31, 39–40 (D.D.C. 2010) (finding assertion that performance evaluation was given in retaliation for protected activity sufficient); *Bryant v. Pepco,* 730 F. Supp. 2d 25, 32 (D.D.C. 2010) (finding causality but noting plaintiff could have pled with more specificity).

Jones Day's claim that there is too long of a gap between Draper complaining and her termination is beside the point. "[A] causal connection between the protected activity and the adverse action is the essential element of a retaliation claim; temporal proximity is not." *Winston v. Clough*, 712 F. Supp. 2d 1, 11 (D.D.C. 2010). In other words, "temporal proximity is not the only way to allege causation." *Menoken*, 273 F. Supp. 3d at 202. Draper alleges she has complained about her post-maternity leave treatment, was later terminated, and the reasons given for her termination were false, suggesting that the true reason was her willingness to complain. This satisfies her "minimal burden." *Clinton*, 2019 WL 652344, at *5.[38]

## V.     Meredith Williams States Plausible Claims.

Plaintiff Meredith Williams has given Jones Day "fair notice" of her gender discrimination claims. *Hylton*, 2018 WL 4374923, at *2. Williams alleges that the Firm maintains a discriminatory culture that denies women privileges such as mentorship and advancement opportunities, that it effects discrimination through manipulated performance reviews, and that it maintains a fraternity culture that negatively stereotypes women. She also alleges that she was

---

[38] Even if more is needed, any deficiencies have been fully cured in the Third Amended Complaint. Draper there alleges additional facts that support an inference that she was terminated because she questioned the Firm's treatment of women. She alleges that she asked two senior partners "how to navigate a work relationship where she had reason to believe a female partner was unsupportive of other female attorneys," and, in response, the Firm "redoubl[ed] its efforts to push her out." TAC ¶¶ 220–21. She also provides additional factual context suggesting the reasons given for her termination were false and asserted as pretext for retaliation. FAC ¶¶ 227–28, 232.

underpaid and given an unwarranted negative review that ended her career at Jones Day because of her gender. These allegations provide fair notice of her claims.

The bar for a plaintiff to survive a motion to dismiss is low:

> [A]t the motion to dismiss stage, the district court cannot throw out a discrimination complaint even if the plaintiff did not plead the elements of a prima facie case. . . . [T]he only question before [the Court] is whether [the plaintiff has] alleged facts that, taken as true, render h[er] claim of [discrimination] plausible.

*McManus v. Kelly*, 246 F. Supp. 3d 103, 112 (D.D.C. 2017) (Moss, J.) (quotations omitted).[39] That is, "a claim has sufficient 'factual heft' when it includes two basic assertions: that the plaintiff suffered an adverse employment action, and that this was because of the plaintiff's [protected status]." *Johnson v. District of Columbia*, No. 13-cv-1445, 2015 WL 4396698, at *3 (D.D.C. July 17, 2015).

Williams's allegations, coupled with Plaintiffs' allegations of systemic discrimination, easily clear this bar. Plaintiffs allege that gender discrimination is rampant in the Firm's culture:

- Jones Day grants male associates preferential access to mentorship, better work assignments, client interaction, and advancement opportunities—particularly those that lead to partnership; FAC ¶¶ 1; 22; 24; 25; 27; 29; 151; 227–29; TAC ¶¶ 31; 335-39; and in turn, women receive fewer opportunities while shouldering a disproportionate share of non-billable work undervalued by the Firm (e.g., administrative and pro bono work); FAC

---

[39] *See also Barrett v. Pepco Holdings*, 275 F. Supp. 3d 115, 121 (D.D.C. 2017) ("[A] complaint alleging . . . discrimination satisfied the notice pleading requirement where it detailed the events leading to the plaintiff's termination, provided relevant dates, and included [information for] at least some of the relevant persons involved with his termination." (quotation omitted)); *cf. Kangethe*, 953 F. Supp. 2d at 199 (holding plaintiff does not need "to present a prima facie case to survive a motion to dismiss"); *Ames v. Johnson*, 121 F. Supp. 3d 126, 130 (D.D.C. 2015) ("[P]laintiff need not allege a *prima facie* case . . . to survive a motion to dismiss."); *Ghawanmeh v. Islamic Saudi Acad.*, 672 F. Supp. 2d 3, 15–16 (D.D.C. 2009) ("[S]pecific facts [are] not necessary if the complaint [gives] fair notice of the claim." (quotation omitted)).

¶¶ 1; 27; 29; 150; 217–23; TAC ¶¶ 36-38;

- The Firm's evaluation system discriminates against women; in particular, the evaluation process and its "consensus statement" feature are regularly manipulated to push women out; FAC ¶¶ 8–12; 296–98; TAC ¶ 12-15; 310-12;

- Jones Day's "fraternity" culture subjects women to a hostile work environment; FAC ¶¶ 1-4; 14; 16; 19-25; 27; 29; 32-34; 39; 41-433; 77–85; 114-34; 141–52; 206-31; 294; 296-98; TAC ¶¶ 21-39; 41-48; 51-57; 91-104; 168-83; 241-57; 309; 311; 314;

- Female attorneys without children face discrimination based on stereotypes about motherhood and family; FAC ¶¶ 2; 143; 227–28;

Williams also pleads that these discriminatory practices and stereotypes caused her harm:

- The Firm underpaid Williams and facilitated this discrimination by instructing attorneys to keep their compensation secret. FAC ¶¶ 32–36; 139; 296; TAC ¶¶ 41-48; 54-57; 164-66; 239-240; 310;

- Jones Day manufactured a negative review by blaming her for another associate's error, and then diminished her pay and told her that she had no prospect for partnership, leading to constructive discharge. FAC ¶¶ 10-11; 33; 136; 139-40; 145-50; 152; 215; TAC ¶¶ 173-83.

These are exactly the kinds "basic assertions" this Court deemed sufficient in *Johnson*: adverse employment actions and facts sufficient to infer that gender was the cause.[40]

---

[40] Williams alleges far more than that she suffered a one-off and inexplicably false review. Yet, even this standing alone would suffice. *See Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 90 (D.D.C. 2009) ("Merely alleging that the employer's proffered reason[] for the adverse employment actions is false may support an inference of discrimination sufficient to survive a motion to dismiss." (citing *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)); *see also Holmes v. Univ. of D.C.*, 244 F. Supp. 3d 52, 64–65 (D.D.C. 2017) (Moss, J.) (concluding "isolated statements" sufficient for sex stereotyping claims to survive).

These pleadings also suffice to sustain Williams's (and Plaintiffs') hostile work environment claim. Williams may combine her allegations with those of the other Plaintiffs to show a hostile work environment. *See Wise v. Ferriero*, 842 F. Supp. 2d 120, 126 (D.D.C. 2012) (holding plaintiff stated hostile work environment with allegations of exclusion from advancement opportunities based on falsities, and noting "episodes that may well give rise to individual Title VII claims can also combine to form a hostile-work-environment claim").[41]

Plaintiffs' pleadings also show that Jones Day's discrimination frustrated their reasonable expectations and "essentially locked" them into positions that "did not allow for career advancement," making their terminations inevitable. *Williams v. Johnson*, 776 F.3d 865, 872 (D.C. Cir. 2015) (quoting *Clark v. Marsh,* 665 F.2d 1168, 1174 (D.C. Cir. 1981)); *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 362–63 (D.C. 1993); *Hunt v. Cont'l Cas. Co.*, No. 13-cv-05966, 2015 WL 5461573, at *3 (N.D. Cal. Sept. 16, 2015). Williams not only witnessed the Firm locking

---

[41] *See also Motley-Ivey v. District of Columbia*, 923 F. Supp. 2d 222, 234 (D.D.C. 2013) (holding that a "pattern of allegedly undeserved, excessive, and/or disproportionate discipline can form the basis for a viable hostile work environment claim"); *George Washington Univ.*, 2019 WL 2028398, at *7 (holding defendant's "course of preferential treatment plausibly inflicted tangible harm on [plaintiff's] then-present and future opportunities"); *Hunt*, 2015 WL 5461573, at *6 (stating that federal case law is instructive for FEHA cases).
   Jones Day's objection that Williams recounts only one example of a hostile work environment is false: Williams and the other Named Plaintiffs have cited many illustrative examples of the Firm's hostility toward women associates, including the discriminatorily negative review that Williams suffered. Jones Day is not entitled to the inference that the acts that Plaintiffs allege as to the class did not affect Williams. *Hunt*, 2015 WL 5461573, at *4 ("a hostile culture toward female employees" supported a *constructive discharge* claim under California law *at summary judgment*); *see also Landig v. CooperSurgical, Inc.*, No. 216CV07144CASKSX, 2017 WL 5633036, at *19 (C.D. Cal. Nov. 20, 2017) (denying *summary judgment* on California hostile work environment claim based on performance management and discriminatory remarks). And, in any event, Plaintiffs "do not claim to have exhaustively alleged all of the instances of [Jones Day's] hostility towards" them. *Doe 1*, 369 F. Supp. 3d at 81. Similarly, Jones Day's complaints that Williams has alleged events outside the statute of limitations are neither here nor there. Under the continuing violations doctrine, Jones Day can be held liable for its hostile work environment even beyond any applicable statutes of limitation. *See e.g.*, *Cavalier v. Catholic Univ. of Am.*, 306 F. Supp. 3d 9, 42 (D.D.C. 2018).

women out of advancement (at an office that then had zero internally promoted female partners); FAC ¶ 144; 151 TAC ¶ 169; she was also told by her office's Partner-in-Charge she had no prospect for partnership based on a discriminatory evaluation. FAC ¶ 150. This too is redressable discrimination.

Williams can state a claim for constructive discharge in view of these circumstances. Williams was told her promotion to partnership was foreclosed. A reasonable associate would resign and seek out a workplace that offers equal advancement opportunities. *See Arthur Young & Co.*, 631 A.2d at 362. Jones Day cites no law holding such an allegation to be insufficient. And, in any event, the pleadings stage "is not the appropriate vehicle for evaluating the character or consequences of acts alleged to create a hostile work environment." *Sims v. Sunovion Pharm., Inc.*, No. 17-cv-2519, 2019 WL 690343, at *11 (D.D.C. Feb. 19, 2019).

Williams states claims. Her case should proceed to discovery.

## VI.    Jones Day Fails to Establish Its Statute of Limitations Defense on the Pleadings.

Plaintiff Henderson has alleged timely claims for gender discrimination and wrongful termination under the New York City Human Rights Law ("NYCHRL") and its three-year limitations period. Because it is not clear "on the face" of the pleadings that Henderson's claims are time-barred, Jones Day fails to establish its affirmative defense. *See Holmes v. Univ. of D.C.*, 244 F. Supp. 3d 52, 60 (D.D.C. 2017) (Moss, J.) ("[F]or the [defendant's] affirmative defense to prevail at this stage of the proceeding, the allegations in the complaint must suffice to establish it." (quotation omitted); *see also Potts v. Howard Univ. Hosp.*, 258 F. App'x 346, 347 (D.C. Cir. 2007) (reversing dismissals of Title VII and DCHRA claims on statute of limitations grounds).

### A.    Henderson's NYCHRL Claims Are Timely.

Henderson alleges a pattern of unlawful conduct, including pay discrimination, that extended through her last day at Jones Day. FAC ¶¶ 264, 266–93. Henderson alleges that this

pattern of unlawful conduct was the direct result of the firm's "Black Box" system, defined by the Firm's pay secrecy policy, its Managing Partner policy, and its "no whining policy." *See supra*, Section I. In addition, Henderson alleges discrete discriminatory acts in her final weeks at the Firm: forcing her off the payroll, unfavorably altering her status, Partner Slack's threat that Jones Day would ruin her career "[a]round the time Ms. Henderson was preparing to depart Jones Day," and, ultimately, her termination.[42] FAC ¶¶ 290–93. Henderson's last day of employment was in mid-July 2016. *Id.*  ¶¶ 264; 289–90. She joined as a plaintiff in this suit on June 24, 2019. FAC. The statute of limitations for NYCHRL claims is three years, N.Y.C. Admin. Code § 502(d). So, it is not clear from the face of the Amended Complaint that Henderson's wrongful termination claim is untimely.

Furthermore, under the continuing violations doctrine, employment actions are timely when they would be otherwise time-barred if they are part of either a "continuing policy" or a "consistent pattern of discriminatory . . . practices." *Williams v. New York City Hous. Auth.*, 61 A.D.3d 65, 72 (N.Y. App. Div. 2009) (explaining that the NYCHRL continuing violations doctrine is considerably more expansive than under federal law and extends not only to harassment but also to a series of discrete discriminatory acts). Under the "uniquely remedial provisions" of the

---

[42] Plaintiff Henderson's wrongful termination claim is timely because it accrued on the last day of her employment. Recent amendments to NYCHRL require courts to construe the NYCHRL "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Albunio v. City of New York*, 16 N.Y.3d 472, 477–78 (2011). Courts consider interpretations of counterpart federal laws only as a floor, and "determine independently: what interpretations of the questions before [them] best fulfill the [NYCHRL's] uniquely broad and remedial purposes." *Bennett v. Health Mgmt. Sys., Inc.*, 92 A.D.3d 29, 38 (N.Y. App. Div. 2011). The interpretation of the NYCHRL that a wrongful termination claim accrues on the last day of employment is both a reasonably possible construction of the NYCHRL, and the construction that most favors discrimination plaintiffs. *Cf. Romano v. Rockwell Internat., Inc.*, 14 Cal. 4th 479, 495 (1996). Further, the availability of a statute of limitations defense should "be construed narrowly in order to maximize deterrence of discriminatory conduct." N.Y.C. Admin. Code § 8-130. Accordingly, the more remedial last-day formulation should govern.

NYCHRL, "a continuing policy that limited opportunities for female participation" saves otherwise time-barred claims related to discrete decisions such as "hiring, assignment, transfer, promotion, and discharge." *Id.* (quotation omitted).[43] Here, because Henderson continued to suffer from the Black Box policies throughout their duration, their continuous pattern is actionable.

**B. The Court Should Equitably Estop Jones Day from Invoking Any Statute of Limitations Defense as to Henderson's Claims.**

Through her request for equitable tolling, Henderson seeks a limited amount of tolling to be ascertained through discovery—enough time after the facts that gave rise to the estoppel would have ceased to impede her. *See Hoffman v. Hoffman,* 556 N.Y.S.2d 608, 608 (N.Y. App. Div. 1990).[44] Henderson alleges that then-Partner Charmaine Slack informed her that she should not "sue Jones Day for discrimination . . . because Jones Day would destroy her career." FAC ¶ 291. As a Jones Day partner, Slack acted on Jones Day's behalf. *See* N.Y. P'ship Law § 20(1) ("Every partner is an agent of the partnership for the purpose of its business, and the act of every partner . . . binds the partnership . . . ."). Facing this serious threat, Henderson was convinced "not [to] come forward with her claims against Jones Day until the instant lawsuit was filed," because she "feared that if she pursued her claims, the Firm would stop at nothing to harm her professionally." FAC

---

[43] *See Lozada v. Hook*, 151 A.D.3d 860, 861–62 (N.Y. App. Div. 2017) ("[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice."); *St. Jean Jeudy v. City of New York*, 142 A.D.3d 821, 823 (N.Y. App. Div. 2016) (reversing dismissal of discrimination claims that alleged a pattern of unlawful conduct that extended into the limitations period); *Ferraro v. N.Y.C. Dep't of Educ.*, 115 A.D.3d 497, 497–98 (N.Y. App. Div. 2014) (finding whether NYCHRL claims were timely under the continuing violations doctrine was a fact issue not properly resolved on the pleadings).

[44] Henderson has invoked equitable tolling and equitable estoppel doctrines out of an abundance of caution because some courts refer to the later as a subset of the former. *See e.g.*, *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995).

¶¶ 291–93. Within three months of the initial filing of this case, however, she joined as a named plaintiff. FAC. These pleadings support discovery into whether equitable estoppel applies.

In order to invoke equitable estoppel, a plaintiff must show that the defendant "wrongfully induced the plaintiff to refrain from timely commencing an action by deception, concealment, **threats or other misconduct**." *Overall v. Estate of Klotz*, 52 F.3d 398, 404 (2d Cir. 1995) (quoting *Zoe G. v. Frederick F.G.*, 617 N.Y.S.2d 370, 371 (N.Y. App. Div.1994)); *see also Hoffman,* 556 N.Y.S.2d at 609 (listing fraud, misrepresentation, **threat**, or deception as grounds for estoppel). Courts thus regularly equitably estop employers from invoking statutes of limitations and benefitting from their wrongdoing.[45] "As a factual finding is required, it is typically inappropriate to determine whether or not plaintiff has met this burden on a motion to dismiss." *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 266 (S.D.N.Y. 2006). Instead, the D.C. Circuit directs "development of a factual record" and a "specific inquiry into and findings on the existence or non existence of such [equitable] considerations." *Saltz v. Lehman,* 672 F.2d 207, 209 (D.C. Cir .1982).

Here, this factual inquiry should address Jones Day's threats and when they can be said to have subsided. Plaintiffs Tolton and Draper allege severe retaliation. Dismissing Henderson's fears out-of-hand would unduly cabin equity's reach and undercut the NYCHRL's remedial scheme.

---

[45] *See e.g.*, *Simpson v. N.Y.C. Transit Auth.*, 188 A.D.2d 522, 523 (N.Y. App. Div. 1992); *Chapa v. El Paso Indep. Sch. Dist.*, No. 09-cv-230, 2009 WL 10698730, *6 (W.D. Tex. Sept. 22, 2009) (estopping employer affirmative defense due to its threats of career harm); *Koppman v. S. Cent. Bell Tel. Co.*, No. 90-cv-4503, 1992 WL 142390, *13 (E.D. La. June 17, 1992) (holding that defendant employer's threats could toll the limitations period, so as not to "encourage potential defendants to threaten potential claimants"); *cf. English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987) (deeming equitable estoppel proper when the "employee's failure to file in timely fashion is the consequence either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge").

Jones Day's attempt to escape this factual inquiry through *Miller v. United States*, 803 F. Supp. 1120 (E.D. Va. 1992) and *Geiss v. Weinstein Co. Holdings LLC*, No. 17-cv-9954, 2019 WL 1746009 (S.D.N.Y. Apr. 18, 2019) is unavailing for a host of reasons. *First*, these cases do not make for a blanket prohibition on fact-specific equitable estoppel in employment cases— particularly where the broadly remedial NYCHRL is concerned. *Second*, and relatedly, in *Miller*, the Court determined that there was no actual threat, i.e. wrongdoing by the defendant. And, it was a medical malpractice *summary judgment* decision under *federal* law. *Miller*, 803 F. Supp. at 1127. *Third*, although *Glass* referred to "a pattern of continual and egregious acts of intimidation," the case did not arise under the NYCHRL and did not consider its remedial aims. *Geiss*, 383 F. Supp. 3d at 175. *Fourth*, Henderson came forward promptly after reestablishing her career, and seeing the original complaint filing encouraged her to come forward. FAC ¶¶ 291–92. These considerations warrant discovery.

## VII.    Plaintiffs Have Standing to Seek Injunctive Relief

Although Plaintiffs no longer work at Jones Day, they have standing to seek injunctive relief because all seek reinstatement as Firm employees. *E.g.*, FAC ¶¶ 337, 339; 349; 410; 422; 492; 527; 534; 540; 546; 552; 558; 563; *see also* TAC ¶ VII(h) (explaining Plaintiffs seek "[r]einstatement into positions that Plaintiffs previously held and any appropriate promotions Plaintiffs would have obtained but for the discrimination that they experienced").[46] That is, Plaintiffs have standing to seek injunctive relief against discrimination and retaliation within Jones Day, because they will benefit from any injunction entered against Jones Day's discriminatory and retaliatory policies if and when they are reinstated.

---

[46] Any argument that Plaintiffs must use the magic word "reinstatement" in their prayer for relief needlessly elevates form over substance. Defendants are aware of the relief sought by Plaintiffs, and, in any event, the Third Amended Complaint cures even any purported deficiency as to form.

Courts overwhelmingly hold that a plaintiff seeking reinstatement has standing to seek injunctive relief that will benefit her if she is reinstated. *See e.g.*, *Chen-Oster v. Goldman, Sachs & Co.* (*Chen-Oster II*), 251 F. Supp. 3d 579, 588–89 (S.D.N.Y. 2017) ("The Court, therefore, joins the chorus of opinions in this district that hold that a former employee seeking reinstatement has standing to seek injunctive and declaratory relief."); *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 468 (S.D.N.Y. 2013) ("[A] plaintiff seeking reinstatement has standing to pursue injunctive or declaratory relief."); *Levin v. Madigan,* 697 F. Supp. 2d 958, 975 (N.D. Ill. 2010) ("If Plaintiff's employment is reinstated, he may indeed be subject to the same allegedly discriminatory policy that he challenges in this lawsuit.").

Jones Day's invocation of *Dukes*, 564 U.S. 338, to argue the contrary is a misreading. *Dukes* did not hold that former employees may never pursue injunctive relief. *See Kassman*, 925 F. Supp. 2d at 468 (identifying any suggestion that former employees lack standing to seek injunctive relief as dicta, and holding that "it is a mistake to read *Dukes* as having adopted a blanket rule that always denies standing to ex-employees"); *Chen-Oster II*, 251 F. Supp. 3d at 588–89 ("[T]he . . . determination that *Dukes* categorically foreclosed former employees from seeking injunctive and declaratory relief is clearly erroneous."). Indeed, one of the principle cases on which Jones Day relies, *Chen-Oster v. Goldman, Sachs & Co. (Chen-Oster I)*, 877 F. Supp. 2d 113 (S.D.N.Y. 2012), was reconsidered and reversed on this point. *Chen-Oster II*, 251 Supp. 3d at 587 (holding *Chen-Oster I* to be "clearly erroneous" and to implicate "manifest injustice").[47]

---

[47] Although *Ellis v. Costco Wholesale Corp.* made terse reference to the *Dukes* dictum in precluding some former employees from seeking injunctive relief, 657 F.3d 970, 988 (9th Cir. 2011), the Ninth Circuit later affirmed that: "[a] former employee currently seeking to be reinstated or rehired may have standing to seek injunctive relief . . . [if there is] a reasonably certain basis for concluding he or she has some personal need for prospective relief." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 865 (9th Cir. 2017).

Jones Day's other authorities equally miss the mark. In *Brewer v. Lynch*, the plaintiff did not and *could not* seek reinstatement because he had already reached a statutorily-mandated retirement age. No. 08-1747, 2015 WL 13604257, at *9 (D.D.C. Sept. 30, 2015) . The plaintiffs in *Jackson v. Motel 6 Multipurpose, Inc.* neither alleged "that they [would] be discriminated against by Motel 6 in the future nor [alleged] any facts that would support such a conclusion." 130 F.3d 999, 1007 (11th Cir. 1997). And, *Kastroll v. Wynn Resorts, Ltd.* did not even involve employment discrimination (but instead workplace safety claims under state law) and the plaintiffs did not seek reinstatement at all. No. 09-2034, 2013 WL 496409, at *3 (D. Nev. Feb. 6, 2013). Here, Plaintiffs explicitly seek reinstatement and set forth factual allegations to support the immediate threat Jones Day poses to them absent injunctive relief.

Any purported ignorance as to whether Plaintiffs seek reinstatement is clearly feigned. They do, and the injunctive relief sought will benefit them if they are successful.

## CONCLUSION

Jones Day's efforts to hold Plaintiffs to a heightened pleading standard are founded on misrepresentations of the law. Its contentions that Plaintiffs have insufficiently pleaded their claims simply ignore the significant factual detail alleged in Plaintiffs' FAC. And its legal arguments turn on inapposite or overturned authorities and strained readings. Its Motion for Judgement on the Pleadings should be denied in its entirety. Discovery should proceed.

Respectfully submitted,

Date: August 22, 2019

*/s/ Russell L. Kornblith*
David W. Sanford (DC Bar No. 457933)
Russell L. Kornblith*
SANFORD HEISLER SHARP, LLP
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Telephone: (646) 402-5650

Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
rkornblith@sanfordheisler.com

Deborah K. Marcuse (D.C. Bar No. 995380)
SANFORD HEISLER SHARP, LLP
111 S. Calvert Street, Ste. 1950
Baltimore, MD 21202
Telephone: (410) 834-7415
Facsimile: (410) 834-7425
dmarcuse@sanfordheisler.com

Kate Mueting (DC Bar No. 988177)
SANFORD HEISLER SHARP, LLP
700 Pennsylvania Avenue, SE, Ste 300
Washington, D.C. 20003
Telephone: (202) 499-5206
Facsimile: (202) 499-5199
kmueting@sanfordheisler.com

*admitted *pro hac vice*

*Attorneys for Plaintiffs, the Proposed Classes,
and the Proposed Collective*