1    IN THE UNITED STATES DISTRICT COURT
2         FOR THE DISTRICT OF COLUMBIA

3    NILAB RAHYAR TOLTON,
     et al.,
4                                    Civil Action
              Plaintiffs,            No. 1:19-cv-0945
5
         vs.                         Washington, DC
6                                    November 7, 2019
     JONES DAY,
7                                    10:03 a.m.
              Defendant.
8    _____/

9

10        TRANSCRIPT OF STATUS CONFERENCE
     BEFORE THE HONORABLE RANDOLPH D. MOSS
11         UNITED STATES DISTRICT JUDGE

12

13   <u>APPEARANCES</u>:

14   For the Plaintiffs:   KATIE M. MUETING
                           PAUL BLANKENSTEIN
15                           Sanford, Heisler, Sharp, LLP
                             700 Pennsylvania Ave, SE, Suite 300
16                           Washington, DC 20003

17

18   For the Defendant:    TERRI L. CHASE
                             Jones Day
19                           250 Vessey Street
                             New York, NY 10281
20

21

22

     Reported By:          JEFF M. HOOK
23                           Official Court Reporter
                             U.S. District & Bankruptcy Courts
24                           333 Constitution Avenue, NW
                             Room 4700-C
25                           Washington, DC 20001

1          P R O C E E D I N G S

2              **DEPUTY CLERK:**  Civil action 19-945, Nilab Rahyar

3     Tolton, et al. versus Jones Day, et al.  Will counsel please

4     approach the podium and identify yourselves for the record.

5              **MS. MUETING:**  Good morning, your Honor.  Kate

6     Mueting with Sanford, Heisler, Sharp for the plaintiffs.

7              **THE COURT:**  Good morning.

8              **MR. BLANKENSTEIN:**  Good morning, your Honor.  Paul

9     Blankenstein with Sanford, Heisler, Sharp, also for the

10    plaintiffs.

11             **THE COURT:**  Good morning to you as well.

12             **MS. CHASE:**  Good morning, your Honor.  Terri Chase

13    from Jones Day for Jones Day.

14             **THE COURT:**  Good morning to you, Ms. Chase.  So

15    before we get into the current discovery dispute,

16    Ms. Mueting, can you just let me know where we are with

17    discovery more generally?

18             **MS. MUETING:**  Absolutely, your Honor.  Discovery

19    is progressing.  The parties began preliminary discussions

20    about class discovery starting in June.  We are currently --

21    we've agreed to negotiate a 12(f) report, and we anticipate

22    that the Court will see a draft of that early next week.

23    We've been proceeding with depositions.  The named

24    plaintiffs have been deposed.  We are meeting and conferring

25    on custodial discovery, particularly with respect to search

1  terms that Jones Day will employ.  We're also meeting and

2  conferring on the scope of the 30(b)(6) testimony.

3       **THE COURT:**  And are you taking discovery on

4  liability at this point or is it just class discovery?

5       **MS. MUETING:**  We did agree to bifurcate discovery

6  with respect to the named plaintiffs' individual -- the

7  merits of the named plaintiffs' individual claims.

8       **THE COURT:**  I'm not sure that answered my

9  question.  Are you --

10      **MS. MUETING:**  So class --

11      **THE COURT:**  -- taking discovery on it or not?

12      **MS. MUETING:**  Well, I mean, it's tough to answer

13  because often the merits discovery overlaps with the class

14  discovery issues.  But we have agreed -- and that's part of

15  the 26(f) report negotiations we're discussing, and that's

16  ongoing.  But at this point, we are taking class-wide

17  discovery.

18      **THE COURT:**  So you're only taking the class

19  discovery at this point, that was my question?

20      **MS. MUETING:**  Yeah, and I hesitate to --

21      **THE COURT:**  I mean, I understand it may overlap,

22  but the discovery you're taking is just class discovery.  It

23  may be, for example, that the named plaintiffs, that their

24  depositions will be taken a second time on liability.

25      **MS. MUETING:**  We have agreed that the depositions

1    would only be taken one time so that any questions that the

2    defendant may want to ask regarding the merits would be

3    asked during that first deposition.

4         **THE COURT:**  And is the discovery that you're

5    taking or seeking to take from Jones Day at this point only

6    on class certification?

7         **MS. MUETING:**  Yes, your Honor.

8         **THE COURT:**  Okay.  And you said you're going to

9    submit a Rule 26 report to the Court?

10        **MS. MUETING:**  Yes, Jones Day has now agreed to

11   meet and confer on that.  We anticipate continuing that meet

12   and confer, and yes, submitting that to the Court.

13        **THE COURT:**  Okay.  Do you want to get into the

14   merits of the current dispute, then, and address that?

15        **MS. MUETING:**  Certainly, your Honor.  There are

16   two disputes before the Court -- or that we wanted to talk

17   with the Court before raising them.  The first issue --

18        **THE COURT:**  Let me say, when you say before

19   raising them you want to talk about them, if we could

20   resolve these issues today, I'd just assume do that.  It

21   just seems to me you all have better things to be doing, and

22   I do, than spending extensive time and money briefing

23   discovery issues that I think hopefully we can just resolve

24   today.

25        **MS. MUETING:**  Okay.  So the first issue is

regarding plaintiffs' request for class-wide personnel data
such as compensation and evaluation data.  This data will
enable plaintiffs' expert to perform a statistical analysis.
Courts routinely rely on this type of analysis in
determining whether class certification is appropriate.
Courts hold that statistical analysis is essential to
plaintiffs' class-wide claims.  The DC Court of Appeals has
remanded class action determinations where statistical
evidence was not considered.

So plaintiffs need this data in order to present
the Court with the information that it needs to conduct the
analysis that the Supreme Court contemplated for Rule 23
determinations in the Dukes case.  In fact, post Dukes
courts have noted that Dukes illustrates the need to develop
the record fully before a class motion is decided.  Courts
in this jurisdiction routinely rely on statistical evidence
in determining whether certification is appropriate.

So plaintiffs submit that Jones Day must not be
permitted to withhold from plaintiffs evidence that is
solely within Jones Day's possession.  And then at the class
certification stage, argue that plaintiffs have not
submitted this Court -- or presented this Court with enough
evidence to justify certification.

**THE COURT:**  So what do you want to -- what is your
expert going to purport to show?

1        **MS. MUETING:**  The expert will conduct a

2    statistical analysis of Jones Day's payroll data.  So data

3    including compensation and evaluation and other evidence

4    that may be used as controls.  And that evidence -- the

5    expert -- through that evidence, the expert can show whether

6    there are statistically significant gender-based

7    disparities.

8        **THE COURT:**  Is that for purposes of getting at

9    whether there are common issues or whether the typicality --

10       **MS. MUETING:**  Yes, your Honor, that is relevant to

11   commonality.

12       **THE COURT:**  Just commonality, is that the only

13   thing it's relevant to?

14       **MS. MUETING:**  It's primarily relevant to

15   commonality, I think that's right.

16       **THE COURT:**  I suppose numerosity as well?

17       **MS. MUETING:**  I don't know that statistical

18   evidence is necessary for numerosity.  It's certainly

19   necessary, and courts look at it.  The Supreme Court

20   emphasized that it would be necessary to look at it for

21   commonality.  But you're right, it could be relevant for

22   numerosity as well.

23       It's relevant, also I'll make a point, both to

24   plaintiffs' disparate impact claims and plaintiffs'

25   disparate treatment claims.  Courts in this jurisdiction

have held that payroll data and statistically significant
disparities, or evidence of that or the lack of evidence of
that, through the statistics can be relevant for both
disparate impact and disparate treatment claims.

　　　　**THE COURT:**  Well, I certainly understand that
that's a merits question rather than a class certification
question, right?

　　　　**MS. MUETING:**  Well, courts routinely look at -- I
think post Dukes especially, courts look at whether there
are statistically significant disparities at the class
certification stage.  And post Dukes courts have noted that,
if anything, Dukes illustrates the need to develop the
record more fully before a class is developed -- or before
class certification is decided.

　　　　Limiting discovery to the named plaintiffs'
geographical offices or individual claims would be
inappropriate here, because plaintiffs have alleged a
firm-wide class.  Jones Day cannot unilaterally narrow the
claims and then attempt to limit discovery on that basis.
We also -- oh, go ahead.

　　　　**THE COURT:**  I guess what I'm struggling with is
sort of the discovery you're seeking is pretty extensive.  I
mean, seeking discovery of all the evaluation information of
every associate at the firm for an extensive period of time
is like really -- I mean, that's an enormous amount of

1    discovery for a firm the size of Jones Day.

2         **MS. MUETING:**  So --

3         **THE COURT:**  And so what do you have to do to sort

4    of get over that wall initially to say, you know, we're now

5    entitled to -- I mean, I've got to believe that it's many,

6    many thousands of pages of information that you're seeking.

7    And so where intuitively one would think that there are

8    differences between offices, and to say, you know, there's

9    some office that Jones Day has, there's no representative

10   plaintiff with respect to that office, and we want to see

11   every associate's evaluation from that office.

12        **MS. MUETING:**  So two points on that, your Honor,

13   if I may.  First, I think it's -- what you're illustrating

14   here is the burden argument on Jones Day, that this is --

15   the magnitude of this data is just too much I think is your

16   concern.  I'll respond to that by saying that our

17   understanding from Jones Day is that Jones Day already has

18   this information in specific centralized databases.  And so

19   it already has performance rating and ranking and

20   compensation information, evaluation information --

21        **THE COURT:**  Maybe I'm misunderstanding.  I assume

22   you're not going to be satisfied by Jones Day saying that

23   the associate had a rating of 4.7 without then going back

24   and actually seeing what the evaluation said to see if the

25   4.7 was justified or not.  Because I assume part of your

theory is that there was some disparity with respect to how those ratings were done. And then unless you go back and look at the actual evaluations, you don't know.

**MS. MUETING:** Well, I think that may be an argument that comes up. At this point, we don't know. We don't know if there are gender disparities in the evaluation. Anecdotal testimony from our named plaintiffs indicates that may be the case. But once we get the payroll data, our expert will be able to determine whether that is the case and present the Court with that evidence.

**THE COURT:** So you're not at this point, then, seeking --

**MS. MUETING:** At this point --

**THE COURT:** -- actual evaluations?

**MS. MUETING:** -- we are seeking information that is in Jones Day's centralized databases.

**THE COURT:** So give me what that information is again.

**MS. MUETING:** Yeah, so we understand from Jones Day that it has much of this information in centralized databases in its Lawson database, in its Slide database and in its Elite database. This information includes things like start and end dates, reduced time status, office and practice, compensation, compensation adjustments, J.D. year, the academic information and qualification information,

1    hours information.  And so at this point, our request is

2    limited to the data that is in these centralized databases.

3            We're happy to meet and confer with Jones Day

4    regarding whether other information that we may seek is in

5    those centralized databases or not.  If it is in custodial

6    discovery, we are in the process of meeting and conferring

7    with Jones Day, and have agreed actually to a limited set of

8    custodians and how those custodians' devices will be

9    searched using search terms.

10           And then second, to your second point, your Honor,

11   with respect to the geographical offices and limiting it to

12   geographical offices, I think a lot of that is addressed

13   understanding that Jones Day has a centralized database that

14   covers all offices.  But we do have named plaintiffs from

15   multiple offices, and we have alleged firm-wide policies.

16   And Jones Day has not disputed that its policies apply to

17   all offices --

18           **THE COURT:**  What are the firm-wide policies?

19           **MS. MUETING:**  -- nationwide.  So we have four

20   firm-wide policies we have outlined in the pending 12(c)

21   motion before the Court.  The first is a strict pay secrecy

22   policy that Jones Day outlines in its firm manual holding

23   that compensation and evaluation information is a

24   confidential matter.  The second is an intolerance of

25   complaints or no whining you have seen in the papers.  And

1    this is intolerance of protected activity.  The third is a

2    subjectively driven evaluation system.  The fourth is

3    hyper-centralization of compensation and promotion

4    decisions.

5            So prior to the initiation of this lawsuit, Jones

6    Day's website explained that the managing partner of the

7    entire firm was the final decision maker on all compensation

8    and evaluation decisions.  That is reiterated in Jones Day's

9    manual.  It's been reiterated in public statements that

10   Jones Day has made.  So because --

11           **THE COURT:**  There's a difference, though, between

12   being the final decision maker and actually being

13   meaningfully involved in the decision making process.  And

14   if all that means is that each office comes up with what

15   their proposed pay allocations are, and they go to the

16   managing partner and the managing partner signs his or her

17   name at the bottom of the page every six months or every

18   year, that doesn't really support sort of a notion that

19   they're being set on a nationwide basis.

20           You would need some information I would think

21   that -- which seems somewhat improbable that the managing

22   partner is saying that this associate in Irvine is being

23   paid X dollars.  We really ought to knock that pay down.

24   You know, it's a woman who's working in that office and

25   is -- took maternity leave.  Therefore, we ought to knock

her salary down.  It's conceivable to me that's what's going

on, but you would need something.  I mean, I don't think

simply the fact that the managing partner is like signing

the final form does that.

**MS. MUETING:**  Your Honor, we would not dispute

that we do need discovery in order to establish that

certification here is appropriate.  So far, we have not had

any discovery that contradicts the statements that Jones Day

has made publicly and made --

**THE COURT:**  What discovery --

**MS. MUETING:**  -- in its firm manual.

**THE COURT:**  -- have you taken so far?

**MS. MUETING:**  So we've received some limited

custodial discovery related to the named -- in advance of

the named plaintiffs' depositions.  We received the firm

manual as I referenced earlier.  And we have not received

any custodial discovery as a result of ESI searches, because

those negotiations regarding the search terms are ongoing.

**THE COURT:**  What was the limited custodial

discovery you received?

**MS. MUETING:**  It was related to documents that

Jones Day wanted to use in the depositions of the named

plaintiffs.  So we received the named plaintiffs' e-mails

themselves as well as any other e-mails that Jones Day

wanted to raise in the course of the depositions.  So we've

1    not received class -- we've not received discovery from

2    class-based custodians.  We've agreed on who those

3    custodians are.  We've not yet agreed on the scope of the

4    search terms for those custodians.  And we received Jones

5    Day's latest proposal yesterday, and that meet and confer is

6    ongoing.

7              I do think a lot of the concerns that your Honor

8    has are concerns that courts don't review at this discovery

9    stage.  And you're raising very good questions that we will

10   need to have answers for in class certification.

11         **THE COURT:**  I've got to tell you, I've never had a

12   case in which there's sort of a pending threshold motion in

13   which you're talking about discovery of this expansive

14   nature.  So you may be right that it's -- that I'm not

15   usually involved in discovery at this stage of the process,

16   but this is just -- it does strike me as pretty sweeping

17   discovery before the Court has even decided whether at least

18   many of the claims can go forward.

19         **MS. MUETING:**  Well, and your Honor, with respect

20   to the pending 12(c) motion, right, that is before the

21   Court, even if that motion were granted in full, Jones

22   Day -- plaintiffs would still have those disparate treatment

23   claims.  Jones Day has not moved to strike the disparate

24   treatment claims.  Courts in this jurisdiction, in the Moore

25   class action case, did hold that statistical data is

relevant to determining whether disparate treatment claims can be certified. So here, Jones Day is trying to accomplish through a discovery dispute what it didn't even seek to accomplish in initial motions practice.

We are concerned that absent this information, we'll be unable to present the Court with the information that it needs to answer these questions -- that will be relevant questions at the class certification stage.

**THE COURT:** Okay. So let me hear, then, on this issue from Jones Day. We can come back on the second issue.

**MS. MUETING:** Thank you, your Honor.

**MS. CHASE:** Good morning, your Honor. With respect to this issue, as your Honor had noted, this is quite extensive discovery that's being sought. Let me just put a little bit of meat on the bones around what we're talking about here. They're looking for information on over 2,000 associates over a period -- they may not recognize it's over 2,000 associates, but it's over 2,000 associates, over a period well outside the statute of limitations. And while they argue in their letter that discovery should be broader than the statute of limitations period, and they cite cases in which discovery has been broader than the statute of limitations, those cases don't address claims of this nature.

For example, with respect to the named plaintiffs,

1  we are certainly providing discovery on the entire time

2  period of their claims.  We are -- but when we are looking

3  at asking for pay and evaluation data, it could be relevant,

4  if at all, with respect to the pay inequity claims.  And the

5  only comparators they're going to be able to find that they

6  can use for statistical analysis would be those within the

7  time period for which there's a statute of limitations.

8       But let me just take a step back even further.

9  They're looking for data on more than 2,000 individuals who

10  worked in over 18 different offices in the U.S.  And there

11  is nothing in Jones Day's public statements, its website,

12  its firm manual, the testimony that suggests anywhere that

13  Jones Day treats all 18 of those markets, those different

14  geographic markets, as one common market.  It is simply not

15  the case.  In fact, the firm manual specifically identifies

16  the geographic market is relevant when it comes to issues of

17  compensation.

18       And in fact, the plaintiffs have -- we have taken

19  their depositions now.  They have a theory that the firm

20  promised to all associates that they would be paid at the

21  Cravath scale.  They admitted in their depositions that they

22  don't have any evidence in support of this theory.  They

23  admitted in their depositions that they don't have evidence

24  of comparators making the Cravath scale.  Their theory boils

25  down to we six women weren't paid Cravath, so it must mean

that men are getting more money than us.  When you think

about where that falls in their case, if you think about

this class issue, there are many ways in which what they're

seeking is too overbroad.

So compensation decisions are made at the office

level.  And we have, and can produce, evidence outside the

form of these class documents in the form of a 30(b)(6)

which will validate what the firm manual says which is that

these decisions on compensation are made at the office

level.  Every one of our 18 offices have what we call a PIC,

a Partner in Charge, P-I-C.  The PIC makes the

recommendation for compensation in each of those offices.

The six plaintiffs in the case worked in only three of Jones

Day's offices, New York, Atlanta and Irvine.

And so the idea that compensation data for

Columbus and Cleveland and Pittsburgh and Miami -- many

markets where the starting salary is lower, the salary as

you move up is lower, looking for data in 2012 and 2014,

when there were major market moves in 2016 and 2018, were

they to get that data, even if we lose on every argument in

the 12(c) motion, none of that data is relevant to the

analysis of who are the comparators within the period of the

statute of limitations.

But as your Honor knows from our letter, our

suggestion is that given how broad and expansive the

1   discovery is that they're seeking, we should allow the Court

2   to rule on the 12(c) motion.  We will have better

3   understanding at that point of what claims are actually to

4   be litigated in this case by which they would then be able

5   to seek discovery related to those claims.  Discovery isn't

6   a fishing expedition, it should tie to the claims in the

7   case.  If the disparate impact claims do not survive the

8   motion for 12(c), the disparate treatment claims are very

9   different claims that would entitle them to much different

10  form of discovery.  And that's --

11       **THE COURT:**  Although they would be entitled -- I

12  mean, for example, I assume that on the disparate treatment

13  claim, to the extent that they're claiming that they

14  received lower pay because they were women, I assume that

15  they would be entitled to at least within their office

16  during the years that they worked of evidence with respect

17  to what the other associates were paid so that they could do

18  the comparator analysis there.

19       **MS. CHASE:**  Yes, your Honor, we agree.  And what

20  we outlined as a proposal to them and which we indicated in

21  the letter to you is that we believe that first and foremost

22  the 12(c) motion should be decided, because it will provide

23  clarity to the parties about the claims.  And the discovery

24  should be related to the claims in the case.  And should

25  claims survive --

1    **THE COURT:**  Well, some claims will survive

2  because you can --

3    **MS. CHASE:**  Yes, but the disparate treatment

4  claims would need to focus on who were the comparators for

5  those individuals.  And so certainly that would be

6  individuals who worked within the relevant time period in

7  their offices.  And in fact, if the disparate impact claim

8  survives, we still believe that the relevant comparator sets

9  would be those individuals that worked in the same time

10  period in the same geographic markets.

11    And because Irvine is a small office within the

12  Jones Day's structure, and because we do as a firm focus on

13  California often as a region, what we had said is that we

14  believe that if the disparate impact claims for all of the

15  plaintiffs survive, that the relevant set of data would be

16  for California as a whole, for New York and for Irvine --

17  and for Atlanta, associates to be -- comparable data to be

18  provided for those jurisdictions in the time period that

19  would be covered by the statute of limitations.

20    There's been -- we've made this offer to

21  plaintiffs' counsel in meet and confers prior to coming.

22  They had indicated that they didn't believe that that would

23  be adequate or that sampling was appropriate.  I don't think

24  this is a sampling issue.  Those are, in fact, the

25  appropriate comparators.  Because as I said, you can't

compare Columbus or Cleveland or Pittsburgh, lower cost

markets.  Atlanta for most of this time period was a market

that was paid above Pittsburgh, Columbus and Cleveland but

below Irvine and New York.  There are very different

geographic markets at play.

You can't go back and look at 2012 when starting

salaries were $25,000 or $40,000 less, and compare a first

year or a second year at that time period to a first or a

second year in 2016 when market moves happened, 2018 when

market moves happened.  They're also looking for data for

2019.  Not a single one of them was employed in 2019.  There

was another big market move in 2019.  So our belief is that

the relevant time period is going to be within '16 to '18 in

the jurisdictions in which there are plaintiffs where there

are claims.  But we also really do believe that the

discovery should focus on the theory that's proceeding.

They have identified four theories in support of

their disparate impact argument, two of which have nothing

to do with anything that could cause a change in

compensation.  The pay secrecy policy, as they refer to it,

and the no whining policy are policies that they allege

exist -- which of course we dispute, but which they allege

exist which cannot cause a compensation change.  Whether or

not someone's pay is public or private is not going to

determine what their pay is.  It may preclude them from

1   knowing what other people are paid, but they're looking for

2   a policy that caused an impact.

3           They've really identified two policies that could

4   theoretically cause an impact, hyper-centralization and

5   subjectivity in the discretionary.  After Dukes, it's very

6   clear that it's going to be very challenging for them to

7   proceed on a disparate impact claim with respect to

8   subjective decision making.  And what that really is arguing

9   is that it's not a decision being made at the top -- that's

10  contrary to their hyper-centralization, it would be an

11  argument that their PIC -- the person in their office who

12  evaluated and rated them by the office -- or their practice

13  leaders -- and they were in different practices -- were

14  evaluating them a certain way.  So it's going to be

15  different decision makers depending on which plaintiffs

16  survive and in which jurisdictions.

17          In their hyper-centralization theory, they're

18  arguing that the managing partner makes all decisions.  As

19  we've noted in our letter, as your Honor has indicated, it

20  seems quite reasonable it is in fact the case that the

21  managing partner does not set the compensation for thousands

22  of attorneys over this multi-year period.  As we've

23  indicated, the managing partner did not evaluate any of

24  these plaintiffs at any point in time.  And then to the

25  extent he has a role in the compensation process, it's doing

1    things like making market adjustments.

2         So for example, when the market moved in 2016, if

3    the firm is going to say you know what, we're going to bump

4    first year starting salary up to what we see is happening in

5    the market, that's a decision that would be made.  And then

6    how that's carried out within the respective offices and who

7    it's impacted as the classes go up, that's a decision that's

8    being made by the partners in charge in those respective

9    offices.

10        We've offered a 30(b)(6) on these topics, because

11   the plaintiffs have admitted they don't have any basis to

12   know how these systems work.  They don't have any personal

13   knowledge.  They all admitted that, it's not a disputed

14   point.  And so what we have said is let's do things in an

15   orderly manner so that we can have discovery that is

16   proportional to the case, which we believe can occur if the

17   12(c) motion is decided first and then we have a 30(b)(6).

18   They can then have a better understanding of whether their

19   hyper-centralization theory or their subjective theory holds

20   any merit whatsoever, and target class-wide discovery so

21   that it focuses on the relevant potential comparators at

22   which point in time the discovery related to those relevant

23   potential comparators can be provided.  In the meantime --

24        **THE COURT:**  So put aside the disparate impact for

25   a moment and just let's talk about disparate treatment.

They say look, you may disagree with this, but we're seeking
to bring a class action which includes all of Jones Day's
offices on the ground that a large number of women are paid
less, women associates are paid less because of their sex.
We think that we are adequate representatives of those
claims.  And we now, for class certification purposes, need
to be able to demonstrate to the Court that there in fact
are common claims that others have, the numerosity.  I mean,
if it's just us and one other person, you're never going to
satisfy numerosity.  On the other hand, if there are 500
women, you're going to satisfy numerosity.

And on commonality, we think we can satisfy
commonality by showing that in fact there are a number of
other women out there, many other women whose pay is less.
And we think there will be common issues with respect to
what the relative comparators are.  And all the sort of
stuff you're talking about, those are issues where we think
there is commonality.  And we're going to have to actually
litigate those issues, but we'd like to do so in the class
action context on behalf of everybody.  It doesn't really
matter what the Judge does with the pending 12(c) motion.

**MS. CHASE:**  So their disparate treatment claim as
pled doesn't support that, right.  What they have identified
in terms of intentional discrimination -- which is of course
what they need to plead in support of the disparate

1    treatment claim, is that they were treated allegedly in ways
2    that were worse or different than men in very different ways
3    for each of the six of them.  They have not identified the
4    common policy.  They allege in their pleadings -- setting
5    aside what they've said in their depositions, in their
6    pleadings, that they generally received positive reviews.
7    And to the extent that they allege that they at certain
8    points in time didn't receive positive reviews, they alleged
9    in different ways that they were negatively impacted by the
10   review process.
11          One plaintiff will allege that she was criticized
12   for being overcommitted, another one for not working hard
13   enough.  Their allegations with respect to intentional
14   discrimination are not ones of a common policy, and they
15   haven't articulated in their pleadings any theory that would
16   support class-wide discovery on those issues.  They have
17   articulated the theory that would support class-wide -- that
18   would support discovery of comparators.
19          So if, for example, as one of the plaintiffs
20   alleges, there was negative reviews by a particular trial
21   partner in the Irvine office, we would say the relevant
22   comparators would be those individuals who were reviewed by
23   that individual who you allege has given you the negative
24   reviews.  And let's compare them.  So if Plaintiff Tolton,
25   for example, says that there was a litigation partner who

gave her negative reviews by an individual partner in the

trial practice -- which for these purposes we call BATL, the

business and tort litigation practice.  If one of the BATL

partners in that office would say great, let's look at the

associates that this particular partner reviewed during the

relevant time period, and let's do the same thing with

respect to the others, the discovery should be of the

comparators that tie to their theory as it relates to

disparate treatment.

Their intentional discrimination theory is that my

reviews were different than men who were similarly situated

than me.  So those would the males that worked with them.

And they have, to be clear, been provided some of that.

They identified in the third amended complaint a set of

comparators.  They testified about them.  And we have

produced data on those individuals.

**THE COURT:**  So what if their theory is the

following -- and it may be close to what it is, they can

correct me on this.  But what if their theory is look, we

live in a society in which sadly there still -- there are

undercurrents of discrimination against women in our society

in general, and that the check on the sort of undercurrents

of just valuing women in the workplace less than men, the

check on that is sunlight.  And that because Jones Day has

this policy that says salaries are kept secret, it allows

1    that type of societal discrimination to fester.

2         So assume that's their theory -- which I think at

3    least there's some grain of that I think in what they've

4    said to me.

5         **MS. CHASE:**  Under that theory, your Honor, every

6    law firm, every employer is at risk of having to produce

7    wide-ranging performance and compensation information for

8    every employee it has unless it publicly discloses that

9    information.

10        **THE COURT:**  Well, not publicly.

11        **MS. CHASE:**  They need to --

12        **THE COURT:**  They don't have to publish it in the

13   Wall Street Journal, it just has to be it's not secret.

14   Their allegation is that Jones Day more than other law

15   firms -- and perhaps more than other employers, I don't

16   know, but at least as compared to other law firms, that

17   Jones Day prizes secrecy in compensation more than other law

18   firms do.  And that allows for -- that increases the risk

19   that there will be that type of discrimination that occurs

20   in a way that's just not checked.  Because if people are

21   able to talk about their salaries with each other, people

22   say wait a second, why am I getting paid less.  And if the

23   partners who are setting compensation know that, they're

24   less likely to check the societal undercurrents that may

25   result in women receiving less pay.

1          **MS. CHASE:** Two things on that, your Honor.  One

2     is that in order for them to allege a valid disparate

3     treatment claim, they have to identify that they were

4     subject to gender-based discrimination that they believe was

5     intentional.  And pay secrecy is something that they're

6     alleging applied to everyone.  That policy is not a policy

7     that they are alleging was discriminatory.  They're alleging

8     it is hiding discrimination.  And they're alleging it's

9     hiding discrimination that's happening in other decisions,

10    not in the pay secrecy decision.  The pay secrecy decision

11    is a bit of a red herring, the attack on that policy.

12    Because whether or not it's public or private doesn't affect

13    the actual decisions.  What they're looking to challenge are

14    the actual decisions.  So that is why I said previously that

15    it's really either hyper-centralization or discretionary

16    decision making that they are alleging caused this with

17    respect to the disparate impact claim.

18          With respect to the disparate treatment claim,

19    what they've alleged is that I got reviews that were

20    different than a male would have been reviewed by this

21    individual.  But they are pointing to different individuals

22    who are reviewing them and different ways in which they were

23    reviewed.  Pay secrecy is not going to change or in any way

24    impact the disparate treatment claim.  And I do believe that

25    it is the case that you cannot just say an employer who has

a policy that discourages individuals from talking about
compensation is just going to be able to be sued without any
basis for the claims, without any discovery tied to the
theory in the case, without any proportionality to the
claims that are being litigated.

The claim with disparate treatment really does
focus on individual decision makers who reviewed them.  And
we are prepared and have already produced a good amount of
data with respect to that.  Again, they have identified
comparators.  We gave them information on the comparators.
If they want to tell me about other specific individuals --
but we've deposed them.  The individuals that they've
identified are their comparators, they've been provided that
information.  And that's what's relevant to the disparate
treatment claim.

**THE COURT:**  What about their argument that just
the burden to Jones Day is not terribly substantial of
producing this data, it's just a matter of turning over a
database to them; and then we can argue down the road about
the relevance of it when they actually can see what you can
see?

**MS. CHASE:**  Again, I think that from a burden
standpoint, if they're limiting the data to databases,
there's certainly efforts that are involved, but I'm not
going to argue that it's exceedingly burdensome.  It would

1    be time consuming, we'll have to run reports and we'll pull

2    it.  But it's not something that can't be pulled from a

3    centralize database.  It's actually four databases, not

4    three.  But nonetheless, when we're not looking at actually

5    pulling leave files or personnel files, that's very

6    different.  And that's not something that they had

7    previously indicated to us.

8         That being said, I do still think that what we're

9    talking about here is extremely private information that I

10    can assure you many of these individual attorneys do not

11    want shared with counsel.  These are women and men who have

12    worked at the firm for over a five-year period who are not

13    part of this case, who have not asked to be part of this

14    case, who are not interested in having their individual

15    reviews -- which is what's reflected in these ratings --

16         **THE COURT:**  Is it just a score of some type?

17         **MS. CHASE:**  No, it's not just a score.  There are

18    scores and rankings, but the underlying narrative and

19    consensus statement, assessment statement that's prepared is

20    in the database.  They'll get all of that.  A lot of it in

21    addition is highly, highly confidential.  We'll need to

22    figure out a process by which we can mark as highly

23    confidential, client confidential, because when we're

24    evaluating associates, what we're commenting on is the work

25    they're doing on work.  So it may say, for example, Sally,

who was working on client X on the potential acquisition of
client -- of a potential client Y did a great job on the due
diligence --

**THE COURT:** So some of the information in the
database may be privileged?

**MS. CHASE:** With respect to the evaluation
database, absolutely it will be privileged. With respect to
the Lawson, which is the personnel file -- so the Lawson is
our human resource information system, HRIS. So in the
Lawson database, you will get things like start date, end
date, offices you worked in, locations you worked in.
Compensation is in there. But we have a separate database
called non-partner evaluation database, and that is the
database where all of the ratings reside. That database
includes a lot of highly client confidential information
that we have --

**THE COURT:** I would need to be convinced that
there's some basis for overcoming the privilege in this
context, and nothing comes to my mind as I sit here. This
is not like a circumstance where a client has sued the law
firm for malpractice and where the rules and the privilege
doesn't apply. So if that's the case, then that does
suggest to me at least there would be substantial burden of
having to go through and redact the evaluations to make sure
that you were not disclosing privileged information.

1    **MS. CHASE:**  And there is a way to provide the

2    ratings and rankings information without providing the

3    underlying data, and I think that can be done, just the

4    numeric numbers.  But the real meat of the evaluation is

5    actually in the narrative data where the client names are

6    regularly appearing; not just in the underlying reviews, but

7    in the statement that's prepared assessing it, there will

8    often be references to -- so there is a fairly burdensome

9    process.  Other than providing the numeric ratings and

10   rankings, the client information is quite extensively

11   peppered throughout that non-partner evaluation database.

12        With respect to the individual comparators that

13   have been identified by the named plaintiffs, we've produced

14   that information.  And we've marked it as client

15   confidential under the protective order that's in place in

16   this case.  With respect to individuals, we can do that if

17   you're talking about a handful of 20 people or 30.  But when

18   you start talking about 2,000 people, that's a quite

19   burdensome process.

20        **THE COURT:**  Is it your suggestion, then, that we

21   just put off class certification until after the Rule 12(c)

22   motion is decided, and then come back to these questions in

23   light of what I decide on class certification?

24        **MS. CHASE:**  Yes, your Honor, our suggestion --

25   which we attempted to tease out in the letter that we

submitted yesterday, was that decide the 12(c). Depending

upon what claims survive, we then make a -- we can have an

initial meet and confer. If we can't come to resolution at

that point in time, that we then determine what class-wide

discovery would look like based upon the claims in the case.

And it is our position that the 30(b)(6) deposition on

policies and procedures -- which is really what the class

cert briefing is going to be about. There are cases that

talk about how the statistics really go to merits issues,

and that you cannot infer a common policy caused a disparate

impact just by the statistics.

         And so what we really need for the plaintiffs to

be seeking discovery on are finding out if there's any facts

to support these two theories that they have,

hyper-centralization and independent -- excuse me,

discretionary decision making, and whether or not those

policies actually exist. And if they exist, how they play

out in the process. So our proposal was to have the 12(c)

decided, to have the 30(b)(6), and to determine -- on the

policies and procedures, and to determine what class-wide

discovery.

         And as I indicated, to the extent that the six

plaintiffs all still are in the case at that point in time,

we do think it would be appropriate to talk about data

related to those offices that those individuals worked in in

1  the relevant time period for the statute of limitations.

2       **THE COURT:**  Okay.  Let me hear back from

3  plaintiffs' counsel again.  So let me just start by asking,

4  what do you think about that proposal of waiting and doing

5  class discovery after the Court resolves the 12(c) motion?

6  What's the urgency in doing the class discovery before the

7  12(c) motion is decided?

8       **MS. MUETING:**  Certainly, your Honor.  We don't --

9  plaintiffs do not see the point in waiting, because even if

10  this 12(c) motion is granted in full, we would still have

11  live disparate treatment claims.

12       **THE COURT:**  Right.  But I assume, though, what

13  your expert analyzes -- and the expert report is going to be

14  different depending on what the claims in the case are,

15  right?

16       **MS. MUETING:**  Not with respect to the statistical

17  expert.  The statistical expert is going to look at the data

18  and determine whether there are statistically significant

19  gender-based disparities.

20       **THE COURT:**  I would have -- I mean, I find that a

21  little surprising that you have an expert who's submitting a

22  report on class certification, and that that expert's report

23  is going to look the same in a case in which the claims are

24  disparate impact claims as a case in which there are

25  disparate treatment claims.

1    **MS. MUETING:**  The two reports may not be

2    identical, but they would both include information about

3    whether there are statistically significant gender-based

4    disparities that we would need this payroll data in order to

5    determine.

6    **THE COURT:**  Right, no, no, I understand that.  You

7    may -- in your view, you may still need the same

8    information.  But I'm saying you're not going to be in a

9    position to brief, for example, class certification until

10   the Court decides the 12(c) motion, right?

11   **MS. MUETING:**  That's correct, your Honor.

12   **THE COURT:**  And I assume that your expert is not

13   going to be -- your expert may be in a position in which he

14   or she can like start building models beforehand, but is not

15   going to be in a position in which he or she can actually

16   write a report until he or she knows what the claims are in

17   the case.

18   **MS. MUETING:**  I guess the point, though, is that

19   the information that we are seeking today will not change

20   regardless of the outcome of the 12(c) motion.  And so we do

21   not see the point of increased delay here, because we could

22   wait two months and then we would still be back seeking the

23   exact same information, and be entitled to the exact same

24   information that we're seeking.

25   **THE COURT:**  So convince me on that.  You have

1  class representatives from New York, Atlanta and Irvine.  Do

2  you really think that it's going to be relevant to whether

3  there is a disparate impact claim -- that those individuals

4  would have disparate impact claims, what someone is being

5  paid in Cleveland?

6          **MS. MUETING:**  Yes, your Honor.

7          **THE COURT:**  Because?  You need to explain that to

8  me.

9          **MS. MUETING:**  Absolutely, your Honor, thank you.

10  So plaintiffs have alleged class-wide claims here.  This is

11  not joinder of --

12          **THE COURT:**  No, I understand.  But I can allege

13  that the moon is made of cheese, it doesn't mean that I get

14  discovery from every cheese factory.

15          **MS. MUETING:**  Well, certainly.

16          **THE COURT:**  The question is what is your theory of

17  sort of -- I mean, of what would be a basis for a class

18  action that included associates in Cleveland based on

19  what -- based where you have representatives in these other

20  three cities?

21          **MS. MUETING:**  And your Honor, I just want to make

22  sure that we're not --

23          **THE COURT:**  And where the plaintiffs are -- I

24  mean, the defendants are saying that salaries are not set on

25  a nationwide basis.  And maybe the answer is you ought to

1    take that 30(b)(6) deposition first and find out the answers

2    to those questions.

3         **MS. MUETING:**  Your Honor, so several points on

4    that.  So first of all, plaintiffs have alleged class-wide

5    claims and pointed to specific firm-wide policies.  Jones

6    Day has not moved to dismiss all of those class-wide claims.

7    Jones Day is trying to seek an inference now that the

8    policies apply differently than how they say they apply in

9    their public statements.

10        **THE COURT:**  Okay.  But so let's just focus for a

11   minute on disparate impact claims, because that's what we

12   know is in the case.

13        **MS. MUETING:**  Okay.

14        **THE COURT:**  What do those four policies have to do

15   with a disparate impact claim?  So intentional

16   discrimination based on sex.

17        **MS. MUETING:**  So the four policies, what do they

18   have to do with disparate treatment claims?

19        **THE COURT:**  I'm sorry, I apologize, disparate

20   treatment.

21        **MS. MUETING:**  So the statistics are related to the

22   disparate treatment claims.  Because in order to establish

23   disparate treatment claims, we will need to put forth before

24   the Court both statistical and anecdotal evidence.

25        **THE COURT:**  Right, but I'm not going to be

convinced that the fact -- you need, you know, comparators

and some sort of rationale for the comparators.  So I'm not

going to be convinced on a motion for summary judgment --

for example, if you show me that there are three women in

Cleveland who are paid less than three men in Cleveland, I'm

not going to be convinced that says anything about the

compensation of the women in Atlanta unless you can show me

that there is some firm-wide involvement in setting

compensation across offices or some policy that dictates or

provides some causal link as to why women in offices in

different parts of the country would be paid less.

     **MS. MUETING:**  Certainly, your Honor.  So first of

all, with respect to disparate treatment claims, specific

comparators and identification of specific comparators is

clearly not required under the case law.  I think what

you're concerned with is how are we going to --

     **THE COURT:**  Well, that's one way you can prove a

disparate treatment claim, right?  One way to prove your

disparate treatment claim and to establish your prima facie

case or to prove your claim is to say look, I'm a woman, I

am more qualified or as qualified as the man.  I got paid

10 percent less than the man did, and there is no rationale

that would explain why I was paid less other than sex.

     **MS. MUETING:**  But class-wide disparate treatment

and disparate impact claims are typically shown through

1   statistical modeling, through regressions, and whether Jones

2   Day makes cost of living adjustments or things that

3   statistical experts can account for in running their

4   regressions or in establishing controls.  And so that

5   doesn't affect the ability of plaintiffs to receive the data

6   in the first place.  And so --

7           **THE COURT:**  You're now trying to show disparate

8   treatment based on statistical data.  Jones Day says that

9   the people in Cleveland who are setting the pay scale -- the

10  pay are different or have no connection to the people in

11  Atlanta who are doing so.

12          So then what is the relevance of what people are

13  paid in Cleveland to showing that that statistical evidence

14  is relevant to what people are being paid in Atlanta?

15          **MS. MUETING:**  If I may, your Honor, Jones Day is

16  not entitled to this presumption at this discovery phase.

17  They wouldn't --

18          **THE COURT:**  I agree.

19          **MS. MUETING:**  -- even be able to get this

20  presumption at a motion for summary judgment phase.  It is

21  contradictory to their own handbook, to public statements

22  that they've made that establish --

23          **THE COURT:**  They wouldn't even get that

24  presumption at the summary judgment stage?  Well, at the

25  summary judgment stage, I think you're wrong about that.  I

1   mean, I think they would come in, and they would offer an

2   affidavit and they would say -- or a declaration, and they

3   would say the person who sets the pay in Atlanta is

4   different from the person who sets the pay in Cleveland.

5   There is no involvement of any other person who sets the pay

6   for both places, and therefore it's completely irrelevant.

7   The burden at that point -- and they would say therefore

8   that can't be the basis.  The burden at that point would

9   then be for you to come forward with evidence to show that

10  that's wrong in some way, that there was somebody involved;

11  that there's some reason to believe that there's some nexus

12  between the setting of the pay in Cleveland and the setting

13  of the pay in Atlanta.

14          **MS. MUETING:**  We have a lot of that evidence from

15  Jones Day's public statements and website and handbook, and

16  more evidence we will be getting through the 30(b)(6).  But

17  at the summary judgment stage, the facts are interpreted in

18  the light most favorable to the plaintiff.

19          **THE COURT:**  Yeah, but we're not at summary

20  judgment stage yet.  I'm just trying to figure out really

21  what the theory is that you have as to why people -- why pay

22  in Cleveland is indicative of pay or has something to do

23  with pay in Atlanta.  And it may be your answer to that is I

24  don't know yet, I haven't taken discovery.  It may be that I

25  don't believe Jones Day when Jones Day says the managing

1  partner's role is essentially non-substantive in approving

2  the national pay of each individual, and that the managing

3  partner's only involved in deciding what the general pay

4  scales were.  But I don't know yet what the connection is in

5  your mind.

6  **MS. MUETING:**  Yeah, I think so the connection is

7  here that plaintiffs have alleged firm-wide policies.  Our

8  plaintiffs are representatives of an entire class.

9  **THE COURT:**  I understand.  My question is what is

10  the firm-wide policy, though, that would tell you that the

11  pay in Atlanta is indicative of the pay -- or the pay in

12  Cleveland is indicative of the pay in Atlanta?

13  **MS. MUETING:**  So I don't know that that's the --

14  it doesn't need to be the fact that the pay in Cleveland is

15  indicative of the pay of Atlanta.  But we do point to

16  firm-wide policies and Jones Day's own statements that say,

17  quote, the managing partner -- one managing partner is the

18  final decision maker on associate compensation.

19  **THE COURT:**  So let me --

20  **MS. MUETING:**  If I may just --

21  **THE COURT:**  If you want to say something else, go

22  ahead.

23  **MS. MUETING:**  No, I was going to address other

24  points.

25  **THE COURT:**  So before you do that, though, come

1   back to my question, which I think I derailed you from,

2   which is what's the urgency of doing this now before we know

3   what the scope of the case is?  I mean, it does seem that

4   logically it would make sense to say okay, what are the

5   claims in the case.  And now once you know what the claims

6   are, then let's move to discovery.  And frankly at that

7   point in time, you could really do class discovery and

8   merits discovery at the same time.

9        **MS. MUETING:**  Two points on that, your Honor.

10  First, I do not think that the inquiry will be any different

11  even if we wait, because the statistical information that we

12  will need from Jones Day with respect to the surviving -- at

13  least the surviving disparate treatment claim will be

14  exactly the same as what we're requesting now.  So there's

15  no benefit to delaying, because we will be asking these same

16  questions at a later point.  And the --

17       **THE COURT:**  So you're -- and that's perhaps what

18  took me off on the tangent.  But before -- and I don't want

19  to go down that tangent again.  But still -- okay, so your

20  view is it doesn't matter and their view is it does matter.

21  I guess my question for you is what's the downside in

22  waiting, if any?

23       **MS. MUETING:**  We would create further delay for no

24  purpose.  And the second point, like Jones Day I think has

25  admitted here that there's not really a burden for producing

1    information from these centralized databases.  And if I

2    could address something that I know concerned your Honor

3    with respect to the privileged information.

4              THE COURT:  Yes.

5              MS. MUETING:  The parties have negotiated a

6    protective order that explicitly contemplates the production

7    of client confidential information.  Jones Day has --

8              THE COURT:  But they can't do that.

9              MS. MUETING:  Well, Jones --

10             THE COURT:  If I'm their client, I'm going

11   ballistic --

12             MS. MUETING:  Jones Day has --

13             THE COURT:  -- if they're turning over to some

14   other -- I mean, maybe they're discrimination cases that

15   they're turning over to a firm that handles those cases, and

16   it says she did a terrible job in this case because she made

17   an argument that we should have been hit with Rule 11

18   sanctions on.  We were lucky we weren't hit with it.

19             MS. MUETING:  Jones Day --

20             THE COURT:  Should they turn that over?

21             MS. MUETING:  Jones Day has already turned that

22   over.  We have 100 percent of the e-mails from all of the

23   named plaintiffs, and they're all designated as --

24             THE COURT:  Well, but you're talking about --

25             MS. MUETING:  -- client confidential.

**THE COURT:** You're talking about -- I mean, maybe I'm -- maybe I don't understand how privilege works and you need to, you know, elucidate that for me. But for 2,000 associates, if -- and maybe many of the evaluations don't have any privileged information in it. It may be the stuff they turned over didn't include privileged information in it. But I don't understand how in the world Jones Day could, consistent with their ethical obligations, turn over to you, even subject to a protective order, information that involved client confidences.

**MS. MUETING:** So Jones Day has already done this, and we've already negotiated a protective order that contemplates --

**THE COURT:** Tell me --

**MS. MUETING:** -- doing this.

**THE COURT:** -- where in the ethics rules does it say you can do that? I mean, maybe I'm missing the rules. I know that there's an exception, for example, for cases in which the client sues the law firm for malpractice or where there's a fee dispute with the law firm. But I'm not aware of some ethics rule that says that they're allowed to turn over client confidences in a case like this.

**MS. MUETING:** So they are allowed to turn it over --

**THE COURT:** Would you turn over client confidences

1  to them?

2  **MS. MUETING:**  They're allowed to turn it over --

3  **THE COURT:**  Would you do that?  Answer my

4  question, would you do that?

5  **MS. MUETING:**  I think subject to the protective

6  order that we have in this case, provided that the

7  information is relevant and necessary, as it is here, I

8  don't -- and Jones Day has not articulated a concern with

9  doing that.

10  **THE COURT:**  Okay.  Well, maybe I'm mistaken about

11  the way the privilege works.

12  **MS. MUETING:**  And so your Honor, I just --

13  **THE COURT:**  Would you be content with them just

14  redacting that column -- I mean, removing that column or do

15  you need that column?

16  **MS. MUETING:**  So without -- we're happy to meet

17  and confer on protections that can be used to protect client

18  confidential information, absolutely.  If redacting that

19  column means redacting all of the underlying evaluation

20  information, I'm not prepared to make that agreement at this

21  point.  But I could imagine a situation where certain client

22  names are redacted, but without redacting the entirety of

23  the underlying evaluation information.

24  And I think again here, your Honor, we've pointed

25  to numerous statements by the firm indicating that Jones Day

1    does not treat separate offices as separate marketplaces,

2    and makes decisions separately in different offices.  And so

3    for the purposes of this discovery dispute, Jones Day is not

4    permitted to ask this Court to remove claims or narrow

5    claims that it does not even seek to remove or narrow as

6    part of the briefing.

7    **THE COURT:**  Give me just one second here, I'm

8    sorry.  I'm just looking at the rules of professional

9    conduct here, and it says to me a lawyer may use or reveal

10   client confidences with the informed consent of the client

11   when permitted by these rules to the extent reasonably

12   necessary to establish a defense to a criminal charge,

13   disciplinary charge or civil claim formally instituted

14   against the lawyer based upon conduct in which the client

15   was involved; or to the extent necessary, to respond to

16   specific allegations by the client concerning the lawyer's

17   representation of the client when the lawyer has reasonable

18   grounds to believe that a client has impliedly authorized

19   disclosure; to the minimum extent necessary in an action

20   instituted by the lawyer to establish or collect fees; or to

21   the extent reasonably necessary to secure legal advice in

22   the lawyer's compliance with the law, including these rules.

23   So there may be something else there, but I don't

24   see it, at least on a quick look.

25   **MS. MUETING:**  Just two points on that, your Honor.

1   First, I think Jones Day has already made the determination

2   that it is appropriate to reveal this information, and the

3   protective order explicitly contemplates that.  Jones Day

4   has already turned over a lot of this information.  And

5   second, I do not think that a concern that one of the

6   databases -- a field in one of databases may contain client

7   confidential information warrants an entire -- justifies a

8   failure to produce all of the --

9         **THE COURT:**  No, no, it just responds to your point

10   that this is no burden on them.  Because if they do have to

11   go through and review it for client confidences, then there

12   is a burden involved with that.

13         **MS. MUETING:**  There's a burden with producing

14   apparently one field from one database.

15         **THE COURT:**  Right, right, but a pretty substantial

16   burden I would think.

17         **MS. MUETING:**  Well, again it was not a burden in

18   producing the entirety of the named plaintiffs' e-mails and

19   designating them all as client confidential under the

20   procedure.  Jones Day has flipped that burden to the

21   plaintiffs.  Jones Day has cited to no case

22   pre-certification where plaintiffs were denied this type of

23   data after having identified firm-wide policies.  This is

24   really an argument for a Rule 12(c) or a 12(b)(6) motion,

25   not an argument using a discovery dispute to try to narrow

1    claims that have been properly pled.

2           **THE COURT:**  Do you want to address the other

3    issue?  And if you need to approach the bench at some point,

4    you're welcome to do so.

5           **MS. MUETING:**  Certainly, your Honor.  So with

6    respect to the second issue, as we noted in our

7    correspondence to the Court yesterday, we do request that

8    this communication happen under seal.  My understanding from

9    Jones Day's e-mail to the Court yesterday is that it does

10   not object to the subject matter of this discussion being

11   treated as confidential.

12          **THE COURT:**  So if there's some point -- as I said,

13   you're welcome to both approach the bench and I will put the

14   husher on if there's something you need to address.  And

15   just sort of for benefit of those present, this is just a

16   question that deals with privacy interests of one of the --

17          **MS. MUETING:**  Okay.  Certainly, your Honor.  May

18   we approach?

19          **THE COURT:**  Yes, you may.  Privacy interests of

20   one of the plaintiffs in the case, personal information.

21       (Sealed bench conference placed under separate cover)

22          **THE COURT:**  We're back on the record.

23   Ms. Chase -- oh, I'm sorry, Ms. Mueting.

24          **MS. MUETING:**  Oh, thank you, your Honor.  Just one

25   last point with respect to this data issue.  Plaintiffs

would request the ability to brief this issue.  We do see
this as being -- to the extent plaintiffs are denied data in
advance of class certification, we do see this as an
unprecedented issue that would create substantial problems
in the class certification phase.

**THE COURT:**  Well, so I see your point on that.  I
guess what I'm really wrestling with right now is just
whether it makes sense to define the scope of the case
first, and then turn to all these issues particularly if
it's going to involve briefing and complicated arguments
with respect to why you think it's relevant or not.  I mean,
it's hard for me to believe your arguments will not be
different, for example, if there is a disparate impact claim
in the case.  I mean, if there's a disparate impact claim in
the case, your arguments become pretty easy at that point.
If there's not, they're harder.

**MS. MUETING:**  Okay, understood.  Thank you, your
Honor.

**THE COURT:**  Ms. Chase.

**MS. CHASE:**  Thank you, your Honor.  With respect
to this issue of process around the classified data issue
and when to address it, I think you've heard from us that we
do think that it makes sense to address the 12(c) first.  To
the extent that the Court is going to make a decision on
classified data, one point on which plaintiffs' counsel and

1    us do agree is that we would like briefing on it.  They

2    pointed out that there was not case law in our brief

3    submission to your Honor.  That was in part because of the

4    way in which this scheduling conference occurred.

5           As you know, under the rules we called.  We asked

6    to give you a little bit in writing in advance to tee up the

7    issues, but we did not anticipate that that was a brief.

8    There is certainly authority and a lot of additional

9    information that we would want to present to your Honor,

10   including some of the -- not just authority, but some of the

11   aspects of the complaint that weren't cited and otherwise

12   that we think are relevant to this decision.  So I do think

13   that if a ruling is going to be made on the discoverability

14   of class-wide data, that we do both request that there be a

15   full briefing on that issue.

16          I did want to respond to a topic that we were

17   discussing before we turned to the issue that was sealed,

18   and that is the issue of privilege.  And I just want to

19   clarify the record a bit on that front.  I can tell you that

20   Jones Day takes its ethical obligations to its clients quite

21   seriously.  And we are very much challenged by trying to

22   defend ourselves in this case in light of the fact that the

23   allegations with respect to the claims that are being made

24   in the case do require us to show how these plaintiffs were

25   performing.  And in order to demonstrate how they were

performing, we do need to get into privileged
communications.

What we have in our protective order, your Honor,
is a process by which there is a category of information,
client confidential information -- and this is in the
protective order that your Honor signed, that will never
appear in the docket in this case.  It's being provided to
plaintiffs and plaintiffs' counsel.  What we've provided
them are information that is within -- so for example, we
turned over the plaintiffs' e-mails with respect to five of
six of the plaintiffs.  One of the plaintiffs has been gone
for so long that we don't have her e-mail box anymore.  We
gave them the whole file.  95 percent of those e-mails are
privileged.  But the plaintiff has the right to see those
privileged communications, because she worked on these
matters as privileged.

And we have looked at the authority and got
ourself comfortable that under the ethical obligations, an
individual who was within the scope of that privilege and
their counsel can look at those information without in any
way violating our confidentiality obligations or our
privilege obligations.  But when we start talking about
producing much broader sets of data for individuals who
would have had access to privileged communications that the
plaintiffs had never seen on matters they didn't work on,

1    then we are looking at needing to do the type of redaction

2    that we were discussing previously.

3            When we're talking about the non-partner

4    evaluation database -- NPE for short, there is as I said

5    columns in there that we could produce that have numeric

6    ratings where we could query the system if we needed to

7    produce that data, and produce that data without having to

8    do redaction.  But if we were to look at any of the

9    narrative comments in multiple fields -- so attorneys are

10   asked to evaluate associates who are more junior associates

11   on judgment, writing, oral communication, written

12   communication.  There's 12 different topics, and there's

13   narratives under in which you can comment on all of these

14   things.  Areas for improvement, constructive criticism, a

15   whole host of topics.  The plaintiffs themselves can write a

16   self-assessment wherein they may describe their work on a

17   client.

18           All of those fields would need to be redacted, and

19   that's not something that we could do without literally

20   spending hundreds of hours of either printing out this stuff

21   from the database and redacting it or having someone try to

22   go into the database, that was not created for that purpose,

23   and try to find a way to redact it.

24           So to the extent that the record was somehow

25   suggesting that Jones Day does not take the privilege issue

1    seriously, I wanted to address that.  I also wanted to

2    explain --

3              **THE COURT:**  I didn't mean to suggest otherwise.  I

4    was basing my comments based on instinct as well as about 30

5    seconds of looking at the rule.  And both with respect to --

6    directed to both of you, I'm sure you've all looked at these

7    issues carefully.

8              **MS. CHASE:**  Yes.

9              **THE COURT:**  I just was raising an issue of

10   concern.

11             **MS. CHASE:**  I appreciate that.  But I was

12   cognisant of what the record was saying, and wanted to make

13   sure that we were clear that what we have given, we feel we

14   are well within the ethical rights to do so.  And if we

15   start talking about broader discovery of other individuals,

16   then redaction is something that will create a burden.

17             And so to the extent that we get -- and if we're

18   briefing these issues, we can certainly outline in greater

19   detail the fields that could be produced where we don't need

20   to have the redaction, and the fields that would require

21   redaction.

22             **THE COURT:**  Okay.

23             **MS. CHASE:**  Thank you, your Honor.

24             **THE COURT:**  All right, thank you.  Anything

25   further?

1    **MS. MUETING:** No, I don't, your Honor.

2    **THE COURT:** So this is what I think we ought to

3    do. I mean, I think these are going to be difficult enough

4    issues to decide, what the scope of class certification

5    discovery is. And I think it makes sense to do it in light

6    of what the actual claims in the case will be after the

7    Court resolves the Rule 12(c) motion.

8    So I'm going to just simply postpone the class

9    certification discovery. It will mean we'll have to delay

10   the schedule for class certification. I know that under the

11   rules, the plaintiff has to move within a certain number of

12   days. And I will relieve you of that obligation to do so,

13   and will bring you all in I think for a scheduling

14   conference as soon as I decide the Rule 12(c) motion. And

15   what we'll do is at that point in time, I'll just require

16   that you all meet and confer and file with the Court a Rule

17   16 statement. We'll have the Rule 26 conference at that

18   point in the process, and we can discuss class discovery as

19   well as non-class discovery at that stage.

20   The one thing, though, that does seem to me is

21   that given the fact that it -- and maybe I'm wrong about

22   this, but it sounds to me like the limited discovery which

23   has taken place thus far has been perhaps a little bit

24   disproportionate in that the plaintiffs have actually had

25   their depositions taken; that it would be fair for Jones Day

to provide the 30(b)(6) deposition that it had offered

pending the Rule 16 conference; and just to perhaps catch

the plaintiffs up a little bit with respect to what Jones

Day's view is on some of these issues.  And then I'll get

you a decision on the Rule 12(c) motion, you'll come back in

and we'll just figure out where we go from there.

　　　　　Okay, thank you.

　　　(Proceedings adjourned at 11:22 a.m.)

# **C E R T I F I C A T E**

I, **Jeff M. Hook, Official Court Reporter,**
certify that the foregoing is a true and correct transcript
of the record of proceedings in the above-entitled matter.


**November 13, 2019**

**DATE**                                    **Jeff M. Hook**

**$**

$25,000 [1]   19/7
$40,000 [1]   19/7

**'**

'16 [1]    19/13
'18 [1]    19/13

**0**

0945 [1]    1/4

**1**

10 percent [1]
36/22
100 percent [1]
41/22
10281 [1]   1/19
10:03 [1]   1/7
11 [1]   41/17
11:22 a.m [1]   53/8
12 [24]   2/21 10/20
13/20 16/21 17/2
17/8 17/22 21/17
22/21 30/21 31/1
31/18 32/5 32/7
32/10 33/10 33/20
45/24 45/24 47/23
50/12 52/7 52/14
53/5
16 [2]   52/17 53/2
18 [3]   15/10 15/13
16/10
19-945 [1]   2/2
1:19-cv-0945 [1]
1/4

**2**

2,000 [6]   14/17
14/18 14/18 15/9
30/18 42/3
20 [1]   30/17
20001 [1]   1/25
20003 [1]   1/16
2012 [2]   16/18 19/6
2014 [1]   16/18
2016 [3]   16/19 19/9
21/2
2018 [2]   16/19 19/9
2019 [4]   1/6 19/11
19/11 19/12
23 [1]   5/12
250 [1]   1/19
26 [3]   3/15 4/9
52/17

**3**

30 [11]   3/2 16/7
21/10 21/17 30/17
31/6 31/19 35/1
38/16 51/4 53/1
300 [1]   1/15
333 [1]   1/24

**4**

4.7 [2]   8/23 8/25
4700-C [1]   1/24

**5**

500 [1]   22/10

**7**

700 [1]    1/15

**9**

945 [1]    2/2
95 percent [1]
49/13

**A**

a.m [2]   1/7 53/8
ability [2]   37/5
47/1
able [7]   9/9 15/5
17/4 22/7 25/21
27/2 37/19
above [2]   19/3 54/5
above-entitled [1]
54/5
absent [1]   14/5
absolutely [4]   2/18
29/7 34/9 43/18
academic [1]   9/25
access [1]   49/24
accomplish [2]   14/3
14/4
account [1]   37/3
acquisition [1]
29/1
across [1]   36/9
action [8]   1/4 2/2
5/8 13/25 22/2
22/20 34/18 44/19
activity [1]   11/1
actual [5]   9/3 9/14
26/13 26/14 52/6
actually [12]   8/24
10/7 11/12 17/3
22/18 27/20 28/3
28/4 30/5 31/17
33/15 52/24
addition [1]   28/21
additional [1]   48/8
address [9]   4/14
14/23 39/23 41/2
46/2 46/14 47/22
47/23 51/1
addressed [1]   10/12
adequate [2]   18/23
22/5
adjourned [1]   53/8
adjustments [3]
9/24 21/1 37/2
admitted [5]   15/21
15/23 21/11 21/13
40/25
advance [3]   12/14
47/3 48/6
advice [1]   44/21
affect [2]   26/12
37/5
affidavit [1]   38/2
again [7]   9/18 27/9
27/22 32/3 40/19
43/24 45/17
against [2]   24/21
44/14
agree [4]   3/5 17/19
37/18 48/1
agreed [7]   2/21

3/14 3/25 4/10 10/7
13/2 13/3
agreement [1]   43/20
ahead [2]   7/20
39/22
al [3]   1/3 2/3 2/3
all designated [1]
41/23
allegation [1]
25/14
allegations [3]
23/13 44/16 48/23
allege [8]   19/21
19/22 23/4 23/7
23/11 23/23 26/2
34/12
alleged [7]   7/17
10/15 23/8 26/19
34/10 35/4 39/7
allegedly [1]   23/1
alleges [1]   23/20
alleging [5]   26/6
26/7 26/7 26/8
26/16
allocations [1]
11/15
allow [1]   17/1
allowed [3]   42/21
42/23 43/2
allowed to [1]
42/23
allows [2]   24/25
25/18
Although [1]   17/11
amended [1]   24/14
amount [2]   7/25
27/8
analysis [8]   5/3
5/4 5/6 5/12 6/2
15/6 16/22 17/18
analyzes [1]   32/13
anecdotal [2]   9/7
35/24
answered [1]   3/8
anticipate [3]   2/21
4/11 48/7
anymore [1]   49/12
apologize [1]   35/19
apparently [1]
45/14
Appeals [1]   5/7
appear [1]   49/7
APPEARANCES [1]
1/13
appearing [1]   30/6
applied [1]   26/6
apply [4]   10/16
29/22 35/8 35/8
appreciate [1]
51/11
approach [4]   2/4
46/3 46/13 46/18
appropriate [7]   5/5
5/17 12/7 18/23
18/25 31/24 45/2
approving [1]   39/1
Areas [1]   50/14
argue [4]   5/21
14/20 27/19 27/25
arguing [2]   20/8

20/18
argument [9]   8/14
9/5 16/20 19/18
20/11 27/16 41/17
45/24 45/25
arguments [3]   47/10
47/12 47/15
around [2]   14/15
47/21
articulated [3]
23/15 23/17 43/8
aside [2]   21/24
23/5
aspects [1]   48/11
assessing [1]   30/7
assessment [2]
28/19 50/16
associate [4]   7/24
8/23 11/22 39/18
associate's [1]
8/11
associates [13]
14/17 14/18 14/18
15/20 17/17 18/17
22/4 24/5 28/24
34/18 42/4 50/10
50/10
associates to [1]
18/17
assume [8]   4/20
8/21 8/25 17/12
17/14 25/2 32/12
33/12
assure [1]   28/10
Atlanta [13]   16/14
18/17 19/2 34/1
36/7 37/11 37/14
38/3 38/13 38/23
39/11 39/12 39/15
attack [1]   26/11
attempt [1]   7/19
attempted [1]   30/25
attorneys [3]   20/22
28/10 50/9
authority [3]   48/8
48/10 49/17
authorized [1]
44/18
Ave [1]   1/15
Avenue [1]   1/14
aware [1]   42/20

**B**

back [11]   8/23 9/2
14/10 15/8 19/6
30/22 32/2 33/22
40/1 46/22 53/5
ballistic [1]   41/11
Bankruptcy [1]   1/23
based [12]   6/6 13/2
26/4 31/5 32/19
33/3 34/18 34/19
35/16 37/8 44/14
51/4
basing [1]   51/4
basis [8]   7/19
11/19 21/11 27/3
29/18 34/17 34/25
38/8
BATL [2]   24/2 24/3

**B**

because you [1]
18/2
become [1]   47/15
beforehand [1]
33/14
began [1]   2/19
behalf [1]   22/20
belief [1]   19/12
below [1]   19/4
bench [3]   46/3
46/13 46/21
benefit [2]   40/15
46/15
better [3]   4/21
17/2 21/18
bifurcate [1]   3/5
big [1]   19/12
bit [6]   14/15 26/11
48/6 48/19 52/23
53/3
BLANKENSTEIN [2]
1/14 2/9
boils [1]   15/24
bones [1]   14/15
both [9]   6/23 7/3
33/2 35/24 38/6
46/13 48/14 51/5
51/6
bottom [1]   11/17
box [1]   49/12
brief [4]   33/9 47/1
48/2 48/7
briefing [7]   4/22
31/8 44/6 47/10
48/1 48/15 51/18
bring [2]   22/2
52/13
broad [1]   16/25
broader [4]   14/21
14/22 49/23 51/15
building [1]   33/14
bump [1]   21/3
burden [14]   8/14
27/17 27/22 29/23
38/7 38/8 40/25
45/10 45/12 45/13
45/16 45/17 45/20
51/16
burdensome [3]
27/25 30/8 30/19
business [1]   24/3

**C**

California [2]
18/13 18/16
call [2]   16/10 24/2
called [2]   29/13
48/5
can [38]   2/16 4/23
6/5 7/3 13/18 14/2
14/10 15/6 16/6
18/2 21/15 21/16
21/18 21/23 22/12
24/18 27/19 27/20
27/20 28/10 28/22
30/3 30/16 31/2
33/14 33/15 34/12
36/7 36/17 37/3

42/17 43/17 48/19
49/20 50/13 50/15
51/18 52/18
carefully [1]   51/7
carried [1]   21/6
case [43]   5/13 9/8
9/10 13/12 13/25
15/15 16/2 16/13
17/4 17/7 17/24
20/20 21/16 26/25
27/4 28/13 28/14
29/22 30/16 31/5
31/23 32/14 32/23
32/24 33/17 35/12
36/15 36/20 40/3
40/5 41/16 42/22
43/6 45/21 46/20
47/8 47/14 47/15
48/2 48/22 48/24
49/7 52/6
cases [6]   14/22
14/23 31/8 41/14
41/15 42/18
catch [1]   53/2
category [1]   49/4
causal [1]   36/10
cause [3]   19/19
19/23 20/4
caused [3]   20/2
26/16 31/10
centralization [7]
11/3 20/4 20/10
20/17 21/19 26/15
31/15
centralize [1]   28/3
centralized [7]
8/18 9/16 9/20 10/2
10/5 10/13 41/1
cert [1]   31/8
certain [4]   20/14
23/7 43/21 52/11
certainly [13]   4/15
6/18 7/5 15/1 18/5
27/24 32/8 34/15
36/12 46/5 46/17
48/8 51/18
certification [22]
4/6 5/5 5/17 5/21
5/23 7/6 7/11 7/14
12/7 13/10 14/8
22/6 30/21 30/23
32/22 33/9 45/22
47/3 47/5 52/4 52/9
52/10
certified [1]   14/2
certify [1]   54/4
challenge [1]   26/13
challenged [1]
48/21
challenging [1]
20/6
change [4]   19/19
19/23 26/23 33/19
charge [4]   16/11
21/8 44/12 44/13
CHASE [5]   1/18 2/12
2/14 46/23 47/19
check [3]   24/22
24/24 25/24
checked [1]   25/20

cheese [2]   34/13
34/14
circumstance [1]
29/20
cite [1]   14/22
cited [2]   45/21
48/11
cities [1]   34/20
civil [3]   1/4 2/2
44/13
claim [20]   17/13
18/7 20/7 22/22
23/1 26/3 26/17
26/18 26/24 27/6
27/15 34/3 35/15
36/18 36/19 36/20
40/13 44/13 47/13
47/14
claiming [1]   17/13
claims [56]
clarify [1]   48/19
clarity [1]   17/23
class [57]
class-based [1]
13/2
class-wide [13]
3/16 5/1 5/7 21/20
23/16 23/17 31/4
31/20 34/10 35/4
35/6 36/24 48/14
classes [1]   21/7
classified [2]
47/21 47/25
clear [3]   20/6
24/13 51/13
clearly [1]   36/15
Cleveland [14]
16/16 19/1 19/3
34/5 34/18 36/5
36/5 37/9 37/13
38/4 38/12 38/22
39/12 39/14
client [29]   28/23
29/1 29/2 29/2
29/15 29/20 30/5
30/10 30/14 41/7
41/10 41/25 42/10
42/19 42/22 42/25
43/17 43/21 44/10
44/10 44/14 44/16
44/17 44/18 45/6
45/11 45/19 49/5
50/17
clients [1]   48/20
close [1]   24/18
cognisant [1]   51/12
collect [1]   44/20
COLUMBIA [1]   1/1
Columbus [3]   16/16
19/1 19/3
column [4]   43/14
43/14 43/15 43/19
columns [1]   50/5
comfortable [1]
49/18
coming [1]   18/21
comment [1]   50/13
commenting [1]
28/24
comments [2]   50/9

51/4
common [7]   6/9
15/14 22/8 22/15
23/4 23/14 31/10
commonality [7]
6/11 6/12 6/15 6/21
22/12 22/13 22/18
communication [3]
46/8 50/11 50/12
communications [3]
49/2 49/15 49/24
comparable [1]
18/17
comparator [2]
17/18 18/8
comparators [20]
15/5 15/24 16/22
18/4 18/25 21/21
21/23 22/16 23/18
23/22 24/8 24/15
27/10 27/10 27/13
30/12 36/1 36/2
36/14 36/14
compare [3]   19/1
19/7 23/24
compared [1]   25/16
compensation [25]
5/2 6/3 8/20 9/24
9/24 10/23 11/3
11/7 15/17 16/5
16/9 16/12 16/15
19/20 19/23 20/21
20/25 25/7 25/17
25/23 27/2 29/12
36/7 36/9 39/18
complaint [2]   24/14
48/11
complaints [1]
10/25
completely [1]   38/6
compliance [1]
44/22
complicated [1]
47/10
conceivable [1]
12/1
concern [4]   8/16
43/8 45/5 51/10
concerned [3]   14/5
36/16 41/2
concerning [1]
44/16
concerns [2]   13/7
13/8
conduct [4]   5/11
6/1 44/9 44/14
confer [7]   4/11
4/12 10/3 13/5 31/3
43/17 52/16
conference [6]   1/10
46/21 48/4 52/14
52/17 53/2
conferring [3]   2/24
3/2 10/6
confers [1]   18/21
confidences [5]
42/10 42/22 42/25
44/10 45/11
confidential [13]
10/24 28/21 28/23

**C**

confidential... [10]
28/23 29/15 30/15
41/7 41/25 43/18
45/7 45/19 46/11
49/5
confidentiality [1]
49/21
connection [3]
37/10 39/4 39/6
consensus [1]   28/19
consent [1]   44/10
considered [1]   5/9
consistent [1]   42/8
Constitution [1]
1/24
constructive [1]
50/14
consuming [1]   28/1
contain [1]   45/6
contemplated [1]
5/12
contemplates [3]
41/6 42/13 45/3
content [1]   43/13
context [2]   22/20
29/19
continuing [1]   4/11
contradictory [1]
37/21
contradicts [1]
12/8
contrary [1]   20/10
controls [2]   6/4
37/4
convince [1]   33/25
convinced [4]   29/17
36/1 36/3 36/6
correspondence [1]
46/7
cost [2]   19/1 37/2
counsel [7]   2/3
18/21 28/11 32/3
47/25 49/8 49/20
country [1]   36/11
course [3]   12/25
19/22 22/24
COURT [30]   1/1 1/23
2/22 4/9 4/12 4/16
4/17 5/7 5/11 5/12
5/22 5/22 6/19 9/10
10/21 13/17 13/21
14/6 17/1 22/7 32/5
33/10 35/24 44/4
46/7 46/9 47/24
52/7 52/16 54/3
courts [12]   1/23
5/4 5/6 5/14 5/15
6/19 6/25 7/8 7/9
7/11 13/8 13/24
cover [1]   46/21
covered [1]   18/19
covers [1]   10/14
Cravath [3]   15/21
15/24 15/25
create [3]   40/23
47/4 51/16
created [1]   50/22
criminal [1]   44/12

criticism [1]   50/14
criticized [1]
23/11
current [2]   2/15
4/14
currently [1]   2/20
custodial [5]   2/25
10/5 12/14 12/17
12/19
custodians [4]   10/8
13/2 13/3 13/4
custodians' [1]
10/8
cv [1]   1/4

**D**

data [40]   5/1 5/2
5/2 5/10 6/2 6/2
7/1 8/15 9/9 10/2
13/25 15/3 15/9
16/15 16/18 16/20
16/21 18/15 18/17
19/10 24/16 27/9
27/18 27/23 30/3
30/5 31/24 32/17
33/4 37/5 37/8
45/23 46/25 47/2
47/21 47/25 48/14
49/23 50/7 50/7
database [19]   9/21
9/21 9/22 10/13
27/19 28/3 28/20
29/5 29/7 29/10
29/12 29/13 29/14
29/14 30/11 45/14
50/4 50/21 50/22
databases [10]   8/18
9/16 9/21 10/2 10/5
27/23 28/3 41/1
45/6 45/6
date [3]   29/10
29/11 54/10
dates [1]   9/23
DAY [60]
Day's [14]   5/20 6/2
9/16 11/6 11/8 13/5
15/11 16/14 18/12
22/2 38/15 39/16
46/9 53/4
days [1]   52/12
DC [4]   1/5 1/16
1/25 5/7
deals [1]   46/16
decide [4]   30/23
31/1 52/4 52/14
decided [8]   5/15
7/14 13/17 17/22
21/17 30/22 31/19
32/7
decides [1]   33/10
deciding [1]   39/3
decision [17]   11/7
11/12 11/13 20/8
20/9 20/15 21/5
21/7 26/10 26/10
26/16 27/7 31/16
39/18 47/24 48/12
53/5
decisions [9]   11/4
11/8 16/5 16/9

20/18 26/9 26/13
26/14 44/2
declaration [1]
38/2
defend [1]   48/22
defendant [3]   1/7
1/18 4/2
defendants [1]
34/24
defense [1]   44/12
define [1]   47/8
delay [3]   33/21
40/23 52/9
delaying [1]   40/15
demonstrate [2]
22/7 48/25
denied [2]   45/22
47/2
depending [3]   20/15
31/1 32/14
deposed [2]   2/24
27/12
deposition [4]   4/3
31/6 35/1 53/1
depositions [11]
2/23 3/24 3/25
12/15 12/22 12/25
15/19 15/21 15/23
23/5 52/25
derailed [1]   40/1
describe [1]   50/16
designated [1]
41/23
designating [1]
45/19
detail [1]   51/19
determination [1]
45/1
determinations [2]
5/8 5/13
determine [7]   9/9
19/25 31/4 31/19
31/20 32/18 33/5
determining [3]   5/5
5/17 14/1
develop [2]   5/14
7/12
developed [1]   7/13
devices [1]   10/8
dictates [1]   36/9
difference [1]
11/11
differences [1]   8/8
different [23]
15/10 15/13 17/9
17/9 19/4 20/13
20/15 23/2 23/2
23/9 24/11 26/20
26/21 26/22 28/6
32/14 36/11 37/10
38/4 40/10 44/2
47/13 50/12
differently [1]
35/8
difficult [1]   52/3
diligence [1]   29/3
directed [1]   51/6
disagree [1]   22/1
disciplinary [1]
44/13

discloses [1]   25/8
disclosing [1]
29/25
disclosure [1]
44/19
discourages [1]
27/1
discoverability [1]
48/13
discovery [71]
discretionary [3]
20/5 26/15 31/16
discrimination [11]
22/24 23/14 24/10
24/21 25/1 25/19
26/4 26/8 26/9
35/16 41/14
discriminatory [1]
26/7
discuss [1]   52/18
discussing [3]   3/15
48/17 50/2
discussion [1]
46/10
discussions [1]
2/19
dismiss [1]   35/6
disparate [47]   6/24
6/25 7/4 7/4 13/22
13/23 14/1 17/7
17/8 17/12 18/3
18/7 18/14 19/18
20/7 21/24 21/25
22/22 22/25 24/9
26/2 26/17 26/18
26/24 27/6 27/14
31/10 32/11 32/24
32/25 34/3 34/4
35/11 35/15 35/18
35/19 35/22 35/23
36/13 36/18 36/19
36/24 36/25 37/7
40/13 47/13 47/14
disparities [6]   6/7
7/2 7/10 9/6 32/19
33/4
disparity [1]   9/1
disproportionate [1]
52/24
dispute [8]   2/15
4/14 12/5 14/3
19/22 42/20 44/3
45/25
disputed [2]   10/16
21/13
disputes [1]   4/16
DISTRICT [4]   1/1
1/1 1/11 1/23
docket [1]   49/7
documents [2]   12/21
16/7
dollars [1]   11/23
done [3]   9/2 30/3
42/11
down [5]   11/23 12/1
15/25 27/19 40/19
downside [1]   40/21
draft [1]   2/22
driven [1]   11/2
due [1]   29/2

**D**

Dukes [7]   5/13 5/13
5/14 7/9 7/11 7/12
20/5
during [3]   4/3
17/16 24/5

**E**

e-mail [2]   46/9
49/12
e-mails [6]   12/23
12/24 41/22 45/18
49/10 49/13
earlier [1]   12/16
early [1]   2/22
easy [1]   47/15
efforts [1]   27/24
either [2]   26/15
50/20
Elite [1]   9/22
else [2]   39/21
44/23
elucidate [1]   42/3
emphasized [1]   6/20
employ [1]   3/1
employed [1]   19/11
employee [1]   25/8
employer [2]   25/6
26/25
employers [1]   25/15
enable [1]   5/3
end [2]   9/23 29/10
enormous [1]   7/25
enough [3]   5/22
23/13 52/3
entire [4]   11/7
15/1 39/8 45/7
entirety [2]   43/22
45/18
entitle [1]   17/9
entitled [6]   8/5
17/11 17/15 33/23
37/16 54/5
ESI [1]   12/17
especially [1]   7/9
essential [1]   5/6
essentially [1]
39/1
establish [6]   12/6
35/22 36/19 37/22
44/12 44/20
establishing [1]
37/4
et [3]   1/3 2/3 2/3
ethical [4]   42/8
48/20 49/18 51/14
ethics [2]   42/16
42/21
evaluate [2]   20/23
50/10
evaluated [1]   20/12
evaluating [2]
20/14 28/24
evaluation [18]   5/2
6/3 7/23 8/11 8/20
8/24 9/7 10/23 11/2
11/8 15/3 29/6
29/13 30/4 30/11
43/19 43/23 50/4

evaluations [4]   9/3
9/14 29/24 42/4
even [11]   13/17
13/21 14/3 15/8
16/20 32/9 37/19
37/23 40/11 42/9
44/5
everybody [1]   22/20
everyone [1]   26/6
evidence [20]   5/9
5/16 5/19 5/23 6/3
6/4 6/5 6/18 7/2
7/2 9/10 15/22
15/23 16/6 17/16
35/24 37/13 38/9
38/14 38/16
exact [2]   33/23
33/23
exactly [1]   40/14
example [12]   3/23
14/25 17/12 21/2
23/19 23/25 28/25
33/9 36/4 42/18
47/13 49/9
exceedingly [1]
27/25
exception [1]   42/18
excuse [1]   31/15
exist [4]   19/22
19/23 31/17 31/17
expansive [2]   13/13
16/25
expedition [1]   17/6
expert [13]   5/3
5/25 6/1 6/5 6/5
9/9 32/13 32/13
32/17 32/17 32/21
33/12 33/13
expert's [1]   32/22
experts [1]   37/3
explain [3]   34/7
36/23 51/2
explained [1]   11/6
explicitly [2]   41/6
45/3
extensive [4]   4/22
7/22 7/24 14/14
extensively [1]
30/10
extent [12]   17/13
20/25 23/7 31/22
44/11 44/15 44/19
44/21 47/2 47/24
50/24 51/17
extremely [1]   28/9

**F**

facie [1]   36/19
fact [13]   5/13 12/3
15/15 15/18 18/7
18/24 20/20 22/7
22/13 36/1 39/14
48/22 52/21
factory [1]   34/14
facts [2]   31/13
38/17
failure [1]   45/8
fair [1]   52/25
fairly [1]   30/8
falls [1]   16/2

far [3]   12/7 12/12
52/23
favorable [1]   38/18
fee [1]   42/20
feel [1]   51/13
fees [1]   44/20
fester [1]   25/1
field [2]   45/6
45/14
fields [4]   50/9
50/18 51/19 51/20
figure [3]   28/22
38/20 53/6
file [3]   29/8 49/13
52/16
files [2]   28/5 28/5
final [4]   11/7
11/12 12/4 39/18
find [4]   15/5 32/20
35/1 50/23
finding [1]   31/13
firm [29]   7/18 7/24
8/1 10/15 10/18
10/20 10/22 11/7
12/11 12/15 15/12
15/15 15/19 16/8
18/12 21/3 25/6
28/12 29/21 35/5
36/8 39/7 39/10
39/16 41/15 42/19
42/20 43/25 45/23
firm-wide [10]   7/18
10/15 10/18 10/20
35/5 36/8 39/7
39/10 39/16 45/23
firms [3]   25/15
25/16 25/18
first [18]   4/3 4/17
4/25 8/13 10/21
17/21 19/7 19/8
21/4 21/17 35/1
35/4 36/12 37/6
40/10 45/1 47/9
47/23
fishing [1]   17/6
five [2]   28/12
49/10
five-year [1]   28/12
flipped [1]   45/20
focus [5]   18/4
18/12 19/16 27/7
35/10
focuses [1]   21/21
following [1]   24/18
foregoing [1]   54/4
foremost [1]   17/21
form [4]   12/4 16/7
16/7 17/10
formally [1]   44/13
forth [1]   35/23
forward [2]   13/18
38/9
four [5]   10/19
19/17 28/3 35/14
35/17
fourth [1]   11/2
frankly [1]   40/6
front [1]   48/19
full [3]   13/21
32/10 48/15

fully [2]   5/15 7/13
further [3]   15/8
40/23 51/25

**G**

gave [3]   24/1 27/10
49/13
gender [5]   6/6 9/6
26/4 32/19 33/3
gender-based [4]
6/6 26/4 32/19 33/3
general [2]   24/22
39/3
generally [2]   2/17
23/6
geographic [4]
15/14 15/16 18/10
19/5
geographical [3]
7/16 10/11 10/12
given [4]   16/25
23/23 51/13 52/21
going to [1]   33/13
good [9]   2/5 2/7
2/8 2/11 2/12 2/14
13/9 14/12 27/8
grain [1]   25/3
granted [2]   13/21
32/10
great [2]   24/4 29/2
greater [1]   51/18
ground [1]   22/3
grounds [1]   44/18
guess [4]   7/21
33/18 40/21 47/7

**H**

hand [1]   22/10
handbook [2]   37/21
38/15
handful [1]   30/17
handles [1]   41/15
happen [1]   46/8
happened [2]   19/9
19/10
happening [2]   21/4
26/9
happy [2]   10/3
43/16
hard [2]   23/12
47/12
harder [1]   47/16
hear [2]   14/9 32/2
heard [1]   47/22
Heisler [3]   1/15
2/6 2/9
held [1]   7/1
herring [1]   26/11
hesitate [1]   3/20
hiding [2]   26/8
26/9
highly [4]   28/21
28/21 28/22 29/15
hit [2]   41/17 41/18
hold [2]   5/6 13/25
holding [1]   10/22
holds [1]   21/19
Honor [45]   2/5 2/8
2/12 2/18 4/7 4/15
6/10 8/12 10/10

**H**

Honor... [36]   12/5
13/7 13/19 14/11
14/12 14/13 16/24
17/19 20/19 25/5
26/1 30/24 32/8
33/11 34/6 34/9
34/21 35/3 36/12
37/15 40/9 41/2
43/12 43/24 44/25
46/5 46/17 46/24
47/18 47/20 48/3
48/9 49/3 49/6
51/23 52/1
HONORABLE [1]   1/10
HOOK [3]   1/22 54/3
54/10
hopefully [1]   4/23
host [1]   50/15
hours [2]   10/1
50/20
HRIS [1]   29/9
human [1]   29/9
hundreds [1]   50/20
husher [1]   46/14
hyper [7]   11/3 20/4
20/10 20/17 21/19
26/15 31/15
hyper-centralization [7]
11/3 20/4 20/10
20/17 21/19 26/15
31/15

**I**

idea [1]   16/15
identical [1]   33/2
identification [1]
36/14
identified [9]
19/17 20/3 22/23
23/3 24/14 27/9
27/13 30/13 45/23
identifies [1]
15/15
identify [2]   2/4
26/3
illustrates [2]
5/14 7/12
illustrating [1]
8/13
imagine [1]   43/21
impact [21]   6/24
7/4 17/7 18/7 18/14
19/18 20/2 20/4
20/7 21/24 26/17
26/24 31/11 32/24
34/3 34/4 35/11
35/15 36/25 47/13
47/14
impacted [2]   21/7
23/9
impliedly [1]   44/18
improbable [1]
11/21
improvement [1]
50/14
inappropriate [1]
7/17
include [2]   33/2

42/6
included [1]   34/18
includes [3]   9/22
22/2 29/15
including [3]   6/3
44/22 48/10
increased [1]   33/21
increases [1]   25/18
independent [1]
31/15
indicated [6]   17/20
18/22 20/19 20/23
28/7 31/22
indicates [1]   9/8
indicating [1]
43/25
indicative [4]
38/22 39/11 39/12
39/15
individual [12]   3/6
3/7 7/16 23/23 24/1
26/21 27/7 28/10
28/14 30/12 39/2
49/19
individuals [15]
15/9 18/5 18/6 18/9
23/22 24/16 26/21
27/1 27/11 27/12
30/16 31/25 34/3
37/23 51/15
inequity [1]   15/4
infer [1]   31/10
inference [1]   35/7
information [56]
informed [1]   44/10
initial [2]   14/4
31/3
initially [1]   8/4
initiation [1]   11/5
inquiry [1]   40/10
instinct [1]   51/4
instituted [2]
44/13 44/20
intentional [5]
22/24 23/13 24/10
26/5 35/15
interested [1]
28/14
interests [2]   46/16
46/19
interpreted [1]
38/17
into [4]   2/15 4/13
49/1 50/22
intolerance [2]
10/24 11/1
intuitively [1]   8/7
involve [1]   47/10
involved [8]   11/13
13/15 27/24 38/10
39/3 42/10 44/15
45/12
involvement [2]
36/8 38/5
irrelevant [1]   38/6
Irvine [7]   11/22
16/14 18/11 18/16
19/4 23/21 34/1
issue [19]   4/17
4/25 14/10 14/10

14/13 16/3 18/24
46/3 46/6 46/25
47/1 47/4 47/21
47/21 48/15 48/17
48/18 50/25 51/9
issues [16]   3/14
4/20 4/23 6/9 15/16
22/15 22/17 22/19
23/16 31/9 47/9
48/7 51/7 51/18
52/4 53/4

**J**

J.D [1]   9/24
JEFF [3]   1/22 54/3
54/10
job [2]   29/2 41/16
joinder [1]   34/11
JONES [75]
Journal [1]   25/13
JUDGE [2]   1/11
22/21
judgment [7]   36/3
37/20 37/24 37/25
38/17 38/20 50/11
June [1]   2/20
junior [1]   50/10
jurisdiction [3]
5/16 6/25 13/24
jurisdictions [3]
18/18 19/14 20/16
justified [1]   8/25
justifies [1]   45/7
justify [1]   5/23

**K**

Kate [1]   2/5
KATIE [1]   1/14
kept [1]   24/25
knock [2]   11/23
11/25
knowing [1]   20/1
knowledge [1]   21/13
knows [2]   16/24
33/16

**L**

lack [1]   7/2
large [1]   22/3
last [1]   46/25
later [1]   40/16
latest [1]   13/5
law [10]   25/6 25/14
25/16 25/17 29/20
36/15 42/19 42/20
44/22 48/2
Lawson [4]   9/21
29/8 29/8 29/10
lawsuit [1]   11/5
lawyer [4]   44/9
44/14 44/17 44/20
lawyer's [2]   44/16
44/22
leaders [1]   20/13
least [7]   13/17
17/15 25/3 25/16
29/23 40/13 44/24
leave [2]   11/25
28/5
legal [1]   44/21

less [12]   19/7 22/4
22/4 22/14 24/23
25/22 25/24 25/25
36/5 36/11 36/22
36/23
letter [5]   14/20
16/24 17/21 20/19
30/25
level [2]   16/6
16/10
liability [2]   3/4
3/24
light [4]   30/23
38/18 48/22 52/5
likely [1]   25/24
limit [1]   7/19
limitations [7]
14/19 14/21 14/23
15/7 16/23 18/19
32/1
limited [5]   10/2
10/7 12/13 12/19
52/22
limiting [3]   7/15
10/11 27/23
link [1]   36/10
literally [1]   50/19
litigate [1]   22/19
litigated [2]   17/4
27/5
litigation [2]
23/25 24/3
little [5]   14/15
32/21 48/6 52/23
53/3
live [2]   24/20
32/11
living [1]   37/2
LLP [1]   1/15
locations [1]   29/11
logically [1]   40/4
long [1]   49/12
look [16]   6/19 6/20
7/8 7/9 9/3 19/6
22/1 24/4 24/19
31/5 32/17 32/23
36/20 44/24 49/20
50/8
looked [2]   49/17
51/6
looking [11]   14/16
15/2 15/9 16/18
19/10 20/1 26/13
28/4 44/8 50/1 51/5
lose [1]   16/20
lot [7]   10/12 13/7
28/20 29/15 38/14
45/4 48/8
lower [4]   16/17
16/18 17/14 19/1
lucky [1]   41/18

**M**

magnitude [1]   8/15
mail [2]   46/9 49/12
mails [6]   12/23
12/24 41/22 45/18
49/10 49/13
major [1]   16/19
maker [3]   11/7

**M**

**maker... [2]**   11/12
39/18
**makers [2]**   20/15
27/7
**makes [7]**   16/11
20/18 37/2 44/2
47/8 47/23 52/5
**making [6]**   11/13
15/24 20/8 21/1
26/16 31/16
**male [1]**   26/20
**males [1]**   24/12
**malpractice [2]**
29/21 42/19
**man [2]**   36/21 36/22
**managing [12]**   11/6
11/16 11/16 11/21
12/3 20/18 20/21
20/23 38/25 39/2
39/17 39/17
**manner [1]**   21/15
**manual [7]**   10/22
11/9 12/11 12/16
15/12 15/15 16/8
**many [8]**   8/5 8/6
13/18 16/3 16/16
22/14 28/10 42/4
**mark [1]**   28/22
**marked [1]**   30/14
**market [10]**   15/14
15/16 16/19 19/2
19/9 19/10 19/12
21/1 21/2 21/5
**marketplaces [1]**
44/1
**markets [6]**   15/13
15/14 16/17 18/10
19/2 19/5
**maternity [1]**   11/25
**matter [7]**   10/24
22/21 27/18 40/20
40/20 46/10 54/5
**matters [2]**   49/16
49/25
**may [31]**   3/21 3/23
4/2 6/4 8/13 9/4
9/8 10/4 13/14
14/17 19/25 22/1
24/18 25/24 28/25
29/5 33/1 33/7 33/7
33/13 37/15 38/23
38/24 39/20 42/5
44/9 44/23 45/6
46/17 46/19 50/16
**maybe [9]**   8/21
34/25 41/14 42/1
42/2 42/4 42/17
43/10 52/21
**mean [24]**   3/12 3/21
7/23 7/25 8/5 12/2
15/25 17/12 22/8
32/20 34/13 34/17
34/24 38/1 40/3
41/14 42/1 42/17
43/14 47/11 47/14
51/3 52/3 52/9
**meaningfully [1]**
11/13

**means [2]**   11/14
43/19
**meantime [1]**   21/23
**meat [2]**   14/15 30/4
**meet [8]**   4/11 4/11
10/3 13/5 18/21
31/3 43/16 52/16
**meeting [3]**   2/24
3/1 10/6
**men [6]**   16/1 23/2
24/11 24/23 28/11
36/5
**merit [1]**   21/20
**merits [7]**   3/7 3/13
4/2 4/14 7/6 31/9
40/8
**Miami [1]**   16/16
**mind [2]**   29/19 39/5
**minimum [1]**   44/19
**minute [1]**   35/11
**missing [1]**   42/17
**mistaken [1]**   43/10
**misunderstanding [1]**
8/21
**modeling [1]**   37/1
**models [1]**   33/14
**moment [1]**   21/25
**money [2]**   4/22 16/1
**months [2]**   11/17
33/22
**moon [1]**   34/13
**Moore [1]**   13/24
**more [10]**   2/17 7/13
15/9 16/1 25/14
25/15 25/17 36/21
38/16 50/10
**morning [7]**   2/5 2/7
2/8 2/11 2/12 2/14
14/12
**MOSS [1]**   1/10
**most [2]**   19/2 38/18
**motion [23]**   5/15
10/21 13/12 13/20
13/21 16/21 17/2
17/8 17/22 21/17
22/21 30/22 32/5
32/7 32/10 33/10
33/20 36/3 37/20
45/24 52/7 52/14
53/5
**motions [1]**   14/4
**move [4]**   16/18
19/12 40/6 52/11
**moved [3]**   13/23
21/2 35/6
**moves [3]**   16/19
19/9 19/10
**Ms. [4]**   2/14 2/16
46/23 47/19
**Ms. Chase [3]**   2/14
46/23 47/19
**Ms. Mueting [1]**
2/16
**much [5]**   8/15 9/20
17/9 48/21 49/23
**MUETING [4]**   1/14
2/6 2/16 46/23
**multi [1]**   20/22
**multi-year [1]**
20/22

**multiple [2]**   10/15
50/9
**must [2]**   5/18 15/25

**N**

**name [1]**   11/17
**named [15]**   2/23 3/6
3/7 3/23 7/15 9/7
10/14 12/14 12/15
12/22 12/23 14/25
30/13 41/23 45/18
**names [2]**   30/5
43/22
**narrative [3]**   28/18
30/5 50/9
**narratives [1]**
50/13
**narrow [4]**   7/18
44/4 44/5 45/25
**national [1]**   39/2
**nationwide [3]**
10/19 11/19 34/25
**nature [2]**   13/14
14/24
**necessary [8]**   6/18
6/19 6/20 43/7
44/12 44/15 44/19
44/21
**need [28]**   5/10 5/14
7/12 11/20 12/2
12/6 13/10 18/4
22/6 22/25 25/11
28/21 29/17 31/12
33/4 33/7 34/7
35/23 36/1 39/14
40/12 42/3 43/15
46/3 46/14 49/1
50/18 51/19
**needed [1]**   50/6
**needing [1]**   50/1
**needs [2]**   5/11 14/7
**negative [3]**   23/20
23/23 24/1
**negatively [1]**   23/9
**negotiate [1]**   2/21
**negotiated [2]**   41/5
42/12
**negotiations [2]**
3/15 12/18
**New [5]**   1/19 16/14
18/16 19/4 34/1
**next [1]**   2/22
**nexus [1]**   38/11
**NILAB [2]**   1/3 2/2
**non [5]**   29/13 30/11
39/1 50/3 52/19
**non-class [1]**   52/19
**non-partner [3]**
29/13 30/11 50/3
**non-substantive [1]**
39/1
**none [1]**   16/21
**nonetheless [1]**
28/4
**noted [5]**   5/14 7/11
14/13 20/19 46/6
**notion [1]**   11/18
**November [1]**   1/6
**NPE [1]**   50/4
**number [3]**   22/3

22/13 52/11
**numbers [1]**   30/4
**numeric [3]**   30/4
30/9 50/5
**numerosity [6]**   6/16
6/18 6/22 22/8
22/10 22/11
**numerous [1]**   43/25
**NW [1]**   1/24
**NY [1]**   1/19

**O**

**object [1]**   46/10
**obligation [1]**
52/12
**obligations [5]**
42/8 48/20 49/18
49/21 49/22
**occur [1]**   21/16
**occurred [1]**   48/4
**occurs [1]**   25/19
**of the [1]**   45/8
**off [2]**   30/21 40/18
38/1
**offer [2]**   18/20
**offered [2]**   21/10
53/1
**office [14]**   8/9
8/10 8/11 9/23
11/14 11/24 16/5
16/9 17/15 18/11
20/11 20/12 23/21
24/4
**offices [21]**   7/16
8/8 10/11 10/12
10/14 10/15 10/17
15/10 16/10 16/12
16/14 18/7 21/6
21/9 22/3 29/11
31/25 36/9 36/10
44/1 44/2
**Official [2]**   1/23
54/3
**often [3]**   3/13
18/13 30/8
**once [2]**   9/8 40/5
**one [25]**   4/1 8/7
15/14 16/10 19/11
22/9 23/11 23/12
23/19 24/3 26/1
36/17 36/18 39/17
44/7 45/5 45/6
45/14 45/14 46/16
46/20 46/24 47/25
49/11 52/20
**ones [1]**   23/14
**ongoing [3]**   3/16
12/18 13/6
**only [7]**   3/18 4/1
4/5 6/12 15/5 16/13
39/3
**oral [1]**   50/11
**order [14]**   5/10
12/6 26/2 30/15
33/4 35/22 41/6
42/9 42/12 43/6
45/3 48/25 49/3
49/6
**orderly [1]**   21/15
**others [2]**   22/8

# O

others... [1]   24/7
otherwise [2]   48/11
51/3
ought [4]   11/23
11/25 34/25 52/2
ourself [1]   49/18
ourselves [1]   48/22
out [11]   21/6 22/14
28/22 30/25 31/13
31/18 35/1 38/20
48/2 50/20 53/6
outcome [1]   33/20
outline [1]   51/18
outlined [2]   10/20
17/20
outlines [1]   10/22
outside [2]   14/19
16/6
over [22]   8/4 14/16
14/17 14/18 14/18
14/19 15/10 20/22
27/18 28/12 41/13
41/15 41/20 41/22
42/6 42/8 42/22
42/24 42/25 43/2
45/4 49/10
overbroad [1]   16/4
overcoming [1]
29/18
overcommitted [1]
23/12
overlap [1]   3/21
overlaps [1]   3/13
own [2]   37/21 39/16

# P

P-I-C [1]   16/11
page [1]   11/17
pages [1]   8/6
paid [16]   11/23
15/20 15/25 17/17
19/3 20/1 22/3 22/4
25/22 34/5 36/5
36/11 36/21 36/23
37/13 37/14
papers [1]   10/25
part [6]   3/14 8/25
28/13 28/13 44/6
48/3
particular [2]
23/20 24/5
particularly [2]
2/25 47/9
parties [3]   2/19
17/23 41/5
partner [18]   11/6
11/16 11/16 11/22
12/3 16/11 20/18
20/21 20/23 23/21
23/25 24/1 24/5
29/13 30/11 39/17
39/17 50/3
partner's [2]   39/1
39/3
partners [3]   21/8
24/4 25/23
parts [1]   36/11
PAUL [2]   1/14 2/8

pay [33]   10/21
11/15 11/23 15/3
15/4 17/14 19/20
19/24 19/25 22/14
25/25 26/5 26/10
26/10 26/23 37/9
37/10 38/3 38/4
38/5 38/12 38/13
38/21 38/22 38/23
39/2 39/3 39/11
39/11 39/11 39/12
39/14 39/15
payroll [4]   6/2 7/1
9/8 33/4
pending [5]   10/20
13/12 13/20 22/21
53/2
Pennsylvania [1]
1/15
people [10]   20/1
25/20 25/21 30/17
30/18 37/9 37/10
37/12 37/14 38/21
peppered [1]   30/11
percent [3]   36/22
41/22 49/13
perform [1]   5/3
performance [2]
8/19 25/7
performing [2]
48/25 49/1
perhaps [4]   25/15
40/17 52/23 53/2
period [17]   7/24
14/17 14/19 14/21
15/2 15/7 16/22
18/6 18/10 18/18
19/2 19/8 19/13
20/22 24/6 28/12
32/1
permitted [3]   5/19
44/4 44/11
person [5]   20/11
22/9 38/3 38/4 38/5
personal [2]   21/12
46/20
personnel [3]   5/1
28/5 29/8
phase [3]   37/16
37/20 47/5
PIC [3]   16/10 16/11
20/11
Pittsburgh [3]
16/16 19/1 19/3
place [3]   30/15
37/6 52/23
placed [1]   46/21
places [1]   38/6
plaintiff [6]   8/10
23/11 23/24 38/18
49/14 52/11
plaintiffs [48]   1/4
1/14 2/6 2/10 2/24
3/23 5/10 5/18 5/19
5/21 7/17 9/7 10/14
12/23 13/22 14/25
15/18 16/13 18/15
19/14 20/15 20/24
21/11 23/19 30/13
31/12 31/23 32/9

34/10 34/23 35/4
37/5 39/7 39/8
41/23 45/21 45/22
46/20 46/25 47/2
48/24 49/8 49/11
49/11 49/25 50/15
52/24 53/3
plaintiffs are [1]
34/23
plaintiffs' [16]
3/6 3/7 5/1 5/3 5/7
6/24 6/24 7/15
12/15 12/23 18/21
32/3 45/18 47/25
49/8 49/10
play [2]   19/5 31/17
plead [1]   22/25
pleadings [3]   23/4
23/6 23/15
please [1]   2/3
pled [2]   22/23 46/1
podium [1]   2/4
point [35]   3/4 3/16
3/19 4/5 6/23 9/5
9/11 9/13 10/1
10/10 17/3 20/24
21/14 21/22 31/4
31/23 32/9 33/18
33/21 38/7 38/8
39/15 40/7 40/16
40/24 43/21 45/9
46/3 46/12 46/25
47/6 47/15 47/25
52/15 52/18
pointed [3]   35/5
43/24 48/2
pointing [1]   26/21
points [6]   8/12
23/8 35/3 39/24
40/9 44/25
policies [16]   10/15
10/16 10/18 10/20
19/21 20/3 31/7
31/17 31/20 35/5
35/8 35/14 35/17
39/7 39/16 45/23
policy [14]   10/22
19/20 19/21 20/2
23/4 23/14 24/25
26/6 26/6 26/11
27/1 31/10 36/9
39/10
position [4]   31/6
33/9 33/13 33/15
positive [2]   23/6
23/8
possession [1]   5/20
post [3]   5/13 7/9
7/11
postpone [1]   52/8
potential [4]   21/21
21/23 29/1 29/2
practice [5]   9/24
14/4 20/12 24/2
24/3
practices [1]   20/13
pre [1]   45/22
pre-certification [1]
45/22
preclude [1]   19/25

preliminary [1]
2/19
prepared [4]   27/8
28/19 30/7 43/20
present [5]   5/10
9/10 14/6 46/15
48/9
presented [1]   5/22
presumption [3]
37/16 37/20 37/24
pretty [4]   7/22
13/16 45/15 47/15
previously [3]
26/14 28/7 50/2
prima [1]   36/19
primarily [1]   6/14
printing [1]   50/20
prior [2]   11/5
18/21
privacy [2]   46/16
46/19
private [3]   19/24
26/12 28/9
privilege [8]   29/18
29/21 42/2 43/11
48/18 49/19 49/22
50/25
privileged [11]
29/5 29/7 29/25
41/3 42/5 42/6 49/1
49/14 49/15 49/16
49/24
prizes [1]   25/17
problems [1]   47/4
procedure [1]   45/20
procedures [2]   31/7
31/20
proceed [1]   20/7
proceeding [2]   2/23
19/16
proceedings [2]
53/8 54/5
process [12]   10/6
11/13 13/15 20/25
23/10 28/22 30/9
30/19 31/18 47/21
49/4 52/18
produce [6]   16/6
25/6 45/8 50/5 50/7
50/7
produced [4]   24/16
27/8 30/13 51/19
producing [5]   27/18
40/25 45/13 45/18
49/23
production [1]   41/6
professional [1]
44/8
progressing [1]
2/19
promised [1]   15/20
promotion [1]   11/3
properly [1]   46/1
proportional [1]
21/16
proportionality [1]
27/4
proposal [4]   13/5
17/20 31/18 32/4
proposed [1]   11/15

**P**

protect [1]    43/17
protected [1]    11/1
protections [1]
43/17
protective [8]
30/15 41/6 42/9
42/12 43/5 45/3
49/3 49/6
prove [3]    36/17
36/18 36/20
provide [3]    17/22
30/1 53/1
provided [7]    18/18
21/23 24/13 27/13
43/6 49/7 49/8
provides [1]    36/10
providing [3]    15/1
30/2 30/9
public [7]    11/9
15/11 19/24 26/12
35/9 37/21 38/15
publicly [3]    12/9
25/8 25/10
publish [1]    25/12
pull [1]    28/1
pulled [1]    28/2
pulling [1]    28/5
purport [1]    5/25
purpose [2]    40/24
50/22
purposes [4]    6/8
22/6 24/2 44/3
put [5]    14/15 21/24
30/21 35/23 46/13

**Q**

qualification [1]
9/25
qualified [2]    36/21
36/21
query [1]    50/6
quick [1]    44/24
quite [5]    14/14
20/20 30/10 30/18
48/20
quote [1]    39/17

**R**

RAHYAR [2]    1/3 2/2
raise [1]    12/25
raising [4]    4/17
4/19 13/9 51/9
RANDOLPH [1]    1/10
ranging [1]    25/7
ranking [1]    8/19
rankings [3]    28/18
30/2 30/10
rated [1]    20/12
rather [1]    7/6
rating [2]    8/19
8/23
ratings [6]    9/2
28/15 29/14 30/2
30/9 50/6
rationale [2]    36/2
36/22
real [1]    30/4
really [18]    7/25

11/18 11/23 19/15
20/3 20/8 22/20
26/15 27/6 31/7
31/9 31/12 34/2
38/20 40/7 40/25
45/24 47/7
reason [1]    38/11
reasonable [2]
20/20 44/17
reasonably [2]
44/11 44/21
receive [2]    23/8
37/5
received [10]    12/13
12/15 12/16 12/20
12/23 13/1 13/1
13/4 17/14 23/6
receiving [1]    25/25
recognize [1]    14/17
recommendation [1]
16/12
record [8]    2/4 5/15
7/13 46/22 48/19
50/24 51/12 54/5
red [1]    26/11
redact [2]    29/24
50/23
redacted [2]    43/22
50/18
redacting [5]    43/14
43/18 43/19 43/22
50/21
redaction [5]    50/1
50/8 51/16 51/20
51/21
reduced [1]    9/23
refer [1]    19/20
referenced [1]
12/16
references [1]    30/8
reflected [1]    28/15
regarding [4]    4/2
5/1 10/4 12/18
regardless [1]
33/20
region [1]    18/13
regressions [2]
37/1 37/4
regularly [1]    30/6
reiterated [2]    11/8
11/9
related [7]    12/14
12/21 17/5 17/24
21/22 31/25 35/21
relates [1]    24/8
relative [1]    22/16
relevance [2]    27/20
37/12
relevant [26]    6/10
6/13 6/14 6/21 6/23
7/3 14/1 14/8 15/3
15/16 16/21 18/6
18/8 18/15 19/13
21/21 21/22 23/21
24/6 27/14 32/1
34/2 37/14 43/7
47/11 48/12
relieve [1]    52/12
rely [2]    5/4 5/16
remanded [1]    5/8

remove [2]    44/4
44/5
removing [1]    43/14
report [7]    2/21
3/15 4/9 32/13
32/22 32/22 33/16
Reported [1]    1/22
Reporter [2]    1/23
54/3
reports [2]    28/1
33/1
representation [1]
44/17
representative [1]
8/9
representatives [4]
22/5 34/1 34/19
39/8
request [5]    5/1
10/1 46/7 47/1
48/14
requesting [1]
40/14
require [3]    48/24
51/20 52/15
required [1]    36/15
reside [1]    29/14
resolution [1]    31/3
resolve [2]    4/20
4/23
resolves [2]    32/5
52/7
resource [1]    29/9
respect [33]    2/25
3/6 8/10 9/1 10/11
13/19 14/13 14/25
15/4 17/16 20/7
22/15 23/13 24/7
26/17 26/18 27/9
29/6 29/7 30/12
30/16 32/16 36/13
40/12 41/3 46/6
46/25 47/11 47/20
48/23 49/10 51/5
53/3
respective [2]    21/6
21/8
respond [3]    8/16
44/15 48/16
responds [1]    45/9
result [2]    12/17
25/25
reveal [2]    44/9
45/2
review [3]    13/8
23/10 45/11
reviewed [5]    23/22
24/5 26/20 26/23
27/7
reviewing [1]    26/22
reviews [9]    23/6
23/8 23/20 23/24
24/1 24/11 26/19
28/15 30/6
right [17]    6/15
6/21 7/7 13/14
13/20 22/23 32/12
32/15 33/6 33/10
35/25 36/18 45/15
45/15 47/7 49/14

51/24
rights [1]    51/14
risk [2]    25/6 25/18
road [1]    27/19
role [2]    20/25 39/1
Room [1]    1/24
routinely [3]    5/4
5/16 7/8
rule [14]    4/9 5/12
17/2 30/21 41/17
42/21 45/24 51/5
52/7 52/14 52/16
52/17 53/2 53/5
rules [8]    29/21
42/16 42/17 44/8
44/11 44/22 48/5
52/11
ruling [1]    48/13
run [1]    28/1
running [1]    37/3

**S**

sadly [1]    24/20
salaries [4]    19/7
24/25 25/21 34/24
salary [4]    12/1
16/17 16/17 21/4
Sally [1]    28/25
same [10]    18/9
18/10 24/6 32/23
33/7 33/23 33/23
40/8 40/14 40/15
sampling [2]    18/23
18/24
sanctions [1]    41/18
Sanford [3]    1/15
2/6 2/9
satisfied [1]    8/22
satisfy [3]    22/10
22/11 22/12
saying [6]    8/16
8/22 11/22 33/8
34/24 51/12
scale [3]    15/21
15/24 37/9
scales [1]    39/4
schedule [1]    52/10
scheduling [2]    48/4
52/13
scope [6]    3/2 13/3
40/3 47/8 49/19
52/4
score [2]    28/16
28/17
scores [1]    28/18
SE [1]    1/15
seal [1]    46/8
sealed [2]    46/21
48/17
search [4]    2/25
10/9 12/18 13/4
searched [1]    10/9
searches [1]    12/17
second [12]    3/24
10/10 10/10 10/24
14/10 19/8 19/9
25/22 40/24 44/7
45/5 46/6
seconds [1]    51/5
secrecy [7]    10/21

**S**

**secrecy... [6]**
19/20 25/17 26/5
26/10 26/10 26/23
**secret [2]** 24/25
25/13
**secure [1]** 44/21
**seeing [1]** 8/24
**seek [5]** 10/4 14/4
17/5 35/7 44/5
**seeking [13]** 4/5
7/22 7/23 8/6 9/12
9/15 16/4 17/1 22/1
31/13 33/19 33/22
33/24
**seem [2]** 40/3 52/20
**seems [3]** 4/21
11/21 20/20
**self [1]** 50/16
**self-assessment [1]**
50/16
**sense [4]** 40/4 47/8
47/23 52/5
**separate [4]** 29/12
44/1 44/1 46/21
**separately [1]** 44/2
**seriously [2]** 48/21
51/1
**set [6]** 10/7 11/19
18/15 20/21 24/14
34/24
**sets [5]** 18/8 38/3
38/4 38/5 49/23
**setting [6]** 23/4
25/23 36/8 37/9
38/12 38/12
**several [1]** 35/3
**sex [3]** 22/4 35/16
36/23
**shared [1]** 28/11
**Sharp [3]** 1/15 2/6
2/9
**short [1]** 50/4
**show [7]** 5/25 6/5
36/4 36/7 37/7 38/9
48/24
**showing [2]** 22/13
37/13
**shown [1]** 36/25
**signed [1]** 49/6
**significant [5]** 6/6
7/1 7/10 32/18 33/3
**signing [1]** 12/3
**signs [1]** 11/16
**similarly [1]** 24/11
**simply [3]** 12/3
15/14 52/8
**single [1]** 19/11
**sit [1]** 29/19
**situated [1]** 24/11
**situation [1]** 43/21
**six [6]** 11/17 15/25
16/13 23/3 31/22
49/11
**size [1]** 8/1
**Slide [1]** 9/21
**small [1]** 18/11
**societal [2]** 25/1
25/24

**society [2]** 24/20
24/21
**solely [1]** 5/20
**somebody [1]** 38/10
**somehow [1]** 50/24
**someone [2]** 34/4
50/21
**someone's [1]** 19/24
**somewhat [1]** 11/21
**soon [1]** 52/14
**sorry [3]** 35/19
44/8 46/23
**sort [9]** 7/22 8/3
11/18 13/12 22/16
24/22 34/17 36/2
46/15
**sought [1]** 14/14
**sounds [1]** 52/22
**specific [6]** 8/18
27/11 35/5 36/13
36/14 44/16
**specifically [1]**
15/15
**spending [2]** 4/22
50/20
**stage [10]** 5/21
7/11 13/9 13/15
14/8 37/24 37/25
38/17 38/20 52/19
**standpoint [1]**
27/23
**start [7]** 9/23
29/10 30/18 32/3
33/14 49/22 51/15
**starting [4]** 2/20
16/17 19/6 21/4
**statement [4]** 28/19
28/19 30/7 52/17
**statements [8]** 11/9
12/8 15/11 35/9
37/21 38/15 39/16
43/25
**STATES [2]** 1/1 1/11
**statistical [16]**
5/3 5/6 5/8 5/16
6/2 6/17 13/25 15/6
32/16 32/17 35/24
37/1 37/3 37/8
37/13 40/11
**statistically [5]**
6/6 7/1 7/10 32/18
33/3
**statistics [4]** 7/3
31/9 31/11 35/21
**status [2]** 1/10
9/23
**statute [7]** 14/19
14/21 14/23 15/7
16/23 18/19 32/1
**step [1]** 15/8
**still [9]** 13/22
18/8 24/20 28/8
31/23 32/10 33/7
33/22 40/19
**Street [2]** 1/19
25/13
**strict [1]** 10/21
**strike [2]** 13/16
13/23
**structure [1]** 18/12

**struggling [1]** 7/21
**stuff [3]** 22/17
42/5 50/20
**subject [4]** 26/4
42/9 43/5 46/10
**subjective [2]** 20/8
21/19
**subjectively [1]**
11/2
**subjectivity [1]**
20/5
**submission [1]** 48/3
**submit [2]** 4/9 5/18
**submitted [2]** 5/22
31/1
**submitted this [1]**
5/22
**submitting [2]** 4/12
32/21
**substantial [4]**
27/17 29/23 45/15
47/4
**substantive [1]**
39/1
**sued [2]** 27/2 29/20
**sues [1]** 42/19
**suggest [2]** 29/23
51/3
**suggesting [1]**
50/25
**suggestion [3]**
16/25 30/20 30/24
**suggests [1]** 15/12
**Suite [1]** 1/15
**summary [6]** 36/3
37/20 37/24 37/25
38/17 38/19
**sunlight [1]** 24/24
**support [9]** 11/18
15/22 19/17 22/23
22/25 23/16 23/17
23/18 31/14
**suppose [1]** 6/16
**Supreme [2]** 5/12
6/19
**sure [5]** 3/8 29/24
34/22 51/6 51/13
**sure that [1]** 34/22
**surprising [1]**
32/21
**survive [6]** 17/7
17/25 18/1 18/15
20/16 31/2
**survives [1]** 18/8
**surviving [2]** 40/12
40/13
**sweeping [1]** 13/16
**system [3]** 11/2
29/9 50/6
**systems [1]** 21/12

**T**

**talk [6]** 4/16 4/19
21/25 25/21 31/9
31/24
**talking [12]** 13/13
14/16 22/17 27/1
28/9 30/17 30/18
41/24 42/1 49/22
50/3 51/15

**tangent [2]** 40/18
40/19
**target [1]** 21/20
**tease [1]** 30/25
**tee [1]** 48/6
**terms [5]** 3/1 10/9
12/18 13/4 22/24
**TERRI [2]** 1/18 2/12
**terrible [1]** 41/16
**terribly [1]** 27/17
**testified [1]** 24/15
**testimony [3]** 3/2
9/7 15/12
**that's the [1]**
39/13
**theoretically [1]**
20/4
**theories [2]** 19/17
31/14
**theory [19]** 9/1
15/19 15/22 15/24
19/16 20/17 21/19
21/19 23/15 23/17
24/8 24/10 24/17
24/19 25/2 25/5
27/4 34/16 38/21
**there's some [1]**
46/12
**therefore [3]** 11/25
38/6 38/7
**third [2]** 11/1
24/14
**though [6]** 11/11
32/12 33/18 39/10
39/25 52/20
**thousands [2]** 8/6
20/21
**three [5]** 16/13
28/4 34/20 36/4
36/5
**threshold [1]** 13/12
**throughout [1]**
30/11
**thus [1]** 52/23
**tie [2]** 17/6 24/8
**tied [1]** 27/3
**to much [1]** 17/9
**today [3]** 4/20 4/24
33/19
**TOLTON [3]** 1/3 2/3
23/24
**took [2]** 11/25
40/18
**top [1]** 20/9
**topic [1]** 48/16
**topics [3]** 21/10
50/12 50/15
**tort [1]** 24/3
**tough [1]** 3/12
**transcript [2]** 1/10
54/4
**treat [1]** 44/1
**treated [2]** 23/1
46/11
**treatment [29]** 6/25
7/4 13/22 13/24
14/1 17/8 17/12
18/3 21/25 22/22
23/1 24/9 26/3
26/18 26/24 27/6

**T**

treatment... **[13]**
27/15 32/11 32/25
35/18 35/20 35/22
35/23 36/13 36/18
36/19 36/24 37/8
40/13
treats **[1]**  15/13
trial **[2]**  23/20
24/2
true **[1]**  54/4
try **[3]**  45/25 50/21
50/23
trying **[5]**  14/2
35/7 37/7 38/20
48/21
turn **[7]**  41/20 42/8
42/21 42/23 42/25
43/2 47/9
turned **[5]**  41/21
42/6 45/4 48/17
49/10
turning **[3]**  27/18
41/13 41/15
two **[10]**  4/16 8/12
19/18 20/3 26/1
31/14 33/1 33/22
40/9 44/25
type **[6]**  5/4 25/1
25/19 28/16 45/22
50/1
typicality **[1]**  6/9
typically **[1]**  36/25

**U**

U.S **[2]**  1/23 15/10
unable **[1]**  14/6
under **[10]**  25/5
30/15 36/15 45/19
46/8 46/21 48/5
49/18 50/13 52/10
undercurrents **[3]**
24/21 24/22 25/24
underlying **[5]**
28/18 30/3 30/6
43/19 43/23
understood **[1]**
47/17
unilaterally **[1]**
7/18
UNITED **[2]**  1/1 1/11
unless **[3]**  9/2 25/8
36/7
unprecedented **[1]**
47/4
up **[7]**  9/5 11/14
16/18 21/4 21/7
48/6 53/3
upon **[3]**  31/2 31/5
44/14
urgency **[2]**  32/6
40/2
use **[3]**  12/22 15/6
44/9
used **[2]**  6/4 43/17
using **[2]**  10/9
45/25
usually **[1]**  13/15

**V**

valid **[1]**  26/2
validate **[1]**  16/8
valuing **[1]**  24/23
versus **[1]**  2/3
Vessey **[1]**  1/19
view **[4]**  33/7 40/20
40/20 53/4
violating **[1]**  49/21

**W**

wait **[3]**  25/22
33/22 40/11
waiting **[3]**  32/4
32/9 40/22
wall **[2]**  8/4 25/13
warrants **[1]**  45/7
Washington **[1]**  1/5
1/16 1/25
way **[11]**  20/14
25/20 26/23 30/1
36/17 36/18 38/10
43/11 48/4 49/21
50/23
ways **[5]**  16/3 23/1
23/2 23/9 26/22
we going **[1]**  36/16
website **[3]**  11/6
15/11 38/15
week **[1]**  2/22
welcome **[2]**  46/4
46/13
weren't **[3]**  15/25
41/18 48/11
what's **[6]**  12/1
27/14 28/15 32/6
40/2 40/21
whatsoever **[1]**
21/20
wherein **[1]**  50/16
whining **[2]**  10/25
19/21
who's **[2]**  11/24
32/21
whole **[3]**  18/16
49/13 50/15
whose **[1]**  22/14
wide **[24]**  3/16 5/1
5/7 7/18 10/15
10/18 10/20 21/20
23/16 23/17 25/7
31/4 31/20 34/10
35/4 35/5 35/6 36/8
36/24 39/7 39/10
39/16 45/23 48/14
wide-ranging **[1]**
25/7
withhold **[1]**  5/19
within **[12]**  5/20
15/6 16/22 17/15
18/6 18/11 19/13
21/6 49/9 49/19
51/14 52/11
without **[10]**  8/23
27/2 27/3 27/4 30/2
43/16 43/22 49/20
50/7 50/19
woman **[2]**  11/24
36/20

women **[14]**  15/25
17/14 22/3 22/4
22/11 22/14 22/14
24/21 24/23 25/25
28/11 36/4 36/7
36/10
work **[5]**  21/12
28/24 28/25 49/25
50/16
worked **[11]**  15/10
16/13 17/16 18/6
18/9 24/12 28/12
29/11 29/11 31/25
49/15
working **[3]**  11/24
23/12 29/1
workplace **[1]**  24/23
works **[2]**  42/2
43/11
world **[1]**  42/7
worse **[1]**  23/2
wrestling **[1]**  47/7
write **[2]**  33/16
50/15
writing **[2]**  48/6
50/11
written **[1]**  50/11
wrong **[3]**  37/25
38/10 52/21

**Y**

year **[8]**  9/24 11/18
19/8 19/8 19/9
20/22 21/4 28/12
years **[1]**  17/16
yesterday **[4]**  13/5
31/1 46/7 46/9
York **[5]**  1/19 16/14
18/16 19/4 34/1