# EXHIBIT 1

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001.2113

TELEPHONE: +1.202.879.3939 • FACSIMILE: +1.202.626.1700

Direct Number: (212) 326-8386
TLCHASE@JONESDAY.COM

November 5, 2019

**VIA EMAIL**

Deborah K. Marcuse
SANFORD HEISLER SHARP, LLP
111 S. Calvert Street, Ste. 1950
Baltimore, MD 21202
dmarcuse@sanfordheisler.com

Kate Mueting
SANFORD HEISLER SHARP, LLP
700 Pennsylvania Avenue SE
Suite 300
Washington, DC 20003
Kmueting@sanfordheisler.com

Russell L. Kornblith
SANFORD HEISLER SHARP, LLP
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
rkornblith@sanfordheisler.com

> Re:   *Nilab Rahyar Tolton, et al., v. Jones Day*, Case No. 1:19-cv-00945 (United States District Court for the District of Columbia)

Dear Kate:

On behalf of Defendant Jones Day, and in compliance with Federal Rule of Civil Procedure 11(c)(2), I write to serve Plaintiffs' counsel with Jones Day's Motion for Rule 11 Sanctions. Jones Day will file the motion in twenty-one days if Plaintiffs do not dismiss all claims that are grounded on the allegation that Jones Day pays women less than men.

Discovery to date has demonstrated that Plaintiffs' counsel have no good faith basis to allege that Jones Day systemically discriminates against women in pay. Plaintiffs now admit they know no facts that support these allegations but *do* know facts that flatly contradict them. Plaintiffs' counsel ignored this contradictory evidence and failed to conduct even a rudimentary investigation to determine whether there was a good faith basis for the allegations. "Information and belief" pleading does not absolve counsel of its duties under Rule 11, nor excuse knowingly false allegations. Rule 11 sanctions are warranted.

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MOSCOW • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

Deborah Marcuse
November 5, 2019
Page 2

## I. RULE 11 IMPOSES A GOOD-FAITH REQUIREMENT AND A DUTY TO INVESTIGATE.

Rule 11 mandates that when presenting any "pleading, written motion, or other paper" to the court, a party's counsel "certifies" that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Rule 11 thus imposes two obligations on attorneys.

*First*, the attorney must have a good faith basis to believe the allegations in any pleading counsel signs. Fed. R. Civ. P. 11(b)(3). That usually means having facts that directly support the allegations. *Hedgeye Risk Mgmt., LLC v. Heldman*, No. 16-935, 2019 WL 4750243, at *13 (D.D.C. Sept. 29, 2019) (Moss, J.). An "attorney act[s] unreasonably in giving blind deference to his client and assuming his client had knowledge not disclosed to the attorney." *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997) (applying Federal Circuit Rule 11, which is substantively identical). Instead, a party's counsel "should determine if [the client's] knowledge ... is direct or hearsay and check closely the plausibility of the client's account." *Nassau-Suffolk Ice Cream, Inc. v. Integrated Res., Inc.*, 118 F.R.D. 45, 48 (S.D.N.Y. 1987). And counsel cannot remain "deliberate[ly] indifferen[t] to obvious facts" that contradict the client's claims. *Carson v. J. Curt, Inc.*, 2008 WL 4274502, at *3 (N.D. Fla. Sept. 11, 2008); *see also Ellis v. Beemiller, Inc.*, 287 F.R.D. 326, 340 (W.D. Pa. 2012).

*Second*, Rule 11 requires counsel to conduct "a reasonable inquiry into the factual and legal basis for a claim before filing." *Williams v. Verizon Washington, D.C. Inc.*, 322 F.R.D. 145, 148 (D.D.C. 2017). An inquiry is especially necessary when a party merely suspects wrongdoing. *See Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 42-43 (D.C. Cir. 1990) (sanctioning counsel who "made no attempt independently to corroborate [plaintiff's] second-hand account of the alleged defamations"); *see also Del Canto v. ITT Sheraton Corp.*, 865 F. Supp. 934, 938 (D.D.C. 1994), *aff'd*, 70 F.3d 637 (D.C. Cir. 1995) (imposing sanctions because the allegations "are contradicted in so many ways on this record that the Court must conclude that the plaintiff did not conduct reasonable pre-filing inquiries and that the plaintiff should have realized that his claim was not well founded in fact"). While an attorney begins with the client's account of facts, the attorney "needs facts on which to ground knowledge, information or belief. If all the attorney has is his client's assurance that facts exist or do not exist, when a reasonable inquiry would reveal otherwise, he has not satisfied his obligation." *Coburn Optical Industries, Inc. v. Cilco Inc.*, 610 F. Supp. 656, 659 (M.D.N.C. 1985); *see also Nassau-Suffolk Ice Cream, Inc.*, 118 F.R.D. at 48.

Finally, though in limited circumstances a party may plead facts "on information and belief," "Rule [11] does not permit parties to embark on fishing expeditions regarding claims that have no factual basis or justification." *Hedgeye Risk Mgmt.*, 2019 WL 4750243, at *13. "[I]nformation and belief does not mean pure speculation." *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012). And it "does not permit a party to create facts which he or she hopes will later be substantiated by future discovery." *Henry v. Black*, 2011 WL 2938450, at *2 (D. Utah July 19, 2011).

Deborah Marcuse
November 5, 2019
Page 3

## II. PLAINTIFFS' PAY ALLEGATIONS.

The heart of Plaintiffs' individual and class claims is the allegation that "Jones Day pays female associates less than male associates, even though associates all perform substantially similar work." TAC ¶ 46. This allegation undergirds many of Plaintiffs' claims, including that (1) Jones Day's policies have a disparate impact on women—the impact being all women nationwide are paid less than men (Counts 1-2, 5-6, and 11-12); (2) Jones Day intentionally discriminated against Plaintiffs and all women associates nationwide by paying them less than men (Counts 1-2, 5-6, and 11-12); and (3) Jones Day violated pay equity laws (Counts 4, 8, and 13).

Plaintiffs have not supported their pay allegation with facts. Rather, they base this allegation on the following illogical theory: Jones Day promised "market-competitive pay and more for top performers," but "Jones Day did not compensate the Plaintiffs in line with the 'Cravath' market scale"; therefore, "Plaintiffs earned less than their male comparators." TAC ¶¶ 44, 46; *see also* Williams Tr. 69:10-71:11; Tolton Tr. 240:4-11. Beyond this facially frivolous non-sequitur, Plaintiffs also allege "on information and belief" that some identified male associates earned more than Plaintiffs but they have no facts to support the claim that these men performed substantially identical work and/or that they in fact were paid more than Plaintiffs. TAC ¶ 89 (Tolton identifying associate Smith); TAC ¶ 187 (Draper identifying four unnamed male associates in Atlanta); TAC ¶ 165 (Williams identifying two groups of male associates); TAC ¶ 287 (Henderson identifying three male associates).

## III. PLAINTIFFS' RECENT ADMISSIONS CONFIRM THEIR COUNSEL FAILED TO COMPLY WITH RULE 11 BEFORE FILING THE CLAIMS BASED ON ALLEGED PAY INEQUITY.

Plaintiffs' deposition testimony and document productions confirm that counsel had no good faith basis to support Plaintiffs' own pay discrimination claims, much less their purported claims of nationwide gender pay discrimination. Counsel failed to conduct a good faith allegation of these claims and ignored contradictory evidence known to Plaintiffs that demonstrated their falsity.

- **The "Cravath" allegations are legally and factually frivolous.**

  - The Complaint alleges that plaintiffs "*know* [they were discriminated against] because they did not make so-called Cravath market pay."[1] (TAC ¶ 31) But the Atlanta and Irvine plaintiffs admitted in deposition that they do not know

---

[1] Williams explained the illogical reasoning behind that allegation: "So just sort of combining Jones Day's representation that top performing candidates are making market, neither myself nor any of the women I know are making market. I have to assume that Jones Day's representation was truthful and someone is making market, and I would understand that that would be the male associates." Williams Tr. 76:11-20 (emphasis added). Of course, other more logical assumptions would be that (a) women who, unlike Plaintiffs, were top performers, made top of market, and (b) "Cravath scale" is not "market" in Irvine.

Deborah Marcuse
November 5, 2019
Page 4

- any males in their offices who made "Cravath market pay." Notably, they *do* know comparably situated males who did *not* make "Cravath market pay."[2]

- The TAC contains facts that contradict Plaintiffs' assertions that the standard for compensation nationwide was "Cravath market." For example, Plaintiffs allege that the starting salaries in Irvine and Atlanta were different. (TAC §45) Likewise, the recruiting e-mail Tolton selectively (and misleadingly) quoted in TAC §81 refers to the "California market," not to "Cravath market." (TOLTON-0000661) And the Firm Manual, which was available to Plaintiffs throughout their tenure at Jones Day, clearly states: "the Firm does not have a compensation structure or ladder that is uniform across all geographic markets and, even within individual geographies, each lawyer is compensated within a range that reflects both local market conditions and the fact that individuals perform at different levels." (JD_00002408 at 2497).

- **Plaintiffs made sweeping allegations with no evidence and no investigation.**

  - Most of the Plaintiffs admitted that they do not know the compensation of anyone they consider a comparator,[3] and yet they made sweeping allegations of systematic nationwide pay discrimination without a scintilla of evidence or any good faith investigation.[4] Rule 11 does not allow Plaintiffs to just make things up.

  - Williams alleged in the TAC that she made less than eight named male comparators,[5] and in their recent opposition, Plaintiffs assert that these same male associates are also comparators to Mazingo and Stahl. (Dkt. 60 at 32)

---

[2] *See* Williams Tr. 204:1-16 (she did not "have any personal knowledge of any men at the firm being paid at the Cravath."); Mazingo Tr. 278:19-279:4; Stahl Tr. 152:19-24; Tolton Tr. 247:22-248:24 (no knowledge of any men in Irvine making "Cravath scale pay"); Draper Tr. 134:3-12 (unable to identify any associate in Atlanta who was earning "Cravath scale"). And of course, all Plaintiffs (and counsel) know that the unnamed fourth year associate identified by Draper as making $220,000 was not making "Cravath scale." TAC ¶ 187.

[3] TAC ¶136 (Mazingo "was unable to verify whether her pay really was consistent with what her male colleagues in other offices were being paid"); TAC ¶ 239 ("Ms. Stahl suspects Jones Day paid male attorneys at her level more than it paid her, but Ms. Stahl was unable to confirm this"); Mazingo Tr. 51:18-52:5 ("I had no idea what [my comparators] were making."); Draper Tr. 134:19-24 ("I do not know what men made at Jones Day"); *id.* at 87:3-6 ("I have no idea if there are women that are paid more than men. I have no idea. I have no insight into how people are paid at the firm."); Tolton Tr. 247:22-248:24 ("I do not know any associate's compensation, nor did I ask for it."); Williams Tr. 132:5-136:2 ("I did not conduct research into [my comparators'] salaries."); *id.* at 213:10-16 (confirming Williams did not "have any personal knowledge of any men at the firm being paid at the Cravath scale.").

[4] Stahl Tr. 262:21-263:8; Draper Tr. 140:12-23, 139:1-7; Williams Tr. 132:5-136:2; Mazingo Tr. 52:6-53:13, 278:19-279:4.

[5] Williams also identified a ninth male lawyer who was hired laterally as a 4th year associate and left one year later. He is excluded from Exhibit 1 as he never went through a complete annual evaluation cycle.

Deborah Marcuse
November 5, 2019
Page 5

Williams admitted that she had no idea what any of these male lawyers made and made no effort to discover their compensation.[6] While Jones Day denies that these men are appropriate comparators—they did not work in the same office and practices at the same time as any of these three Plaintiffs—a mere cursory inquiry would have revealed that there was no basis for the allegation. *See* Exhibit 1. Apart from the one New York associate in the group, and based on compensation adjustments at comparable stages in each lawyer's career:

- Mazingo made the same or more than the highest paid male *every* year;

- Stahl's compensation in her 4th and last year was $35,000 more than the highest-paid male;

- Stahl and Williams made the same or more than all seven males in their second year, and the same or more than six of the seven males in their third year;

- After receiving a below-average review in her 4th year, Williams still made more than the average male.

- None of the non-New York male lawyers made what Plaintiffs characterize as "Cravath scale."

- **Plaintiffs have no justification for their failure to investigate.**

  - Plaintiffs try to excuse their lack of investigation by citing a purported "pay secrecy" policy. But all of them admit discussing compensation with colleagues while at Jones Day.[7] Plaintiffs further admit that they made *no* effort after they left Jones Day to determine the compensation of other *former* colleagues (including Williams' alleged "comparators," all of whom had left Jones Day). No "pay secrecy" policy could possibly have prevented such inquiry of former Jones Day employees.

  - Draper failed to investigate even her own compensation before filing her complaint. As a consequence, the TAC grossly understates her compensation,

---

[6] Williams Tr. 132:5-136:2. When asked whether she had "contacted any of them since they have left Jones Day to inquire of them how much money they made while at Jones Day," Williams responded: "No, that would be a bit of an awkward way to reconnect." Williams Tr. 132:5-136:2. But apparently not too awkward to make up facts about them in a publicly filed complaint.

[7] Williams Tr. 52:19-53:4, 53:24-54:13 126:8-21, 127:3-8, 127:24-128:7, 290:10-291:10, 292:2-13, 292:22-293:10, 321:6-18, 329:12-330:2. Mazingo Tr. 42:19-43:11. TOLTON-003360 at 3368-3372, 3374-3380; Stahl Tr. 274:2-15. Draper Tr. 127:8-129:3, 129:24-131:7, 131:8-133:16, 133:17-134:2. Tolton Tr. 240:21-241:7, 251:4-25. See also TAC ¶ 289 (Henderson).

Deborah Marcuse
November 5, 2019
Page 6

    in one year by as much as $30,000.[8] There is no excuse for misrepresentations about facts within Plaintiffs' own control.

- **Plaintiffs ignored substantial evidence that contradicts their claims.**

  - Plaintiffs admitted knowing other information that contradicts their pay discrimination claims. Stahl regularly texted with a male colleague about her own and others' compensation and knew that Mazingo was paid more in 2017 than the two male associates in her starting class in Irvine. And Stahl knew her compensation in 2017 was $25,000 *above* "Cravath base," yet her male colleague told her he received only "Cravath base" that year.[9] Stahl and Williams also admitted knowing that a female associate in their class in Irvine had received an above-market compensation adjustment shortly before she left the Firm.[10]

  - Tolton has no good faith basis for alleging that Justin Smith is a "comparator" who performed substantially equal work. It is an easily verifiable fact and certainly known to Plaintiffs' counsel that Justin Smith is a Mergers & Acquisitions lawyer and that, after their NLG year, Smith and Tolton did not work on any remotely similar matters. But equally, Tolton knew that her productivity bore no comparison to Smith's. In 2015-2017, Tolton's last 3 calendar years at the Firm, ████████████████████████ ████████████████████████ Whether or not Tolton knew Smith's precise hours (and there was nothing to prevent her from asking), she knew there was no basis to claim that she did "equal work" to Smith during any period within the statute of limitations.

  - Henderson alleges she and certain male associates worked on similar types of matters in 2013-2014 when they were all in the New Lawyer Group ("NLG") —and when all received identical compensation.[11] As Henderson knows full well, none of those male lawyers were in her practice group in January 2015 when she first alleges a compensation differential. But Henderson has been unable to identify any "comparator" in *any* practice who made more than she

---

  [8] Draper Tr. at 115:5-18; id. at 187:10-15; id. at 192:2-3; id. at 187:25-188:14 (admits understating compensation for 2013-2014); id. at 189:6-23 (admits understating compensation for 2015-2016); id. at 189:24-190:15 (admits understating compensation for 2016-2017).

  [9] TOLTON-003360 at 3368-3372, 3374-3380.

  [10] Williams Tr. 126:8-21, 127:3-8, 127:24-128:7, 333:4-8; see also Stahl Tr. 155:22-156:6.

  [11] *See, e.g.*, TAC §287 ("Mr. Goldstein completed a mix of corporate work and real estate assignments in his first year with the Firm.") Stancil, the "comparator" who allegedly was being "groomed for advancement" (TAC §285) not only joined a different practice in 2014 but, as even minimal investigation would have shown, he left Jones Day shortly thereafter–and more than one year before Henderson. www.linkedin.com/in/bretstancil/

Deborah Marcuse
November 5, 2019
Page 7

did while performing at the same substandard level of quality and productivity. There are none: During the 18-month period (January 2015 – June 2016) when Henderson alleges she was paid less than male peers, she billed approximately 200 total client hours, and billed no client hours at all in her last seven months. Henderson was legally entitled to equal pay for equal work, not equal pay for no work.

\* \* \*

A party is not free "to create facts which he or she hopes will later be substantiated by future discovery." *Henry*, 2011 WL 2938450, at \*2. The document production and testimony of Plaintiffs demonstrates that counsel knew they had no factual basis to allege pay discrimination against Plaintiffs, much less systematic nationwide pay discrimination against all women associates. The entire theory of the case—that the proof of discrimination is the fact that they did not make Cravath scale—was pure sophistry. Worse yet, Plaintiffs admitted they knew facts that contradicted their claims and knew no facts to support them. "[D]eliberate indifference to obvious facts" that contradicted their claims is sanctionable. *Carson*, 2008 WL 4274502, at \*3.[12]

Plaintiffs' counsel violated Rule 11 when they filed the original complaint and every iteration after. Accordingly, consistent with Rule 11(c)(2), if Plaintiffs and their counsel do not, within twenty-one days, dismiss the claims based on the allegation that Jones Day systematically discriminated in pay against women, Jones Day will file the enclosed Motion for Rule 11 Sanctions, in which we will ask the Court to (1) dismiss with prejudice all of Plaintiffs claims based on the allegation that Jones Day paid women less than men; (2) order Plaintiffs' counsel to pay the Firms' attorneys' fees and costs associated with the motion itself, and all other fees and costs that the Firm incurs going forward from the time of filing the Rule 11 motion; and (3) impose any additional sanctions that the Court deems just and proper.

Please let me know as soon as possible—and no later than November 26, 2019—how you and your clients will proceed.

---

[12] Plaintiffs' recent opposition brief highlights counsel's cavalier attitude toward the truth and their purposeful omission and mischaracterization of material facts intended to mislead the Court. For example, the brief argues that "nothing in the TAC suggests that Ms. Williams and these two male associates were not reviewed by the same supervisor; indeed, Ms. Williams alleges that she worked on both projects. TAC ¶ 175" (Dkt. 60 at 17), yet Plaintiffs know full well that Williams received the critical review from a female intellectual property partner in Cleveland and the allegedly "comparable" project was supervised by a male securities litigation partner in Irvine. Williams Tr. 234:23-235:9, 426:25. Likewise, counsel continue to argue that "it is the fact that the Firm 'never assigned Henderson a replacement'" that forms the basis of this disparate treatment claim" (Dkt. 60 at 12 fn.9) notwithstanding Henderson's admission in deposition that she *was* assigned a replacement. Henderson Tr. 86:3-19. "Continued reliance on allegations that counsel knows to be false is further evidence of counsel's bad faith.

JONES DAY

Deborah Marcuse
November 5, 2019
Page 8

                          Very truly yours,

                          /s/ Terri L. Chase

Attachments

EXHIBIT 1

| NAME | JD YEAR | OFFICE | PRACTICE | Year 1 | January Year 2 | July Year 2 | Year 3 | Year 4 |
|---|---|---|---|---|---|---|---|---|
| Stahl | 2013 | Irvine | Business & Tort Litigation | Judicial Clerk | $170,000 | $185,000 | $205,000 | $260,000 |
| Williams | 2013 | Irvine | Intellectual Property | $160,000 | $170,000 | $185,000 | $205,000 | $215,000 |
| Mazingo | 2014 | Irvine | Global Disputes / Securities Litigation | $160,000 | $175,000 | $190,000 | $220,000 | N/A |
| AVERAGE | | | | $160,000 | $171,667 | $186,667 | $210,000 | $237,500 |
| Williams comparator A | 2007 | Irvine | Business & Tort Litigation | $160,000 | $175,000 | $175,000 | $175,000 | $190,000 |
| Williams comparator B | 2009 | Irvine | Labor & Employment | $160,000 | $160,000 | $160,000 | $160,000 | N/A |
| Williams comparator C | 2012 | Dallas | Business & Tort Litigation | Judicial Clerk | $170,000 | $185,000 | $205,000 | $220,000 |
| Williams comparator D | 2013 | San Diego | Business & Tort Litigation | $160,000 | $170,000 | $180,000 | $190,000 | $190,000 |
| Williams comparator E | 2013 | Dallas | Securities Litigation | $160,000 | $170,000 | $180,000 | $185,000 | N/A |
| Williams comparator F | 2013 | Houston/D.C. | Antitrust | $160,000 | $170,000 | $180,000 | $210,000 | $225,000 |
| Williams comparator G | 2014 | Pittsburgh | Business & Tort Litigation | $145,000 | $150,000 | $170,000 | $175,000 | $190,000 |
| Williams comparator H | 2013 | New York | Financial Institutions Litigation & Regulation | $160,000 | $175,000 | $210,000 | $265,000 | $350,000 |
| AVERAGE | | | | $158,125 | $167,500 | $180,000 | $195,625 | $227,500 |
| AVERAGE EXCLUDING NY ASSOCIATE | | | | $157,500 | $166,429 | $175,714 | $185,714 | $203,000 |

NOTES: Year 1 is the first full calendar year of employment after law school graduation. Associates typically joined in October of the prior year or, for judicial clerks, in October of Year 1. This chart excludes one named "comparator" who joined the Irvine office laterally as a 4th year associate in 2013 and stayed only one year, as that associate never went through the annual evaluation process. "N/A" indicates the associate left before compensation adjustments were made for that year.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NILAB RAHYAR TOLTON, *et al.*, | ) |
| *Plaintiffs*, | ) Civ. No. 1:19-00945 (RDM) |
| v. | ) |
| JONES DAY, | ) **DEFENDANT'S MOTION FOR RULE 11 SANCTIONS** |
| *Defendant*. | ) |

Jones Day respectfully moves for sanctions against Plaintiffs' counsel under Rule 11 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 11. The heart of Plaintiffs case is the allegation that Jones Day pays women less than men. Through discovery, however, it has become clear that Plaintiffs' counsel does not currently have, nor ever had, a good faith basis to believe that allegation. For their part, Plaintiffs have admitted that they have no factual basis for the allegation. In fact, Plaintiffs were aware of facts that contradict their allegation. Plaintiffs also admitted that there was no investigation done prior to alleging sex-based disparate pay. Plaintiffs' counsel thus did not fulfill their obligations under Rule 11.

In compliance with Rule 11(c)(2), on November 5, 2019, Jones Day sent this motion along with a detailed cover letter to Plaintiffs' attorneys. Jones Day advised that Plaintiffs must withdraw all claims based on the allegation that Jones Day paid men more than women. Plaintiffs failed to do so within twenty-one days of receiving that notice and a draft of this motion.

Accordingly, Jones Day asks the Court to enter an order imposing Rule 11 sanctions. In particular, Jones Day requests the Court (1) dismiss with prejudice all of Plaintiffs' claims against Jones Day to the extent they are based on disparate pay, including Counts 1, 2, 4, 5, 6, 11, 12, and 13; (2) order Plaintiffs' counsel to pay Jones Day's attorneys' fees and costs associated with this

motion, and all other fees and costs that Jones Day incurs going forward from the time of filing this motion; and (3) impose any additional sanctions that the Court deems just and proper. The grounds for this motion are set forth in the attached memorandum of law.

November __, 2019

Respectfully submitted,

/s/ Terri L. Chase
Mary Ellen Powers (Bar No. 334045)
Beth Heifetz (Bar No. 417199)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Phone: (202) 879-3939


Terri L. Chase (*pro hac vice* granted)
JONES DAY
250 Vesey Street
New York, NY 10281
Phone: (212) 326-3939

*Attorneys for Defendant*