# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NILAB RAHYAR TOLTON *et al.*, *on behalf of themselves and all others similarly situated*,<br><br>*Plaintiffs*,<br><br>v.<br><br>JONES DAY, a General Partnership,<br><br>*Defendant*. | Civil Action No. 19-945 (RDM) |

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO
DEFENDANT'S MOTION FOR RULE 11 SANCTIONS**

Defendant baldly mischaracterizes the nature of the information that was available to Plaintiffs prior to filing this lawsuit and falsely represents to the Court that that information refutes Plaintiffs' inference of pay discrimination at Jones Day. Not so. Plaintiffs thus offer this brief Sur-Reply to respond to four discrete misrepresentations in Defendant's Reply in Support of Defendant's Motion for Rule 11 Sanctions.

*First*, Defendant asserts that data in Plaintiffs' possession "from publicly available source[s] prior to filing this suit . . . *refute* any inference of unequal pay." Dkt. 96 at 18. Defendant further suggests that Plaintiffs intentionally withheld promotion data from their Complaint because the data undercut their allegations of discrimination. *Id.* In fact, none of the data Defendant cites was available to Plaintiffs at the time of filing. All of Defendant's statistics regarding the rate at which Jones Day promotes women to partner—including its repeated assertion that more than half of the partners promoted at the Firm over the last three years were women—include promotion data from 2020. Dkt. 96 at 5–6, 19 (citing Dkt. 96-11). These promotions were announced eight months *after* Plaintiffs filed this lawsuit. Dkt. 88-9 at 45. This sleight of hand is not

1

inconsequential: Because the proportion of promotions allocated to women increased precipitously in 2019 (after Defendant had received notice of Plaintiffs' claims) and again in 2020 (after this lawsuit was filed), including 2019 and 2020 data paints an inaccurate picture of the data actually available to Plaintiffs and which formed the basis for their inference of pay discrimination. *See* Dkt. 96-11; Dkt. 88 at 21. In other words, at the time Plaintiffs notified Jones Day of their claims, Jones Day's recent promotion data was much less flattering before 2019 and 2020.

*Second*, Jones Day asserts that Plaintiffs committed a "critical error[]" by looking at "*worldwide* promotions, including in Europe, Asia, and Latin America, which have nothing to do with this case." Dkt. 96 at 18–19, *see also id.* at 5. This contention is demonstrably false. Plaintiffs cited both worldwide data, from Jones Day's website, and United States-specific data, from Vault's Law Firm Diversity Database. Dkt. 88 at 19–23. Both data sets offered a comparable picture of the number of partnership promotions that go to women. For example, for the period from 2015 to 2018, 35% of promotions worldwide went to women, while in the United States that figure was 37%. *Id.* at 22–23. Indeed, Jones Day concedes in a footnote that Plaintiffs did provide U.S. data, but it does not offer any explanation for its repeated, false assertions to the contrary, nor does it acknowledge that the U.S. data and the worldwide data generally accord, diverging by no more than a few percentage points. Dkt. 96 at 19 n.8. Jones Day's assertion that Plaintiffs erred by looking at worldwide data is simply baffling.[1]

*Third*, Jones Day asserts that Plaintiffs "ignore how favorably Jones Day's statistics on this score compare with industry statistics from major U.S. law firms." Dkt. 96 at 19. Procedurally,

---

[1] In any event, since 1991, Title VII prohibits gender discrimination against U.S. citizens employed outside the territory of the United States. *See* 42 U.S.C. § 2000e(f). Jones Day has not provided the citizenship of its overseas lawyers, but, because Jones Day now trumpets that it promotes female lawyers abroad at disproportionately lower rates, perhaps it should.

Jones Day raises this argument for the first time in its Reply, and it is thus forfeited. On the substance, there is no "industry standard" safe harbor to Title VII or the Equal Pay Act, and Jones Day cites no authority for the disturbing proposition that it may freely discriminate so long as it does so no more than other legal industry employers. This is simply not the law. Moreover, the statistics Jones Day cites are incongruous. Jones Day compares its own promotion data from the last five- and ten-year periods (including 2019 and 2020) to industry data during the period from 2011 to 2018. Dkt. 96 at 19. Because Jones Day appears to have corrected course in the last two years by promoting more women than men, this is an apples-to-oranges comparison. But, of paramount importance to the Rule 11 motion at hand, Plaintiffs could not possibly have made this comparison in 2019 at the time of filing. Even by its own terms, this argument fails: Based on Jones Day's own Exhibit 9, the Firm underperformed the industry average for promoting women in three of the last four years for which industry-wide data is available. Dkt. 96-11. During the period from 2011 to 2018, Jones Day may have outperformed the industry average, but only by approximately 2–3% points, a much more modest margin than Jones Day suggests. And, critically, this back-of-envelope math hardly constitutes a statistical analysis definitively disproving the existence of gender discrimination in promotions or pay at Jones Day.

  Fourth, Jones Day asserts that partnership promotion must be viewed in light of "the pool of associates who started at the Firm ten years before the partnership decision was made." Dkt. 96 at 19. Because only around 45% of its associates are women, Jones Day reasons "that in the most relevant recent years, women are being promoted at *higher* rates than men." *Id.* at 20. But watch what Jones Day actually does: Although it suggests it is comparing "the pool of associates who started at the Firm," *id*. at 19, to the pool of associates ultimately promoted to partner, it is, in fact, comparing its *entire associate pool* to the pool promoted to partner. Yet, plausibly, the very reason

3

Jones Day has fewer female associates than male associates is that more female associates are pushed out of the Firm and/or advised that they will not make partner along the way. Thus, Jones Day's reliance on gender disparities in the makeup of its overall associate pool to justify gender disparities in promotions is no panacea. Moreover, this new statistical test that Jones Day invents finds no support in the law. The Court should reject Jones Day's invitation to erect a new civil rights pleading bar cut from whole cloth and enforced through penalty of sanction.

Plaintiffs' characterizations of gender disparities in Jones Day's partnership promotions are accurate. While employed at Jones Day, Plaintiffs witnessed the overwhelming majority of partnership promotions, regularly more than two-thirds, go to men. Dkt. 88 at 22. Plaintiffs can thus reasonably infer that gender disparities in promotions support an inference of gender disparities in pay, because, as Defendant's counsel represented to this Court, pay and promotions "[are] correlated. One is a proxy for the other." Dkt. 79 at 19 (Dec. 16, 2019, Hr'g Tr. at 19:12–13).

Seeking sanctions is a "solemn endeavor." *Jordan v. U.S. Dep't of Labor*, 273 F. Supp. 3d 214, 246 (D.D.C. 2017). In the context of something as serious as a Rule 11 motion, the Court must decline Jones Day's invitation to embrace gamesmanship at the expense of candor.

Date: February 3, 2020                             Respectfully submitted,

                                                   /s/ Russell L. Kornblith
                                                   David W. Sanford (D.C. Bar No. 457933)
                                                   Russell L. Kornblith*
                                                   SANFORD HEISLER SHARP, LLP
                                                   1350 Avenue of the Americas, 31st Floor
                                                   New York, NY 10019
                                                   Telephone: (646) 402-5650
                                                   Facsimile: (646) 402-5651
                                                   dsanford@sanfordheisler.com
                                                   rkornblith@sanfordheisler.com

Deborah K. Marcuse (D.C. Bar No. 995380)
SANFORD HEISLER SHARP, LLP
111 S. Calvert Street, Ste. 1950
Baltimore, MD 21202
Telephone: (410) 834-7415
Facsimile: (410) 834-7425
dmarcuse@sanfordheisler.com

Kate Mueting (D.C. Bar No. 988177)
Paul Blankenstein (D.C. Bar No. 304931)
SANFORD HEISLER SHARP, LLP
700 Pennsylvania Avenue, SE, Ste. 300
Washington, D.C. 20003
Telephone: (202) 499-5206
Facsimile: (202) 499-5199
kmueting@sanfordheisler.com

*admitted *pro hac vice*

*Attorneys for Plaintiffs, the Proposed Classes, and the Proposed Collective*

5