# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NILAB RAHYAR TOLTON, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Civ. No. 1:19-00945 (RDM) |
| | ) | |
| *v.* | ) | **RESPONSE TO MOTION FOR** |
| | ) | **LEAVE TO FILE SURREPLY** |
| JONES DAY, | ) | |
| | ) | |
| *Defendant.* | ) | |

Jones Day moved for sanctions based on the revelation that Plaintiffs knew facts about pay that refuted their sweeping, information-and-belief allegations of sex-based discrimination.  In opposition, Plaintiffs largely ignored those facts and instead tried to justify their allegations using attenuated inferences from Firm "culture," evaluations, and promotion data.  In reply, the Firm principally explained that, in the face of known contradictory facts about pay, Plaintiffs' inference-upon-inference reasoning could not suffice.  *See* Dkt. 96, at 6-14.  Jones Day also explained why Plaintiffs' inferences were themselves facially deficient.  *See id.* at 14-21.

Plaintiffs now propose a surreply.  Dkt. 99.  It again ignores the facts Plaintiffs knew about pay, instead concentrating solely on correcting Jones Day's supposed "misrepresentations" about one of the non-pay-related facts from which Plaintiffs supposedly inferred discrimination in pay (namely, partnership promotion data).  This is far afield from (and irrelevant to) the actual grounds for sanctions.  And, in any event, there were no "misrepresentations."  The surreply simply makes observations about the data that are obvious from the prior briefing and exhibits, quibbling about things like which years are most probative.  None of Plaintiffs' observations detracts from the Firm's basic point—a point Plaintiffs actually concede: Over the last decade, Jones Day has promoted female lawyers to partnership at a rate higher than the industry average.  That obviously cannot be grounds to infer nationwide sex-based pay discrimination.

"[S]urreplies are generally disfavored." *Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 187 (D.D.C. 2012). And, as explained in more detail below, nothing in Plaintiffs' proposed surreply warrants an exception to that general rule. But even if leave is granted, Plaintiffs' surreply does not absolve their ethical lapses.

1.      Plaintiffs complain that 2020 promotion data was not available before Plaintiffs filed their Complaint. Dkt. 99-1, at 2-3. Jones Day never suggested otherwise; it was *Plaintiffs* who introduced the 2020 data in their compilation of promotion announcements. Dkt. 88-9, at 45-49. Jones Day simply translated Plaintiffs' own exhibit into chart form, and eliminated the non-U.S. promotions. Dkt. 96-11. Anyway, even ignoring 2020, 40% of Jones Day's U.S. promoted partners from 2011 through 2019 were women. *Id.*[1] That is *above* the industry average, making it impossible to infer from this figure a widespread, sex-based pay inequity at the Firm.

2.      Plaintiffs argue that Jones Day wrongly criticized Plaintiffs' reliance on worldwide promotion rates. Dkt. 99-1, at 3. But Plaintiffs indeed led with the irrelevant worldwide data. Dkt. 88, at 20-21. And they supplemented it with data from the Vault database which, although limited to the United States, contained inaccuracies which Plaintiffs acknowledged could not be reconciled with the Jones Day partner announcements they compiled in Exhibit H (Dkt. 88-9). Moreover, it is not true that worldwide and U.S. promotions "offe[r] a comparable picture." Dkt. 99-1, at 3. From 2011-2019, 35% of worldwide partners promoted were women, while in the United States, the female share was 40%. *Compare* Dkt. 88, at 21 (worldwide) *with* Dkt. 96-11, at 2 (U.S.).

---

[1] Plaintiffs also suggest that even the 2019 partnership decisions, announced in December 2018, should be discounted from the analysis. But that announcement came nearly four months *before* Plaintiffs filed their initial Complaint (in April 2019). And, of course, those partnership announcements flowed from a months-long process that began before the Firm was even aware of Plaintiffs' claims.

**3.**     Plaintiffs object that Jones Day's comparison of the Firm's promotions to industry averages is "apples-to-oranges" because they cover different years.  Dkt. 99-1, at 4.[2]  As Jones Day noted, the online Vault database on which Plaintiffs relied did not contain industry data for 2019 or 2020.  Regardless, Plaintiffs *admit* that Jones Day's promotion rate of women from 2011-2018 (38%) was higher than the industry average over that same period (35%).  *Id.*[3]  Plaintiffs also argue that beating the industry does not "definitively disprov[e] the existence of gender discrimination." *Id.*  Perhaps not, but it certainly does not provide an affirmative basis for *inferring* discrimination.

**4.**     Finally, Plaintiffs fault Jones Day for comparing its female partner promotion rates to the female share of the *overall* associate pool, rather than to the female share of the *incoming* associate classes ten years earlier.  *Id.* at 4-5.  Jones Day used overall composition data because those rates were publicly available to Plaintiffs on Vault.  And they show that women make up only about 45% of the associate ranks (at both the Firm and in the industry as a whole).  Plaintiffs offer no basis for their supposition that this figure may reflect female associates being "pushed out of the Firm." *Id.* at 4.  In fact, Jones Day's records reflect that the average female share of new, incoming associate classes from 2001-2009 (a decade before 2011-2019) was 46%.

---

[2] Plaintiffs also make the inexplicable claim that Jones Day "forfeited" this argument by not raising it until the reply.  But Jones Day never mentioned partner promotion rates in its Rule 11 motion.  Plaintiffs raised it for the first time in opposition; Jones Day was free to respond.

[3] Partner promotion rates vary from year to year depending on the changing composition of the eligible pool and natural variation.  Plaintiffs' claim that Jones Day "corrected course in the last two years" ignores the high rates of female promotions (44-45%) in 2012, 2014, and 2018.  Plaintiffs also falsely claim that the male share of partnership promotions "regularly" exceeded "two-thirds." Dkt. 99-1, at 4.  In fact, the male promotion rate (barely) exceeded two-thirds just once during Plaintiffs' tenure (2011-2018).  Dkt. 96-11, at 2.

February 10, 2020                    Respectfully submitted,

                                     */s/ Terri L. Chase*
                                     Terri L. Chase (*pro hac vice* granted)
                                     JONES DAY
                                     250 Vesey Street
                                     New York, NY 10281
                                     Phone: (212) 326-3939

                                     *Attorney for Defendant*