**Sanford Heisler Sharp, LLP**
700 Pennsylvania Ave. SE, Suite 300
Washington, D.C. 20003
Telephone: (202) 499-5200
Fax: (202) 499-5199
www.sanfordheisler.com

*Kate Mueting*, Partner
(202) 499-5206
kmueting@sanfordheisler.com

New York | Washington D.C. | San Francisco | San Diego | Nashville | Baltimore

July 3, 2020

**VIA ECF**
The Honorable Randolph Moss
U.S. District Court for the District of Columbia
moss_chambers@dcd.uscourts.gov

    Re:    <u>*Nilab Rahyar Tolton et al., v. Jones Day* – Case No. 1:19-00945 (RDM)</u>

Dear Judge Moss:

Pursuant to this Court's June 10, 2020 Order, Plaintiffs respectfully file this letter describing their position on Jones Day's production of class-wide data and responding to Jones Day's June 19, 2020 letter at Docket No. 120. Plaintiffs seek discovery of class-wide compensation, evaluation, and personnel data located in Jones Day's centralized databases. This information is central to Plaintiffs' claims because it will aid the Court in determining whether Jones Day's policies and practices have a common discriminatory effect. Indeed, courts have held that statistically analyzable data such as the data sought here is often the only way to show systemic discrimination. Analysis of the data may also shed light on the point at which gender bias enters into Jones Day's compensation process. Furthermore, production of this data is minimally burdensome to Jones Day, as the firm has already acknowledged to the Court.

**Legal Standard**

Rule 26(b) provides that discovery may be obtained where it is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Information is relevant if it has the tendency to prove or disprove an element at issue. *See United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016). Relevance determinations are to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's

The Honorable Randolph Moss
July 3, 2020
Page 2

claim or defense." *Breiterman v. United States Capitol Police*, 324 F.R.D. 24, 30 (D.D.C. 2018) (internal quotation omitted).

The proportionality analysis considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Proportionality does not mean equality, as "[s]ome cases involve what often is called 'information asymmetry,'" where one party has more information that is "readily retrieved." *Id.*, 2015 Advisory Comm. Notes. "[T]hese circumstances often mean that the burden of responding to discovery lies heavier on the party who has more information, and properly so." *Id.* Information that is relevant and proportional "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Importantly, courts recognize that discovery in Title VII cases is "necessarily broad."[1] Courts also acknowledge the need for company-wide discovery in class action cases.[2]

Plaintiffs previously sought to compel data from centralized databases in November 2019, and the Court ruled that it would decide the issue after it ruled on Jones Day's motion for judgement on the pleadings. November 7, 2019 Hr. Tr., Dkt. 64, at 52:2–19. The Court suggested it would make sense to proceed with defining the scope of the data production after the claims were defined. *Id.* at 40:3–6 ("[I]t

---

[1] *Mitchell v. Nat'l R.R. Passenger Corp.*, 208 F.R.D. 455, 459 (D.D.C. 2002); *see also E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 68–69 (1984) (noting courts "generously construe[]" relevance determinations under Title VII); *Chen-Oster v. Goldman Sachs & Co.*, 293 F.R.D. 557, 562 (S.D.N.Y. 2013) ("[C]ourts typically apply more liberal civil discovery rules in employment discrimination cases, giving plaintiffs broad access to employers' records . . . .") (internal quotation marks omitted).
[2] *See, e.g.*, *Artis v. Bernanke*, 630 F.3d 1031, 1035 (D.C. Cir. 2011) (noting "class-wide claims . . . can often be proven only by a statistical comparison of the employer's treatment of the class to its treatment of non-minority employees"); *see also Gutierrez v. Johnson & Johnson, Inc.*, No. 01–5302, 2002 WL 34717245, at *4 (D. N.J. 2002) ("In employment discrimination cases, Courts generally grant wide latitude to . . . plaintiffs who seek to conduct company wide discovery.") (collecting cases).

The Honorable Randolph Moss
July 3, 2020
Page 3

does seem that logically it would make sense to say okay, what are the claims in the case. And now once you know what the claims are, then let's move to discovery."). In so ruling, the Court indicated that the Rule 12(c) Order would implicate the scope of discovery. If, for example, class-wide claims did not survive the Order, then class-wide data may no longer be relevant. Here, however, the Court denied Jones Day's motion for judgment on the pleadings with respect to Plaintiffs' class-wide gender claims, so there is no longer any basis for the firm to withhold class-wide discovery. *See* Docket No. 110.

Here, class-wide personnel data is relevant to Plaintiffs' claims, proportional to the needs of the case, and not burdensome to produce. Therefore, Jones Day must be ordered to produce data without its proposed limitations as to (1) geography or (2) time.[3]

**Jones Day Must Be Ordered to Produce Class-Wide Data**

Plaintiffs are entitled to class-wide compensation, evaluation, and personnel data because it is relevant to Plaintiffs' class claims and proportional to the needs of the case. Jones Day has acknowledged that the burden of producing this discovery—which is located in centralized databases—is minimal.[4]

*Class-Wide Data Is Relevant*

Class-wide data is relevant to show whether Jones Day's firm-wide polices have a firm-wide effect that disadvantages women. For this reason, courts routinely hold that class-wide statistical analysis is relevant in employment class actions.[5]

---

[3] While Jones Day's letter suggests a dispute over which fields should be produced, Plaintiffs agree to Jones Day's proposal to meet and confer on production of any narrative evaluations after production of the other data fields, as Plaintiffs informed Jones Day on May 28, 2020. Plaintiffs are not now seeking discovery on the narrative evaluations, which is the only field that contains privileged information.

[4] November 7, 2019 Hr. Tr., Dkt. 64, at 27:22–25 ("Ms. Chase: Again, I think that from a burden standpoint, if they're limiting the data to databases, there's certainly efforts that are involved, but I'm not going to argue that it's exceedingly burdensome."); *see also* Dkt. No. 120 at 6 (explaining that the "numerical ratings and rankings do not pose any particular burden or client confidentiality concerns").

[5] *See, e.g.*, *Smith v. Ergo Sols., LLC*, 306 F.R.D. 57, 67–68 (D.D.C. 2015) (deferring a ruling on certification until plaintiffs obtained and submitted statistical evidence); *Artis v. Yellen*, 307 F.R.D. 13,

The Honorable Randolph Moss
July 3, 2020
Page 4

Statistical data should be produced now because it is relevant to class certification, but it is also indisputably relevant to the merits, and this Court has ordered that certification and merits discovery happen simultaneously.[6] This Circuit has recognized that "class-wide claims . . . can often be proven only by a statistical comparison of the employer's treatment of the class to its treatment of non-minority employees."[7] This Court has also noted that "[t]o prevail on a disparate impact claim, a plaintiff must eventually proffer 'statistical evidence that the [allegedly discriminatory] practice or policy has an adverse effect on the protected group.'" May 19, 2020 Order ("Order"), Dkt. 110, at 57 (quoting *Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 639 F.3d 1078, 1085–86 (D.C. Cir. 2011)).

Here, class-wide statistical analysis is not only relevant, but very likely critical, to determining

---

26 (D.D.C. 2014) ("[S]tatistical evidence may be a powerful tool in proving that a class suffered a common injury"); *Moore v. Napolitano*, 926 F. Supp. 2d 8, 18–19, 29–30, 35 (D.D.C. 2013) (certifying a class and noting statistical evidence is relevant to Rule 23's commonality requirement); *Burton v. District of Columbia*, 277 F.R.D. 224, 230 (D.D.C. 2011) ("*Wal-Mart* [564 U.S. 338, 350–52 (2011)] confirms that pre-certification discovery should ordinarily be available where a plaintiff has alleged a potentially viable class claim . . . ." (internal quotation marks omitted)).

[6] *See* June 10, 2020 Order; *see also United States v. Ironworkers, Local 86*, 443 F.2d 544, 551 (9th Cir. 1971) (footnote omitted) ("Since the passage of the Civil Rights Act of 1964, the courts have frequently relied upon statistical evidence to prove a violation."); *see also Bazemore v. Friday*, 478 U.S. 385, 386–88 (1986) (per curiam) (reversing and remanding decision to disregard statistical evidence of salary disparities); *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 342, 339 n.20 (1977).

[7] *Artis*, 630 F.3d at 1035 (D.C. Cir. 2011). Because the rule explicitly provides that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable," Fed. R. Civ. P. 26(b)(1), this Court should reject Jones Day's attempts to distinguish *Bell v. Lockheed Martin Corporation* on the basis that the court did not ultimately consider the company-wide discovery it ordered, 270 F.R.D. 186 (D. N.J. 2010), *aff'd* 2010 WL 3724271 (D.N.J. Sept. 15, 2010). Additionally, contrary to Jones Day's assertions, Plaintiffs are entitled to statistical evidence regardless of whether it could singlehandedly establish all elements of Plaintiffs' case. *See Chen-Oster*, 114 F. Supp. 3d at 125 ("[I]t is not necessary for each expert to provide evidence establishing every element of a party's case . . . ."); *Moore*, 926 F. Supp. at 28–31, 35 (granting class certification based on statistical and anecdotal evidence); *McReynolds v. Sodexho Marriott Servs., Inc.*, 349 F. Supp. 2d 30, 35 (D.D.C. 2004) ("No one piece of evidence has to prove every element of the plaintiffs' case . . . .") (internal quotation marks omitted).

The Honorable Randolph Moss
July 3, 2020
Page 5

whether women make less than men in statistically significant ways.[8] Data production in discrimination class actions is necessary because "[i]t is highly unlikely that class certification could be finally resolved on the basis of depositions and document discovery alone." *Chen-Oster v. Goldman Sachs & Co.*, 285 F.R.D. 294, 300 (S.D.N.Y. 2012). For the Court to determine whether there is a disparity "and to ascertain whether it is attributable to a common policy or practice, it is necessary to acquire data about the class and analyze it . . . without such an analysis, the link that *Dukes* [*v. Wal-Mart*, 564 U.S. 338, 352 (2011)] requires between an employment policy and discriminatory impact in order to support a finding of commonality can neither be proved nor disproved." *Id.* In short, absent class-wide discovery the Court is unlikely to have the information necessary to determine class certification. *See, e.g.*, *Smith v. Ergo Sols., LLC*, 306 F.R.D. 57, 67–68 (D.D.C. 2015) (deferring certification ruling in part because plaintiffs did not submit statistics).

In particular, Plaintiffs commonly rely on multivariant regression models to demonstrate the effect of a policy on class members. *Bell v. Lockheed Martin Corp.*, No. 8–6292, 2010 WL 3724271, at *7 (D.N.J. Sept. 15, 2010). Statistical analysis seeks to assess whether there are gender disparities that are not explained by gender-neutral measures of employees' qualifications.[9] This type of regression, also called multivariant or multivariate, will aid the Court because it "measures the impact of each potential explanatory variable upon the dependent variable by holding all other explanatory variables constant." *Segar v. Smith*, 738 F.2d 1249, 1261 (D.C. Cir. 1984) (detailing multiple regression analysis in Title VII cases). Plaintiffs anticipate that their labor economist will conduct this analysis by controlling for gender-

---

[8] Order at 49–50 ("To sustain a disparate impact claim, a plaintiff must generally demonstrate with statistical evidence that the practice or policy has an adverse effect on the protected group." (internal quotation and alteration omitted)); *Brum v. MarketSource, Inc.*, No. 17-241, 2018 WL 3861558, at *3 (E.D. Cal. Aug. 14, 2018) (noting that "absent an order compelling [the defendant] to produce the requested discovery, plaintiffs will not be able to obtain evidence necessary for a class certification motion").

[9] *See, e.g.,* Expert Report and Affidavit of Henry S. Farber, *Chen-Oster v. Goldman Sachs & Co.*, No. 11-6950, 2014 WL 4276078 (S.D.N.Y. Feb. 17, 2014); Dkt. 797-38, Supp. Expert Report of Alex Vekker, *Kassman v. KPMG LLP*, No. 11-3743 (S.D.N.Y. Nov. 27, 2018).

The Honorable Randolph Moss
July 3, 2020
Page 6

neutral variables typically controlled for in labor economics, such as experience and education, and by ascertaining whether gender disparities exist even with these neutral controls. *Id.* (noting regressions can demonstrate the extent to which "observed disparity in salaries can be traced to [a protected characteristic] as opposed to any other potential explanatory variables"); *see also Taylor v. D.C. Water & Sewage Auth.*, 241 F.R.D. 33, 41–44 (D.D.C. 2007) (finding commonality in part based on regression analysis). This analysis may also reveal disparities in other firm decisions, such as performance ratings, which may shed light on the cause of any pay disparities. In this instance, the expert may exclude the variable as "tainted" (unless one accepts that Jones Day's women simply underperform relative to men). Conversely, the analysis may reveal no disparities in performance ratings, which would indicate that performance ratings are not the source of any pay disparities. In any event, this analysis will be helpful for the Court at certification, and production of all relevant data is antecedent to this analysis.

Jones Day has provided no basis for asserting that data beyond the geographical regions where Plaintiffs worked is not relevant. Courts routinely order production of data not limited to the Named Plaintiffs' offices or units. *See, e.g.*, *Chen-Oster*, 285 F.R.D. at 297, 306–7 (rejecting defendant's argument to limit discovery to the named plaintiffs' units); *Bell*, 270 F.R.D. at 190–93 (D. N.J. 2010) (same); Minute Orders on Plaintiffs Motions to Compel Production of NFC Database and Personnel Files, *Moore v. Chertoff*, No. 00-00953 (D.D.C. Dec. 12, 2005) (granting plaintiffs' motion to compel information from defendants' databases without geographic limitation); *Gutierrez v. Johnson & Johnson, Inc.*, No. 01–5302, 2002 WL 34717245, at *2, 4–5, 8 (D. N.J. Aug. 13, 2002) (denying motion for a protective order and granting discovery of company-wide data). Courts also routinely consider data not limited to the Named Plaintiffs' offices or units. *See, e.g.*, *Scott v. Family Dollar Stores, Inc.*, No. 08-540, 2016 WL 9665158, at *4 (W.D.N.C. June 24, 2016) (certifying class and considering nation-wide statistical analysis not limited to named plaintiff offices); *Moore v. Napolitano*, 926 F. Supp. 2d 8,

The Honorable Randolph Moss
July 3, 2020
Page 7

29–30, 35 (D.D.C. 2013) (certifying class and considering class-wide statistical analysis not limited to named plaintiff offices); *Taylor*, 241 F.R.D. at 42 (same); *McReynolds v. Sodexho Marriott Servs., Inc.*, 208 F.R.D. 428, 435 (Dec. 2, 2004) (same).

Jones Day's attempted geographical limits fail for five reasons. First, Jones Day already attempted to limit the scope of Plaintiffs' proposed class, and the Court rejected this attempt. Order at 62 (denying Jones Day's motion for judgment on the pleadings with respect to Plaintiffs' firm-wide gender disparate impact claims). The Court made it clear that Plaintiffs sufficiently pled, through allegations of disparities and anecdotal evidence, that compensation and evaluation policies had a disparate impact on female associates. *Id.* at 48–62. The Court emphasized that Plaintiffs' allegations entitled them to "the benefit of discovery." *Id.* at 52. Jones Day cannot achieve via a discovery order what it failed to achieve in its motion for judgment on the pleadings.[10] *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 258 F.R.D. 167, 173–75 (D.D.C. 2009) (rejecting defendants' attempt to limit pre-certification discovery based on its characterization of the facts because "[t]his Court has already established the sufficiency of the complaint").

Second, Jones Day's characterization of the compensation decision-making process must not defeat Plaintiffs' entitlement to class-wide data because fact-intensive inquiries are inappropriate at the

---

[10] Because this Court has already recognized that Plaintiffs have identified class-wide policies, Order at 57, several cases on which Jones Day relies are inapplicable. *See, e.g.*, *Salgado v. Land O'Lakes, Inc.*, No. 13–0798, 2014 WL 7272784, at *4–5 (E.D. Cal. Dec. 18, 2014) (denying state-wide discovery because plaintiffs were subjected to different payroll systems and handbooks); *Christian v. Generation Mortg. Co.*, No. 12–5336, 2014 WL 4494860, at *2 (N.D. Ill. Sept. 12, 2014) (plaintiffs alleged only that defendant had a "policy against having a policy"); *Griffin v. Home Depot USA, Inc.*, No 11–2366, 2013 WL 1304378, at *5 (D. Kan. Mar. 28, 2013) (denying class-wide discovery in a termination case where there was "scant evidence" that the terminations were based on a company-wide plan); *see also Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1084–85 (11th Cir. 1990) (affirming a denial of discovery because plaintiffs offered only "conclusory" statements regarding need); *Nguyen v. Baxter Health Corp.*, 275 F.R.D. 503, 508 (C.D. Cal. 2011) (denying broad discovery because plaintiffs did not show company-wide violations); *see also Brum*, No. 17-241, 2018 WL 3861558, at *3 (listing cases that have rejected the court's approach in *Nguyen*).

The Honorable Randolph Moss
July 3, 2020
Page 8

discovery stage. *See, e.g.*, *In re Bank of Am. Wage & Hour Empl't Practices Litig.*, 275 F.R.D. 534, 541 (D. Kan. 2011) (footnote omitted) (noting that at the pre-certification stage, plaintiffs need not "come forward with evidence of a nationwide policy or practice before being allowed to obtain discovery aimed at that very issue. This is particularly true when the burden imposed on the responding party is minimal"); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1117 (D.C. Cir. 2000) (reversing a lower court's decision dismissing a case based on defendant's characterization of the facts: "Litigants are entitled to discovery before being put to their proof.") (internal quotation marks omitted); Minute Orders on Plaintiffs Motions to Compel Production of NFC Database and Personnel Files, *Moore v. Chertoff*, 00-00953 (D.D.C. Dec. 12, 2005) (ordering, via minute order, discovery of data despite defendant's attempt to limit production to certain class members); *Waters v. U.S. Capitol Police Bd.*, 216 F.R.D. 153, 158 (D.D.C. 2003) (holding plaintiffs are not required "to establish facts making out a prima facie case of discrimination before being permitted discovery to test those claims"). While discovery to date has confirmed Plaintiffs' allegations that compensation and evaluation decisions are made within a highly centralized, Managing Partner-driven process, the Court need not decide this issue until class certification, when it will have the benefit of a full pre-certification discovery record. Jones Day has cited to no case in this jurisdiction where a court effectively narrowed the scope of the class through a discovery order—let alone one where the court did so after rejecting a motion to dismiss. Contrary to Jones Day's position, this Court must not require Plaintiffs to establish the elements of class certification in order to obtain the very discovery necessary for Plaintiffs to do so.

Third, even if this Court were to credit wholesale Jones Day's unsupported characterization that compensation decisions are made at the local level, this would still not diminish the fact that Plaintiffs are entitled to class-wide discovery based on the other elements of Jones Day's compensation process, namely the pay secrecy and "No Whining" policies. *See, e.g.*, *In re Rail Freight*, 258 F.R.D. at 172–75

The Honorable Randolph Moss
July 3, 2020
Page 9

(declining to consider defendant's attempt to narrow class issues through discovery where plaintiffs had survived a motion to dismiss). Jones Day has not contended that these policies are specific to any geographical office and, as this Court has noted, these policies may "cause[] continued disparities by closing natural feedback channels" and by "allow[ing] subjective decisionmaking to proceed unfettered by transparency." Order at 56. Jones Day's focus on the compensation process ignores that, at minimum, Plaintiffs are entitled to data based on the firmwide pay secrecy and "No Whining" policies. *Chen-Oster*, 285 F.R.D. at 297, 300–01 (granting discovery consistent with the challenged employment policies).

Fourth, production of only a limited data set creates a risk that a regression analysis will be unable to reveal disparities that exist.[11] This Court must have the benefit of a complete expert analysis, not one that is unable to reveal existing disparities. *Moore*, 926 F. Supp. 2d at 24–25 (relying on an aggregate data set because use of an incomplete data set risks masking disparities); *McReynolds v. Sodexho Marriott Servs., Inc.*, 349 F. Supp. 2d 1, 15 (*McReynolds II*) (same); *Segar*, 738 F.2d at 1286 (same).

Fifth, the factors weighing against production are minimal. Jones Day has acknowledged that producing this data would not be unduly burdensome. While Plaintiffs recognize that privacy interests of associates in the class-wide data must be protected, courts routinely find these concerns can be addressed by a protective order. *See, e.g.*, *In re Bank of Amer.* 275 F.R.D. at 541 (noting that confidentiality concerns "are best addressed in the form of a protective order," not by withholding discovery). Jones Day has not attempted to assert that the Protective Order here, Docket No. 54, is insufficient and, through its

---

[11] *See Moore*, 926 F. Supp. 2d at 25 (explaining the challenges of analyzing data "too small to generate any statistically significant evidence of discrimination") (internal quotation marks omitted); *Segar v. Smith*, 738 F.2d 1249, 1286 (D.C. Cir 1984) (explaining that dividing the workforce into "small segments" made it unlikely the regression could detect disparities); *Wilfong v. Rent-A-Center, Inc.*, No. 00–680, 2001 WL 35695551, at *3 (S.D. Ill. March 14, 2001) (noting defendants must produce enough data for a "meaningful" statistical analysis); *Gutierrez v. Johnson & Johnson, Inc.*, No. 01-5302, 2002 WL 34717245, at *4–5 (D.N.J. Aug. 13, 2002) (rejecting defendant's attempt to "turn a large sample into a small one by arbitrarily excluding observations") (internal citation and quotation marks omitted).

The Honorable Randolph Moss
July 3, 2020
Page 10

compromise proposal, has acknowledged it protects personnel information of non-party associates.

While at the appropriate time the firm may attempt to defeat class certification based on disputed facts over the nation-wide application of its policies, Jones Day cannot prevent Plaintiffs from obtaining evidence relevant to this dispute, particularly when it is proportional and not burdensome to produce.

*Class-Wide Data Is Proportional*

Production of class-wide data is proportional to the needs of this class action discrimination case. Courts routinely order broad discovery in these cases and recognize that defendants often have greater discovery burdens due to information asymmetry.[12] Indeed, the court in *Chen-Oster* found there was "little doubt that the needs of [the] case justif[ied] the discovery sought by plaintiffs" since "[t]he information in the databases is central to the plaintiffs' claims of gender discrimination in compensation, promotion, and evaluation." 285 F.R.D. at 305.

Limiting the production of data to a handful of offices is inappropriate for the reasons discussed above. Furthermore, while Plaintiffs dispute Jones Day's unsupported assertion that the limited data it has offered is sufficient for a statistical analysis, the question of whether lesser discovery would be sufficient is immaterial where the burden of producing class-wide data is not meaningfully different than the burden of producing the limited data Jones Day has offered to produce.[13]

---

[12] *See, e.g.*, Fed. R. Civ. P. 26(b)(1), 2015 Advisory Comm. Notes; *Artis*, 630 F.3d at 1035 (recognizing perverse effects of dismissing plaintiffs' claims where "all of the relevant data is in the employer's exclusive control") (internal quotation marks omitted); *Chen-Oster*, 293 F.R.D. at 562, 586 (ordering production of class-wide data and noting that courts give plaintiffs "broad access" to employer records); *see also Gutierrez,* 2002 WL 34717245, at *4 (ordering class-wide data in part because "[c]ourts generally grant wide latitude" to company-wide discovery).

[13] Because Jones Day has admitted that it would not be overly burdensome to produce the data, several cases on which it relies are inapplicable. *See, e.g., Cronas v. Willis Group Holdings, Ltd.*, No. 06-15295, 2008 WL 4548861, at *2 (S.D.N.Y. Oct. 8, 2008) (declining to require defendant to spend "hundreds of thousands of dollars" to create a database); *see also Earley v. Champion Int'l Corp.*, 907 F.2d at 1084–85 (affirming denial of discovery  because it was "unduly burdensome" and finding relevancy had not been established); *Welch v. Eli Lilly & Co.*, No. 06-0641, 2009 WL 700199, at *10 (S.D. Ind. Mar. 16,

The Honorable Randolph Moss
July 3, 2020
Page 11

For these reasons, the Court should reject Jones Day's attempts to deprive this Court of evidence it will need to determine class certification and should reject Jones Day's proposed geographic limits.

**Data Pre-Dating Liability and Extending Through the Present is Relevant and Proportional**

The Court should also reject Jones Day's temporal limits. Discovery between January 1, 2012, or four years before the liability period, through the present is also relevant and proportional.

First, while the liability period extends to August 6, 2016, two years before the timely filing of an administrative charge,[14] courts routinely award data before the liability period in part because this will enable the parties to present "meaningful" statistical analysis.[15] Indeed, "[i]t is well established that discovery of conduct predating the liability period of a Title VII lawsuit is relevant and courts have commonly extended the scope of discovery to a reasonable number of years prior to the liability period . . . ." *Miller v. Hygrade Food Prods. Corp.*, 89 F. Supp. 2d 643, 657 (E.D. Pa. 2000) (collecting cases); *Bell v. Lockheed Martin*, 270 F.R.D. 186, 193 (D. N.J. 2010) ("Cases examining the scope of discovery in a Title VII action permit discovery for a time period that predates the plaintiff's claim.") (collecting

---

2009) (denying a motion to compel additional data after previously ordering a data production and emphasizing production of the additional data would be burdensome). *See also In re Bank of Am.*, 275 F.R.D. at 541 n.32 (distinguishing *Welch* based on burden).

[14] Contrary to Jones Day's assertion, the liability period for Title VII claims is two years, not 300 days. 42 U.S.C. § 2000e-5(g)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 119 (2002) (noting Title VII's two-year liability period).

[15] *Pleasants v. Allbaugh*, 208 F.R.D. 7, 9–10 (D.D.C. 2002), *on recons. Pleasants v. Allbaugh*, No. 00-3094, 2002 WL 31520105, at *3 (D.D.C. Nov. 12, 2002) (awarding discovery before the liability period and noting that "courts permit discovery of data over an extensive period of time," in part because "responsible statistical analysis has to be based on enough data to make that analysis meaningful"); *Chen-Oster*, 285 F.R.D. at 297–98 (granting class discovery of "compensation, promotion, and performance evaluation database information" for a ten-year period); *McReynolds*, 349 F. Supp. 2d at 43 (considering data three years before liability period because courts "clearly permit analysis of employment data that predates the class time frame" and collecting cases). Because Plaintiffs seek data for a class-wide statistical analysis, Jones Day's reliance on individual cases are inapplicable. *See Kapoor v. Indiana Univ. Bd of Trustees*, No. 6-819, 2007 WL 2901881, at *2 (S.D. Ind. July 26, 2007); *Glenn v. Williams*, 209 F.R.D. 279, 281 (D.D.C. 2002); *see also Chen-Oster*, 293 F.R.D. at 567 (explaining discovery limitations in individual cases are inapplicable where plaintiffs have company-wide class allegations).

cases); *see also Kargbo v. Nat'l R.R. Passenger Corp.*, No. 15-698, 2016 WL 10998394, at *5–6 (D.D.C. Jan. 14, 2016) (rejecting defendant's attempt to limit discovery to the liability period). Production of data preceding the liability period is also necessary to evaluate compensation claims within the liability period, because compensation is based on prior performance ratings and rankings.

Jones Day's proposal to provide partial data dating to 2012 is insufficient for a meaningful analysis. A limited data set of only those associates who remained at the firm is not representative of the entire associate population. Additionally, any regression analysis requires complete data. Importantly, full data before 2016 is necessary to analyze the effects of the 2016 mid-year adjustments Jones Day referenced in its letter. *See, e.g., Segar*, 738 F.2d at 1261–63 (using regressions to "pinpoint where discrimination was taking place"); *Chen-Oster*, 285 F.R.D. at 298 (granting discovery pre-dating class period where plaintiffs argued scope was necessary to analyze potential impact of changed employment policies).

Second, courts have routinely ordered discovery extending through the pendency of litigation. *See, e.g.*, *Chen-Oster*, 285 F.R.D. at 297, 308 (granting discovery of data until the resolution of the lawsuit). Ongoing discovery is particularly appropriate because Plaintiffs seek injunctive relief addressing the challenged policies, which remain in effect, *see* Order at 86–88, and because the class period is ongoing, *see, e.g.*, *Morgan v. U.S. Soccer Fed'n, Inc.*, -- F. Supp. 3d --, 2020 WL 2214082, at *1 (C.D. Cal. May 1, 2020) (noting the class period cut off "at the date of final judgment, or the date of the resolution of any appeals therefrom, whichever is later"); *Scott v. Family Dollar Stores, Inc.*, No. 08-540, 2016 WL 9665158, at *9 (W.D.N.C. June 24, 2016) (defining ongoing class period).

For these reasons, Plaintiffs respectfully request that the Court order Jones Day to produce class-wide data without its proposed restrictions.

Respectfully submitted,

Kate Mueting