# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NILAB RAHYAR TOLTON, *et al. on behalf of themselves and all others similarly situated,*

       *Plaintiffs,*

    v.

JONES DAY, a General Partnership,

       *Defendant.*

Civil Action No. 1:19-cv-00945 (RDM)

## DECLARATION OF STEPHANIE E. PARKER

I, Stephanie E. Parker, declare as follows:

Background

1.     My name is Stephanie E. Parker.  I am over the age of 18 and am otherwise competent to make this declaration.

2.     All the statements in this declaration are true and accurate and are based on my personal knowledge.

3.     I am a partner of the law firm Jones Day.  My business address is 1420 Peachtree Street, N.E., Atlanta, Georgia 30309.

4.     I received an undergraduate degree from Wesleyan College, and a J.D. degree from Vanderbilt University School of Law.

5.     In 1995, I joined Jones Day as a partner in the Atlanta Office.

6.     I was a member of the Products Liability Practice from 1995 to 2011 and became a member of the Business & Tort Litigation ("B&TL") practice effective January 1, 2012 when the

Products Liability Practice combined with the B&TL practice.  I have been a member of the B&TL practice ever since.  The B&TL practice has been called different names, including the General Litigation Section of the Litigation Group, Trial Practice and, most recently, B&TL, but the substantive work performed has remained the same.  In particular, the Practice is comprised of experienced trial lawyers serving clients in business and government disputes, tort and commercial litigation.

7.      In 2015, the Managing Partner asked me to serve as the Leader for the Products Liability team, which is a part of B&TL.  In that role, I reported to Charles Carberry, who was the B&TL Practice Leader.  In 2016, John Majoras and I were asked to serve as co-Practice Leaders of B&TL (succeeding Mr. Carberry).

8.      In 2011, I became a member of the Firm's Advisory Committee; in 2020, I became a member of the Firm's Partnership Committee.  I continue to serve in these roles today.  I have held other Firmwide and Office leadership roles over the years.  For example, I have served as a member of the Firmwide Business Development Committee, head of the New Lawyers Group in the Atlanta Office, and Founder (now Advisor) to the Morehouse/Spelman College Internship Program.

<u>B&TL Overview</u>

9.      Each Practice is headed by one or more Practice Leaders.  As mentioned above, I have co-led the B&TL practice with John Majoras since 2016.  B&TL is the Firm's largest practice.  As a Practice Leader, I am responsible for the management and development of the B&TL practice.  My responsibilities include the global development and marketing of, and strategic planning for, the practice; lawyer development, training, and performance reviews for lawyers in the practice; monitoring practice expense budgets; providing recommendations on

monthly hours targets for the practice; and providing information and reports with respect to the practice's development and performance.

10.     For the Firm's U.S. Offices, the Managing Partner has designated a partner to serve as Head of Litigation.  In consultation with John Majoras and me, these Partners are responsible for overseeing the litigation activity in the Office.  These Partners may assist with work assignments, lawyer evaluations, expense approvals, training, and other similar activities.

Evaluation of B&TL Associates

11.     Each year, the B&TL practice engages in a thorough, merits-based annual evaluation of each individual associate who is in the B&TL practice.  As a Practice Leader, my role in evaluating B&TL associates begins after the relevant supervising lawyers complete their evaluations of the work performed in the prior year by an applicable B&TL associate.  The individual evaluations are then assessed for the purpose of drafting a narrative assessment statement and rating (1 through 5, with 5 being the highest rating) for each B&TL associate based on that associate's individual performance over the course of the prior calendar year.  Mid-level and senior associates are also ranked in two tiers.

12.     John Majoras and I have relied on several individuals spread across the Firm to prepare the initial drafts of the assessment statements and ratings for the Firm's B&TL associates.  The identity of the individuals responsible for drafting the statements and ratings has varied over time, including within the past few years.  When selecting the participants, we generally endeavor to include partners familiar with the associates being reviewed.[1]

---

[1] I understand that the office where the associate is resident assigns a separate rating to each associate in that office.  I do not have a formal role in that process, but at times I have conferred with various partners-in-charge regarding potential partnership consideration of certain B&TL associates.

13.     Given the large number of B&TL associates, we have always separated the associates into two categories based on seniority:  (1) the  second, third, and fourth year associates falling into one category, and (2) fifth year associates and more senior falling into a second category.  The process by which narrative assessment statements and ratings were drafted differed for each category, as described more fully below.

14.     In 2016 (i.e., NPE 2015), the office Heads of Litigation or their designees drafted provisional assessment statements and proposed ratings for the more junior classes (*i.e.*, second, third, and fourth year associates).  The partners involved in this process included David Monde (for Atlanta B&TL associates), Jason Winchester and James Daly (for Chicago B&TL associates), Sharyl Reisman (for NY B&TL associates), and Kerri Ruttenberg (for DC B&TL associates).

15.     In 2016 (i.e., NPE 2015), Steve Geise (San Diego partner) and Sharyl Reisman were responsible for drafting a provisional assessment statement and proposing a rating for each mid-level B&TL associate (i.e., classes of 2008-2011).

16.     Jim Jones (then a Pittsburgh partner) was responsible for drafting a provisional statement and rating for each senior B&TL associate (i.e., classes of 2007 and senior).

17.      In 2017 (NPE 2016), the Head of Litigation in each U.S. office, or other appropriate designee, was tasked with preparing draft assessment statements and proposed ratings for each B&TL associate either resident in that HOL's office or part of the designee's specific team, regardless of seniority.

18.     Jim Jones organized this process for the B&TL practice and then, together with a team of B&TL partners, reviewed and commented on the initial drafts.  This same process remained in effect in 2018 (for NPE 2017).

19. The draft assessments and ratings for mid-level and more senior B&TL associates are then subjected to further debate and potential revision in Firmwide associate review meetings. (Associates in their second, third, or fourth year are not discussed at the Firmwide associate review meetings; consequently, their draft assessments are primarily drafted at the office level, with oversight and review by a smaller subset of partners, as described above in Paragraph 14.)

20. I have attended the Firmwide litigation associate review meetings since 2005. The attendees are a diverse group of partners drawn from across the Firm and from different litigation-oriented practices. Although the composition of the group changed from year to year, more than 30 partners participated in each of these meetings during the period 2015-2018. By bringing different practices together, we endeavor to ensure there is a robust and disciplined approach to the manner in which ratings are assigned and assessment statements are written. For example, there are often different views among the different practices about the level of performance that might support a rating of "4" or "5" (a "5" is the highest rating). These differences are addressed at the review meeting. The Firmwide litigation associate review meetings also aid in the process of developing an accurate and meaningful draft narrative assessment statement because they provide an opportunity for discussion of associates' overall contributions and performance.

21. In 2015, we met in-person over a two-day period on April 20-21, 2015, in the Jones Day Washington office, to discuss every mid-level and senior B&TL associate at the Firm. The group also discussed associates in the FILR, Global Disputes, Government Regulation, Issues and Appeals, Labor and Employment, and Securities Litigation practices.

22. In 2016 (for NPE 2015), the litigation review committee met in-person over a two-day period on April 14-15, 2016, in the Jones Day Washington office, to discuss each mid-level

and senior B&TL associate at the Firm.  In addition to the practice groups that participated the previous year (i.e., the FILR, Global Disputes, Government Regulation, Issues and Appeals, Labor and Employment, and Securities Litigation practices), the committee also discussed associates in the Investigations and White Collar Defense (IWC) practice.

23.    In 2017 (for NPE 2016), the litigation review committee met in-person over a two day period on March 27-28, 2017, in the Jones Day Washington office, to discuss each mid-level and senior B&TL associate at the Firm.  The other practice groups represented at the 2017 (for NPE 2016) litigation review committee meeting included all but one of those (Government Regulation) from prior years but the committee also, for the first time, discussed associates in the Cyber, Insurance Recovery, Intellectual Property, and Health Care and Life Sciences practices. Associates in the Government Regulation practice, who had been included in the litigation review committee meeting in 2016 (for NPE 2015), were instead reviewed at a separate Regulatory practice review committee meeting.

24.    In 2018 (for NPE 2017), the litigation review committee met in-person over a two day period on April 9-10, 2018, in the Jones Day Washington office, to discuss each mid-level and senior B&TL associate at the Firm.  Associates in the Cybersecurity, FILR, Global Disputes, Insurance Recovery, Intellectual Property, Issues and Appeals, IWC, Labor and Employment, and Securities Litigation practices were also evaluated at the litigation review committee meeting.

25.    During the meetings, the participants discuss each mid-level and senior associate in B&TL and each of the other practice groups represented.  The discussion includes a critical review of the provisional draft assessment statement and proposed rating.  It is not uncommon for a rating or assessment statement to be revised following the associate review committee meeting.  Typically, John Majoras and I, as Practice Leaders, work with Jim Jones to implement

6

any revisions to the B&TL ratings or assessment statements that we believe are warranted based on the discussion.

26.     After the Firmwide associate review committee meeting, John Majoras and I have an opportunity to review and further comment on the draft assessments and ratings before they are shared for comment with the relevant Partner-in-Charge (e.g., the New York partner-in-charge receives the draft assessment statement and practice rating for each B&TL associate resident in the New York office).

27.     I periodically engage in discussions with Partners-in-Charge and Regional PICs regarding specific B&TL associates' draft assessment statements, and it is not uncommon for assessment statements to be further revised to reflect additional input received from the Partners-in-Charge and/or Regional PICs.

28.     For mid-level and senior associates, the B&TL practice also assigns a ranking during the evaluation process.  The practice ranking is ultimately the responsibility of John Majoras and me, as Practice Leaders, but we received input from other partners as part of this process.  Until recently, the B&TL representatives in attendance at the Firmwide associate review meeting were asked to assign a quintile ranking for each B&TL associate discussed at the meeting. John Majoras and I then used that data to inform our decisions on rankings.  Following the Firmwide associate review meeting each year, and with the benefit of the discussion and review of each associate that took place at the meeting, John Majoras and I work together to rank mid-level and senior B&TL associates in two tiers based on seniority.

29.     There is no formulaic approach to how we assign rankings in these instances; rather, it is highly individualized based on the associate's performance and contribution in the prior year, as well as potential for future growth and needs of the practice.  All other things being equal, a

more senior associate would typically be ranked higher than a more junior lawyer in the same 3-year tier.  But, because there can be a range of performance even within a rating category, there are times when a strongly rated junior associate is ranked higher than a more senior associate, even though they have the same practice rating.

30.     During my time as B&TL practice leader, the Managing Partner has never participated in the litigation associate review meetings, and has never commented on assessment statements or on practice ratings or rankings for individual associates.

31.     As a Practice Leader, I do not have responsibility for setting compensation for B&TL associates, although I was asked for my input on certain B&TL associates' performance in connection with an off-cycle compensation adjustment proposed for certain associates in January 2017.

///

///

///

///

///

///

///

///

///

///

///

///

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: 7-8-2020

Stephanie E. Parker

_____
Stephanie E. Parker