1                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA
2

    NILAB RAHYAR TOLTON,
3   et al.,
                                          Civil Action
4           Plaintiffs,                   No. 1:19-cv-0945

5          vs.                            Washington, DC
                                          July 9, 2020
6   JONES DAY,
                                          11:20 a.m.
7              Defendant.
    _____/
8

9           TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
              BEFORE THE HONORABLE RANDOLPH D. MOSS
10                UNITED STATES DISTRICT JUDGE

11

    APPEARANCES:
12  For the Plaintiffs:   RUSSELL L. KORNBLITH
    (via telephone)        Sanford, Heisler, Sharp, LLP
13                         1350 Avenue of the Americas, 31st Fl.
                           New York, NY 10019
14
                          KATIE M. MUETING
15                         Sanford, Heisler, Sharp, LLP
                           700 Pennsylvania Ave, SE, Suite 300
16                         Washington, DC 20003

17

    For the Defendant:    TERRI L. CHASE
18  (via telephone)        Jones Day
                           250 Vesey Street
19                         New York, NY 10281

20                        JACOB M. ROTH
                           Jones Day
21                         51 Louisiana Avenue, NW
                           Washington, DC 20001
22

23  Reported By:          JEFF M. HOOK
                           Official Court Reporter
24                         U.S. District & Bankruptcy Courts
                           333 Constitution Avenue, NW
25                         Washington, DC 20001

1                        P R O C E E D I N G S

2              **DEPUTY CLERK:**  This is civil action 19-945, Nilab

3    Rahyar Tolton, et al., versus Jones Day.  Appearing for

4    plaintiffs, Kate Mueting and Russell Kornblith.  Appearing

5    for defendants, Terri Chase and Jacob Roth.

6              **THE COURT:**  Good morning everyone, and thank you

7    for convening for the call today.  Before we get going, I

8    just want to remind everybody that under the Chief Judge's

9    standing order and the rules of the Court, it's prohibited

10   to record or to rebroadcast today's proceedings.  I want to

11   remind everyone to put your phone on mute when you're not

12   speaking so we can hear and we don't get feedback.  Please

13   pick up the phone and use the handset when you are speaking,

14   and please introduce yourself by name each time you speak so

15   we have a clear record.

16              So we're here regarding the parties' dispute

17   regarding the scope of discovery.  In particular, discovery

18   relating to associate compensation.  I'm happy to hear from

19   each of you with respect to see if we can work it out today.

20   Since it's the plaintiffs who are seeking the discovery,

21   perhaps it makes sense to start with plaintiffs' counsel.

22              Who's speaking on behalf of plaintiffs today?

23              **MS. MUETING:**  Good morning, your Honor.  This is

24   Kate Mueting for the plaintiffs, and I will be speaking

25   today.

1      **THE COURT:**  Okay.

2      **MS. MUETING:**  And thank you for this.  I think

3   first, you're right that there's not a dispute here that

4   plaintiffs are entitled to data, and that the purpose of

5   that data is to run a statistical regression analysis to

6   determine whether there are disparities based on gender, and

7   the size of any disparities.  The dispute here is really

8   over the scope of the data that plaintiffs are to receive.

9   And plaintiffs submit that the scope of discovery must be

10  tied to the scope of the claims.

11      Here, plaintiffs have pled a nationwide class, and

12  that pleading has been tested.  The Court has analyzed that

13  very carefully -- and I like the opinion, and determined

14  that plaintiffs have properly pled a nationwide class and

15  can proceed with discovery on the --

16      **THE COURT:**  I'm sorry, just to pause you there.  I

17  don't think that's true.  Nothing that I have decided thus

18  far went to the propriety of a nationwide class.  I mean, I

19  did reject a number of the arguments for dismissing certain

20  claims, but it was all -- as I recall, my opinion was all

21  very focused on three cities.

22      So I understand that you may need the discovery

23  and that you've pled a nationwide class, but I don't think

24  it's true to say that the Court has ruled one way or the

25  other on the propriety of a nationwide class at this point.

1      **MS. MUETING:**  So I believe that Jones Day did seek

2  to dismiss the class claims, and those class claims are

3  claims that plaintiffs have pled as a nationwide class.  And

4  so I didn't mean to put words in your mouth, your Honor.  My

5  understanding is that by rejecting Jones Day's request for

6  judgment on the pleadings with respect to the gender and

7  disparate impact class claims, that the Court did

8  acknowledge that plaintiffs had properly pled a nationwide

9  class and properly pointed to nationwide policies.

10     **THE COURT REPORTER:**  Excuse me, Ms. Mueting.  This

11  is Jeff, the court reporter.  I'm having a lot of trouble

12  understanding you.  Are you speaking on a handset by any

13  chance?

14     **MS. MUETING:**  Is this any better?

15     **THE COURT REPORTER:**  Yes, that's much better.

16  Thank you so much, and I'm sorry to interrupt.

17     **MS. MUETING:**  No, thank you so much for

18  interrupting.  It is important that you hear us, and I

19  apologize for that.

20     So I was just talking about how Jones Day has --

21  had requested for a judgment on the pleadings with respect

22  to plaintiffs' nationwide class where we pointed to

23  nationwide policies.  The Court took a look at those

24  nationwide policies as we've pled them, and found that we

25  are not -- we're not required at the pleadings stage without

1    the benefit of any discovery to point with particularity to

2    the nationwide policies.  But the Court did find that

3    discovery was appropriate, that we could continue with

4    discovery by rejecting Jones Day's attempt to dismiss those

5    nationwide class claims.

6         And so plaintiffs have pled the nationwide class,

7    and that has been tested.  And Jones Day cannot now seek to

8    narrow the scope of the class through a discovery motion.

9    The proper venue for narrowing the scope of the class would

10   have been through a motion to dismiss or through a motion

11   for judgment on the pleadings.  At this discovery phase, the

12   appropriate scope of discovery is determined by a balancing

13   analysis.

14        So on one hand, the Court looks at the relevance

15   and the importance of the data to the case, and on the other

16   hand, the Court raises the burden of producing that data.

17   Here, respectfully the burden is incredibly low.  And Jones

18   Day has acknowledged that the burden of producing the data

19   plaintiffs seek is very low.  This is information located in

20   Jones Day's centralized databases.

21        On the other side of the balance, the relevance

22   and importance of this data is really great.  The Court will

23   need to know at the class certification stage how these

24   firm-wide policies that we've pointed to in our pleadings

25   apply to female associates firm-wide.  And we need firm-wide

1   data to be able to show that.  The effect of Jones Day's

2   limited dataset would be to prevent our experts from running

3   any meaningful statistical analysis.  And that's really

4   because of the problems of non-random sampling, and the

5   bigger problem of sample size.  So I understand from our

6   experts that it's unlikely they will be able to say anything

7   meaningful about the effect of Jones Day's nationwide

8   policies if they're only able to look at the limited data

9   Jones Day has agreed to produce.

10          So I think we all acknowledge that there is a

11  problem with sample size, right.  We could not figure out

12  other statistically significant gender-based disparities if

13  you're just asking 10 women and 10 men, for example.  We

14  need more than that.  And the question then is where to draw

15  the line, and what factors to consider in drawing the line.

16  And counseling in favor of more data is the fact that with

17  more observations and more data, you get more accurate

18  information.  You get a more accurate statistical analysis.

19  And counseling in favor of less data is burden.  Sometimes

20  we're willing to accept smaller sample sizes because of the

21  burden of producing a larger sample size.

22          We don't, for example, knock on the door of every

23  American to try to predict the results of an election.  We

24  are willing to accept a higher margin of error.  We are

25  willing to accept less accurate statistical results because

1    it's just too expensive.  Here we do not have those

2    corresponding competing burden considerations on the other

3    side, so there's no reason to accept less than accurate

4    results.

5         **THE COURT:**  And let me ask you this, do you agree

6    that the statutory period for relevant purposes does not

7    extend prior to 2016?

8         **MS. MUETING:**  Yes.

9         **THE COURT:**  And I understand why you might want

10   some statistical information before 2016 in order to

11   establish either a pattern or statistical significance, a

12   trend or so forth.  But do you need anything before '16

13   relating to those who were not employed in '16, '17 or '18?

14   In other words, would it be enough to say okay, you can have

15   discovery with respect to '16 through '18 as well as prior

16   to '16, but only with respect to those who were employed --

17   who were still employed in '16?  So if someone had left the

18   firm in '14 or '15, there's no reason that you would need

19   discovery with respect to what their compensation was.

20        **MS. MUETING:**  Yes, your Honor.  And I asked our

21   expert that very same question, because I was also thinking

22   that it might be enough.  And what they responded to me is

23   to say that incomplete dataset for, say, 2013, '14 and '15,

24   we would be unable to find anything meaningful with that

25   limited sample size.  So it would not be everyone at Jones

1    Day, it would be a self-selecting group, right.  It would be

2    the people who stayed at Jones Day.  And there may be

3    something different about the people who stayed at Jones Day

4    than there would be -- that would not be reflected in the

5    full dataset.

6          And in particular, I think data predating 2016 is

7    important as we mentioned to get at trends.  Jones Day, as

8    it mentioned in its letter, underwent market adjustments in

9    2016.  And so for us to be able to figure out whether that

10   had any effect on disparities, we are going to need to do a

11   full analysis of the years preceding 2016 to figure out

12   whether there was a change, whether the 2016 market

13   adjustment may have been contributing to any disparities.

14          **THE COURT:**  Okay.  Anything else you want to add

15   now?

16          **MS. MUETING:**  So we've covered the geography,

17   we've covered data predating the liability period.  I think

18   the only other issue is that of postdating -- sorry, forward

19   looking data.  Jones Day wants to cut off the data

20   production at 2018.  I think that's important, because as

21   this Court recognized in denying Jones Day's motion for

22   judgment on the pleadings with respect to the injunctive

23   relief piece, plaintiffs are seeking injunctive relief.  So

24   we need to know what's happening in 2020, 2019 in order to

25   figure out what injunctive relief is appropriate.  It would

1    not make any sense to try to enforce or figure out

2    injunctive relief in 2020 or 2021 based on data from 2018.

3    So it's necessary to have ongoing data production as well.

4           THE COURT:  Do you need a class representative who

5    we know -- I mean, I understand and I've held that you could

6    seek injunctive relief with respect to the individual

7    plaintiffs, and that theoretically you could seek some type

8    of reinstatement remedy or something along those lines.

9           But for the period from the time the lawsuit was

10   filed until the time that any such relief is provided,

11   absent a class representative for that period of time, what

12   would be your basis for seeking injunctive relief with

13   respect to pay over that time since you wouldn't actually

14   have a class representative who was there during that period

15   of time?

16          MS. MUETING:  So we do have a class

17   representative, and this is the same argument that Jones Day

18   made in its motion for judgment on the pleadings with

19   respect to injunctive relief.  And as plaintiffs explained,

20   plaintiffs are seeking reinstatement.  And so that does

21   provide that they can be class representatives, and thus can

22   be able to seek injunctive relief.  And as a result, ongoing

23   data is appropriate.

24          So that issue I believe has been decided already.

25   The Court said that discovery may be necessary to figure

1     that out down the line, but the discovery dispute phase is

2     not the time to re-litigate that issue.  Because at this

3     phase, we just consider those two competing balancing

4     interests, the need and the import versus the burden.

5          **THE COURT:**  Although I think that this is a

6     slightly different question I'm posing.  Let's say at the

7     end of the day that I conclude that one or more -- or a jury

8     concludes -- I guess since it's an injunctive relief it

9     might be me, I conclude that one or more of the plaintiffs

10    are entitled to reinstatement.  There also may be an

11    argument that they're entitled to back pay during the period

12    of time when they were not employed.

13          But I'm not sure that the determination of what

14    the back pay is that they would be entitled to is the same

15    as figuring out whether there was some disparity in pay

16    between male and female associates during that period of

17    time.  It would be an inquiry of saying okay, now I've

18    concluded you are entitled to reinstatement, you are

19    entitled to back pay, what should your back pay be.  And I

20    don't think that I can in the ordinary course -- you know,

21    if you were just bringing a normal case, you wouldn't say

22    well, let's bring in our expert and do a regression analysis

23    to figure out how much plaintiff one is entitled to for back

24    pay, because we have to figure out how much that associate

25    would have received had the associate not been terminated.

1          So it does strike me that it's somewhat

2     differently situated and somewhat of a different question

3     than someone saying I was here and I was working and I was

4     underpaid during that period of time, and here's my proof

5     that I was underpaid which is that male associates on

6     average received 7 percent more than female associates.

7     There is no -- we've done a regression analysis and there's

8     no reason why those male associates should have been paid

9     more, and therefore the female associates during the period

10    of time were underpaid by 7 percent.

11         **MS. MUETING:**  So I think, your Honor, what is

12    different than -- in this case than the scenario that you're

13    describing is that these are class representatives seeking

14    class-wide relief, both in terms of compensation -- and the

15    class period is ongoing, but also in terms of injunctive

16    relief.  So changes to Jones Day's policies that they could

17    benefit from in the event that they are reinstated.

18         And so they could benefit from and they would thus

19    have standing to seek injunctive relief because they are

20    seeking reinstatement, and could come back to Jones Day and

21    benefit from those policies.  And that I think is the issue

22    that was briefed in the motion for judgment on the pleadings

23    and that the Court already resolved in favor of the

24    plaintiffs, and that it's not something that needs to be

25    re-litigated at this discovery phase.

1          **THE COURT:**  I mean, you keep sort of falling back

2      on the fact that I've decided things that I think I haven't

3      decided, because I'm posing a different question.  I know I

4      decided that the claims for injunctive relief can stay in

5      the case.  I'm posing a different question here, and whether

6      someone who might be entitled to injunctive relief in the

7      form of reinstatement would be an adequate class

8      representative over somebody who was actually employed

9      during the period of time, and is claiming that there was a

10     disparate impact or some type of pay discrimination that

11     was -- that occurred during the time in which the plaintiff

12     who might be entitled to a reinstatement was not employed by

13     Jones Day.  That's my question.

14         **MS. MUETING:**  Okay.  And I think I'm not

15     following, because I don't think that courts have -- I've

16     not seen any case where courts have made that distinction.

17     I've not seen a case where the court has said you're

18     entitled to injunctive relief because you're seeking

19     reinstatement, but you cannot be a class representative for

20     that purpose.

21         **THE COURT:**  Well, no, no.  So I'd be interested if

22     you could point me to any case in which a court has ever

23     said that somebody who was not employed during the relevant

24     period of time was an appropriate class representative with

25     respect to those employees who claimed that they were

1    employees but were undercompensated during that period of

2    time.  Maybe there's a case out there that says that that

3    person can be an adequate class representative, and maybe

4    this is something we need to wait for the briefing on class

5    certification to decide.

6           But it doesn't strike me as at all obvious that

7    the fact that you have a claim for reinstatement means that

8    you are an appropriate class representative for those who

9    were employed and allege not that they were terminated

10   improperly or forced to leave improperly, but who claimed

11   that they were there, they were working hard; and if you

12   compare my work to the male associates' work, it was just as

13   good, I worked just as hard and I was paid less, and there's

14   a problem with that.

15           **MS. MUETING:**  I think -- well, I think I'm having

16   trouble seeing the distinction.  The cases I'm thinking of

17   are cases where the courts have said that plaintiffs who are

18   no longer employed can seek injunctive relief, and have

19   standing to seek injunctive relief.  And I'm not sure I'm

20   fully grasping the difference between being a class

21   representative and getting standing to seek injunctive

22   relief, because I don't think that courts have made that

23   distinction.  And I'm thinking about the (inaudible) case we

24   cited in our brief, not the opinion that we cited in the

25   brief.  But subsequently, the court ruled very clearly that

1      if someone is seeking reinstatement, they are a class

2      representative for purposes of injunctive relief.

3              **THE COURT:**  For purposes --

4              **MS. MUETING:**  And again --

5              **THE COURT:**  -- of a pay disparity claim or a

6      disparate impact claim during that period of time where they

7      were not employed?

8              **MS. MUETING:**  So they would -- I think what is the

9      claim that gives rise to injunctive relief, if I'm

10     understanding your question correctly.  And those are the

11     constructive discharge or termination claims that gives rise

12     to the claims that they are entitled to ongoing relief.  And

13     the theory being they could come back to the firm and

14     benefit from those changes to the policies that would be

15     made via the injunctive relief.

16              And again, I do think this is a question that to

17     the extent it wasn't already resolved -- and I don't want to

18     put words in your mouth, is a question that may come up at

19     the class certification stage.  But it's not really a

20     question that is asked at this discovery phase when we're

21     really just balancing the benefits and the burden.

22              **THE COURT:**  Maybe I'm misunderstanding.  Maybe

23     what you're saying is that the discovery that you are

24     seeking between the time this lawsuit was filed or between

25     2018 and today is not for purposes of showing pay disparity

1    during that period of time, but it's for purposes of showing

2    that if one of your clients is reinstated, that client is

3    entitled going forward to injunctive relief in the form of

4    some revision to Jones Day's compensation methodology to

5    ensure that whatever pay disparity may have been going on

6    between the time this lawsuit was brought and today does not

7    continue into the future.

8              Is that what you're saying?  Maybe I --

9              **MS. MUETING:**  I think it's both, I think it's

10   both.  I think maybe what you're asking is can -- if someone

11   is employed and the policies have not changed, can they

12   continue to be a class representative after they leave and

13   the policies have not changed if they're seeking

14   reinstatement.  And I think the answer is yes to that also.

15   So yes to both of your questions.  So the class period is

16   ongoing, so the class definition is continuing into the

17   future because Jones Day has not changed its policies.  And

18   if it has, we would be able to see that in the data and we

19   would be able to go from there and deal with those arguments

20   at a later phase.

21             But additionally, then yes, the point that you

22   mentioned that the plaintiffs could seek reinstatement and

23   then would be entitled not to be subjected to the same

24   policies that were found to be a violation of the law.

25             **THE COURT:**  So what is the end date that you're

1     proposing for discovery with respect to compensation?

2          **MS. MUETING:**  Well, typically in these cases

3     discovery goes through the date of judgment.  So at this

4     point, the only issue that the Court needs to decide on is

5     whether this discovery is ongoing and doesn't have this

6     artificial cutoff that Jones Day has proposed.  But we

7     are --

8          **THE COURT:**  Are you suggesting that Jones Day

9     would then have a duty to update you every quarter with

10    their new compensation data, is that what you're seeking?

11    So you're seeking not just up to the date the lawsuit was

12    brought or up to today, but you're seeking that Jones Day

13    provide you with new data every, I don't know, 90 days or

14    something like that?

15         **MS. MUETING:**  Well, Jones Day makes adjustments to

16    compensation every year.  So I would not think that we would

17    need updates any -- on an anymore frequent basis than that.

18    But yes, I think seeing how Jones Day has changed its

19    policies, and if those policies changed the effect that --

20    the effect that compensation policies have on female

21    associates, that we would need to be able to see that on an

22    ongoing basis.  But I don't know that that question is

23    specifically before the Court, it's just whether there is a

24    cutoff in 2018.

25         **THE COURT:**  So what is the question before the

1    Court?  What are you asking for right now?

2              **MS. MUETING:**  We are asking for nationwide data

3    without the geographic restrictions that Jones Day's

4    proposed dating from 2012 through the present.

5              **THE COURT:**  So as of the day I enter an order, is

6    that what you mean?

7              **MS. MUETING:**  Well, again, I think we only need it

8    on an annual basis, because Jones Day makes changes to

9    compensation every year.  So I don't know that it would make

10   sense for Jones Day to supplement the data every 90 days,

11   for example.  But yes, the most recent changes that Jones

12   Day made to compensation would be what we are seeking today.

13             **THE COURT:**  Do you know what that date is?

14             **MS. MUETING:**  I can get it for you.  Ms. Chase may

15   be able to get that for you, the most recent one.  I don't

16   know that I have it at my fingertips now.

17             **THE COURT:**  Okay.

18             **MS. CHASE:**  Your Honor, this is Terri Chase, and

19   I'm happy to address that when it's my opportunity.

20             **THE COURT:**  Okay, thank you.  Anything further,

21   Ms. Mueting, you want to raise?

22             **MS. MUETING:**  I don't think so, unless your Honor

23   has anymore questions.  Otherwise, I think I may just

24   respond to anything that Ms. Chase has to say.

25             **THE COURT:**  All right.  Ms. Chase.

1    **MS. CHASE:**  Thank you, your Honor.  This is

2    Ms. Chase.  So I'd like to start with the temporal issues

3    just because that's where we just finished up.  And the

4    temporal issues, as we've discussed, really fall into two

5    categories, the discovery being sought at the front end, and

6    then the discovery at the back end.  In terms of the

7    discovery that's being sought for the period prior to 2016,

8    as has been discussed and acknowledged, that any individual

9    who was not at Jones Day as of 2016 is not a putative class

10   member.  Any pay decision that was made in that time period

11   is not actionable.

12        And so by looking to have a group of associates in

13   the dataset that are not putative class members, that are

14   not comparators to putative class members for that time

15   period with respect to (inaudible) that aren't challenged is

16   something that we think is not appropriate.  We do fully

17   recognize that for those associates that were here as of

18   2016, that historic data is helpful to assess trends or

19   patterns, to understand how ratings or rankings over time

20   impact the case.  And as a result, for those individuals who

21   were at Jones Day as of January 1st, 2016, we have offered

22   to produce the data back to January of 2016.

23        **THE COURT:**  That's --

24        **MS. CHASE:**  2012.  I'm sorry, back to 2012, which

25   just so happens to be not only the time period that

1     plaintiffs' counsel has requested, but it also is the

2     earliest year for which we have confirmed the information

3     across all of the databases that are available.  And so we

4     have similarly have spoken to our labor economists about the

5     dataset, and they have said to us if you have a group of

6     580 -- which is the number that we're looking at.

7     Technically I think it's 588, but we'll call it 580.  580

8     associates, and you have historic data going back from 2012

9     to -- or the earliest that they started within that window,

10    that that would be more than adequate from a sample size

11    standpoint to run a reliable regression analysis.

12         And so we also recognize that sample size is a

13    legitimate concern and have, as I said, discussed that issue

14    with our experts who are more than confident that they could

15    do an analysis on that data that would be reliable.  And as

16    a result, that plaintiffs' counsel would be able to do an

17    analysis that's reliable for that period.  With respect

18    to --

19         **THE COURT:**  I'm sorry, I think at one point in

20    time you said that you would include both the individuals

21    who were employed between 2016 and '18 as well as any

22    comparators.  But isn't everyone in some sense a comparator

23    going back to 2012?  I mean, how do you -- how is the data

24    from 2012 to 2016 meaningful if you only have a portion of

25    the dataset?

1          And it may well be -- hypothetically for example,

2     that between 2012 and 2016, in fact, on average women

3     employed at Jones Day were paid 10 percent more than men.

4     But you won't know that necessarily in any meaningful way,

5     because you're going to have an artificially limited sample

6     from the period 2012 to 2016.

7          And I'm just imagining the arguments that can come

8     out this.  You're going to say that what you've done is by

9     only including the people who were still employed between

10    '16 and '18, what you've done is you've excluded from the

11    samples between '12 and '16 those individuals who were less

12    likely to succeed at the firm.  Because you've taken out

13    anyone who left and didn't -- wasn't able to continue and

14    make it to 2016, '17 or '18.  And therefore, the sample of

15    the period between -- from 2012 through 2015 was biased

16    because it excludes -- and this is just one example, it

17    excludes those who were less likely to succeed or who were

18    less successful.

19         **MS. CHASE:**  With respect to that, what I'd say is

20    that the historic data from '12 to '16 is important to

21    analyze what decisions may have impacted those individuals

22    who were still here in '16.  Whether or not there was a

23    statistically significant disparity that they were one

24    gender or another in 2014 or 2015 is not actionable.  And so

25    having that data is interesting, but it isn't relevant to

1    the claims in the case.  It's not going to --

2            **THE COURT:**  But it might be relevant to the

3    case -- claims in the case, for example, if the statistician

4    looking at this would say you can't really draw any

5    meaningful distinctions between the way men and women were

6    treated at the firm in '16, '17 and '18.  If you look at

7    those years, it is true that women were paid a little bit

8    less in those three years than in prior years -- I'm sorry,

9    I mean men, were paid a little bit less than men in those

10   years, and that's just sort of the nature of the business.

11   In some years, you really can't draw any great conclusions

12   from that.  And in some years, it may well have been the

13   opposite.

14           And if you could actually go back and look at '12,

15   '13, '14 and '15 and say no, actually exactly the same thing

16   was present in those years, it would provide you with

17   greater confidence that the differences that you see in '16,

18   '17 and '18 are real and not a statistical anomaly.  Only

19   the claims for '16, '17 and '18 matter, but what happened in

20   prior years -- and continued I suppose in later years, may

21   give or detract from the statistical significance of what

22   you do see in the years that are relevant.

23           **MS. CHASE:**  Your Honor, this is Terri Chase.  With

24   all due respect, I don't think it is relevant.  I think the

25   analysis of statistically significant disparities needs to

1    focus on the years at issue.  And statistically significant

2    disparities, if they exist outside of the statute

3    limitations period, are not determinative and are not

4    relevant to the assessment of whether or not there were

5    statistically significant disparities in the relevant time

6    period.

7         I don't -- and again, in our conversations with

8    our experts, I've not had any suggestion from them that we

9    need to see what's happening in the prior years with respect

10   to those individuals who are not present as of the relevant

11   time period in order to assess whether or not there's a

12   statistically significant disparity in '16, '17 or '18.

13        **THE COURT:**  I'm just thinking of not cases in

14   which expert statisticians or economists testified, but just

15   sort of more garden variety discrimination cases that I've

16   had over the years where it's just an employment

17   discrimination case, and someone says that they were

18   discriminated against based on their race.  And they're

19   entitled to receive discovery with respect to what happens

20   to other applicants even prior to the statute of limitations

21   in order to offer evidence as to whether what happened to

22   the plaintiff in the case was based on some type of racial

23   bias or on some other factor.

24        And so I've had cases where you might open up the

25   employment files and show that for 10 years, there had

1    been -- over the past 10 years before this lawsuit was

2    filed, there were 30 African Americans who applied for a

3    position, and only one was hired.  And it's not directly

4    relevant to when the plaintiff applied in year 10 for a job

5    and wasn't hired, but it is not irrelevant and it may shed

6    some light on the question about whether that decision

7    whether to hire the person in year 10 was motivated in any

8    way by a racial bias.

9         And so what happens outside the statute of

10   limitations period that happened to others can still be

11   reflective of what -- how the system works and what's going

12   on.

13        **MS. CHASE:**  Your Honor, with respect to the point

14   about single plaintiff cases, the scope of discovery being

15   sought in a single plaintiff case is quite different.  If

16   you think about the plaintiffs' individual claims in this

17   case, they identified in their complaint a set of named

18   comparators -- and I think it's 19 individuals.  And with

19   respect to those individuals, we've provided data on them to

20   the extent that we -- you know, as far back it has.  That's

21   analogous discovery to what you're just describing.

22        For the plaintiffs' individual claims, we'd say

23   there are comparators.  And when you're talking about

24   class-wide discovery on hundreds or thousands of associates,

25   depending on how broad we're talking from a timing

1  standpoint and geographic standpoint, I would say that that

2  is not necessarily appropriate, it's overbroad and it's

3  beyond what's relevant to the case.  With respect to the 580

4  individuals that we're offering, they would have a quite

5  large sample set to look back at to try to see if there are

6  patterns or analogies that can be drawn based upon how those

7  individuals fared in prior years.

8          But I don't need to have an additional thousand or

9  however many -- again, depending on how we cut the data,

10 associates to do that.  The sample size of 580 going back to

11 2012 is more than adequate to assess this issue of whether

12 or not there are trends or patterns.

13 **THE COURT:**  What is the burden on Jones Day of

14 producing the data?  It actually occurs to me that it might

15 even be harder for you to produce the more limited set,

16 because you're going to have to go the 2012 through '15 and

17 weed out from that dataset those who had left by '16.

18         But I guess the question is is the concern here

19 one of burden -- I mean, I know you talked about privacy

20 interests of the associates.  What's the burden of producing

21 this?

22 **MS. CHASE:**  There's two issues.  One as you

23 identified, the privacy issue.  And I don't want to minimize

24 the significance of that.  Even with anonymizers, you can

25 tell who these individuals are.  If you are looking at the

1    Atlanta office and the class of 2014 associate who was an

2    M&A, there's not more than one or two.  So whatever

3    anonymizers are taking names out does not in any way mask in

4    almost any circumstance.  There are limited circumstances

5    where --

6            **THE COURT:**  Why wouldn't a protective order

7    address that?

8            **MS. CHASE:**  A protective order addresses the

9    concern in terms of as it relates to the public.  But it

10   certainly is not the case that these individuals -- these

11   current and former associates, had any desire to have their

12   information provided to plaintiffs and plaintiffs' counsel.

13   And a protective order keeps their name out of the

14   pleadings, but it doesn't keep their story out of the

15   pleadings.  Again, to the extent that there are descriptions

16   in briefing moving forward of Plaintiff Tolton saying that

17   the evidence of discrimination is that there was a male

18   associate class of 2012 in the Irvine office in the M&A

19   practice who was paid more, well, all you need to do is go

20   on LinkedIn or go on the firm's website and you can -- if

21   the person is still here, reasonably quickly identify who

22   those individuals are.  Particularly for those who may have

23   performed poorly who may now be at clients or other places,

24   and you're finding examples of their rating being a three or

25   a two or their compensation being below the average.  To the

1   extent they're described -- again, not by name, but with

2   this type of data associated with them -- their class year,

3   their office and their practice, you can identify who those

4   individuals are.  It does take a little bit of digging, but

5   not much.  I mean, you could do it in about 60 seconds in

6   many circumstances.  And so there is a privacy --

7            **THE COURT:**  With respect to that issue, I mean, I

8   think it's unlikely that there's going to be much

9   litigation about -- or much briefing on the specific cases

10  between 2012 and 2015 for the reasons you've given.  And

11  that they're not directly relevant, they're only relevant

12  perhaps with respect to the statistical analysis.  It

13  strikes me as unlikely that that's going to come up.  But if

14  it does, the Court has allowed the parties in the past to

15  file pleadings under seal if need be.  And if it was

16  something that would reveal something embarrassing to an

17  individual, you could simply request that be filed under

18  seal I suppose.

19           **MS. CHASE:**  And then second in terms of the

20  burden.  In terms of production, the burden is not

21  significantly -- I'm not suggesting that the burden becomes

22  greater in the analysis.  The larger the dataset, the more

23  numbers of follow up questions from both experts about data,

24  the larger the workload associated with the production.  It

25  is, in fact, not more burdensome for us to cut the data in

1    the way in which we've proposed, because we would query the

2    system for those associates who were at Jones Day between

3    1/1/16 and December 31st, 2018, and ask for all of the data,

4    historic, related to those individuals.  It is not more

5    burdensome to do so.

6              In terms of the other aspect of the temporal

7    issue, your Honor, at the back end, 2019 and 2020, as your

8    Honor had noted, there is not a class representative who was

9    employed during that time period.  We have now been in this

10   case for about 17 months.  No one has -- there's been not a

11   significant amount of publicity, at least in the legal

12   publications related to this litigation.  In that time

13   period, no one has expressed interest in joining the case

14   who was at the firm at any point in 2019 or later.  And

15   while we understand that your Honor did not dismiss the

16   claim for injunctive relief, as we were just discussing, I

17   do think that there is a difference between a plaintiff

18   being able to seek injunctive relief in terms of

19   reinstatement and that plaintiff being an appropriate class

20   representative with respect to issues of pay disparity

21   allegations during that time period.  That plaintiff would

22   not be typical or common of other individuals.  They would

23   not have performance reviews for that time period.  They

24   would not have worked for that time period.  They would not

25   have interaction with partners and associates at the firm.

1    We would be extrapolating or hypothesizing about what their

2    compensation may have been in that time period which would

3    make them not an appropriate class representative for pay

4    issues.

5         In terms of how many decisions we're talking

6    about, there was a pay adjustment on July 1 of 2019.  We

7    will note that plaintiffs' counsel has previously indicated

8    that if there are any decisions -- such as changes that we

9    made to our website after they filed the complaint, were

10   painted by awareness of the lawsuit, certainly I would

11   expect arguments of a similar nature to be made with respect

12   to pay decisions in 2019.  But again, more importantly,

13   there's not a class representative for that period.

14        When we look at 2020, we just communicated pay

15   decisions last week.  In a COVID pandemic environment where

16   large numbers of law firms are laying off and reducing

17   costs, the market data that is available about what was

18   happening in the market is not remotely comparable to any of

19   the type of market issues that were at play during the time

20   period that the plaintiffs were at the firm.  I don't think

21   that there is any plausible argument that the compensation

22   decisions that we just finished making would have any

23   reasonable relation to the compensation decisions that were

24   made during the time period that the plaintiffs were at the

25   firm.

1          And I don't believe it is the case that discovery

2    of the class data continues through judgment.  We've not

3    seen that in other cases.  There is typically a date by

4    which class type data, associate using of data would need to

5    be produced by and not continually supplemented.  And under

6    the suggestion of plaintiffs' counsel, in July of 2021 we

7    would produce another round of data.  And then after expert

8    discovery has concluded, I don't know, do another round of

9    expert discovery related to that data.  It does not make any

10   sense to me that that would be appropriate.

11          Unless your Honor has any questions on that, I'd

12   like to talk about the geographic scope issues.

13          **THE COURT:**  Please.

14          **MS. CHASE:**  So it is the case that Jones Day moved

15   for judgment on the pleadings with respect to the Title VII

16   disparate impact claims.  We did not move on class issues.

17   And the issues in front of your Honor in that motion were

18   not what the potential appropriate scope of a class would be

19   under Title VII on a disparate impact claim.

20          And I will note that with respect to the Title VII

21   disparate impact claims which survived the motion for a

22   partial judgment on the pleadings, that your Honor found

23   that the pleadings were plausibly pled, but that it was a

24   close call.  The quote from the decision is that it was a

25   close call.  We are in a very different stage, though, than

1      at the motion on the pleadings.  We now have discovery

2      that's been happening since August of last year.  We have

3      produced lots and lots of documents.  We have produced three

4      deponents for 30(b)(6) depositions, including the 30(b)(6)

5      deposition that was designated to speak to topics of the

6      evaluation process on a nationwide basis; to speak to the

7      compensation process versus (inaudible) basis; to speak to

8      purported pay secrecy policy on a nationwide basis; to speak

9      to the purported no whining policy on a nationwide basis

10     such that we are not just operating at this point in time

11     with the pleadings, we are operating with what has been

12     learned over the course of the past 10 months in the

13     discovery process.

14              And through that effort, there has been continued

15     validation of what I said to your Honor back in November of

16     last year, which is that the salary decisions are driven at

17     the office level.  Notably, neither in the letter to your

18     Honor related to these discovery disputes nor in plaintiffs'

19     motion for conditional certification that they filed, the

20     amended motion for conditional certification that they filed

21     after the benefit of 30(b)(6) discovery and the productions

22     that have happened to date, in none of those documents do

23     plaintiffs provide any suggestion that the pay decisions

24     that they're challenging were being made at a nationwide

25     basis.  We've given them records of who recommended their

1    salary increases for the plaintiffs and for the named

2    comparators for each of the years that those individuals

3    were at the firm.  And they've cited no evidence to suggest

4    that their salaries were being set other than at the local

5    level.

6            Similarly -- and this will be fleshed out much

7    more in our opposition to conditional cert which we'll be

8    filing on Monday, that discovery shows, amongst other

9    things, that the firm manual says that compensation

10   decisions are subject to and impacted by the geography in

11   which an associate works.  The discovery has shown, and it's

12   not disputed, that each office is allocated a budget to

13   spend for associate salary; and that the partner in charge

14   in that office, what we call PIC, is the individual who has

15   the responsibility for making salary recommendations with

16   respect to the associates in that office; that the PICs do

17   so in a variety of different ways.  Some use a committee,

18   some work with our administrative partner.  Some in

19   California, for example, participate in regional meetings in

20   which compensation is discussed.

21           But through all of this process, there has been

22   nothing to suggest that the salary decisions affecting the

23   plaintiffs or their purported comparators were being made

24   other than with the driver of the office.  Yes, they are

25   approved and reviewed at a national level, but the

1   recommendations that are driving the compensation process

2   are happening at the local level either in the office, or

3   with respect to California, the region.  Because in

4   California, the region meets together to discuss

5   compensation.

6           And so while they have pled a nationwide class,

7   they have plaintiffs that worked in three offices of Jones

8   Day.  And they have no basis to assert that pay decisions

9   affecting associates in Dallas or Pittsburgh or Cleveland

10  has any bearing on compensation decisions in New York or

11  Atlanta or Irvine.  And they seem to acknowledge that the

12  discovery reflects as much, because in the letter that they

13  submitted to your Honor on July 3rd, plaintiffs note that to

14  the extent that the Court were to accept the position that

15  the pay decisions are being made at a local level, that they

16  still believe that they're entitled to nationwide data

17  because of pointing to two policies that they believe are

18  nationwide, the pay secrecy and -- purported pay secrecy and

19  the purported no whining policy.  To the extent that these

20  are policies -- which we dispute, but to the extent that

21  these are policies, and to the extent that they would be

22  nationwide policies, the appropriate way to obtain discovery

23  about the existence or nonexistence of these purported

24  nationwide policies was through the 30(b)(6) deposition that

25  was held in February of 2020.

1      There is nothing that is going to be learned about

2  these policies -- purported policies by looking at

3  individual associates' compensation or evaluations.  Because

4  you're not going to be able to draw any correlation to cause

5  and effect between purported policies and individual

6  decisions.  Neither the existence of such a policy will

7  cause a pay decision nor will such a pay decision evidence

8  that such a policy exists.

9      As your Honor has acknowledged in papers, these

10  policies have been pled and they could in theory perpetuate

11  or hide the existence of discrimination.  But they cannot

12  cause pay disparity.  And as a result, we don't think that

13  the allegations about pay secrecy or no whining provide a

14  basis for nationwide data with respect to evaluation and

15  compensation versus (inaudible).  It's quite common for

16  courts to limit the scope of potential class data to the

17  relevant geographic markets.  This is a very fact-specific

18  inquiry, and it's well within the Court's discretion to so

19  narrow the scope of production to the offices that would be

20  relevant to the case.

21      As I said, here we have three plaintiffs in

22  offices -- three offices at issue, Atlanta and Irvine and

23  New York.  With respect to Irvine -- which is a normal

24  office because it participates in regional counseling

25  meetings.  We have offered to produce for all five of the

1   California offices.  We're offering for seven out of 18 of

2   the offices.  As I said, the markets that we're not

3   proposing are not relevant comparator markets.  We don't pay

4   the same to an associate in Cleveland or Columbus as we

5   would in New York or in Detroit or Dallas or Houston.

6           **DEPUTY CLERK:**  Your Honor, this is Kristin.  I

7   wanted to make sure you're still here, I heard the entry and

8   exit sound.

9           **THE COURT:**  Yes, I'm here.  Thank you.

10          Ms. Chase, for the Irvine office, what is the data

11  that you're prepared to offer?

12          **MS. CHASE:**  For Irvine, we're prepared to offer

13  all of California, because Irvine is a very small office.

14  And so we are offering the entire California region which

15  includes five offices.  So that would include Silicon

16  Valley, San Francisco, Los Angeles, Irvine and San Diego.

17  And that -- you know, those are regions -- there are

18  actually different financial markets in terms of

19  compensation within California.  But again, because the

20  practice in that region during this time period was that

21  after the partner in charge made recommendations for salary

22  adjustments, that all five of those offices would get

23  together and would talk about associates across the region

24  and would share information; and that that could influence

25  the compensation decisions for associates in Irvine.

1          So as a result, for Irvine -- because again, we

2      are making an offer based upon the reality of how the

3      compensation process worked, we've offered to produce for

4      all of California.  And then of course, as I said, for

5      Atlanta and for New York.

6          **THE COURT:**  And is there sworn testimony at this

7      point that no adjustments at all were made during the

8      relevant period of time to any associate's compensation at

9      the national level?

10         **MS. CHASE:**  No, your Honor.  The sworn testimony

11     is not that there are no adjustments made at the national

12     level.  The sworn testimony is that after the offices make

13     the recommendations and they are reviewed at the national

14     level, that there is then a -- any proposed adjustments are

15     then sent back to the office level for conversation.  And

16     there is another opportunity for the office to weigh in on

17     that.  And at some point, there is a consensus, either the

18     office says yes, we think that increase is a good idea.  The

19     office might say oh, we actually don't think that increase

20     is a good idea because we have another associate who's been

21     struggling recently.

22         So it is not the case that at the national level

23     that there were no adjustments.  But it is the case that

24     when there are adjustments, they are then reviewed with the

25     office and the region.  And in fact, the sworn testimony of

1   Ms. Lovitt in the 30(b)(6) deposition was that there are

2   times that after the -- after the nationwide review when

3   recommendations are made for adjustments, when it goes back

4   to the office, that the office makes a recommendation for a

5   change.  And that change is implemented without the managing

6   partner's approval.  At times it goes back to the managing

7   partner, at times it does not.

8           **THE COURT:**  I see, okay.  Anything else,

9   Ms. Chase, that you wanted to add?

10          **MS. CHASE:**  No, your Honor.  Thank you.

11          **THE COURT:**  Ms. Mueting, do you want to respond to

12   anything?

13          **MS. MUETING:**  Just briefly, your Honor, thank you.

14   I think -- well, first of all, I think your Honor suggested

15   that we would have greater confidence in the data and used

16   the example of if we had pre-2016 data.  And I think that is

17   the overarching theme of why we need as much data as

18   possible, because we will have greater confidence in the

19   data.  The data will get -- the analysis will get more

20   accurate the more data that we have.  And excluding certain

21   geographical areas will also prevent us from having greater

22   confidence in the data.

23          Second, likewise, your Honor noted that we cannot

24   run an analysis on incomplete data, because that isn't going

25   to tell us anything about the thought or a picture of what

1      was happening before 2016.  And I would submit that the same

2      holds true with respect to the geographic restrictions.  We

3      are not going to be able to -- our experts have told us

4      they're not going to be able to say anything meaningful

5      about what is happening at the national level with respect

6      to Jones Day's nationwide policies only by looking at a few

7      offices.

8              Additionally, I'll just point out that the same

9      protective order protections that would apply to pre-2016

10     associates that you talked about -- that your Honor talked

11     about with Ms. Chase would also apply to protect the

12     identities of any associates that would happen to be a part

13     of briefing -- which I agree is unlikely, outside of the

14     geographical limitations that Jones Day has proposed.

15             And finally, I would just say the vast majority of

16     points that Ms. Chase raised are points that we always see

17     and we fully expect to see at the class certification and/or

18     at the merits stage.  And we'll of course dispute that we

19     accept Jones Day's assessment that the pay decisions happen

20     at a local level.  And I would expect that this is one of

21     the common questions that makes this case appropriate for

22     certification.  That question, though, is not a question

23     that the Court needs to answer now.  So if the plaintiffs

24     didn't provide this Court with any documentary evidence

25     showing their understanding, neither did Jones Day in their

1    letter.  Because that's not an issue that the Court needs to

2    dive into now.  This is a preliminary discovery dispute, and

3    we don't need to dive into that specific factual analysis of

4    at what point the pay decisions are made, because we've

5    already provided that plausible data or at least pled a

6    nationwide class based on nationwide policies.  And the

7    Court has already rejected Jones Day's attempt to dismiss

8    those claims based on those nationwide policies.  So again,

9    I would just go back to the fact that there's no reason to

10   produce less data that would give us a fill picture because

11   the burden on the other side is so low.

12            **THE COURT:**  All right.  Ms. Chase, any final

13   words?

14            **MS. CHASE:**  Your Honor, just briefly -- and I mean

15   that.  With respect to the 12(c) decision that your Honor

16   raised, there's been a fair amount of discussion.  I don't

17   think that this is lost on your Honor.  I don't think there

18   was any aspect of your decision there that in any way

19   suggested that this group of six plaintiffs who were in

20   three different offices are necessarily appropriate class

21   representatives to support a nationwide pay discrimination

22   claim for class purposes, and that there is quite obviously

23   different markets -- geographic markets at play.  And as a

24   result, I don't think anyone disputes that the cost of

25   living and salaries and billing rates vary across these

1    markets.  And it's not a surprise to anyone that

2    compensation is different in the different markets such that

3    to seek discovery on markets where there is no class

4    representative, where there is not a regional decision

5    impacting compensation in which there was a class

6    representative at least from the region I think is overbroad

7    and not relevant.

8           And while yes, the burden argument is not -- we

9    don't have a high burden in terms of the production, we do

10   have at the core level that all discovery should be relevant

11   to the claims at issue.  You don't get discovery just

12   because it's not burdensome to produce for a larger dataset.

13   And again, it does create burdens in the review process for

14   the experts on both sides.  It is more time consuming and

15   there will be more costs associated with that.  But I think

16   the primary issue is just that in these other geographic

17   regions outside of the ones that we've offered, the data is

18   not going to be relevant to the claims for these class

19   representatives.  Thank you, your Honor.

20          **THE COURT:**  Well, I certainly agree as I've

21   indicated, Ms. Chase, with your observation that I have not

22   expressed an opinion one way or the other on whether the

23   class claims were adequately pled, and whether there's a

24   basis to proceed with the class claims, and whether any of

25   the individuals are adequate class representatives.  I

1    haven't gotten into that yet because it hasn't been briefed

2    to me yet.  But I do think that at this point in time, what

3    is efficient and what will sort of just lead to, I think,

4    hopefully the speediest resolution of this matter is for me

5    to go ahead and authorize the nationwide discovery regarding

6    associate compensation back to 2012 and ending in 2018.  I'm

7    not convinced at this point that there's a basis for '19 or

8    '20 or ongoing discovery, particularly given the fact that

9    I'm just not convinced yet that there is somebody who even

10   purports to be an adequate class representative with respect

11   to the claims for disparate pay during those periods of

12   time.

13           If plaintiffs have some case where a court has

14   held that someone can be a class representative on a

15   disparate pay or similar claim during the period of time in

16   which they weren't employed, you're welcome to bring that to

17   my attention.  But I guess at this point, at least I'm not

18   convinced that you have somebody who is even really

19   purporting to bring a claim with respect to '19 and '20 and

20   thereafter.

21           It may be that you have individual plaintiffs who

22   might assert claims for back pay that can include that

23   period of time, but that's different from asserting a claim

24   for a disparate impact during that period of time.  But

25   you're welcome to come back to me if you have some authority

1    or if there's something wrong about that proposition.

2              In the Court's view, the reason that I've reached
3    this conclusion is because I think the burden is relatively
4    minor.  I think the privacy interests are real interests,
5    but I think those could be addressed through a protective
6    order, and if need be, filing materials under seal.  But I
7    do think that it's unlikely that there's going to be a need
8    to actually file anything in pleadings that might even
9    indirectly identify any of the comparators, certainly from
10   the period of 2012 through 2015.  But if that does come up,
11   then we can just deal with that with respect to filing it
12   under seal.  The actual production is not an additional
13   cost.

14             There is some actual additional cost, though, by
15   expanding the scope of the statistics.  It may be that Jones
16   Day is going to have to expend additional money, and that
17   Jones Day's experts are going to have to spend additional
18   time analyzing additional data.  But I guess what I would
19   say to that is if Jones Day is really convinced that that
20   data is just utterly irrelevant, and if experts can explain
21   simply why it's utterly irrelevant, that's not going to be
22   much of a cost.  If Jones Day thinks well, there are some
23   arguments as to why it might be relevant but we think that
24   they should be rejected, then that's the sort of thing I
25   think the Court ought to revolve in the context of a class

1   certification motion where I've actually heard from the

2   experts.

3         My bottom line is I just don't think the burden is

4   that great.  I don't have a view, quite frankly, of how much

5   light this additional discovery will shed, but it might.

6   And I think to break things down into different rounds is

7   just going to prolong the litigation, and to say well, let's

8   do first California, New York City and Atlanta and then see

9   where that goes.  And if that goes in a particular way, then

10  maybe I would open the door to further discovery.  Let's see

11  if certain years is enough and then add more.  It's just

12  going to throw off our schedule for trying to get the

13  questions of class certification resolved.

14        So I think given the minimal burden, it makes

15  sense to give the parties the opportunity to make the best

16  case to me that they can with respect to class

17  certification.  And then I can resolve that issue, and then

18  we can move on and see what is actually at issue going

19  forward in the case.  So that's my view.

20        Is there anything else, Ms. Mueting, that you want

21  to raise today?

22        **MS. MUETING:**  Thank you, your Honor.  I do think

23  we promised to get back to you on our schedule, because

24  we've been continuing to meet and confer regarding how the

25  schedule will fit in expert depositions and expert reports.

1   So the parties have reached an agreement on that.  It would

2   involve pushing back the class certification deadline just a

3   little bit.  Because once we started looking back, we

4   started getting a lot of push back from our experts who are

5   needing time with the data that we don't yet have, but we'll

6   have soon.  So we can commit those dates -- those proposals

7   to your Honor in writing if you prefer or we can go over

8   that now.

9          THE COURT:  How extensive -- is it just moving a

10  couple of dates?

11         MS. MUETING:  So the class certification deadline

12  was previously January 15th, and we propose moving that from

13  January to March, March 31st, to account for --

14         THE COURT:  Hold on, give that to me slowly one

15  more time.

16         MS. MUETING:  Yeah, so under the Court's prior

17  order, the class certification deadlines that we set on our

18  last -- that your Honor set in the last hearing was

19  January 15th.

20         THE COURT:  And that's for the motion for class

21  certification?

22         MS. MUETING:  Correct.

23         THE COURT:  Okay.

24         MS. MUETING:  And we propose moving that to

25  March 31st.

1          **THE COURT:**  Do both parties agree with that?

2          **MS. CHASE:**  Can you say that again, I'm sorry?

3          **THE COURT:**  Do both parties agree with that?

4          **MS. CHASE:**  Yes, your Honor.

5          **THE COURT:**  Okay.  So I hereby move the date for

6   the plaintiffs to file plaintiffs' motion for class

7   certification from January 15th, 2021 to March 31st, 2021.

8          And when will the opposition come in?

9          **MS. MUETING:**  May 5th.

10          **THE COURT:**  Okay, May 5 for the opposition.  And

11   then --

12          **MS. MUETING:**  June 4.

13          **THE COURT:**  June 4, okay.  And then June 4 for the

14   reply brief.  Any other dates that you're proposing to move?

15          **MS. MUETING:**  I mean, we had interim deadlines for

16   exchanging reports, but the parties have agreed to that.  If

17   you want to know those, I can give those to you also.

18          **THE COURT:**  Well, were they in my prior order?  Is

19   that something I need to amend?

20          **MS. MUETING:**  No.

21          **THE COURT:**  If it doesn't need to be amended and

22   the parties are agreeable to that --

23          **MS. MUETING:**  I guess the only other thing might

24   be if we want to move the deadline for fact and expert

25   discovery.  And Ms. Chase and I haven't discussed that, but

1    I think we'll discuss that -- unless she's prepared to move

2    it accordingly on this call -- at this hearing, I think we

3    can get back to your Honor on that.

4              THE COURT:  If you haven't discussed it, I think

5    you should discuss it first, and then you can submit either

6    a renewed motion or a new motion to the Court.

7              MS. MUETING:  All right.  Thank you, your Honor.

8              THE COURT:  All right.  Ms. Chase, anything

9    further today?

10             MS. CHASE:  No, that's it, your Honor.  Thank you.

11             THE COURT:  Okay, thank you.

12        (Proceedings adjourned at 12:25 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                       **C E R T I F I C A T E**

2

3            I, **Jeff Hook, Official Court Reporter**,

4    certify that the foregoing is a true and correct transcript

5    of the remotely reported proceedings in the above-entitled

6    matter.

7                       **PLEASE NOTE:**  This hearing occurred during

8    the COVID-19 pandemic and is therefore subject to the

9    technological limitations of court reporting remotely.

10

11

12

13        __July 17, 2020__                _____

14            **DATE**                              **Jeff M. Hook**

15

16

17

18

19

20

21

22

23

24

25

**'**

**'12 [3]**   20/11 20/20
21/14
**'13 [1]**   21/15
**'14 [3]**   7/18 7/23
21/15
**'15 [4]**   7/18 7/23
21/15 24/16
**'16 [14]**   7/12 7/13
7/15 7/16 7/17
20/10 20/11 20/20
20/22 21/6 21/17
21/19 22/12 24/17
**'17 [6]**   7/13 20/14
21/6 21/18 21/19
22/12
**'18 [9]**   7/13 7/15
19/21 20/10 20/14
21/6 21/18 21/19
22/12
**'19 [2]**   40/7 40/19
**'20 [2]**   40/8 40/19

**0**

**0945 [1]**   1/4

**1**

**1/1/16 [1]**   27/3
**10 [7]**   6/13 6/13
22/25 23/1 23/4
23/7 30/12
**10 percent [1]**   20/3
**10019 [1]**   1/13
**10281 [1]**   1/19
**11:20 [1]**   1/6
**12 [1]**   38/15
**12:25 p.m [1]**   45/12
**1350 [1]**   1/13
**15th [3]**   43/12
43/19 44/7
**16 [1]**   27/3
**17 [1]**   27/10
**18 [1]**   34/1
**19 [2]**   23/18 46/8
**19-945 [1]**   2/2
**1:19-cv-0945 [1]**
1/4
**1st [1]**   18/21

**2**

**20001 [2]**   1/21 1/25
**20003 [1]**   1/16
**2012 [15]**   17/4
18/24 18/24 19/8
19/23 19/24 20/2
20/6 20/15 24/11
24/16 25/18 26/10
40/6 41/10
**2013 [1]**   7/23
**2014 [2]**   20/24 25/1
**2015 [4]**   20/15
20/24 26/10 41/10
**2016 [19]**   7/7 7/10
8/6 8/9 8/11 8/12
18/7 18/9 18/18
18/21 18/22 19/21
19/24 20/2 20/6
20/14 36/16 37/1
37/9

**2018 [6]**   8/20 9/2
14/25 16/24 27/3
40/6
**2019 [5]**   8/24 27/7
27/14 28/6 28/12
**2020 [6]**   1/5 8/24
9/2 27/7 28/14
32/25
**2021 [4]**   9/2 29/6
44/7 44/7
**250 [1]**   1/18

**3**

**30 [6]**   23/2 30/4
30/4 30/21 32/24
36/1
**300 [1]**   1/15
**31st [5]**   1/13 27/3
43/13 43/25 44/7
**333 [1]**   1/24
**3rd [1]**   32/13

**5**

**51 [1]**   1/21
**580 [5]**   19/6 19/7
19/7 24/3 24/10
**588 [1]**   19/7
**5th [1]**   44/9

**6**

**60 [1]**   26/5

**7**

**7 percent [2]**   11/6
11/10
**700 [1]**   1/15

**9**

**90 [2]**   16/13 17/10
**945 [1]**   2/2

**A**

**a.m [1]**   1/6
**able [15]**   6/1 6/6
6/8 8/9 9/22 15/18
15/19 16/21 17/15
19/16 20/13 27/18
33/4 37/3 37/4
**above [1]**   46/5
**above-entitled [1]**
46/5
**absent [1]**   9/11
**accept [6]**   6/20
6/24 6/25 7/3 32/14
37/19
**accordingly [1]**
45/2
**account [1]**   43/13
**accurate [5]**   6/17
6/18 6/25 7/3 36/20
**acknowledge [3]**   4/8
6/10 32/11
**acknowledged [3]**
5/18 18/8 33/9
**across [3]**   19/3
34/23 38/25
**action [1]**   1/3 2/2
**actionable [2]**
18/11 20/24
**actual [2]**   41/12

41/14
**actually [10]**   9/13
12/8 21/14 21/15
24/14 34/18 35/19
41/8 42/1 42/18
**add [3]**   8/14 36/9
42/11
**additional [7]**   24/8
41/12 41/14 41/16
41/17 41/18 42/5
**additionally [2]**
15/21 37/8
**address [2]**   17/19
25/7
**addressed [1]**   41/5
**addresses [1]**   25/8
**adequate [6]**   12/7
13/3 19/10 24/11
39/25 40/10
**adequately [1]**
39/23
**adjourned [1]**   45/12
**adjustment [2]**   8/13
28/6
**adjustments [9]**   8/8
16/15 34/22 35/7
35/11 35/14 35/23
35/24 36/3
**administrative [1]**
31/18
**affecting [2]**   31/22
32/9
**African [1]**   23/2
**after the [1]**   36/2
**again [13]**   14/4
14/16 17/7 22/7
24/9 25/15 26/1
28/12 34/19 35/1
38/8 39/13 44/2
**against [1]**   22/18
**agree [5]**   7/5 37/13
39/20 44/1 44/3
**agreeable [1]**   44/22
**agreed [2]**   6/9
44/16
**agreement [1]**   43/1
**ahead [1]**   40/5
**al [2]**   1/3 2/3
**allegations [2]**
27/21 33/13
**allege [1]**   13/9
**allocated [1]**   31/12
**allowed [1]**   26/14
**almost [1]**   25/4
**along [1]**   9/8
**Although [1]**   10/5
**always [1]**   37/16
**amend [1]**   44/19
**amended [2]**   30/20
44/21
**American [1]**   6/23
**Americans [1]**   23/2
**Americas [1]**   1/13
**amongst [1]**   31/8
**amount [2]**   27/11
38/16
**analogies [1]**   24/6
**analogous [1]**   23/21
**analysis [16]**   3/5
5/13 6/3 6/18 8/11

41/14
**10/22 11/7 19/11
19/15 19/17 21/25
26/12 26/22 36/19
36/24 38/3
analyze [1]**   20/21
**analyzed [1]**   3/12
**analyzing [1]**   41/18
**and/or [1]**   37/17
**Angeles [1]**   34/16
**annual [1]**   17/8
**anomaly [1]**   21/18
**anonymizers [2]**
24/24 25/3
**anymore [2]**   16/17
17/23
**apologize [1]**   4/19
**APPEARANCES [1]**
1/11
**Appearing [2]**   2/3
2/4
**applicants [1]**
22/20
**applied [2]**   23/2
23/4
**apply [3]**   5/25 37/9
37/11
**appropriate [15]**
5/3 5/12 8/25 9/23
12/24 13/8 18/16
24/2 27/19 28/3
29/10 29/18 32/22
37/21 38/20
**approval [1]**   36/6
**approved [1]**   31/25
**are limited [1]**
25/4
**areas [1]**   36/21
**argument [4]**   9/17
10/11 28/21 39/8
**arguments [5]**   3/19
15/19 20/7 28/11
41/23
**artificial [1]**   16/6
**artificially [1]**
20/5
**aspect [2]**   27/6
38/18
**assert [2]**   32/8
40/22
**asserting [1]**   40/23
**assess [3]**   18/18
22/11 24/11
**assessment [2]**   22/4
37/19
**associate [11]**   2/18
10/24 10/25 25/1
25/18 29/4 31/11
31/13 34/4 35/20
40/6
**associate's [1]**
35/8
**associated [3]**   26/2
26/24 39/15
**associates [22]**
5/25 10/16 11/5
11/6 11/8 11/9
16/21 18/12 18/17
19/8 23/24 24/10
24/20 25/11 27/2
27/25 31/16 32/9**

**A**

associates... [4]
34/23 34/25 37/10
37/12
associates' [2]
13/12 33/3
Atlanta [5]   25/1
32/11 33/22 35/5
42/8
attempt [2]   5/4
38/7
attention [1]   40/17
August [1]   30/2
authority [1]   40/25
authorize [1]   40/5
available [2]   19/3
28/17
Ave [1]   1/15
Avenue [3]   1/13
1/21 1/24
average [3]   11/6
20/2 25/25
awareness [1]   28/10

**B**

back [31]   10/11
10/14 10/19 10/19
10/23 11/20 12/1
14/13 18/6 18/22
18/24 19/8 19/23
21/14 23/20 24/5
24/10 27/7 30/15
35/15 36/3 36/6
38/9 40/6 40/22
40/25 42/23 43/2
43/3 43/4 45/3
balance [1]   5/21
balancing [3]   5/12
10/3 14/21
Bankruptcy [1]   1/24
based [9]   3/6 6/12
9/2 22/18 22/22
24/6 35/2 38/6 38/8
basis [13]   9/12
16/17 16/22 17/8
30/6 30/7 30/8 30/9
30/25 32/8 33/14
39/24 40/7
bearing [1]   32/10
becomes [1]   26/21
behalf [1]   2/22
below [1]   25/25
benefit [6]   5/1
11/17 11/18 11/21
14/14 30/21
benefits [1]   14/21
best [1]   42/15
better [2]   4/14
4/15
beyond [1]   24/3
bias [2]   22/23 23/8
biased [1]   20/15
bigger [1]   6/5
billing [1]   38/25
bit [4]   21/7 21/9
26/4 43/3
both [9]   11/14 15/9
15/10 15/19 19/20
26/23 39/14 44/1

44/3
bottom [1]   42/3
break [1]   42/6
brief [3]   13/24
13/25 44/14
briefed [2]   11/22
40/1
briefing [4]   13/4
25/16 26/9 37/13
briefly [2]   36/13
38/14
bring [3]   10/22
40/16 40/19
bringing [1]   10/21
broad [1]   23/25
brought [2]   15/6
16/12
budget [1]   31/12
burden [20]   5/16
5/17 5/18 6/19 6/21
7/2 10/4 14/21
24/13 24/19 24/20
26/20 26/20 26/21
38/11 39/8 39/9
41/3 42/3 42/14
burdens [1]   39/13
burdensome [3]
26/25 27/5 39/12
business [1]   21/10

**C**

California [9]
31/19 32/3 32/4
34/1 34/13 34/14
34/19 35/4 42/8
call [6]   2/7 19/7
29/24 29/25 31/14
45/2
can [32]   2/12 2/19
3/15 7/14 9/21 9/21
10/20 12/4 13/3
13/18 15/10 15/11
17/14 20/7 23/10
24/6 24/24 25/20
26/3 40/14 40/22
41/11 41/20 42/16
42/17 42/18 43/6
43/7 44/2 44/17
45/3 45/5
can in [1]   10/20
carefully [1]   3/13
case [30]   5/15
10/21 11/12 12/5
12/16 12/17 12/22
13/2 13/23 18/20
21/1 21/3 21/3
22/17 22/22 23/15
23/17 24/3 25/10
27/10 27/13 29/1
29/14 33/20 35/22
35/23 37/21 40/13
42/16 42/19
cases [9]   13/16
13/17 16/2 22/13
22/15 22/24 23/14
26/9 29/3
categories [1]   18/5
cause [3]   33/4 33/7
33/12
centralized [1]

5/20
cert [1]   31/7
certain [3]   3/19
36/20 42/11
certainly [4]   25/10
28/10 39/20 41/9
certification [15]
5/23 13/5 14/19
30/19 30/20 37/17
37/22 42/1 42/13
42/17 43/2 43/11
43/17 43/21 44/7
certify [1]   46/4
challenged [1]
18/15
challenging [1]
30/24
chance [1]   4/13
change [3]   8/12
36/5 36/5
changed [5]   15/11
15/13 15/17 16/18
16/19
changes [5]   11/16
14/14 17/8 17/11
28/8
charge [2]   31/13
34/21
CHASE [16]   1/17 2/5
17/14 17/18 17/24
17/25 18/2 21/23
34/10 36/9 37/11
37/16 38/12 39/21
44/25 45/8
Chief [1]   2/8
circumstance [1]
25/4
circumstances [2]
25/4 26/6
cited [3]   13/24
13/24 31/3
cities [1]   3/21
City [1]   42/8
civil [2]   1/3 2/2
claim [10]   13/7
14/5 14/6 14/9
27/16 29/19 38/22
40/15 40/19 40/23
claimed [2]   12/25
13/10
claiming [1]   12/9
claims [24]   3/10
3/20 4/2 4/2 4/3
4/7 5/5 12/4 14/11
14/12 21/1 21/3
21/19 23/16 23/22
29/16 29/21 38/8
39/11 39/18 39/23
39/24 40/11 40/22
class [73]
class-wide [2]
11/14 23/24
clear [1]   2/15
clearly [1]   13/25
Cleveland [2]   32/9
34/4
client [1]   15/2
clients [2]   15/2
25/23
close [2]   29/24

29/25
COLUMBIA [1]   1/1
Columbus [1]   34/4
commit [1]   43/6
committee [1]   31/17
common [3]   27/22
33/15 37/21
communicated [1]
28/14
comparable [1]
28/18
comparator [2]
19/22 34/3
comparators [7]
18/14 19/22 23/18
23/23 31/2 31/23
41/9
compare [1]   13/12
compensation [29]
2/18 7/19 11/14
15/4 16/1 16/10
16/16 16/20 17/9
17/12 25/25 28/2
28/21 28/23 30/7
31/9 31/20 32/1
32/5 32/10 33/3
33/15 34/19 34/25
35/3 35/8 39/2 39/5
40/6
competing [2]   7/2
10/3
complaint [2]   23/17
28/9
concern [3]   19/13
24/18 25/9
conclude [2]   10/7
10/9
concluded [2]   10/18
29/8
concludes [1]   10/8
conclusion [1]   41/3
conclusions [1]
21/11
conditional [3]
30/19 30/20 31/7
confer [1]   42/24
CONFERENCE [1]   1/9
confidence [4]
21/17 36/15 36/18
36/22
confident [1]   19/14
confirmed [1]   19/2
consensus [1]   35/17
consider [2]   6/15
10/3
considerations [1]
7/2
Constitution [1]
1/24
constructive [1]
14/11
consuming [1]   39/14
context [1]   41/25
continually [1]
29/5
continue [4]   5/3
15/7 15/12 20/13
continued [2]   21/20
30/14
continues [1]   29/2

**C**

continuing [2]
15/16 42/24
contributing [1]
8/13
convening [1]   2/7
conversation [1]
35/15
conversations [1]
22/7
convinced [4]   40/7
40/9 40/18 41/19
core [1]   39/10
correctly [1]   14/10
correlation [1]
33/4
corresponding [1]
7/2
cost [4]   38/24
41/13 41/14 41/22
costs [2]   28/17
39/15
counsel [6]   2/21
19/1 19/16 25/12
28/7 29/6
counseling [3]   6/16
6/19 33/24
couple [1]   43/10
course [4]   10/20
30/12 35/4 37/18
court [32]   1/1 1/23
2/9 3/12 3/24 4/7
4/11 4/23 5/2 5/14
5/16 5/22 8/21 9/25
11/23 12/17 12/22
13/25 16/4 16/23
17/1 26/14 32/14
37/23 37/24 38/1
38/7 40/13 41/25
45/6 46/3 46/9
Court's [3]   33/18
41/2 43/16
courts [6]   1/24
12/15 12/16 13/17
13/22 33/16
covered [2]   8/16
8/17
COVID [2]   28/15
46/8
COVID-19 [1]   46/8
create [1]   39/13
current [1]   25/11
cut [3]   8/19 24/9
26/25
cutoff [2]   16/6
16/24
cv [1]   1/4

**D**

Dallas [2]   32/9
34/5
data [62]
databases [2]   5/20
19/3
dataset [9]   6/2
7/23 8/5 18/13 19/5
19/25 24/17 26/22
39/12
date [8]   15/25 16/3

16/11 17/13 29/3
30/22 44/5 46/14
dates [3]   43/6
43/10 44/14
dating [1]   17/4
day [40]   1/6 1/18
1/20 2/3 4/1 4/20
5/7 5/18 6/9 8/1
8/2 8/3 8/7 8/19
9/17 10/7 11/20
12/13 15/17 16/6
16/8 16/12 16/15
16/18 17/5 17/8
17/10 17/12 18/9
18/21 20/3 24/13
27/2 29/14 32/8
37/14 37/25 41/16
41/19 41/22
Day's [13]   4/5 5/4
5/20 6/1 6/7 8/21
11/16 15/4 17/3
37/6 37/19 38/7
41/17
days [2]   16/13
17/10
DC [4]   1/5 1/16
1/21 1/25
deadline [3]   43/2
43/11 44/24
deadlines [2]   43/17
44/15
deal [2]   15/19
41/11
December [1]   27/3
December 31st [1]
27/3
decide [2]   13/5
16/4
decided [5]   3/17
9/24 12/2 12/3 12/4
decision [8]   18/10
23/6 29/24 33/7
33/7 38/15 38/18
39/4
decisions [18]
20/21 28/5 28/8
28/12 28/15 28/22
28/23 30/16 30/23
31/10 31/22 32/8
32/10 32/15 33/6
34/25 37/19 38/4
Defendant [2]   1/7
1/17
defendants [1]   2/5
definition [1]
15/16
denying [1]   8/21
depending [2]   23/25
24/9
deponents [1]   30/4
deposition [3]   30/5
32/24 36/1
depositions [2]
30/4 42/25
described [1]   26/1
describing [2]
11/13 23/21
descriptions [1]
25/15
designated [1]   30/5

desire [1]   25/11
determination [1]
10/13
determinative [1]
22/3
determine [1]   3/6
determined [2]   3/13
5/12
detract [1]   21/21
Detroit [1]   34/5
Diego [1]   34/16
difference [2]
13/20 27/17
differences [1]
21/17
different [16]   8/3
10/6 11/2 11/12
12/3 12/5 23/15
29/25 31/17 34/18
38/20 38/23 39/2
39/2 40/23 42/6
differently [1]
11/2
digging [1]   26/4
directly [2]   23/3
26/11
discharge [1]   14/11
discovery [49]
discretion [1]
33/18
discriminated [1]
22/18
discrimination [6]
12/10 22/15 22/17
25/17 33/11 38/21
discuss [3]   32/4
45/1 45/5
discussed [6]   18/4
18/8 19/13 31/20
44/25 45/4
discussing [1]
27/16
discussion [1]
38/16
dismiss [5]   4/2 5/4
5/10 27/15 38/7
dismissing [1]   3/19
disparate [9]   4/7
12/10 14/6 29/16
29/19 29/21 40/11
40/15 40/24
disparities [8]   3/6
3/7 6/12 8/10 8/13
21/25 22/2 22/5
disparity [8]   10/15
14/5 14/25 15/5
20/23 22/12 27/20
33/12
dispute [7]   2/16
3/3 3/7 10/1 32/20
37/18 38/2
disputed [1]   31/12
disputes [2]   30/18
38/24
distinction [3]
12/16 13/16 13/23
distinctions [1]
21/5
DISTRICT [4]   1/1
1/1 1/10 1/24

dive [2]   38/2 38/3
documentary [1]
37/24
documents [2]   30/3
30/22
done [3]   11/7 20/8
20/10
door [2]   6/22 42/10
down [2]   10/1 42/6
draw [4]   6/14 21/4
21/11 33/4
drawing [1]   6/15
drawn [1]   24/6
driven [1]   30/16
driver [1]   31/24
driving [1]   32/1
due [1]   21/24
during [21]   9/14
10/11 10/16 11/4
11/9 12/9 12/11
12/23 13/1 14/6
15/1 27/9 27/21
28/19 28/24 34/20
35/7 40/11 40/15
40/24 46/7
duty [1]   16/9

**E**

earliest [2]   19/2
19/9
economists [2]   19/4
22/14
effect [6]   6/1 6/7
8/10 16/19 16/20
33/5
efficient [1]   40/3
effort [1]   30/14
either [4]   7/11
32/2 35/17 45/5
election [1]   6/23
else [3]   8/14 36/8
42/20
embarrassing [1]
26/16
employed [16]   7/13
7/16 7/17 10/12
12/8 12/12 12/23
13/9 13/18 14/7
15/11 19/21 20/3
20/9 27/9 40/16
employed and [1]
13/9
employees [2]   12/25
13/1
employment [2]
22/16 22/25
end [5]   10/7 15/25
18/5 18/6 27/7
ending [1]   40/6
enforce [1]   9/1
enough [3]   7/14
7/22 42/11
ensure [1]   15/5
enter [1]   17/5
entire [1]   34/14
entitled [16]   3/4
10/10 10/11 10/14
10/18 10/19 10/23
12/6 12/12 12/18
14/12 15/3 15/23

**E**

entitled... [3]
22/19 32/16 46/5
entry [1]   34/7
environment [1]
28/15
error [1]   6/24
establish [1]   7/11
et [2]   1/3 2/3
evaluation [2]   30/6
33/14
evaluations [1]
33/3
even [6]   22/20
24/15 24/24 40/9
40/18 41/8
event [1]   11/17
everybody [1]   2/8
everyone [4]   2/6
2/11 7/25 19/22
evidence [5]   22/21
25/17 31/3 33/7
37/24
exactly [1]   21/15
example [8]   6/13
6/22 17/11 20/1
20/16 21/3 31/19
36/16
examples [1]   25/24
exchanging [1]
44/16
excluded [1]   20/10
excludes [2]   20/16
20/17
excluding [1]   36/20
Excuse [1]   4/10
exist [1]   22/2
existence [3]   32/23
33/6 33/11
exists [1]   33/8
exit [1]   34/8
expanding [1]   41/15
expect [3]   28/11
37/17 37/20
expend [1]   41/16
expensive [1]   7/1
expert [8]   7/21
10/22 22/14 29/7
29/9 42/25 42/25
44/24
experts [11]   6/2
6/6 19/14 22/8
26/23 37/3 39/14
41/17 41/20 42/2
43/4
explain [1]   41/20
explained [1]   9/19
expressed [2]   27/13
39/22
extend [1]   7/7
extensive [1]   43/9
extent [8]   14/17
23/20 25/15 26/1
32/14 32/19 32/20
32/21
extrapolating [1]
28/1

**F**

fact [10]   6/16 12/2
13/7 20/2 26/25
33/17 35/25 38/9
40/8 44/24
fact-specific [1]
33/17
factor [1]   22/23
factors [1]   6/15
factual [1]   38/3
fair [1]   38/16
fall [1]   18/4
falling [1]   12/1
far [2]   3/18 23/20
fared [1]   24/7
favor [3]   6/16 6/19
11/23
February [1]   32/25
feedback [1]   2/12
female [5]   5/25
10/16 11/6 11/9
16/20
few [1]   37/6
figure [8]   6/11 8/9
8/11 8/25 9/1 9/25
10/23 10/24
figuring [1]   10/15
file [3]   26/15 41/8
44/6
filed [7]   9/10
14/24 23/2 26/17
28/9 30/19 30/20
files [1]   22/25
filing [3]   31/8
41/6 41/11
fill [1]   38/10
final [1]   38/12
finally [1]   37/15
financial [1]   34/18
find [2]   5/2 7/24
finding [1]   25/24
fingertips [1]
17/16
finished [2]   18/3
28/22
firm [13]   5/24 5/25
5/25 7/18 14/13
20/12 21/6 27/14
27/25 28/20 28/25
31/3 31/9
firm's [1]   25/20
firm-wide [3]   5/24
5/25 5/25
firms [1]   28/16
first [4]   3/3 36/14
42/8 45/5
fit [1]   42/25
five [3]   33/25
34/15 34/22
Fl [1]   1/13
fleshed [1]   31/6
focus [1]   22/1
focused [1]   3/21
follow [1]   26/23
following [1]   12/15
forced [1]   13/10
foregoing [1]   46/4
form [2]   12/7 15/3
former [1]   25/11

forth [1]   7/12
forward [4]   8/18
15/3 25/16 42/19
found [3]   4/24
15/24 29/22
Francisco [1]   34/16
frankly [1]   42/4
frequent [1]   16/17
front [2]   18/5
29/17
full [2]   8/5 8/11
fully [3]   13/20
18/16 37/17
further [3]   17/20
42/10 45/9
future [2]   15/7
15/17

**G**

garden [1]   22/15
gender [4]   3/6 4/6
6/12 20/24
gender-based [1]
6/12
geographic [7]   17/3
24/1 29/12 33/17
37/2 38/23 39/16
geographical [2]
36/21 37/14
geography [2]   8/16
31/10
given [4]   26/10
30/25 40/8 42/14
gives [2]   14/9
14/11
goes [5]   16/3 36/3
36/6 42/9 42/9
good [5]   2/6 2/23
13/13 35/18 35/20
grasping [1]   13/20
great [3]   5/22
21/11 42/4
greater [5]   21/17
26/22 36/15 36/18
36/21
group [4]   8/1 18/12
19/5 38/19
guess [5]   10/8
24/18 40/17 41/18
44/23

**H**

hand [2]   5/14 5/16
handset [2]   2/13
4/12
happen [2]   37/12
37/19
happened [4]   21/19
22/21 23/10 30/22
happening [7]   8/24
22/9 28/18 30/2
32/2 37/1 37/5
happens [3]   18/25
22/19 23/9
happy [2]   2/18
17/19
hard [2]   13/11
13/13
harder [1]   24/15
hear [3]   2/12 2/18

4/18
heard [2]   34/7 42/1
hearing [3]   43/18
45/2 46/7
Heisler [2]   1/12
1/15
held [3]   9/5 32/25
40/14
helpful [1]   18/18
here's [1]   11/4
hereby [1]   44/5
hide [1]   33/11
high [1]   39/9
higher [1]   6/24
hire [1]   23/7
hired [2]   23/3 23/5
historic [4]   18/18
19/8 20/20 27/4
Hold [1]   43/14
holds [1]   37/2
Honor [37]   2/23 4/4
7/20 11/11 17/18
17/22 18/1 21/23
23/13 27/7 27/8
27/15 29/11 29/17
29/22 30/15 30/18
32/13 33/9 34/6
35/10 36/10 36/13
36/14 36/23 37/10
38/14 38/15 38/17
39/19 42/22 43/7
43/18 44/4 45/3
45/7 45/10
HONORABLE [1]   1/9
HOOK [3]   1/23 46/3
46/14
hopefully [1]   40/4
Houston [1]   34/5
hundreds [1]   23/24
hypothesizing [1]
28/1
hypothetically [1]
20/1

**I**

idea [2]   35/18
35/20
identified [2]
23/17 24/23
identify [3]   25/21
26/3 41/9
identities [1]
37/12
imagining [1]   20/7
impact [8]   4/7
12/10 14/6 18/20
29/16 29/19 29/21
40/24
impacted [2]   20/21
31/10
impacting [1]   39/5
implemented [1]
36/5
import [1]   10/4
importance [2]   5/15
5/22
important [4]   4/18
8/7 8/20 20/20
importantly [1]
28/12

**I**

improperly [2]
13/10 13/10
inaudible [4]   13/23
18/15 30/7 33/15
include [3]   19/20
34/15 40/22
includes [1]   34/15
including [2]   20/9
30/4
incomplete [2]   7/23
36/24
increase [2]   35/18
35/19
increases [1]   31/1
incredibly [1]   5/17
indicated [2]   28/7
39/21
indirectly [1]   41/9
individual [9]   9/6
18/8 23/16 23/22
26/17 31/14 33/3
33/5 40/21
individuals [17]
18/20 19/20 20/11
20/21 22/10 23/18
23/19 24/4 24/7
24/25 25/10 25/22
26/4 27/4 27/22
31/2 39/25
influence [1]   34/24
information [6]
5/19 6/18 7/10 19/2
25/12 34/24
injunctive [23]
8/22 8/23 8/25 9/2
9/6 9/12 9/19 9/22
10/8 11/15 11/19
12/4 12/6 12/18
13/18 13/19 13/21
14/2 14/9 14/15
15/3 27/16 27/18
inquiry [2]   10/17
33/18
interaction [1]
27/25
interest [1]   27/13
interested [1]
12/21
interesting [1]
20/25
interests [4]   10/4
24/20 41/4 41/4
interim [1]   44/15
interrupt [1]   4/16
interrupting [1]
4/18
into [7]   15/7 15/16
18/4 38/2 38/3 40/1
42/6
introduce [1]   2/14
involve [1]   43/2
irrelevant [3]   23/5
41/20 41/21
Irvine [10]   25/18
32/11 33/22 33/23
34/10 34/12 34/13
34/16 34/25 35/1
is no [1]   11/7

**J**

issue [17]   8/18
9/24 10/2 11/21
16/4 19/13 22/1
24/11 24/23 26/7
27/7 33/22 38/1
39/11 39/16 42/17
42/18
issues [9]   18/2
18/4 24/22 27/20
28/4 28/19 29/12
29/16 29/17
it excludes [1]
20/16

JACOB [2]   1/20 2/5
January [6]   18/21
18/22 43/12 43/13
43/19 44/7
January 15th [3]
43/12 43/19 44/7
January 1st [1]
18/21
JEFF [4]   1/23 4/11
46/3 46/14
job [1]   23/4
joining [1]   27/13
JONES [51]
JUDGE [1]   1/10
Judge's [1]   2/8
judgment [10]   4/6
4/21 5/11 8/22 9/18
11/22 16/3 29/2
29/15 29/22
July [4]   1/5 28/6
29/6 32/13
July 1 [1]   28/6
July 3rd [1]   32/13
June [3]   44/12
44/13 44/13
June 4 [3]   44/12
44/13 44/13
jury [1]   10/7

**K**

Kate [2]   2/4 2/24
KATIE [1]   1/14
keep [2]   12/1 25/14
keeps [1]   25/13
knock [1]   6/22
KORNBLITH [2]   1/12
2/4
Kristin [1]   34/6

**L**

labor [1]   19/4
large [2]   24/5
28/16
larger [4]   6/21
26/22 26/24 39/12
last [5]   28/15 30/2
30/16 43/18 43/18
later [3]   15/20
21/20 27/14
law [2]   15/24 28/16
lawsuit [6]   9/9
14/24 15/6 16/11
23/1 28/10
laying [1]   28/16
lead [1]   40/3

learned [2]   30/12
33/1
least [4]   27/11
38/5 39/6 40/17
leave [2]   13/10
15/12
left [3]   7/17 20/13
24/17
legal [1]   27/11
legitimate [1]
19/13
less [10]   6/19 6/25
7/3 13/13 20/11
20/17 20/18 21/8
21/9 38/10
letter [4]   8/8
30/17 32/12 38/1
level [13]   30/17
31/5 31/25 32/2
32/15 35/9 35/12
35/14 35/15 35/22
37/5 37/20 39/10
liability [1]   8/17
light [2]   23/6 42/5
likely [2]   20/12
20/17
likewise [1]   36/23
limit [1]   33/16
limitations [5]
22/3 22/20 23/10
37/14 46/9
limited [6]   6/2 6/8
7/25 20/5 24/15
25/4
line [4]   6/15 6/15
10/1 42/3
lines [1]   9/8
LinkedIn [1]   25/20
litigate [1]   10/2
litigated [1]   11/25
litigation [3]   26/9
27/12 42/7
litigation about [1]
26/9
little [4]   21/7
21/9 26/4 43/3
living [1]   38/25
local [4]   31/4 32/2
32/15 37/20
located [1]   5/19
longer [1]   13/18
look [6]   4/23 6/8
21/6 21/14 24/5
28/14
looking [8]   8/19
18/12 19/6 21/4
24/25 33/2 37/6
43/3
looks [1]   5/14
Los [1]   34/16
lost [1]   38/17
lot [2]   4/11 43/4
lots [2]   30/3 30/3
Louisiana [1]   1/21
Lovitt [1]   36/1
low [3]   5/17 5/19
38/11

**M**

majority [1]   37/15
makes [6]   2/21
16/15 17/8 36/4
37/21 42/14
making [3]   28/22
31/15 35/2
male [5]   10/16 11/5
11/8 13/12 25/17
managing [2]   36/5
36/6
manual [1]   31/9
many [3]   24/9 26/6
28/5
March [4]   43/13
43/13 43/25 44/7
March 31st [2]
43/25 44/7
margin [1]   6/24
market [5]   8/8 8/12
28/17 28/18 28/19
markets [9]   33/17
34/2 34/3 34/18
38/23 38/23 39/1
39/2 39/3
mask [1]   25/3
materials [1]   41/6
matter [3]   21/19
40/4 46/6
may [21]   3/22 8/2
8/13 9/25 10/10
14/18 15/5 17/14
17/23 20/1 20/21
21/12 21/20 23/5
25/22 25/23 28/2
40/21 41/15 44/9
44/10
May 5 [1]   44/10
May 5th [1]   44/9
maybe [7]   13/2 13/3
14/22 14/22 15/8
15/10 42/10
mean [12]   3/18 4/4
9/5 12/1 17/6 19/23
21/9 24/19 26/5
26/7 38/14 44/15
meaningful [7]   6/3
6/7 7/24 19/24 20/4
21/5 37/4
means [1]   13/7
meet [1]   42/24
meetings [2]   31/19
33/25
meets [1]   32/4
member [1]   18/10
members [2]   18/13
18/14
men [5]   6/13 20/3
21/5 21/9 21/9
mentioned [3]   8/7
8/8 15/22
merits [1]   37/18
methodology [1]
15/4
might [14]   7/9 7/22
10/9 12/6 12/12
21/2 22/24 24/14
35/19 40/22 41/8
41/23 42/5 44/23

**M**

minimal [1]   42/14
minimize [1]   24/23
minor [1]   41/4
misunderstanding [1]
14/22
Monday [1]   31/8
money [1]   41/16
months [2]   27/10
30/12
more [29]   6/14 6/16
6/17 6/17 6/17 6/18
10/7 10/9 11/6 11/9
19/10 19/14 20/3
22/15 24/11 24/15
25/2 25/19 26/22
26/25 27/4 28/12
31/7 36/19 36/20
39/14 39/15 42/11
43/15
morning [2]   2/6
2/23
MOSS [1]   1/9
most [2]   17/11
17/15
motion [16]   5/8
5/10 5/10 8/21 9/18
11/22 29/17 29/21
30/1 30/19 30/20
42/1 43/20 44/6
45/6 45/6
motivated [1]   23/7
mouth [2]   4/4 14/18
move [6]   29/16
42/18 44/5 44/14
44/24 45/1
moved [1]   29/14
moving [4]   25/16
43/9 43/12 43/24
Ms. [17]   4/10 17/14
17/21 17/24 17/25
18/2 34/10 36/1
36/9 36/11 37/11
37/16 38/12 39/21
42/20 44/25 45/8
Ms. Chase [12]
17/14 17/24 17/25
18/2 34/10 36/9
37/11 37/16 38/12
39/21 44/25 45/8
Ms. Lovitt [1]   36/1
Ms. Mueting [4]
4/10 17/21 36/11
42/20
much [13]   4/15 4/16
4/17 10/23 10/24
26/5 26/8 26/9 31/6
32/12 36/17 41/22
42/4
MUETING [7]   1/14
2/4 2/24 4/10 17/21
36/11 42/20
must [1]   3/9
mute [1]   2/11

**N**

name [3]   2/14 25/13
26/1
named [2]   23/17

31/1
names [1]   25/3
narrow [2]   5/8
33/19
narrowing [1]   5/9
national [6]   31/25
35/9 35/11 35/13
35/22 37/5
nationwide [33]
3/11 3/14 3/18 3/23
3/25 4/3 4/8 4/9
4/22 4/23 4/24 5/2
5/5 5/6 6/7 17/2
30/6 30/8 30/9
30/24 32/6 32/16
32/18 32/22 32/24
33/14 36/2 37/6
38/6 38/6 38/8
38/21 40/5
nature [2]   21/10
28/11
necessarily [3]
20/4 24/2 38/20
necessary [2]   9/3
9/25
need [25]   3/22 5/23
5/25 6/14 7/12 7/18
8/10 8/24 9/4 10/4
13/4 16/17 16/21
17/7 22/9 24/8
25/19 26/15 29/4
36/17 38/3 41/6
41/7 44/19 44/21
needing [1]   43/5
needs [5]   11/24
16/4 21/25 37/23
38/1
neither [3]   30/17
33/6 37/25
new [10]   1/13 1/19
16/10 16/13 32/10
33/23 34/5 35/5
42/8 45/6
NILAB [2]   1/2 2/2
non [1]   6/4
non-random [1]   6/4
none [1]   30/22
nonexistence [1]
32/23
nor [2]   30/18 33/7
normal [2]   10/21
33/23
Notably [1]   30/17
note [4]   28/7 29/20
32/13 46/7
noted [2]   27/8
36/23
November [1]   30/15
number [2]   3/19
19/6
numbers [2]   26/23
28/16
NW [2]   1/21 1/24
NY [2]   1/13 1/19

**O**

observation [1]
39/21
observations [1]
6/17

obtain [1]   32/22
obvious [1]   13/6
obviously [1]   38/22
occurred [2]   12/11
46/7
occurs [1]   24/14
off [3]   8/19 28/16
42/12
offer [4]   22/21
34/11 34/12 35/2
offered [4]   18/21
33/25 35/3 39/17
offering [3]   24/4
34/1 34/14
office [19]   25/1
25/18 26/3 30/17
31/12 31/14 31/16
31/24 32/2 33/24
34/10 34/13 35/15
35/16 35/18 35/19
35/25 36/4 36/4
offices [11]   32/7
33/19 33/22 33/22
34/1 34/2 34/15
34/22 35/12 37/7
38/20
official [2]   1/23
46/3
once [1]   43/3
one [19]   3/24 5/14
10/7 10/9 10/23
15/2 17/15 19/19
20/16 20/23 23/3
24/19 24/22 25/2
27/10 27/13 37/20
39/22 43/14
ones [1]   39/17
ongoing [8]   9/3
9/22 11/15 14/12
15/16 16/5 16/22
40/8
only [13]   6/8 7/16
8/18 16/4 17/7
18/25 19/24 20/9
21/18 23/3 26/11
37/6 44/23
open [2]   22/24
42/10
operating [2]   30/10
30/11
opinion [4]   3/13
3/20 13/24 39/22
opportunity [3]
17/19 35/16 42/15
opposite [1]   21/13
opposition [3]   31/7
44/8 44/10
order [13]   2/9 7/10
8/24 17/5 22/11
22/21 25/6 25/8
25/13 37/9 41/6
43/17 44/18
ordinary [1]   10/20
others [1]   23/10
Otherwise [1]   17/23
ought [1]   41/25
out [20]   2/19 6/11
8/9 8/11 8/25 9/1
10/1 10/15 10/23
10/24 13/2 20/8

20/12 24/17 25/3
25/13 25/14 31/6
34/1 37/8
outside [4]   22/2
23/9 37/13 39/17
over [8]   3/8 9/13
12/8 18/19 22/16
23/1 30/12 43/7
overarching [1]
36/17
overbroad [2]   24/2
39/6

**P**

p.m [1]   45/12
paid [6]   11/8 13/13
20/3 21/7 21/9
25/19
painted [1]   28/10
pandemic [2]   28/15
46/8
papers [1]   33/9
part [1]   37/12
partial [1]   29/22
participate [1]
31/19
participates [1]
33/24
particular [3]   2/17
8/6 42/9
particularity [1]
5/1
particularly [2]
25/22 40/8
parties [7]   26/14
42/15 43/1 44/1
44/3 44/16 44/22
parties' [1]   2/16
partner [4]   31/13
31/18 34/21 36/7
partner's [1]   36/6
partners [1]   27/25
past [3]   23/1 26/14
30/12
pattern [1]   7/11
patterns [3]   18/19
24/6 24/12
pause [1]   3/16
pay [34]   9/13 10/11
10/14 10/15 10/19
10/19 10/24 12/10
14/5 14/25 15/5
18/10 27/20 28/3
28/6 28/12 28/14
30/8 30/23 32/8
32/15 32/18 32/18
33/7 33/7 33/12
33/13 34/3 37/19
38/4 38/21 40/11
40/15 40/22
Pennsylvania [1]
1/15
people [3]   8/2 8/3
20/9
percent [3]   11/6
11/10 20/3
performance [1]
27/23
performed [1]   25/23
perhaps [2]   2/21

**P**

perhaps... [1]
26/12
period [42]   7/6
8/17 9/9 9/11 9/14
10/11 10/16 11/4
11/9 11/15 12/9
12/24 13/1 14/6
15/1 15/15 18/7
18/10 18/15 18/25
19/17 20/6 20/15
22/3 22/6 22/11
23/10 27/9 27/13
27/21 27/23 27/24
28/2 28/13 28/20
28/24 34/20 35/8
40/15 40/23 40/24
41/10
periods [1]   40/11
perpetuate [1]
33/10
person [3]   13/3
23/7 25/21
phase [6]   5/11 10/1
10/3 11/25 14/20
15/20
phone [2]   2/11 2/13
PIC [1]   31/14
pick [1]   2/13
PICs [1]   31/16
picture [2]   36/25
38/10
piece [1]   8/23
Pittsburgh [1]   32/9
places [1]   25/23
plaintiff [10]
10/23 12/11 22/22
23/4 23/14 23/15
25/16 27/17 27/19
27/21
plaintiffs [37]   1/4
1/12 2/4 2/20 2/22
2/24 3/4 3/8 3/9
3/11 3/14 4/3 4/8
5/6 5/19 8/23 9/7
9/19 9/20 10/9
11/24 13/17 15/22
25/12 28/20 28/24
30/23 31/1 31/23
32/7 32/13 33/21
37/23 38/19 40/13
40/21 44/6
plaintiffs' [11]
2/21 4/22 19/1
19/16 23/16 23/22
25/12 28/7 29/6
30/18 44/6
plausible [2]   28/21
38/5
plausibly [1]   29/23
play [2]   28/19
38/23
pleading [1]   3/12
pleadings [17]   4/6
4/21 4/25 5/11 5/24
8/22 9/18 11/22
25/14 25/15 26/15
29/15 29/22 29/23
30/1 30/11 41/8

please [4]   2/12
2/14 29/13 46/7
pled [12]   3/11 3/14
3/23 4/3 4/8 4/24
5/6 29/23 32/6
33/10 38/5 39/23
point [16]   3/25 5/1
12/22 15/21 16/4
19/19 23/13 27/14
30/10 35/7 35/17
37/8 38/4 40/2 40/7
40/17
pointed [3]   4/9
4/22 5/24
pointing [1]   32/17
points [2]   37/16
37/16
policies [28]   4/9
4/23 4/24 5/2 5/24
6/8 11/16 11/21
14/14 15/11 15/13
15/17 15/24 16/19
16/19 16/20 32/17
32/20 32/21 32/22
32/24 33/2 33/2
33/5 33/10 37/6
38/6 38/8
policy [5]   30/8
30/9 32/19 33/6
33/8
poorly [1]   25/23
portion [1]   19/24
posing [3]   10/6
12/3 12/5
position [2]   23/3
32/14
possible [1]   36/18
postdating [1]   8/18
potential [2]   29/18
33/16
practice [3]   25/19
26/3 34/20
pre [2]   36/16 37/9
pre-2016 [2]   36/16
37/9
preceding [1]   8/11
predating [2]   8/6
8/17
predict [1]   6/23
prefer [1]   43/7
preliminary [1]
38/2
prepared [3]   34/11
34/12 45/1
present [3]   17/4
21/16 22/10
prevent [2]   6/2
36/21
previously [2]   28/7
43/12
primary [1]   39/16
prior [10]   7/7 7/15
18/7 21/8 21/20
22/9 22/20 24/7
43/16 44/18
privacy [4]   24/19
24/23 26/6 41/4
problem [3]   6/5
6/11 13/14
problems [1]   6/4

proceed [2]   3/15
39/24
proceed with [1]
3/15
proceedings [3]
2/10 45/12 46/5
process [7]   30/6
30/7 30/13 31/21
32/1 35/3 39/13
produce [8]   6/9
18/22 24/15 29/7
33/25 35/3 38/10
39/12
produced [3]   29/5
30/3 30/3
producing [5]   5/16
5/18 6/21 24/14
24/20
production [7]   8/20
9/3 26/20 26/24
33/19 39/9 41/12
productions [1]
30/21
prohibited [1]   2/9
prolong [1]   42/7
promised [1]   42/23
proof [1]   11/4
proper [1]   5/9
properly [3]   3/14
4/8 4/9
proposals [1]   43/6
propose [2]   43/12
43/24
proposed [5]   16/6
17/4 27/1 35/14
37/14
proposing [3]   16/1
34/3 44/14
proposition [1]
41/1
propriety [2]   3/18
3/25
protect [1]   37/11
protections [1]
37/9
protective [5]   25/6
25/8 25/13 37/9
41/5
provide [6]   9/21
16/13 21/16 30/23
33/13 37/24
provided [4]   9/10
23/19 25/12 38/5
public [1]   25/9
publications [1]
27/12
publicity [1]   27/11
purported [8]   30/8
30/9 31/23 32/18
32/19 32/23 33/2
33/5
purporting [1]
40/19
purports [1]   40/10
purpose [2]   3/4
12/20
purposes [6]   7/6
14/2 14/3 14/25
15/1 38/22
push [1]   43/4

pushing [1]   43/2
put [3]   2/11 4/4
14/18
putative [3]   18/9
18/13 18/14

**Q**

quarter [1]   16/9
query [1]   27/1
question that [1]
14/16
quickly [1]   25/21
quite [5]   23/15
24/4 33/15 38/22
42/4
quote [1]   29/24

**R**

race [1]   22/18
racial [2]   22/22
23/8
RAHYAR [2]   1/2 2/3
raise [2]   17/21
42/21
raised [2]   37/16
38/16
raises [1]   5/16
RANDOLPH [1]   1/9
random [1]   6/4
rankings [1]   18/19
rates [1]   38/25
rating [1]   25/24
ratings [1]   18/19
re [2]   10/2 11/25
re-litigate [1]
10/2
re-litigated [1]
11/25
reached [2]   41/2
43/1
real [2]   21/18 41/4
reality [1]   35/2
really [10]   3/7
5/22 6/3 14/19
14/21 18/4 21/4
21/11 40/18 41/19
reason [5]   7/3 7/18
11/8 38/9 41/2
reasonable [1]
28/23
reasonably [1]
25/21
reasons [1]   26/10
rebroadcast [1]
2/10
recall [1]   3/20
receive [2]   3/8
22/19
received [2]   10/25
11/6
recent [2]   17/11
17/15
recently [1]   35/21
recognize [2]   18/17
19/12
recognized [1]   8/21
recommendation [1]
36/4
recommendations [5]
31/15 32/1 34/21

**R**

recommendations... [2]
35/13 36/3
recommended [1]
30/25
record [2]   2/10
2/15
records [1]   30/25
reducing [1]   28/16
reflected [1]   8/4
reflective [1]
23/11
reflects [1]   32/12
regarding [4]   2/16
2/17 40/5 42/24
region [7]   32/3
32/4 34/14 34/20
34/23 35/25 39/6
regional [3]   31/19
33/24 39/4
regions [2]   34/17
39/17
regression [4]   3/5
10/22 11/7 19/11
reinstated [2]
11/17 15/2
reinstatement [13]
9/8 9/20 10/10
10/18 11/20 12/7
12/12 12/19 13/7
14/1 15/14 15/22
27/19
reject [1]   3/19
rejected [2]   38/7
41/24
rejecting [2]   4/5
5/4
related [4]   27/4
27/12 29/9 30/18
relates [1]   25/9
relating [2]   2/18
7/13
relation [1]   28/23
relatively [1]   41/3
relevance [2]   5/14
5/21
relevant [21]   7/6
12/23 20/25 21/2
21/22 21/24 22/4
22/5 22/10 23/4
24/3 26/11 26/11
33/17 33/20 34/3
35/8 39/7 39/10
39/18 41/23
reliable [3]   19/11
19/15 19/17
relief [26]   8/23
8/23 8/25 9/2 9/6
9/10 9/12 9/19 9/22
10/8 11/14 11/16
11/19 12/4 12/6
12/18 13/18 13/19
13/22 14/2 14/9
14/12 14/15 15/3
27/16 27/18
remedy [1]   9/8
remind [2]   2/8 2/11
remotely [3]   28/18
46/5 46/9

renewed [1]   45/6
reply [1]   44/14
deported [2]   1/23
46/5
reporter [3]   1/23
4/11 46/3
reporting [1]   46/9
reports [2]   42/25
44/16
representative [20]
9/4 9/11 9/14 9/17
12/8 12/19 12/24
13/3 13/8 13/21
14/2 15/12 27/8
27/20 28/3 28/13
39/4 39/6 40/10
40/14
representatives [5]
9/21 11/13 38/21
39/19 39/25
request [2]   4/5
26/17
requested [2]   4/21
19/1
required [1]   4/25
resolution [1]   40/4
resolve [1]   42/17
resolved [3]   11/23
14/17 42/13
respect [38]   2/19
4/6 4/21 7/15 7/16
7/19 8/22 9/6 9/13
9/19 12/25 16/1
18/15 19/17 20/19
21/24 22/9 22/19
23/13 23/19 24/3
26/7 26/12 27/20
28/11 29/15 29/20
31/16 32/3 33/14
33/23 37/2 37/5
38/15 40/10 40/19
41/11 42/16
respectfully [1]
5/17
respond [2]   17/24
36/11
responded [1]   7/22
responsibility [1]
31/15
restrictions [2]
17/3 37/2
result [6]   9/22
18/20 19/16 33/12
35/1 38/24
results [3]   6/23
6/25 7/4
reveal [1]   26/16
review [2]   36/2
39/13
reviewed [3]   31/25
35/13 35/24
reviews [1]   27/23
revision [1]   15/4
revolve [1]   41/25
right [8]   3/3 6/11
8/1 17/1 17/25
38/12 45/7 45/8
rise [2]   14/9 14/11
ROTH [2]   1/20 2/5
round [2]   29/7 29/8

rounds [1]   42/6
ruled [2]   3/24
13/25
rules [1]   2/9
run [3]   3/5 19/11
36/24
running [1]   6/2
RUSSELL [2]   1/12
2/4

**S**

salaries [2]   31/4
38/25
salary [6]   30/16
31/1 31/13 31/15
31/22 34/21
same [8]   7/21 9/17
10/14 15/23 21/15
34/4 37/1 37/8
sample [11]   6/5
6/11 6/20 6/21 7/25
19/10 19/12 20/5
20/14 24/5 24/10
samples [1]   20/11
sampling [1]   6/4
San [2]   34/16 34/16
Sanford [2]   1/12
1/15
saying [5]   10/17
11/3 14/23 15/8
25/16
scenario [1]   11/12
schedule [3]   42/12
42/23 42/25
scope [13]   2/17 3/8
3/9 3/10 5/8 5/9
5/12 23/14 29/12
29/18 33/16 33/19
41/15
SE [1]   1/15
seal [4]   26/15
26/18 41/6 41/12
second [2]   26/19
36/23
seconds [1]   26/5
secrecy [4]   30/8
32/18 32/18 33/13
seeing [2]   13/16
16/18
seek [13]   4/1 5/7
5/19 9/6 9/7 9/22
11/19 13/18 13/19
13/21 15/22 27/18
39/3
seeking [14]   2/20
8/23 9/12 9/20
11/13 11/20 12/18
14/1 14/24 15/13
16/10 16/11 16/12
17/12
seem [1]   32/11
selecting [1]   8/1
self [1]   8/1
self-selecting [1]
8/1
sense [6]   2/21 9/1
17/10 19/22 29/10
42/15
sent [1]   35/15
set [6]   23/17 24/5

24/15 31/4 43/17
43/18
seven [1]   34/1
share [1]   34/24
Sharp [2]   1/12 1/15
shed [2]   23/5 42/5
show [2]   6/1 22/25
showing [3]   14/25
15/1 37/25
shown [1]   31/11
shows [1]   31/8
side [3]   5/21 7/3
38/11
sides [1]   39/14
significance [3]
7/11 21/21 24/24
significant [7]
6/12 20/23 21/25
22/1 22/5 22/12
27/11
significantly [1]
26/21
Silicon [1]   34/15
similar [2]   28/11
40/15
similarly [2]   19/4
31/6
simply [2]   26/17
41/21
single [2]   23/14
23/15
situated [1]   11/2
six [1]   38/19
size [8]   3/7 6/5
6/11 6/21 7/25
19/10 19/12 24/10
sizes [1]   6/20
slightly [1]   10/6
slowly [1]   43/14
small [1]   34/13
smaller [1]   6/20
so I [1]   4/4
somebody [4]   12/8
12/23 40/9 40/18
someone [7]   7/17
11/3 12/6 14/1
15/10 22/17 40/14
Sometimes [1]   6/19
somewhat [2]   11/1
11/2
soon [1]   43/6
sorry [7]   3/16 4/16
8/18 18/24 19/19
21/8 44/2
sort [5]   12/1 21/10
22/15 40/3 41/24
sought [3]   18/5
18/7 23/15
sound [1]   34/8
speak [5]   2/14 30/5
30/6 30/7 30/8
speaking [5]   2/12
2/13 2/22 2/24 4/12
specific [3]   26/9
33/17 38/3
specifically [1]
16/23
speediest [1]   40/4
spend [2]   31/13
41/17

**S**

spoken [1]   19/4
stage [5]   4/25 5/23
14/19 29/25 37/18
standing [4]   2/9
11/19 13/19 13/21
standpoint [3]
19/11 24/1 24/1
start [2]   2/21 18/2
started [3]   19/9
43/3 43/4
STATES [2]   1/1 1/10
statistical [9]   3/5
6/3 6/18 6/25 7/10
7/11 21/18 21/21
26/12
statistically [6]
6/12 20/23 21/25
22/1 22/5 22/12
statistician [1]
21/3
statisticians [1]
22/14
statistics [1]
41/15
STATUS [1]   1/9
statute [3]   22/2
22/20 23/9
statutory [1]   7/6
stay [1]   12/4
stayed [2]   8/2 8/3
still [7]   7/17 20/9
20/22 23/10 25/21
32/16 34/7
story [1]   25/14
Street [1]   1/18
strike [2]   11/1
13/6
strikes [1]   26/13
struggling [1]
35/21
subject [2]   31/10
46/8
subjected [1]   15/23
submit [3]   3/9 37/1
45/5
submitted [1]   32/13
13/25
subsequently [1]
13/25
succeed [2]   20/12
20/17
successful [1]
20/18
suggest [2]   31/3
31/22
suggested [2]   36/14
38/19
suggesting [2]   16/8
26/21
suggestion [3]   22/8
29/6 30/23
Suite [1]   1/15
supplement [1]
17/10
supplemented [1]
29/5
support [1]   38/21
suppose [2]   21/20
26/18

sure [3]   10/13
13/19 34/7
surprise [1]   39/1
survived [1]   29/21
sworn [4]   35/6
35/10 35/12 35/25
system [2]   23/11
27/2

**T**

talk [2]   29/12
34/23
talked [3]   24/19
37/10 37/10
talking [4]   4/20
23/23 23/25 28/5
Technically [1]
19/7
technological [1]
46/9
telephone [2]   1/12
1/18
TELEPHONIC [1]   1/9
temporal [3]   18/2
18/4 27/6
terminated [2]
10/25 13/9
termination [1]
14/11
terms [11]   11/14
11/15 18/6 25/9
26/19 26/20 27/6
27/18 28/5 34/18
39/9
TERRI [4]   1/17 2/5
17/18 21/23
tested [2]   3/12 5/7
testified [1]   22/14
testimony [4]   35/6
35/10 35/12 35/25
that we [1]   23/20
theme [1]   36/17
theoretically [1]
9/7
theory [2]   14/13
33/10
thereafter [1]
40/20
therefore [3]   11/9
20/14 46/8
thinking [4]   7/21
13/16 13/23 22/13
though [3]   29/25
37/22 41/14
thought [1]   36/25
thousand [1]   24/8
thousands [1]   23/24
three [8]   3/21 21/8
25/24 30/3 32/7
33/21 33/22 38/20
throw [1]   42/12
thus [3]   3/17 9/21
11/18
tied [1]   3/10
times [3]   36/2 36/6
36/7
timing [1]   23/25
Title [3]   29/15
29/19 29/20
today [10]   2/7 2/19

2/22 2/25 14/25
15/6 16/12 17/12
42/21 45/9
today's [1]   2/10
together [2]   32/4
34/23
told [1]   37/3
TOLTON [3]   1/2 2/3
25/16
took [1]   4/23
topics [1]   30/5
transcript [2]   1/9
46/4
treated [1]   21/6
trend [1]   7/12
trends [3]   8/7
18/18 24/12
trouble [2]   4/11
13/16
true [5]   3/17 3/24
21/7 37/2 46/4
try [3]   6/23 9/1
24/5
trying [1]   42/12
two [6]   10/3 18/4
24/22 25/2 25/25
32/17
type [6]   9/7 12/10
22/22 26/2 28/19
29/4
typical [1]   27/22
typically [2]   16/2
29/3

**U**

U.S [1]   1/24
unable [1]   7/24
under [8]   2/8 26/15
26/17 29/5 29/19
41/6 41/12 43/16
undercompensated [1]
13/1
underpaid [3]   11/4
11/5 11/10
underwent [1]   8/8
UNITED [2]   1/1 1/10
unless [3]   17/22
29/11 45/1
unlikely [5]   6/6
26/8 26/13 37/13
41/7
up [9]   2/13 14/18
16/11 16/12 18/3
22/24 26/13 26/23
41/10
update [1]   16/9
updates [1]   16/17
upon [2]   24/6 35/2
use [2]   2/13 31/17
used [1]   36/15
using [1]   29/4
utterly [2]   41/20
41/21

**V**

validation [1]
30/15
Valley [1]   34/16
variety [2]   22/15
31/17

vary [1]   38/25
vast [1]   37/15
venue [1]   5/9
versus [4]   2/3 10/4
30/7 33/15
Vesey [1]   1/18
via [3]   1/12 1/18
14/15
view [3]   41/2 42/4
42/19
VII [3]   29/15 29/19
29/20
violation [1]   15/24

**W**

wait [1]   13/4
wants [1]   8/19
Washington [4]   1/5
1/16 1/21 1/25
way [10]   3/24 20/4
21/5 23/8 25/3 27/1
32/22 38/18 39/22
42/9
ways [1]   31/17
website [2]   25/20
28/9
weed [1]   24/17
week [1]   28/15
weigh [1]   35/16
welcome [2]   40/16
40/25
weren't [1]   40/16
what's [5]   8/24
22/9 23/11 24/3
24/20
whining [3]   30/9
32/19 33/13
who's [2]   2/22
35/20
wide [5]   5/24 5/25
5/25 11/14 23/24
willing [3]   6/20
6/24 6/25
window [1]   19/9
within [3]   19/9
33/18 34/19
without [3]   4/25
17/3 36/5
women [4]   6/13 20/2
21/5 21/7
words [4]   4/4 7/14
14/18 38/13
work [4]   2/19 13/12
13/12 31/18
worked [4]   13/13
27/24 32/7 35/3
working [2]   11/3
13/11
workload [1]   26/24
works [2]   23/11
31/11
writing [1]   43/7
wrong [1]   41/1

**Y**

year [8]   16/16 17/9
19/2 23/4 23/7 26/2
30/2 30/16
years [19]   8/11
21/7 21/8 21/8

**Y**

**years... [15]**  21/10
21/11 21/12 21/16
21/20 21/20 21/22
22/1 22/9 22/16
22/25 23/1 24/7
31/2 42/11
**York [7]**  1/13 1/19
32/10 33/23 34/5
35/5 42/8