UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NILAB RAHYAR TOLTON *et al.*, *on behalf of themselves and all others similarly situated*,

*Plaintiffs*,

v.

JONES DAY, a General Partnership,

*Defendant*.

Civil Action No. 19-945 (RDM)

DECLARATION OF RUSSELL KORNBLITH IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND FOR DISCOVERY PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 56(d)

Russell L. Kornblith, Esq. makes the following declaration pursuant to 28 U.S.C. § 1746:

1. I am counsel for Plaintiffs in the above-captioned action and am fully familiar with the facts concerning this matter. I submit this declaration, per the Court's July 21, 2020 minute order, in support of Plaintiffs' request for further discovery under Rule 56(d). If called upon to testify in this matter, I would testify truthfully and completely as follows.

2. This litigation is still in its infancy, and discovery has just begun in earnest. Plaintiffs filed the operative Third Amended Complaint on August 16, 2019. Dkt. 41. Jones Day ("Defendant," "Jones Day," or "the Firm") moved for judgment on the pleadings, and that motion was fully briefed on October 31, 2019. Dkt. 61. Plaintiffs sought to proceed with discovery in the interim, but, on November 7, 2019, the Court stayed most discovery, except for Rule 30(b)(6) depositions, until the Court could rule on Defendant's Rule 12(c) Motion for Judgment on the Pleadings. Nov.

1

7, 2019 Hr'g Tr. 52: 8–9; 52:25–53:6.[1] On May 19, 2020, this Court ruled on Jones Day's Motion for Judgment on the Pleadings, denying the motion as to the Equal Pay Act Claims (Count IV) of Plaintiffs Katrina Henderson, Saira Draper, and Meredith Williams (hereinafter "EPA Plaintiffs"). *See* Dkt. 110 at 88.

3. On June 9, 2020, Plaintiffs moved for leave to file and filed an Amended Motion for Conditional Certification of their Equal Pay Act Claims Under 29 U.S.C. § 216(b). Dkts. 118, 118-1. On July 15, 2020, Defendant filed its Opposition to Plaintiff's Amended Motion for Conditional Certification and a Motion for Summary Judgment on Count IV of Plaintiffs' Third Amended Complaint. *See* Dkts. 128, 129. Plaintiffs filed a Reply in Support of Conditional Certification on July 20, 2020. Dkt. 135.

4. On July 21, 2020, the Court held a conference regarding Defendant's Summary Judgment Motion and ordered Plaintiffs to serve a Rule 56(d) declaration upon Defendant by July 24, 2020, and to meet and confer with the Defendant about the outstanding discovery. Plaintiffs served an earlier draft of this declaration on Jones Day in conformity with the Court's order.

5. On July 29, 2020, hours before a scheduled meet-and-confer call regarding Plaintiffs' Rule 56(d) declaration, Defendant wrote to convey that it could "only conclude that Plaintiffs are not seriously interested in obtaining discovery to respond to the summary judgment motion," and characterized Plaintiffs' requests as "disingenuous." Jones Day further mused that "[p]erhaps you are unhappy with what you learned at the Rule 30(b)(6) deposition," and expressed, repeatedly, that "Plaintiffs have [ ] everything they [ ] need on [this or that] score."

---

[1] In subsequent correspondence and telephonic meet and confer conferences regarding the scope of discovery, Jones Day cited the Court's stay pending a decision on the Rule 12(c) motion to limit some of its responses to Plaintiffs' requests for production of documents as well as to curtail Plaintiffs' attempts to take any depositions other than those of Jones Day's Rule 30(b)(6) designees. During a meet-and-confer call on March 13, 2020, Jones Day reiterated its view that all further depositions should await a ruling on the then-pending Rule 12(c) motion.

6. Jones Day nonetheless acknowledged that it had not produced all discovery sought below by Plaintiffs. Jones Day recognized that "[m]ost of the discovery sought by your declaration relates to 'the factors Jones Day uses to measure work in determining compensation,'" but declined to produce the sought discovery on these topics, asserting that it had already produced discovery to support its position on how the Firm measures and rewards associate work. Similarly, Jones Day refused to produce discovery relating to its motion for summary judgment on Plaintiff Henderson's claims—namely, "documents about male associates who were told to seek other employment" and the Firm's rationale for continuing to pay associates while they were performing the work of seeking other employment. Jones Day also recognized that it had not yet produced information about other potential comparators despite the Court's order that it produce compensation and performance data. And Jones Day rejected producing any further evidence of centralized control "over associate recruiting, hiring, work assignments, training, transfers, supervision, evaluations, and compensation," because, again, it said that it had already produced sufficient evidence to support *its* position.

7. Nonetheless, Jones Day agreed to produce some of the additional discovery Plaintiffs seek below, including "data reflecting associate transfers between U.S. offices and the reasons for those transfers," "a handful of emails . . . with fewer redactions," and "unredacted versions of some [compensation spreadsheets]." At the telephonic meet and confer later on July 29, 2020, Jones Day represented that this discovery would be forthcoming either later in the week of July 27, 2020 or early in the week of August 3, 2020. Earlier today, on July 31, 2020, Jones Day produced nine documents with lesser redactions, although, as of the execution of this declaration, Plaintiffs have not had an opportunity to review these closely. At 3:08 p.m. on July 31, 2020, Jones Day produced an additional 7.83 MB of information, which, as of the execution of this declaration, Plaintiffs

3

have not had an opportunity to carefully review. Still, Jones Day does not appear to have produced all of the documents that it agreed to produce in its July 29, 2020 correspondence.

8. Discovery is an iterative process and especially so in employment discrimination cases. At the outset of discovery, plaintiffs in employment discrimination cases often do not know what relevant documents exist or where they are stored. Plaintiffs often discover relevant information—particularly documentary evidence that has not yet been produced—by deposing employees of the defendant. In addition, documents produced in discovery often reveal the existence of further relevant information that then becomes the subject of subsequent discovery requests. It is therefore difficult, in the initial stages of a litigation, where limited depositions have taken place and limited document discovery has been produced, to state with great particularity what evidence will be necessary to complete discovery, even with respect to a particular claim. Plaintiffs therefore often serve broad requests and multiple sets of requests for production of documents based on what they learn at each phase. Plaintiffs also frequently sequence depositions to ensure that they gather appropriate background information.

9. Discovery to date in this case has been limited, and discovery is not set to close in this case until June 2021. See June 9, 2020 Min. Order; June 11, 2020 Min. Order. To date, the only depositions taken in this case are those of the Named Plaintiffs and of Jones Day's Rule 30(b)(6) designees.[2] Plaintiffs have yet to take the depositions of any fact witnesses, including individuals who will likely have knowledge of the EPA Plaintiffs' Equal Pay Act claims. Besides the email

---

[2] At the Rule 30(b)(6) depositions, Plaintiffs prioritized questioning relevant to Plaintiffs' anticipated class certification motion. At the time of these depositions, a schedule for summary judgment briefing had not been set. Local rules in this district suggest that class certification motions should be filed early in a litigation, and Plaintiffs therefore anticipated briefing class certification before summary judgment. Plaintiffs intended to use the testimony of fact witnesses, whose depositions would take place later—after the Court's ruling on the then-pending Rule 12(c) motion—to resist summary judgment. These reasonable strategic choices should not be used to penalize Plaintiffs, because Jones Day has now opted to file an early motion for summary judgment.

files of the Named Plaintiffs, Defendant has produced just 5,800 documents according to its counsel. For a case with six named plaintiffs spanning years of liability, this is a very small number.

10. Significant discovery remains outstanding in this case, including discovery relevant to Plaintiffs' EPA claims. Plaintiffs seek additional discovery pursuant to Rule 56(d) to address Defendant's arguments (1) that the EPA claims of Plaintiffs Henderson and Draper fail because they did not perform substantially equal "work"—defined as billable hours—as male comparators during the statutory period and (2) that Plaintiff Williams's EPA claim fails because certain of her named comparators worked in offices other than Irvine, California.[3] *See* Dkt. 129 at 7–8. Plaintiffs Henderson and Draper contend that they did perform substantially equal work—as defined by relevant D.C. Circuit and Supreme Court case law—as male comparators who were paid more than them, and Plaintiffs contend that Jones Day qualifies as a single "establishment" for the purposes of liability under the Equal Pay Act. As detailed below, further discovery is essential to addressing these disputes. These are central factual issues that depend upon the development of a full record.

11. Discovery in this matter remains ongoing. The parties have scheduled two depositions for September—those of Michael Shumaker, Jones Day's Administrative Partner, and Suzanne Coussons, Jones Day's Global Director of Business Development & Communications and former Director of Practice Services. *See* Dkt. 128-9 at ¶ 4 (Decl. of Suzanne Coussons). As set forth below, Plaintiffs believe that the testimony of these witnesses will bear on the present motion, because these witnesses will be able to testify regarding, among other topics, how Jones Day set

---

[3] This declaration addresses only the discovery necessary to respond to Jones Day's present motion. Additional discovery will be necessary in the event the EPA claims proceed collectively and to provide the factfinder with a full picture of the EPA claims. This declaration also does not address the discovery necessary for Plaintiffs' other claims.

5

the compensation of the EPA Plaintiffs, their comparators, and associates generally; the reasons why it did so; and the integration of Jones Day's offices into "One Firm Worldwide."

12. These two depositions are important, but still just a small portion of the overall universe of outstanding testimonial discovery. Plaintiffs' initial disclosures identified 165 individuals associated or formerly associated with Jones Day who may have discoverable information about Jones Day's practices regarding compensation and promotion, as well as any discriminatory effects. Many of these individuals are represented by Jones Day or appear unlikely to speak with Plaintiffs' counsel in the absence of a subpoena. In addition, Defendant identified 68 individuals besides the six Named Plaintiffs who may have discoverable information relevant to this case. Thus, as set forth with greater specificity below, Plaintiffs seek to take additional depositions before responding to Defendant's Summary Judgment Motion.

13. Significant document discovery also remains outstanding. Most notably, earlier this month, the Court ordered Jones Day to produce nationwide evaluation and compensation data for associates. *See* July 9, 2020 Min. Order. At 3:08 p.m. on July 31, 2020, Jones Day produced an additional 7.83 MB of information, which appears to contain at least some of the information sought in this regard, but Plaintiffs have not yet had an opportunity to review this information in detail. Plaintiffs anticipate that a complete production of the data sought will likely facilitate the identification of additional comparators for the EPA Plaintiffs and will likely enable a statistical analysis of Plaintiffs' pay claims by Plaintiffs' expert. Without reviewing this data, it is difficult for Plaintiffs to identify with specificity any additional discovery for which it may call. For this reason, among others, Plaintiffs seek additional document discovery before responding to Defendant's Summary Judgment Motion. But even in the absence of this data, further documentary

evidence, detailed below, would still be necessary to ensure a full, final, and fair disposition on the merits for Plaintiffs' EPA claims.

14. Finally, significant discovery disputes remain between the Parties, including on discovery relevant to Defendant's Summary Judgment Motion. Among these disputes are disagreements regarding the depositions of Jones Day's Managing Partner, Stephen J. Brogan, and its Global Counsel and Director of Human Resources, Sarah McClure. With respect to Mr. Brogan, Plaintiffs understand that Jones Day will resist this deposition and Plaintiffs therefore seek to establish the evidentiary record of Mr. Brogan's involvement in compensation decisions and policymaking at the Firm before briefing any disputes for the Court. Similarly, Plaintiffs understand that Jones Day will invoke privilege as to certain of Ms. McClure's activities. Accordingly, Plaintiffs seek to understand the contours of that privilege—including exactly what Ms. McClure's role is—before bringing any dispute to the Court's attention. Plaintiffs made these strategic choices based on the time remaining in discovery in this case, as well as in an effort to be respectful of the Court's time by not raising disputes before they are ripe for decision.

15. At this time, in order to resist Defendant's Motion for Summary Judgment, Plaintiffs seek discovery on the factors Jones Day uses to measure work in determining compensation, including to establish that Plaintiffs Henderson and Draper performed substantially equal work to male associates who were paid more than them. This anticipated discovery includes, but is not limited to:

- Deposition testimony from Managing Partner Stephen J. Brogan, Firm Administrative Partner Mike Shumaker, Partner Traci Lovitt; Partners-in-Charge or Administrative Partners Richard Deane, Jr., Deborah Sudbury, Wesley R. Johnson, Jr., Lee Armstrong, and Regional Partner-in-Charge or Administrative Partner Lizanne Thomas, regarding how Jones Day determines and measures associate work, performance, and compensation, including the work, performance, and compensation of EPA Plaintiffs and any male comparators during the relevant period;

- To the extent not provided by Defendant's production of compensation and evaluation data, evaluation, billable hours, and compensation information for potential comparators, and any information necessary to interpret such data;

- Documents reflecting who at Jones Day decides associate compensation, including, specifically, the compensation of Plaintiffs Henderson and Draper;

- Documents reflecting how Jones Day decides associate compensation, including, specifically, the compensation of Plaintiffs Henderson and Draper;

- Documents reflecting whether Jones Day decides compensation based on the number of hours billed by an associate and the role of hours in any compensation decisions, including, specifically, the compensation of Plaintiffs Henderson and Draper;

- Documents reflecting whether Jones Day decides compensation based on any factor other than an associate's billed hours, including, but not limited to, the quality of the associate's work, and the role of such other factors in such decision, including, specifically, with respect to the compensation of Plaintiffs Henderson and Draper;

- Documents reflecting any male associate instructed to seek employment outside the Firm, the compensation of such male associates, and the time devoted by such male associates to seeking employment outside the Firm;

- Documents reflecting any associate terminated, disciplined (whether formally or informally), or otherwise discussed, for failing to search for other employment as instructed by the Firm;

- Documents reflecting the Firm's rationale for continuing to pay associates while instructing them to look for other employment, including, but not limited to, Plaintiffs Henderson and Draper;

- Documents reflecting efforts by any Firm employees or partners to assist associates in finding employment with any Firm client or perspective client, including, but not limited to, with respect to Plaintiffs Henderson and Draper;

- Documents reflecting any market surveys for associate compensation performed by Jones Day or any third parties;

- Any job analyses performed by Jones Day or any third parties;

- Documents regarding Jones Day's expectations, including but not limited to billable hours expectations, for associates who take parental leave and how such expectations are determined, including, but not limited to, any expectations for Plaintiff Draper in this regard;

- Time records for any identified potential comparators compensated more than the EPA Plaintiffs.

8

16. Plaintiffs also specifically seek discovery to establish that Jones Day operates as one "establishment" for the purposes of the Equal Pay Act. Discovery that Plaintiffs seek includes, but is not limited to:

- Deposition testimony from Managing Partner Stephen J. Brogan, Firm Administrative Partner Mike Shumaker, Partner Traci Lovitt, Partners-in-Charge Richard Grabowski, Richard Deane, Jr., Wesley R. Johnson, Jr., Christopher Lovrien, and Lizanne Thomas, Practice Leaders John Majoras, Stephanie Parker, Christopher Kelly, and Anthony Insogna, Global Counsel and Director of Human Resources Sarah McClure, and Global Director of Business Development & Communications and former Director of Practice Services Suzanne Coussons, all of whom can address the Firm's organization, the role of its practice groups, which serve an important function across its offices, and the integration of its offices, including, but not limited to the Firm's central organizing principle, "One Firm Worldwide," and its influence on both the day to day operations of each office and practice group and on the Firm's centralized management system;

- Documents reflecting the centralization of pay decisions including, but not limited to, how Jones Day decides associate compensation and who at Jones Day decides associate compensation;

- Documents reflecting any associate pay decisions or recommendations made by Managing Partner Stephen J. Brogan, Administrative Partner Michael Shumaker, Partner Traci Lovitt, and/or Partners in Charge;

- Documents reflecting any decision by Jones Day to pay associates differently based on office location, including, but not limited to, the rationale and process for making such decisions;

- Documents and data relating to the process and frequency of associate transfers between offices, including, but not limited to, any database of transfers;

- Documents reflecting or relating to whether the Firm expects that associates will work with attorneys located in different offices and whether and how the Firm conveys to associates that doing so is valued by the Firm;

- Documents reflecting associate assignments made across offices and staffing of matters by attorneys in multiple offices, including, but not limited to, the rationale for such decisions;

- Documents reflecting the supervision of any associate by an attorney in any other office;

- Documents reflecting the annual review process in each office;

- Documents reflecting any evaluations of associates by attorneys in offices other than their own;

- Documents reflecting any work that any associate performed in any Jones Day office other than her or his home office;

- Documents reflecting the hiring process for associates;

- Documents reflecting the Firm's participation in any recruiting programs, the parameters of such participation, decisions as to which recruiters to send to any academic institution, to which academic institution they would be sent, and from which offices they would be sent, and the consideration of any applicants from any such programs, including the hiring of associates across offices and the coordination among offices in making offers to associates;

- Documents regarding the purposes of the Firm's NLG academies and/or summer academies;

- Documents regarding the presenters and attendees participating in the Firm's NLG or summer academies, including their home offices and how such persons were selected for such roles;

- Documents reflecting any other oversight of local decisions by Firm leaders, including, but not limited to, by Practice Group Leaders.

17. Plaintiffs also seek unredacted versions of documents that are key to demonstrating the scope of involvement and authority exercised by Managing Partner Brogan, Administrative Partner Shumaker, and Partner Lovitt in the associate compensation process as well as in the monitoring of associates deemed by the Firm to be underperforming. Specifically, Plaintiffs seek unredacted versions of the following documents, which are relevant to the scope of top Firm leadership's involvement in individual associate compensation decisions, the Firm's policy of counseling associates to seek outside employment while allowing them to search for other work, and the scope of cross-office collaboration at Jones Day: JD_02206416, JD_02203269, JD_0220372, JD_02203274, JD_02210466; JD_02210762; JD_02206210, JD_02206247, JD_02206200, JD_02206201, JD_02206003, JD_02206208, JD_02203427, JD_02203428, JD_02188290, JD_02209737, JD_02188254, JD_02188255, JD_02188259, JD_02206336, JD_02209648, JD_02209945, JD_02188078, JD_02205986, JD_02205989, JD_02205977,

10

JD_02205978, JD_02210244, JD_02210746, JD_02210750, JD_02210248, JD_02210747, JD_02210753, JD_02205983, JD_02210456, JD_02210759, JD_02210760, JD_02178337, JD_02203434, JD_02203499, JD_02203500, JD_02205334, JD_02205335, JD_02205342, JD_02188088, JD_02178401, JD_02190068, JD_02194694, JD_02194846, JD_02204757, JD_02204760, JD_02204775, JD_02204776, JD_02204777, JD_02204778, JD_02204779, JD_02204780, JD_02204782, JD_02204785, JD_02188981, JD_02189005, JD_02189019, JD_02189077, JD_02194662, JD_02194878, JD_02194894, JD_02194904, JD_02203962, JD_02190044, JD_02194931, JD_02194952, JD_02209634, JD_02209636. Plaintiffs understand that nine documents from this list were reproduced mid-morning on July 31, 2020 but, as of the execution of this declaration, Plaintiffs have not yet had an opportunity to review them closely. Plaintiffs do not know if further documents from this list are forthcoming.

18. Finally, Plaintiffs seek any documents that would cast doubt on the unsubstantiated deposition testimony of Defendant's Rule 30(b)(6) deponents or Defendant's untested declarations. This includes any documents that would tend to suggest that:

- Recruiting and hiring at Jones Day is not done at the office level;

- The Partner-in-Charge of each office lacks absolute discretion to set the initial compensation for lateral associate hires;

- The discretion of Partners-in-Charge to apportion their respective office compensation budgets is circumscribed in any way;

- Associates require approvals, other than those of both offices' PICs, to transfer or to be transferred to another office;

- Inter-office transfers have served or may serve any purpose other than an accommodation to an associate;

- During the annual review process, Jones Day offices use similar processes to rate and rank associates and any evidence of oversight over those ratings and rankings by anyone outside the office.

With regard to the documents sought by this paragraph, Plaintiffs understand from Jones Day that it cannot give assurances that such documents do not exist, although Plaintiffs also understand that Jones Day is not intentionally withholding documents, and that, according to its responses to Plaintiffs Requests for Production of Documents, its search is ongoing. Jones Day has offered narrow assurances relating to local hiring and initial salary decisions, but it has not made a similar assurance with respect to recruiting, nor has Jones Day represented that salary and budget decisions are not subject to further review, including, but not limited to, by Managing Partner Brogan, Administrative Partner Shumaker, or Partner Lovitt. The existence and extent of any such further review is the kind of information that courts rely on in determining the appropriate EPA "establishment." Plaintiffs further understand that a database containing information on inter-office transfers is forthcoming (or may have been produced in Defendant's July 31, 2020, 3:08 p.m. production), and Plaintiffs will review this database to better understand what, if any, further information is required on transfers. Finally, Plaintiffs understand from Jones Day that its annual review process is similar in Jones Day's 18 U.S. offices. Plaintiffs continue to seek information regarding these processes, because this information bears both on how Jones Day understands "substantially equal work" and on whether multiple Jones Day offices operate as a single establishment. In particular, Plaintiffs understand that evaluations involve attorneys in multiple offices and practice groups, which themselves span multiple offices. This integration, and the extent of it, bears on the establishment inquiry.

19. Critically, all of the discovery outlined in this declaration will be relevant to this action—and thus will proceed—whether Jones Day's present summary judgment motion is granted, deferred, or denied at this time. Jones Day even acknowledged that it will need to produce much of this discovery for the Rule 23 class claims during the meet-and-confer process. Deciding

Defendant's Rule 56 motion now will not, therefore, lead to a more efficient or narrower action. Instead, it will engender delay by requiring the parties and the Court to devote time to briefing and deciding these issues instead of conducting discovery, which has just begun in earnest. And should future discovery bear on Plaintiffs' claims after this motion is fully briefed, Plaintiffs will move to supplement any summary judgment submission—doubtless precipitating yet more briefing. There is thus no utility to litigating this motion now.

20. Plaintiffs thus proposed deferring briefing on Jones Day's Summary Judgment Motion until the parties could conduct further discovery during the July 29, 2020 Meet and Confer. Jones Day, however, demurred.

21. I am submitting this draft declaration in compliance with the Court's July 21, 2020, Order. I anticipate that I may need to modify and revise the foregoing declaration based on any additional discovery produced and the outcome of the parties' ongoing meet-and-confer process.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 31, 2020.

                                                                 */s/ Russell L. Kornblith*
                                                                 RUSSELL L. KORNBLITH