## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NILAB RAHYAR TOLTON *et al.*, *on behalf of themselves and all others similarly situated*,

*Plaintiffs*,

v.

JONES DAY, a General Partnership,

*Defendant*.

Civil Action No. 19-945 (RDM)

## DECLARATION OF RUSSELL KORNBLITH IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Russell L. Kornblith, Esq. makes the following declaration pursuant to 28 U.S.C. § 1746:

1.      I am counsel for Plaintiffs in the above-captioned action and am fully familiar with the facts concerning this matter. I submit this declaration in opposition to Defendant's Motion for Summary Judgment (Dkt. 147) and in support of Plaintiffs' request for further discovery under Rule 56(d). If called upon to testify in this matter, I would testify truthfully and completely as follows.

2.      This litigation is still in its infancy, and discovery has just begun in earnest. Plaintiffs filed the operative Third Amended Complaint on August 16, 2019. Dkt. 41. Jones Day ("Defendant," "Jones Day," or "the Firm") moved for judgment on the pleadings, and that motion was fully briefed on October 31, 2019. Dkt. 61. While that Motion was pending, on September 25, 2019, the parties agreed to postpone merits discovery and "to meet and confer following a class certification order to discuss . . . merits discovery and discovery relating to the Plaintiffs' individual claims." Ex. E1. On November 7, 2019, the Court stayed fact witness depositions pending a

1

decision on Jones Day's Rule 12(c) motion. *See* Dkt. 64, November 7, 2019 Hearing Tr. 52:2–53:6. Plaintiffs sought to take additional testimony, but Jones Day resisted.

3.      On May 19, 2020, this Court ruled on Jones Day's Motion for Judgment on the Pleadings, denying the motion as to the Equal Pay Act Claims (Count IV) of Plaintiffs Katrina Henderson, Saira Draper, and Meredith Williams (hereinafter "EPA Plaintiffs"). *See* Dkt. 110 at 88.

4.      On June 9, 2020, Plaintiffs moved for leave to file and filed an Amended Motion for Conditional Certification of their Equal Pay Act Claims Under 29 U.S.C. § 216(b). Dkts. 118, 118-1. On July 15, 2020, Defendant filed its Opposition to Plaintiffs' Amended Motion for Conditional Certification and a Motion for Summary Judgment on Count IV of Plaintiffs' Third Amended Complaint. *See* Dkts. 128, 129. Plaintiffs filed a Reply in Support of Conditional Certification on July 20, 2020. Dkt. 135.

5.      On June 19, 2020, Defendant moved to prevent discovery of compensation and evaluation information—statistically analyzable data—regarding U.S. associates. Dkt. 120. Plaintiffs opposed on July 3, 2020. Dkt. 121. On July 9, 2020, the Court ordered Defendant to produce much of this data. July 9, 2020 Minute Entry. This data was not produced in usable form until August 3, 2020, and the Defendant has continued to correct errors as recently as August 18, 2020.

6.      On July 21, 2020, the Court held a conference regarding Defendant's Summary Judgment Motion and ordered Plaintiffs to serve a Rule 56(d) declaration upon Defendant by July 24, 2020, and to meet and confer with the Defendant about the outstanding discovery. Plaintiffs served an earlier draft of the declaration on Jones Day in conformity with the Court's order.

7.      On July 29, 2020, hours before a scheduled meet-and-confer call regarding Plaintiffs' Rule 56(d) declaration, Defendant wrote to convey that it could "only conclude that Plaintiffs are not seriously interested in obtaining discovery to respond to the summary judgment motion," and characterized Plaintiffs' requests as "disingenuous." Dkt. 141 at 4, 6. Jones Day further mused that "[p]erhaps you are unhappy with what you learned at the Rule 30(b)(6) deposition," and expressed, repeatedly, that "Plaintiffs have [ ] everything they [ ] need on [this or that] score." *Id.* at 7–8.

8.      Jones Day nonetheless acknowledged that it had not produced all discovery sought below by Plaintiffs. Jones Day recognized that "[m]ost of the discovery sought by your declaration relates to 'the factors Jones Day uses to measure work in determining compensation,'" but declined to produce the sought discovery on these topics, asserting that it had already produced discovery to support its position on how the Firm measures and rewards associate work. *Id.* at 5. Similarly, Jones Day refused to produce discovery relating to its Motion for Summary Judgment on Plaintiff Henderson's claims—namely, "documents about male associates who were told to seek other employment" and the Firm's rationale for continuing to pay associates while they were performing the work of seeking other employment. *Id.* at 7. Jones Day also recognized that it had not yet produced information about other potential comparators despite the Court's order that it produce compensation and performance data. *Id.* at 10–11. And Jones Day rejected producing any further evidence of centralized control "over associate recruiting, hiring, work assignments, training, transfers, supervision, evaluations, and compensation," because, again, it said that it had already produced sufficient evidence to support its position. *Id.* at 7–8. Jones Day agreed to produce less redacted replacement copies of some of the discovery Plaintiffs sought. *Id.* at 10. In reality, nine documents were reproduced, out of the dozens that Plaintiffs sought.

9.     On August 3, 2020, the Court conducted another conference on Defendant's Motion for Summary Judgment. The Court denied Plaintiffs' Rule 56(d) request without prejudice. The Court further ordered Plaintiffs to respond to Defendant's Motion by August 21, 2020. August 3, 2020 Minute Entry.

10.     Discovery in this case is not set to close until June 11, 2021. *See* June 10, 2020 Minute Entry.[1] By agreement of the parties, initial expert reports are to be served on November 6, 2020, and expert discovery is not set to close until February 19, 2021. Ex. E3 (July 15, 2020 email from T. Chase to K. Mueting).

11.     Discovery is an iterative process and especially so in employment discrimination cases. At the outset of discovery, plaintiffs in employment discrimination cases often do not know what relevant documents exist or where they are stored. Plaintiffs often discover relevant information—particularly documentary evidence that has not yet been produced—by deposing employees of the defendant. In addition, documents produced in discovery often reveal the existence of further relevant information that then becomes the subject of subsequent discovery requests. It is therefore difficult, in the initial stages of a litigation, where limited depositions have taken place and limited document discovery has been produced, to state with great particularity what evidence will be necessary to complete discovery, even with respect to a particular claim. Plaintiffs therefore often serve broad requests and multiple sets of requests for production of documents based on what they learn at each phase. Plaintiffs also frequently sequence depositions to ensure that they gather appropriate background information.

---

[1] Plaintiffs now anticipate that additional time may be required for merits discovery, because the Court subsequently extended the briefing schedule for class certification through June 4, 2021. July 9, 2020 Minute Entry.

12.     Discovery to date in this case has been limited. The only depositions taken have been those of the Named Plaintiffs and of Jones Day's Rule 30(b)(6) designees.[2] Plaintiffs have yet to take the depositions of any fact witnesses, including individuals who will likely have knowledge of the EPA Plaintiffs' Equal Pay Act claims. Plaintiffs served extensive requests for production of documents—more than 230 in total. Aside from the email files of the Named Plaintiffs, Defendant had, at the time of filing its Motion, produced just 5,800 documents according to its counsel. For a case with six named plaintiffs spanning years of liability, this is a very small number.

13.     Significant discovery remains outstanding in this case, including discovery relevant to Plaintiffs' EPA claims. Plaintiffs seek additional discovery pursuant to Rule 56(d) to address Defendant's arguments (1) that Plaintiff Williams's EPA claim fails because certain of her named comparators worked in offices other than Irvine, California; (2) that the EPA claims of Plaintiffs Henderson and Draper fail because they billed fewer hours than their named comparators; and (3) that Plaintiff Henderson's efforts to find other employment—efforts made at the Firm's instruction—cannot be considered work.[3] *See* Dkt. 129 at 7–8. Plaintiffs contend that the EPA's definition of "establishment" extends beyond a single office of the Firm and that Plaintiffs

---

[2] At the Rule 30(b)(6) depositions, Plaintiffs prioritized questioning relevant to Plaintiffs' anticipated class certification motion. At the time of these depositions, a schedule for summary judgment briefing had not been set. Local rules in this district suggest that class certification motions should be filed early in a litigation, and Plaintiffs therefore anticipated briefing class certification before summary judgment. Plaintiffs intended to use the testimony of fact witnesses, whose depositions would take place later—after the Court's ruling on the then-pending Rule 12(c) motion—to resist summary judgment. These were reasonable strategic choices.

[3] This declaration addresses only the discovery necessary to respond to Jones Day's present motion. Additional discovery will be necessary in the event the EPA claims proceed collectively and to provide the factfinder with a full picture of the EPA claims. This declaration also does not address the discovery necessary for Plaintiffs' other claims.

Henderson and Draper did perform substantially equal work—as defined by Jones Day and applicable law—as male comparators who were paid more than them. As detailed below, further discovery is essential to addressing these disputes.

14.     The parties have scheduled two depositions for September—those of Michael Shumaker, Jones Day's Administrative Partner, and Suzanne Coussons, Jones Day's Global Director of Business Development & Communications and former Director of Practice Services. *See* Dkt. 128-9 at ¶ 4 (Decl. of Suzanne Coussons). As set forth below, Plaintiffs believe that the testimony of these witnesses will bear on the present motion, because these witnesses will be able to testify regarding, among other topics, how Jones Day set the compensation of the EPA Plaintiffs, their comparators, and associates generally; the reasons why it did so; and the integration of Jones Day's offices into "One Firm Worldwide."

15.     Further depositions will be essential to complete discovery in this matter. Plaintiffs' initial disclosures identified 165 individuals associated or formerly associated with Jones Day who may have discoverable information about Jones Day's practices regarding compensation and promotion, as well as any discriminatory effects. Many of these individuals are represented by Jones Day or appear unlikely to speak with Plaintiffs' counsel in the absence of a subpoena. In addition, Defendant identified 68 individuals besides the six Named Plaintiffs who may have discoverable information relevant to this case.

16.     Critically, all of the discovery outlined in this declaration will be relevant to this action—and thus will proceed—whether Jones Day's present summary judgment motion is granted, deferred, or denied at this time. Jones Day even acknowledged that it would need to produce much of this discovery for the Rule 23 class claims during the meet-and-confer process.

17.     As relevant to the pending Summary Judgment Motion, Plaintiffs specifically seek

discovery to establish that Jones Day operates as one "establishment" for the purposes of the Equal

Pay Act. Discovery that Plaintiffs seek includes, but is not limited to:

- Deposition testimony from Managing Partner Stephen J. Brogan, Firm Administrative
Partner Michael Shumaker, Partner Traci Lovitt, Partners-in-Charge Richard Grabowski,
Richard Deane, Jr., Wesley R. Johnson, Jr., Christopher Lovrien, and Lizanne Thomas,
Practice Leaders John Majoras, Stephanie Parker, Christopher Kelly, and Anthony
Insogna, Global Counsel and Director of Human Resources Sarah McClure, and Global
Director of Business Development & Communications and former Director of Practice
Services Suzanne Coussons all of whom can address the Firm's organization, the role of
its practice groups, which serve an important function across its offices, and the integration
of its offices, including, but not limited to the Firm's central organizing principle, "One
Firm Worldwide," and its influence on both the day to day operations of each office and
practice group and on the Firm's centralized management system;[4]

- Documents reflecting any associate pay decisions or recommendations made by Managing
Partner Stephen J. Brogan, Administrative Partner Michael Shumaker, Partner Traci Lovitt,
and/or Partners-in-Charge made during the relevant period;

- Documents reflecting any decision by Jones Day to pay associates differently based on
office location, including, but not limited to, the rationale and process for making such
decisions. ███████████████████████
███████████████████████████████ Ex. P, Plfs.' Am. Cond. Cert. Mot.
Plaintiffs seek any additional documents that would be relevant on this topic for the
depositions of Managing Partner Brogan, Administrative Partner Shumaker, Partner Lovitt,
the Irvine, New York, and Atlanta Partners-in-Charge, and the Southeast and California
Regional Partners-in-Charge (listed above);

- Documents and data relating to the process and frequency of associate transfers between
offices, including, but not limited to, how often transfers are requested by an associate and
denied by either the would-be sending or the would-be receiving office and/or Firm
leadership. Jones Day asserts that the majority of transfers are made at the request of
associates, *see* Dkt. 147 at 27 ███████████████████████
███████████████████████████████ Plaintiffs also seek documents

---

[4] To be sure, Plaintiffs may not need the deposition testimony of all of these individuals to address
the instant Motion, but until Plaintiffs begin taking this testimony, it is impossible to say which
witnesses may deflect questions to the others and whether testimony of certain of them may be
cumulative and therefore unnecessary.

reflecting the criteria deemed necessary to grant an associate's transfer request and all individuals involved in granting or denying such a request;

- Documents reflecting or relating to whether the Firm expects that associates will work with attorneys located in different offices and whether and how the Firm conveys to associates that doing so is valued by the Firm. ██████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████ There is also evidence in the record that Jones Day considers the breadth of an associate's network within the Firm when considering whether a senior associate should advance at the Firm. *See* Dkt. 145-19 (Ex. Q, Plfs.' Am. Cond. Cert. Mot.). Plaintiffs are entitled to additional documents that reflect the Firm leadership's expectations in this regard as well as Firm leadership's role in articulating and implementing this practice;

- Documents reflecting the annual review process in each office. The Director of Firmwide Practice Services distributes the same information and instructions for evaluating associates to each partner-in-charge and each practice leader. *See, e.g.*, █████████████ ████████; Dkt. 145-19, Ex. Q (Plfs.' Am. Cond. Cert. Mot.). Documents in the record demonstrate that the Firm maintains the same expectations for each office and each practice as to what each will produce during the associate evaluation process, and all offices and practices are required to share that information with Firm Practice Services. *See id.* Plaintiffs therefore seek any documents relevant to the implementation of these practice;

- Documents reflecting any work that any associate performed in any Jones Day office other than her or his home office. Plaintiffs, for instance, seek any notices sent to attorneys within an office indicating that an associate from another office would be working in that office, and documents reflecting the approval or denial of permission to do so;

- Documents reflecting the hiring process for associates. In particular, Plaintiffs seek any further documents or correspondence between Firm Financial Services, Firm Practice Services, the Firm's Hiring Department, or any other firmwide office or department that indicates any restriction on office leaders' discretion to apportion their respective compensation budget;

- Documents regarding the purposes of the Firm's NLG academies and/or summer academies. Specifically, Plaintiffs seek any documents to or from the Firmwide Hiring Partner to Managing Partner Brogan about the NLG academies and/or summer academies, as well as communications to or from the Firmwide Hiring Partner to partners, senior associates, and other attorneys outside of the New Lawyers Group articulating the purposes of these events and/or inviting them to take part in one or more of these events;

- Documents regarding the presenters and attendees participating in the Firm's NLG or summer academies, including their home offices and how such persons were selected for such roles;

- Documents reflecting any other oversight of local decisions by Firm leaders, including, but not limited to, by Practice Group Leaders.

18.     Further discovery is also essential on the factors Jones Day uses to measure work in determining compensation, including to establish that Plaintiffs Henderson and Draper performed substantially equal work to male associates who were paid more than them. This discovery includes, but is not limited to:

- Deposition testimony from Managing Partner Stephen J. Brogan, Firm Administrative Partner Michael Shumaker, Partner Traci Lovitt; Partners-in-Charge or Administrative Partners Richard Deane, Jr., Deborah Sudbury, Wesley R. Johnson, Jr., Lee Armstrong, and Regional Partner-in-Charge or Administrative Partner Lizanne Thomas, regarding how Jones Day determines and measures associate work and compensation, including the work and compensation of Plaintiffs Draper and Henderson and any male comparators during the relevant period;

- Documents reflecting exactly how Jones Day decided the compensation of Plaintiffs Henderson and Draper;

- Documents reflecting whether Jones Day decides compensation based on the number of hours billed by an associate or whether it decides compensation based on any factor other than an associate's billed hours, including, but not limited to, the quality of the associate's work and the role of such other factors in decisions, including, but not limited to, with respect to the compensation of Plaintiffs Henderson and Draper and ███████████ ██████████████████████████ Plaintiffs are aware that PICs receive guidance from Firm Administrative Partner Michael Shumaker detailing the aim of compensation decisions at the Firm and the types of considerations they should keep in mind when making salary recommendations. *See, e.g.*, Dkt. 117-23 and 145-18 (public, redacted version of same), Ex. P (Pltfs.' Am. Cond. Cert. Mot.). But this does not answer what was *actually* considered, much less with respect to Plaintiffs Draper and Henderson, as well as their comparators. Plaintiffs are entitled to document and deposition discovery that will clarify the factors that the Firm actually used to decide associate compensation, including for Plaintiffs Draper and Henderson and their comparators;[5]

---

[5] Plaintiffs agreed not to pursue narrative evaluations for all U.S. associates based on Jones Day's representations about burden but reserved the right to seek such evaluations as necessary. As Jones Day's June 19, 2020 letter to the Court reflects, Jones Day agreed to address requests for production of additional narrative evaluations on a case by case basis. *See* Dkt. 120 at 6.

- Documents reflecting any associate instructed to seek employment outside the Firm, the compensation of any such male associates, and the time devoted by such male associates to seeking employment outside the Firm.

  ;

- Documents reflecting any associate terminated, disciplined (whether formally or informally), or otherwise discussed, for failing to search for other employment as instructed by the Firm. There is evidence in the record establishing that Jones Day has a policy of keeping associates on the Firm payroll while they search for work and that the Firm monitors an associate's progress on finding new employment. *See e.g.*, Ex. B4 ((Tolton Tr. 511:11–18) ("Consistent with [Partner] Darren [Cottriel]'s instruction to me to prioritize job search and not work on active cases, to facilitate my job search I did not work on client matters in that period.")); Ex. B3 ((Henderson Tr. 281:2–13) (". . . I must have been under the understanding, that it took people three months -- usually given three months. I'm sure, because I said 'usually,' some people were given more [time to find employment outside of Jones Day].")));

- Documents reflecting the Firm's rationale for continuing to pay associates while instructing them to look for other employment, including, but not limited to, with respect to Plaintiff Henderson.

  Ex. B2 (Draper Tr. 27:2–15) ("[I]n 2017, Deb Sudbury asked if I wanted to meet with the general counsel of a company . . . . That general counsel reached out to Deb and asked if there were any associates at the firm that might be interested in transitioning to in-house. . . And Deb . . . suggested that I meet with them . . . ."))

- Documents reflecting efforts by any Firm employees or partners to assist associates in finding employment with any Firm client or perspective client, including, but not limited to, with respect to Plaintiff Henderson;

- Documents reflecting any market surveys for associate compensation performed by Jones Day or any third parties, and any job analyses performed by Jones Day or any third parties.

19.     Plaintiffs also seek unredacted versions of documents that are key to demonstrating the scope of involvement and authority exercised by Managing Partner Brogan, Administrative Partner Shumaker, and Partner Lovitt in the associate compensation process ██████████████ ███████████████████████████████████. Specifically, Plaintiffs seek unredacted versions of documents which are relevant to the scope of top Firm leadership's involvement in individual associate compensation decisions, ██████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ For example, this list ████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████ and compensation recommendations from Administrative Partner Shumaker and Partner Lovitt to Managing Partner Brogan, *see, e.g.*, Dkt. 117-30 and Dkt. 145-25 (public, redacted version of same), Ex. W. Pltfs.' Am. Cond. Cert. Mot. (JD_02203745–926); ████████████████████████████████████ ████████████████████████; Managing Partner Brogan's finalizations of associates' salary, *see, e.g.*, Dkt. 117-34 and Dkt. 145–29 (public, redacted version of same), Ex. AA, Plfs.' Am. Cond. Cert. Mot. (JD_02203312–37); ███████████████████; as well as documents reflecting ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

20.     Plaintiffs also seek any documents that would cast doubt on the unsubstantiated deposition testimony of Defendant's Rule 30(b)(6) deponents or Defendant's untested declarations. Because discovery in this matter is ongoing, Plaintiffs understand that Defendant's

search for any such documents that are responsive to Plaintiffs' Requests for Production is ongoing.

21.     Finally, significant discovery disputes remain between the Parties, including on discovery relevant to Defendant's Summary Judgment Motion. Among these disputes are disagreements regarding the depositions of Jones Day's Managing Partner, Stephen J. Brogan, and its Global Counsel and Director of Human Resources, Sarah McClure, both of which Plaintiffs seek. With respect to Mr. Brogan, Plaintiffs understand that Jones Day will resist this deposition entirely, and Plaintiffs therefore seek to establish the evidentiary record of Mr. Brogan's involvement in compensation decisions and policymaking at the Firm before briefing any disputes for the Court. Similarly, Plaintiffs understand that Jones Day will invoke privilege as to certain of Ms. McClure's activities. Accordingly, Plaintiffs seek to understand the contours of that assertion of privilege—including exactly what Ms. McClure's role is—before bringing any dispute to the Court's attention. Plaintiffs made these strategic choices based on the time remaining in discovery in this case, as well as in an effort to be respectful of the Court's time by not raising disputes before they are ripe for decision.

22.     The following is a list of exhibits accompanying Plaintiffs' Opposition.

| A. 30(b)(6) Deposition Testimony | |
|---|---|
| A1 | Excerpts from the Rule 30(b)(6) deposition of Jones Day Firmwide Hiring Partner Sharyl Reisman, taken on February 13, 2020 |
| A2 | Excerpts from the Rule 30(b)(6) deposition of Jones Day Partner Traci Lovitt, taken on February 5, 2020 |
| A3 | Excerpts from the Rule 30(6)(6) deposition of Jones Day Associate Director of Human Resources Lori Bounds, taken on March 4, 2020 |
| B. Plaintiff Deposition Testimony | |
| B1 | Excerpts from the deposition of Plaintiff Meredith Williams, taken on October 1, 2019 |
| B2 | Excerpts from the deposition of Plaintiff Saira Draper, taken on October 7, 2019 |

| B3 | Excerpts from the deposition of Plaintiff Katrina Henderson, taken on October 29, 2019 |
| B4 | Excerpts from the deposition of Plaintiff Nilab Rayhar Tolton, taken on September 17, 2019 and October 22, 2019 |
| B5 | Excerpts from the deposition of Plaintiff Jaclyn Stahl, taken on October 8, 2019 |





| | |
|---|---|
| C17 | |
| C18 | |
| C19 | |
| C20 | |
| C21 | |
| C22 | |
| C23 | |
| C24 | |
| **D.  Summary Exhibits** | |
| D1 | |
| D2 | |
| D3 | |
| D4 | |
| D5 | |
| D6 | |
| D7 | |
| D8 | Summary Exhibit of Jones Day Cases Staffed Across Offices |
| D9 | |
| D10 | |
| **E.  Correspondence** | |
| E1 | Correspondence from Terri Chase to Kate Mueting titled "RE: JD Class Custodians" and dated September 25, 2019 |
| E2 | |
| E3 | Correspondence from Terri Chase to Kate Mueting titled "RE: Schedule" and dated July 15, 2020 |



| F. Publicly Available Sources | |
|---|---|
| F1 | One Firm Worldwide, JONES DAY: INSIGHTS (last visited August 19, 2020), https://www.jonesday.com/en/ insights/2013/05/one-firm-worldwide |
| F2 | Compensation, JONES DAY (as of March 15, 2019), https://www.jonesday.com/principlesandvalues/compensation/ |
| G. Examples of Heavily Redacted Documents | |
| G1 | |
| G2 | |
| G3 | |
| G4 | |
| G5 | |
| G6 | |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 21, 2020.

/s/ Russell L. Kornblith
RUSSELL L. KORNBLITH